DEREK L. CORDEIRO
NAME
CDCR Registry No. #V-64461
PRISON NUMBER
Calif. Dept. of Corr. & Rehab.
R. J. Donovan Corr. Facility
CURRENT ADDRESS OR PLACE OF CONFINEMENT
Housing Loc: F3-11-124(L)
P.O. Box 799003
CITY, STATE, ZIP CODE
San Diego, CA 92179-9003



(2254)   1983
FILING FEE PAID
Yes ___  No ✓
IFP MOTION FILED
Yes ___  No ✓
CONSENTED TO
Court ✓  Pro Se

**FILED**
AUG 18 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

– for COURT USE only –

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

DEREK L. CORDEIRO,
(FULL NAME OF PETITIONER)

**PETITIONER**

v.

ROBERT J. HERNANDEZ, Warden,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

**RESPONDENT**
and

EDMUND GERALD BROWN, JR.,
The Attorney General of the State of
California, Additional Respondent.

Civil No _____ '08 CV 1519 H CAB
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

COURT'S ORIGINAL PETITION

**PETITION FOR WRIT OF HABEAS CORPUS**
WITH EXHIBITS A THROUGH N, AS
ATTACHED BY APPENDIX
UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack:

   San Diego County Superior Court, San Diego, California.

2. Date of judgment of conviction: January 12, 2005

3. Trial court case number of the judgment of conviction being challenged: SDC 181044

4. Length of sentence: 85 years to life.

CIV 68 (Rev. Jan. 2006)

5. Sentence start date and projected release date: `January 12, 2005; and release date is presently unknown.`

6. Offense(s) for which you were convicted or pleaded guilty (all counts): `Lewd and lascivious act on a child (Counts 1-2); indecent exposure (Count 3); child annoyance w/prior Penal Code § 288(a) conviction (Count 4).`

7. What was your plea? (CHECK ONE)

   (a) Not guilty  ☒

   (b) Guilty  ☐

   (c) Nolo contendere  ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)

   (a) Jury  ☒

   (b) Judge only  ☐

9. Did you testify at the trial?

   ☒ Yes  ☐ No

### DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?

    ☒ Yes  ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:

    (a) Result: `Conviction affirmed.`

    (b) Date of result (if known): `April 27, 2006`

    (c) Case number and citation (if known): `D045966`

    (d) Names of Judges participating in case (if known): `Unknown.`

    (e) Grounds raised on direct appeal: `Prosecutorial misconduct; Ineffective assistance of trial counsel; Ineffective trial counsel (cumulative errors); and Denial of a fair trial (cumulative errors).`

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:

    (a) Result: `Review denied.`

    (b) Date of result (if known): `August 16, 2006.`

    (c) Case number and citation (if known): `S143796`

    (d) Grounds raised: `Prosecutorial misconduct; Ineffective assistance of trial counsel; Ineffective assistance of trial counsel (cumulative errors); and Denial of a fair trial (cumulative errors).`

CIV 68 (Rev. Jan. 2006)

cv

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:
    (a) Result:  not applicable.

    (b) Date of result (if known):

    (c) Case number and citation (if known):

    (d) Grounds raised:

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
    [x] Yes [ ] No

15. If your answer to #14 was "Yes," give the following information:

    (a) **California Superior Court** Case Number (if known): HC 19093
    (b) Nature of proceeding: Habeas Corpus

    (c) Grounds raised:  Illegal sentence; Excess of jurisdiction;
        Ineffective trial counsel (individual and cumulative errors).

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
        [ ] Yes [x] No
    (e) Result: Petition denied.
    (f) Date of result (if known): October 29, 2007

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
    [x] Yes [ ] No

CIV 68 (Rev. Jan. 2006)

cv

17. If your answer to #16 was "Yes," give the following information:

    (a) **California Court of Appeal** Case Number (if known):  D052413

    (b) Nature of proceeding:  Habeas Corpus

    (c) Names of Judges participating in case (if known)  Unknown

    (d) Grounds raised: Ineffective trial counsel; Ineffective appel-
        late counsel; Ineffective Appellate Counsel; Illegal
        sentence/excess of jurisdiction; Failure to hold eviden-
        tiary hearing-ineffective counsel.

    (e) Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes  ☒ No

    (f) Result:  Petition Denied

    (g) Date of result (if known):  January 29, 2008

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☒ Yes  ☐ No

19. If your answer to #18 was "Yes," give the following information:

    (a) **California Supreme Court** Case Number (if known):

    (b) Nature of proceeding:  Habeas Corpus.

    (c) Grounds raised: Ineffective trial counsel; Ineffective Appel-
        late counsel; Illegal sentence/excess of jurisdiction;
        Failure to hold evidentiary hearing-ineffective counsel.

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes  ☒ No

    (e) Result:  Denied.

    (f) Date of result (if known):

CIV 68 (Rev. Jan. 2006)

cv

20. If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

    Not applicable

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
    [X] Yes [ ] No          (IF "YES" SKIP TO #22)
    (a) If no, in what federal court was the prior action filed?  not applicable
    (i) What was the prior case number?
    (ii) Was the prior action (CHECK ONE):
         Denied on the merits?                [ ]
         Dismissed for procedural reasons? [ ]
    (iii) Date of decision:
    (b) Were any of the issues in this current petition also raised in the prior federal petition?
        [ ] Yes [ ] No
    (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
        [ ] Yes [ ] No

---

**CAUTION:**

- **Exhaustion of State Court Remedies:**  In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court.  This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:**  If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:**  You must state facts, not conclusions, in support of your grounds.  For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do.  A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

---

B.   **FACTUAL BACKGROUND**

1.   **Historical Facts Adduced At Trial**[1/]

On February 25, 2004, at approximately 4:00 p.m., the petitioner walked out of his house with his dog Coco. The victim, Darcy Wear ("D.W."), the grand-daughter of petitioner's next door neighbor, was riding her scooter nearby at the time. D.W. was familiar with both the petitioner and Coco. She stopped in front of the petitioner's house, approached the front porch where petitioner and Coco were standing, and knelt down to pet Coco. While she was petting Coco, D.W. talked with petitioner about "Girl Scout stuff." The petitioner squatted about two feet away. He began rubbing the top of D.W.'s thigh with is hand, which was shaking, and said to Coco, "Isn't [D.W.] getting so beautiful?" This comment made D.W. feel a little uncomfortable, but also good about herself. She thanked the petitioner and he removed his hand from her thigh.

At this point D.W. noticed the petitioner's penis protruding from the right side of his shorts. He was not wearing underwear. D.W. became uncomfortable and backed away from the petitioner. The petitioner then scooted forward and both he and D.W. stood up. the petitioner then pulled his penis out farther from his shorts and asked D.W. if she wanted to touch it as he grabbed her hand and pulled it toward his penis. D.W. pulled back. The petitioner apologized, stating that

---

1/: The procedural and historical background facts herein were found in the 4th District Appellate Court opinion in this matter dated April 27, 2006.

he did not know that what he had done would offend her, and put his penis back in his shorts. D.W. sat with the petitioner in the chairs on petitioner's front porch and wondered if she should tell anyone about what happened. After a few more minutes of discussion about Girl Scouts, D.W. returned to her grandparents' house.

Jose Garcia, another neighbor, happened to be watching the interaction between D.W. and the petitioner from his front window. Garcia saw D.W. petting Coco while petitioner was standing next to her talking with her. However he could not see what petitioner was doing with his hands or what happened while petitioner and D.W. were squatting down because his view was blocked by a bush in petitioner's front yard.

When D.W. returned to her grandparents' house, her grandmother thought she was behaving in an odd manner. D.W.'s grandmother asked D.W. if she were okay and D.W. said she was. Her Grandmother then asked, "is there a problem?" In response, D.W. told her Grandmother that she was petting Coco in front of petitioner's house and that petitioner had exposed himself to her, asking if she wanted to touch "it." About five or ten minutes later, D.W. related the same events to her Grandfather. D.W.'s grandfather then called the police.

San Diego Police Officer Scott Sandefur responded to the call. After speaking with D.W. and her grandparents, Officer Sandefur returned to his patrol car. At this point the petitioner came out of his house. When Sandefur told petitioner that he was being accused of indecent exposure, petitioner

told the Officer that he may have accidentally exposed himself because he was wearing very short shorts and no underwear. Officers then arrested petitioner, who was still wearing the shorts. Petitioner's penis was not accidentally exposed at any time while Officer Sandefur was speaking with petitioner, nor when he was put in the patrol car nor when petitioner put jeans over his shorts.

Later that evening, D.W. disclosed to her grandmother that petitioner grabbed her hand when he asked her if she wanted to touch his penis. A few days later, D.W. told her grandmother that petitioner had also touched her leg.

Five days later, Anne-Marie Aguilar, a social worker at Children's Hospital interviewed D.W. about the incident. The statements D.W. made during this videotaped interview were consistent with he testimony at trial, except that she did not mention that petitioner grabbed her hand. In response to questioning by the prosecutor at trial, Aguilar testified regarding Child Sexual Abuse Accomodation Syndrome (CSAAS). Specifically, Aguilar said that children sometimes do not disclose information about an incident right away or disclose the incident but provide more details later, and that this behavior is known as "Delayed Disclosure."

2    **Evidence of Prior Sex Offenses**

Thirty-five year old Kristi B. testified that when she was 12 years old, petitioner's daughter Stacie was her best friend. Kristi would visit Stacie's house, where petitioner and his first wife lived, and would sometimes spend the night

there.    Kristi remembered that petitioner would often wear only a towel while walking around the house and that he would often sit in a manner that exposed his genitals.    One night, while she and Stacie were sleeping in the living room at Stacie's house, Kirsti woke during the middle of the night and discovered her panties had been pulled down and that petitioner was kneeling next to her.    Petitioner began fondling and orally copulating her.

Kristi eventually told her mother about what happened with petitioner and she reported the incident to authorities.    When confronted by authorities about the incident with Kristi, petitioner initially denied having physical contact with her. He told an investigating officer that he had been wearing a towel and that he had to step over the girls to let the cat out.    He explained that this may have been how they saw his nude body underneath the towel.    Petitioner later admitted that he had fondled and orally copulated Kristi, but said that he had been drinking at the time, and that when he drank, he could be a real "asshole."

### 3.    The Defense

At trial the petitioner testified.    From the stand, petitioner admitted that he had touched D.W.'s leg, but said that he had done so with innocent intent, and that exposing his penis to her had occurred accidentally.

The petitioner also testified that he first realized that he was attracted to young girls when he was stationed in Vietnam as a soldier in the late 1960's or early 1970's.    He sustained

his first conviction for committing a lewd act on a child in 1982 as a result of a guilty plea, arising from the incident with Kristi. Petitioner testified that at the time he regularly used drugs and drank alcohol. Petitioner was placed on probation and obtained court-ordered counseling.

The petitioner also admitted that in 1985 he suffered a second conviction for lewd acts with a child involving his current wife's oldest child, Tina, who was at that time, 10-11 years old. The petitioner pled guilty and received an 11 years sentence, including a 5-year "serious" felony emhancement. However, because the 1982 prior conviction was unconstitutional, it <u>and</u> the 5-year enhancement were stricken when the judgment was modified. Petitioner only served three of the six-year sentence imposed. The petitioner requests that the court take judicial notice of case, <u>People</u> v <u>Cordeiro</u>, (1985) San Diego Sup. Ct., Nos: 93117/CR 77137 pursuant to Evidence Code §§ 451, 452, 453.

When petitioner was released from prison in 1989, he contacted Larry Corrigan, a therapist who provides treatment for sex offenders, and began therapy and counseling. Corrigan diagnosed petitioner as a pedophile and said that petitioner's sexual impulses for young girls would never go away.

Petitioner also testified that he had not been cured of pedophilia but had taken a number of steps to avoid acting on his impulses. These included (1) driving past Norco prison every six months, (2) attending church regularly, (3) not using drugs or alcohol, (4) staying away from children unless their

////

10

parents are around, and (5) having his wife with him most of the time.

Regarding the current charges, petitioner testified that he and Coco were outside when D.W. approached and that she asked why Coco was limping. While D.W. was squatting down petting Coco, petitioner knelt down and took D.W.'s hand so she could feel the knot on Coco's arthritic leg, but D.W. jerked her hand away. The petitioner initially thought D.W. pulled her hand away because she didn't want to touch Coco's leg, but when he looked down, he realized that he had exposed himself to D.W. The petitioner immediately apologized to D.W. moved back, and adjusted himself.

The petitioner denied that he had caressed D.W.'s leg or thigh, or that he had tried to get D.W. to touch his penis. He admitted touching the back of D.W.'s legs, but said that he had done so only to move her over after he realized that she was standing on his wife's flowers. The petitioner denied that he had said to Coco, "Isn't D.W. beautiful." Rather, the petitioner explained that he had told Coco to "sit pretty."

The petitioner also admitted that he had lied about or failed to acknowledge that he had fantasized about young girls when he was interviewed by probation officers and health care professionals in 1982, 1985 and 1986. He also acknowledged that he lied to doctors in 1982 when he told them that he did not realize he had exposed himself to Kristi and his daughter. When the prosecutor asked petitioner whether he had ever exposed his penis to other people and other children, petitioner said he had not.

However, in response to further questioning by the prosecutor, petitioner then admitted that he had sexually molested his nieces, Michelle and Kimberly, in the 1970's. The petitioner had Michelle orally copulate him, and fondled and orally copulated her over a seven-year period, from the time she was nine years old until she was 16. He had also fondled and exposed his penis to Kimberly.

The petitioner further testified that the last time that he had seen a therapist for his pedophilia was 17 years prior. However, during that time he had not re-offended, had been an active member of his church, and had been a good friend and father. He had worked as a manager for United Van Lines since 1989.

The petitioner also presented the testimony of five character witnesses. The witnesses testified that they had seen petitioner interact with girls between the ages of 7 and 16 after 1989 on a regular basis, and that they never saw petitioner engage in any inappropriate behavior of any sort. They also said that petitioner did not appear to show any particular interest or fascination with girls in that age group.

////

////

////

////

////

////

////

12

## GROUNDS FOR RELIEF

22. **State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground.** (e.g. what happened during the state proceedings that you contend resulted in a violation of the constitution, law or treaties of the United States.) If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: VIOLATION OF PETITIONER'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF APPEL-LATE COUNSEL; STATE UNREASONABLY APPLIED CLEARLY ESTABLISHED SUPREME COURT PRECE-DENTS

**Supporting FACTS**:

On direct appeal, appellate counsel raised a claim of prosecutorial misconduct where:

(1) the prosecutor improperly elicited hearsay test-imony regarding statements made by the victim to her grandparents after the incident and after talking to a police officer; (2) improper cross-examination of the petitioner regarding the molestation of his two nieces in the 1970s; (3) impermissibly suggest-ing that the defendant had the burden of producing the shorts petitioner wore at the time of the al-leged incident by questioning him as to why he did not bring them to court if he was innocent; (4) in closing arguments the prosecutor commented that pet-itioner had failed to tell his parole officer that he was experiencing urges to molest little girls, where there was no evidence to suggest or support this comment in the record.

Counsel also raised the claim of IAC-trial counsel bas-ed on trial counsel's failure to object to the above incid-ents of misconduct; failure to object to hearsay evidence

**Did you raise GROUND ONE in the California Supreme Court?**

[X] Yes [ ] No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition):  Habeas

(2) Case number or citation:  Unknown

(3) Result (attach a copy of the court's opinion or order if available):  denial

of the social worker that children do not immediately provide details of abuse; and that the cumulative effects of the trial counsel's performance which was rife with errors constitutionally deprived petitioner his rights to a fair trial proceedings and effective assistance of counsel.

Hearsay evidence is a violation which even the court is suppositioned to inject its sua sponte duty to object even where trial counsel fails.

Close scrutiny review of the Reporter's Transcript will show that petitioner was impermissibly subjected to cross-examination where it pertained to the 1970 acts of molestations of his two nieces. Combined with the inuendo and mere inference that petitioner somehow was even required by law to have kept the chain of evidence in regards to the "shorts" that he had worn at the time of the alleged act and the inherent prejudice which certainly is inferred where the burden of petitioner having been accused of not bringing the "shorts" before the court was an attempt by him to suppress its evidentiary potential, where trial counsel sat by and in fact did not object and ask the court for an appropriate mistrial based on the inference-based introduction of prejudicial evidence which then created a trial all to itself and the jury should have been subsequently admonished to disregard what the prosecution strongly presented towards any inference of character and/or guilt.

All of the cannons of law do not condone this practice and demonstration of placing facts before a jury which have no legal place than to mistrial the proceedings.

**GROUND 1:  Cont'd:**

The court of appeals noted, **EXHIBIT A**, that the prosecutor's misconduct claims were per se defaulted by trial counsel failing to make timely objections, then reviewed them through the prism for claims of ineffective assistance of trial counsel announced by the U.S. Supreme Court in Strickland v Washington, (1984) 466 US 668; 104 S.Ct. 2502, and unreasonably applied it.  The appellate panel refused to review counsel's choice of tactics based on the record, then held that the evidence adduced at trial because of counsel's errors and choices of tactics rendered those errors harmless, and concluded that the cumulative effect of the errors did not deny petitioner a fair trial or due process or render trial counsel ineffective.  In short, the end result justified the process producing that end result.

What appellate counsel failed to do was, (1) challenge trial counsel's choice of strategy and tactics and an obvious failure to investigate (a) the constitutionality of petitioner's prior convictions used to enhance his sentence, (b) whether pedophilia was a "curable illness" or not, thus making a defense of 'rehabilitated prior offender" viable and potentially merit-orious, (c) why counsel chose this defense after counsel's own experts told her before trial that petitioner's illness was not "cured" or curable nor was he rehabilitated; (2) failed to object to damaging and otherwise inadmissible testimony by every prosecution witness as to their knowledge of petitioner's prior sex offense convictions in the prosecution's Case-in-chief where the petitioner pled not guilty to the prior convictions and the trial had been bifurcated to keep knowledge of the prior

**GROUND 1,    Cont'd:**

convictions away from the jury so as not to prejudice their deliberations on the substantive counts alleged.

The petitioner further alleges that the prejudice by these omissions and choice of tactics cannot be excused in terms of conceivability or plausibility, let alone putting the petitioner on the stand and having him crucified with his prior conficitons and uncharged prior bad acts.

By failing to challenge these decisions on direct appeal, the entire question was waived. The court of appeals' conclusion that there was a conceivable reason for trial counsel's choice was based exclusively on the errors raised and justified them with "the end justifies the means" tautological rubric, and chose to not question those tactics. Had this error been raised the state courts would have had no other choice but to either reverse the conviction or state what precise conceivable reasons in terms of investigation and evidence vindicated trial counsel's decisions. This review was foreclosed. Direct review would have exposed trial counsel's errors and substantiated those claims already raised.

The end result was that petitioner was sentenced to an 8l5 years to life sentence by a process that was not adversarial but rather inquisitorial, and brushed over by appellate counsel because of the infalmmatory and horrific nature of the alleged offenses and public outcries for revenge. The petitioner is entitled to effective appellate counsel, which he did not get.

**(b)** GROUND TWO: FOURTEENTH AMENDMENT DUE PROCESS VIOLATION; THE
SENTENCE IMPOSED BASED ON UNCONSTITUTIONAL PRIOR CONVICT-
IONS ABSOLUTELY EXCEEDED THE STATE COURT'S JURISDICTION

Supporting **FACTS**:

### 1982 Prior Conviction

Petitioner contends that the July 13, 1982, prior con-
viction obtained pursuant to a plea bargain is unconstituti-
onal in that petitioner was not warned or admonished by any
court or attorney that the conviction would be used against
him in any further proceedings.  Had he been so advised,  he,
would not have pled guilty. (See Exhibits B and D).

### 1985 Prior Conviction

The prior conviction of November 13, 1985, is only a se-
condary constitutional infirmity.  Here, and again, petitio-
ner was not explicitly warned or on notice as  to  the direct
consequences of his guilty plea.  Petitioner  was  poignantly
not advised of the direct consequences of  an  open  plea  of
guilty  would result in a felony conviction that:

> (a) was a "serious" felony within  the  meaning  of
>     California Penal Code section 667(a),  and that
> (b) it would result in a 5 year enhancement to that
>     of which the court would impose.

Petitioner certainly alleges that had be been so  warned
or advised by counsel that the above  would  occur,  he would
not have so pled.

Did you raise GROUND TWO in the **California Supreme Court**?

[X] Yes [ ] No.

If yes, answer the following:

(1)  Nature of proceeding (i.e., petition for review, habeas petition):

(2)  Case number or citation:  Unknown

(3)  Result (attach a copy of the court's opinion or order if available): Denied

### Actual Prejudice Suffered

As a direct consequence, petitioner suffers under an 85

**GROUND 2, Cont'd:**

years to life sentence: Count 1: 25-life under <u>Pen. Code</u> §
1170.12 (3-Strikes), 5-life under <u>Pen. Code</u> § 667.61 (1-strike
sex offender law), and 25-life under <u>Pen. Code</u>, § 667.61 (habit-
ual sex offender enhancement).  Petitioner was also sentenced
to 10 years (5-years each for the two prior convictions), which
petitioner is now serving before starting the life sentences.

   Absent the use of these prior convictions, petitioner's
sentence, as well as Count 4 (child annoyance w/prior § 288
conviction), could not have been alleged or imposed.

////

////

////

////

**(c) GROUND THREE: SIXTH AMENDMENT INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILURE TO INVESTIGATE; FAILURE TO OBJECT TO DAMAGING INADMISSIBLE EVIDENCE; WITHDRAWAL OF TRIAL TACTIC DEFENSE**

**Supporting FACTS:**

    A. <u>Failure to Investigate:</u>

Petitioner contends that even before trial counsel had chose petitioner's trial court defense, counsel failed to investigate:

    (a) the charges against petitioner, including the investigation of the prior convictions; and
    (b) the incurability of pedophilia, inclusive of numerous and extensive studies of recidivism of habitual pedophiles.

The prejudicial effect of this failing was as follows:

    1 after the trial was ordered to be bifurcated (so his prior offenses would not be exposed to the jury)(see Exhibit E, RT pp. 1-14). In this case counsel was warned that should the client-defendant testified, he would certainly be impeached with his prior convictions, and even some uncharged crimes. (See Exhibit E). The obvious trial strategy and tactics - do not expose the client to testifying and therefore the priors not exposed. The priors are naturally inflammatory in the posture and inference that "if he did it before, he must have done this too."

    2 instead counsel exposed petitioner's entire criminal history of pedophilia. Counsel initially put on the defense that petitioner was rehabilitated. Defense expert witness testified that pedophilia was not "curable" and he was not in

**Did you raise GROUND THREE in the California Supreme Court?**

[x] Yes [ ] No.

    If yes, answer the following:

    (1)   Nature of proceeding (i.e., petition for review, habeas petition): Habeas

    (2)   Case number or citation: Unknown

    (3)   Result (attach a copy of the court's opinion or order if available): Denial

**GROUND 3**, Cont'd:

any way "rehabilitated." Hence, either trial counsel investigated and discovered these facts <u>before</u> choosing the defense and then **"chose"** to throw the petitioner to the wolves, or, she failed to investigate anything at all and chose to "dump" her client because of the nature of the crimes charged and petitioner's prior criminal history.

### The Prejudice

The prejudice arising from these errors included the complete assassination of petitioner's credibility, the presumption of innocence, and complete withdrawl of petitioner's only available defense - factual innocence. The trial was transformed from an adversarial process into an inquisition.

First, upon prompting from the trial court, during pre-trial in limine hearings, petitioner's counsel announced that, as a matter of "tactics" that she would elicit from the prosecution's witnesses under cross-examination whether or not they knew of petitioner's prior history as a sex offender, <u>during the prosecution's casein-chief</u>. **EXHIBIT E, RT 16.** Again petitioner's counsel was warned both by the court and the prosecutor that if this line of questioning were pursued, the scope of the knowledge, including type of conviction and specifics of them, and frequency of each prior and uncharged prior offenses would be probed in front of the jury. **EXHIBIT E, RT 16-18.**

////

////

////

As the record shows, counsel pursued this, but only _after_ the prosecutor elicited the same information on direct examination, all without any objection whatever. Thus, petitioner was impeached sub silentio with his prior convictions and uncharged prior offenses.

Second, counsel failed to move to have Count 4, Child Annoyance with **prior** Pen. Code § 288(a) violation, tried separately with the prior convictions in the bifurcated trial, so as to prevent the jury from learning of petitioner's prior history during the guilt phase. This is what opened the door for the prosecution. As a direct result, virtually every prosecution witness testified that he or she knew petitioner was a prior sex offender on direct examination during the prosecution's case-in-chief, to wit: **EXHIBIT F:** RT 30, 38-40, testimony of victim's mother, Erica Wilson; **EXHIBIT G**, RT 53, Victim Darcy Wear's testimony; **EXHIBIT H**, RT 105-106, 118, Victim's grandmother Margaret Wear testimony; **EXHIBIT I**, RT 126-128, Victim's grandfather David Wear testimony; **EXHIBIT J**, RT 151, 160-162, neighbor Joe Garcia testimony; **EXHIBIT K**, RT 202, Arresting officer Scott Sandefur testimony; **EXHIBIT L:** RT 207-212, Retired detective Hanley Fry testimony regarding 1982 prior conviction and prior uncharged crimes from 1970's; and lastly, **EXHIBIT M:** RT 271-280, 1982 victim Kristi Gaines testimony.

////

////

////

Accordingly, petitioner was prejudiced in the extremis. The petitioner's presumption of innocence and credibility were wholly assassinated by counsel's own actions and omissions. There can be no plausible explanation in terms of tactics or strategy for failing to object to this testimony and exposing a defendant to such impeachment, when it could have been avoided by objecting and litigating these issues before the trial ever began.

Again, these errors expose counsel's intent to "dump" this horrible pedophile's case; allow him to be impeached with his priors before he ever takes the stand (which in counsel's mind she has already intended for him to do) and present him as being "cured" of pedophilia, an incurable disease, or "rehabilitated." It is a nearly judicially noticeable fact that there is not cure for pedophilia, as evinced by the M.D.S.O. statutes, the Penal Code enhancements of §§ 667.61 et seq, and 667.71 et seq. The petitioner requests that this court take judicial notice of the Legislative findings underlying the enactment of these statutes pursuant to Evidence Code, §§ 450 et seq.

Hence, the illusory tactic of putting petitioner on the witness stand in an already futile attempt to slavage his credibility, long since gone (as counsel well knew), to refute the allegations of the single prosecution victim, Darcy Wear.

As the record so scrupulously reveals, this "tactical choice" exposed her client to the devastating and utterly humiliating cross-examination and impeachment by unconstitutional prior convictions, EXHIBIT B, EXHIBIT C, and prior uncharged offenses as well.

22

This failure to investigate further resulted in trial counsel's stipulating at the end of the prosecution's case that petitioner was a sex offender with prior convictions of sexual offenses involving children, **EXHIBIT N: Rt 292**, followed by putting the petitioner on the stand as a "rehabilitated" sex offender, where he was impeached in a devastating cross-examination. Counsel then put on the defense expert who testified that pedophilia could not be "cured" nor was petitioner either "cured" or "rehabilitated." **EXHIBIT B**, **EXHIBIT C**. Petitioner's conviction was a foregone conclusion, because counsel failed to investigate, and made uninformed choices of trial tactics and strategy. There is no conceivable or plausible reason in terms of sound trial tactics for the choices counsel made. Certainly no reasonably competent trial counsel acting as a diligent advocate of the defense would have made the choices made here by petitioner's counsel. Absent these errors, a more favorable outcome is more than a reasonable probability.

**B.     Failure To Object**

As recounted above, and in the Court of Appeals' opinion, **EXHIBIT A**, counsel failed to object to otherwise damaging inadmissible evidence being introduced by the prosecution in the state's case-in-chief. Specifically, trial counsel failed to object to, (a) prosecution witnesses being questioned regarding knowledge of the petitioner's prior sex offenses, impeaching petitioner sub silentio; (b) trying Count 4 with the other substantive counts to prevent the jury learning that petitioner had a prior child molestation conviction, and litigating

23

petitioner's prior offenses and uncharged crimes in their case-in-chief; (c) object to hearsay statements by the social worker Anne-Marie Aguilar at Children's Hospital regarding statements made five days later by the victim regarding the incident not stated to the grandparents or the police; and, (d) to preserve issues for appeal, namely prosecution misconduct as recounted below.

The prosecution misconduct which petitioner's trial counsel failed to object to consisted of (1) improperly elicited hearsay testimony regarding additional statements the victim made to her grandparents about the alleged incident after speaking to a police officer; (2) improperly cross-examined petitioner about his molesting two of his nieces in the 1970s; (3) impermissibly suggesting that petitioner had the burden of producing the shorts petitioner was wearing at the time of the incident by questioning him as to why he had not brought the shorts to court to show the jury; and (4) commenting in closing argument that petitioner failed to tell his parole officer that he experienced urges to molest little girls despite a lack of evidence in the record of any such alleged urges.

The court of appeals held that the above errors were waived by counsel's failure to object in a timely manner, then analyzed them under a claim of ineffective assistance of trial counsel. Using the tautological approach, the appellate court held that the errors were harmless, both individually and cumulatively, in light of the evidence produced by the errors, and affirmed the petitioner's conviction.

These errors, by themselves and in their aggregate turned an adversarial trial process into an inquisition that resulted in petitioner suffering an 85-year to life sentence. Again, this prejudice and these errors cannot be explained in terms of sound trial tactics or strategy.

### C. Failure to Litigate/Obtain Rulings

The petitioner alleges that trial counsel deliberately failed to press the court for a definitive rulings on the exclusion of petitioner's prior uncharged crimes occurring from 1972 through 1979 involving petitioner's two nieces. The court tentatively ruled, as follows:

> "All right. What I am going to do, I think, is wait until we see what develops. Obviously the 352 weighing process is difficult to do in advance of a trial before some of these things become versus (sic) prejudical. So I am going to leave the ruling as a question mark on the '72 to '79 incidents with the niece. But the '82 and '85 incidents are closer, and I think the defendant can be cross-examined with respect to these actions." **EXHIBIT E: RT 8-9.**

When petitioner was put on the stand, he was impeached with every bad prior act, charged and uncharged, subjecting him to <u>Penal Code</u> §§ 667.61 and 667.71 enhancements of 25-life each. Petitioner alleges the failure to obtain a definitive ruling was error, but, the ambiguity of the court's ruling provided "cover" for a tactical ploy, giving the illusory impression that it had a negative impact on counsel's choice of tactical options. In reality, it supported the ploy to put petitioner was put on the stand, against his wishes, **EXHIBIT D**, to expose him to the devastating cross-examination and impeachment, "dumping" petitioner's case.

25

### D. **Failing To Produce Favorable Evidence**

Although this error was raised on direct appeal, it is re-alleged here in context of other errors not raised on direct appeal. Together, they illustrate the utter incompetence of trial counsel and is presented here.

Petitioner alleges that counsel erred by deliberately failing to produce the shorts worn by petitioner to support his defense of factual innocence. Had this been done, it would have given plausibility to the statements petitioner made to the police that the alleged exposure was "accidental" and unintended" to Officer Sandefur, **RT 203**, and the jury could have seen just how short the garment was. As it was, petitioner was subjected to the barb under cross-examination that the shorts were not produced because he had something to hide, again impugning what little was left of his credibility. **RT 366**. Appellate counsel raised this error but in context of a prosecution misconduct claim (waived by failure to object). The Appellate court conceded error but deemed it harmless error in light of the evidence. However, petitioner alleges that the omission was intended by counsel as part of the strategy to "dump" petitioner's case, in violation of counsel's over-arching duty to protect her client's interests regardless of how reprehensible the crime.

When combined with the rest of the errors, this error cumulatively eviscerated any presumption of innocence and credibility with the jury, as it was left with the impression that the defense was hiding something, particularly when counsel did not object. Again there is no plausible or even possible

### E. **Forcing Petitioner To Testify**

The petitioner alleges that trial counsel deliberately comitted prejudicial error by forcing petitioner to testify. **EXHIBIT D.** Petitioner further alleges that counsel's choice of tactics were calculated not just to force petitioner to testify and expose his criminal history, but withdraw the only defense petitioner had, that of factual innocence.

The evidentiary picture of the substantive offenses, Count 1 and Count 2 was as follows: the prosecution elicited testimony from the victim, Darcy Wear; **EXHIBIT F,** as to what happened; from Darcy's grandparents Margaret Wear and David Wear, **EXHIBITS H, EXHIBIT I,** who testified what Darcy told them, and from a social worker who testified what Darcy told her occurred. Officer Scott Sandefur testified that petitioner told him that, "I may have accidentally exposed myself" to the victim. **RT 201.** The prosecution witness, a neighbor, Joe Garcia, testified that he saw petitioner and Darcy together on the date and time stated by the victim. **EXHIBIT J.** There was no other evidence, testimonial, forensic, or any other evidence to support the prosecution's case against petitioner. This left only petitioner's prior convictions.

Virtually all of these witnesses, and Darcy's mother, Erica Wilson, and retired detective Hanley Pry, testified as to their knowledge of the petitioner's prior convictions and history as a convicted child molester and uncharged crimes in the prosecution's case-in-chief, again without objection by trial counsel. Thus, from the start, petitioner's defense, that of

////

accidental exposure" was equal to factual innocence to the allegations that he intentionally exposed himself and touched the victim in a lewd and lascivious manner, all subjective interpretations. Therefore, counsel had a choice of strategies at the beginning: either put petitioner on the stand to claim accidental exposure, innocence, or leave him off.

If counsel chose not to put petitioner on the stand, and hide his criminal past as best as possible, (a) he could not be impeached with his prior convictions given the bifurcated trial ordered by the court; (b) no testimony from the prosecution witnesses would be allowed regarding his prior convictions and status as a registered sex offender; (c) producing the shorts he was wearing would have made his statements to Officer Sandefur plausible; (d) he could not have been impeached with his prior uncharged crimes; (e) There would have been no reason to question witnesses whether or not they knew petitioner was a registered sex offender and child molester in front of the jury; (e) character witness testimony would probably have had a more favorable effect. (f) Counsel would also have moved to exclude petitoner's priors in a Coffey motion, as mentioned previously.

On the other hand, the trial record is scrupulous to disclose, (a) that trial counsel apparently intended to put the petitioner on the stand from the start of the case, exposing him to the devastating rigors of cross-examination, knowing full well of the effects on the defense given petitioner's prior record; (b) that counsel was amply warned before trial

of the scope and extent of the impeachment of petitioner by his prior record; (c) counsel chose not to object to the prosecutor eliciting testimony from prosecution witnesses in her case-in-chief regarding their knowledge of petitioner's prior sex offenses and conviction record; (d) then "for tactical reasons" elicited further testimony elaborating on the nature of the prior offenses and the witnesses' knowledge of them, all of this occurring before the petitioner ever took the stand. **EXHIBITS E through K.**

Further, petitioner's trial counsel did not object to prosecution witness testimony from former arresting officers' testimony regarding prior criminal offenses in the prosecution case-in-chief, or moving to exclude it in limine. Again, at this point, no formal decision to put petitioner on the stand had been announced, **EXHIBIT E,** and the trial was ordered bifurcated. Thus, all of the evidence regarding petitioner's prior convictions and uncharged crimes as barred by Evidence Code 1101(b), went before the jury.

As the record also discloses, not only was petitioner put on the stand, before this occurred, counsel put on a witness that testified as to petitioner's prior 1985 conviction and being sent to prison. RT 271, 273, 277-278. Then, counsel stipulated to the jury that petitioner had suffered prior convictions for child molestation before he testified. RT-282.

////

////

////

The tactical purpose of these acts and omissions was to force petitioner into the decision to testify. The petitioner alleges that absent his testimony, the prosecution's case was at best, "shakey," without evidence of petitioner's prior convictions and uncharged offenses.

Quite apparently, it was petitioner's counsel's choice to abandon and withdraw petitioner's only defense altogether. Given the state of the evidence, the apparent lack of investigation, or worse, inspite of an investigation, counsel, knowing the recent heightened public outcry and furor against child molesters, seemingly conceived and implemented tactics and a strategy that would sacrifice her client on the altar of public furor and opinion, abdicating her duty as a defense attorney.

The petitioner asserts that there is no explanation in terms of trial tactics or strategy for any of the decisions made by petitioner's trial counsel in terms of the professional standards of defense attorneys. In short, petitioner's counsel "dumped" the petitioner over a simple accident and mistaken intent, a product of people jumping to conclusions based upon knowledge of a prior prison record. Petitioner is entitled to a new trial.

////
////
////
////

30

F.    **Failure to File "Coffey" Motion**

The petitioner alleges that through ignorance of the law and a failure to investigate the charges against petitioner, or alternatively, despite such knowledge, petitioner's counsel was ineffective for failing to file a "Coffey" motion to exclude petitioner's prior convictions on constitutional grounds, where the waivers of rights were not made with full knowledge of the future consequences of the plea of guilty. Specifically, petitioner was not told that he was pleading guilty to "serious" felonies and that they could and would be used against him in any future proceedings. EXHIBITS A and B, and had he known, petitioner would not have pleaded guilty. EXHIBIT C. In that these records are available to petitioner in a post-conviction setting, they were equally available to petitioner's counsel. Their absence supports allegations of a complete failure to investigate.

This error is also prejudicial in the extremis and cannot be explained away in terms of tactics or strategy. As a matter of law, unconstitutional prior convictions cannot be used to enhance any future sentence in any subsequent proceeding. Thus, without the prior convictions, petitioner would not have had his sentence enhanced under Pen. Code §§ 667(a), 667.61, 667.71, 668, or 1170.12. He would not have an 85-life sentence, but rather something much less. Hence, a demonstrably more favorable outcome would have resulted absent counsel's omission.

////

////

**(d)** **GROUND FOUR**:  SIXTH AMENDMENT INEFFECTIVE ASSISTANCE OF TRIAL

COUNSEL BASED ON THE CUMULATIVE ERROR FINDINGS

**Supporting FACTS**:  Petitioner asserts that irrespective of whether or not counsel failed to investigate was actually a tactical choice possibly derived from ignorance, or a factual deliberate choice which was accorded to counsel's revulsions of petitioner's crimes and prior history, the results of the efforts only developed to produce compounded errors, which continued to compound to the negative during the interim of the trial, and then culminating petitioner's ultimate guilty verdicts and 85 years to life terms.  In combination, these errors recounted above, transmogrified the adversarial trial process into an inqusition with a wholly unreliable but foregone result.

Counsel failed to object to the prosecutor's elicitation of damaging, inadmissible evidence in regards to the prior convictions in their case in chief where the trial had been bifurcated, and the petitioner had not yet decided if petitioner was going to testify whatsoever.  Counsel also in fact failed to object to and to move to have Count 4 of the charging Information to be tried after the other substantive counts or to obtain a waiver of petitioner's Boykin vs. Tahl rights admitting his prior convictions as well as the

direct consequences of such an admission of priors.  The petitioner was thus branded as a serial-molester from the first

**Did you raise GROUND FOUR in the California Supreme Court?**

[X] Yes [ ] No.

If yes, answer the following:

(1)  Nature of proceeding (i.e., petition for review, habeas petition):  Habeas

(2)  Case number or citation:  Unknown

(3)  Result (attach a copy of the court's opinion or order if available):  Denied

**GROUND 4**, Cont'd:

day of trial to the last, destroying any presumption of innocence.

Counsel further failed to file pre-trial motions to exclude petitioner's prior convictions as unconstitutional, resulting in Count 4 being allowed. If the unconstitutional prior convictions were excluded, this count would have been dismissed, as its elements include a prior conviction for child molestation.

Further, petitioner was put on the witness stand and was thoroughly destroyed with his prior convictions and prior similar uncharged crimes. No conceivable or even plausible explanation in terms of trial strategy or tactics could vouchsafe counsel's choices given the state of the evidence and attending circumstances. These errors, when combined with those raised on direct appeal and those above, demonstrate prejudicial error requiring a new trial with competent counsel.

////

////

////

////

////

////

////

////

////

////

////

////

GROUND FIVE: FOURTEENTH AMENDMENT DENIAL OF DUE PROCESS: FAILURE TO HOLD AN EVIDENTIARY HEARING ON INEFFECTIVE COUNSEL

Supporting FACTS (state briefly without citing cases or law): The petitioner contends that an evidentiary hearing is required in the instant matter in order to resolve mixed questions of law and fact presented in this petition.

Specifically, petitioner presents that the record is totally devoid of any conceivable reason of plausible explanation in terms of sound trial tactics and strategy for trial counsel's choices as they were entertained at the trial when viewed in context of the evidentiary picture at the commencement of the trial and the inherent collateral circumstances.

Hence, according to both state supreme court and the United States Supreme Court precedent(s), habeas corpus petitions alleging such errors must be heard and an evidentiary hearing held where trial counsel can explain his or her reasons for the choices made, and as to just why was it that petitioner's prior convictions were not challenged.

Petitioner's sentence has been illegally enhanced with unconstitutional prior convictions, based on the alleged knowing and the intelligent waivers of rights, including the consequences of the plea. Petitioner also presents evidence that he did not know of or understand the consequences, though had he known, he would not have pled guilty to either of the two priors. An Evidentiary hearing is more than just warranted to resolve these issues.

The total sum of trial counsel's ineffective assistance of the counsel he rendered to petitioner more than sufficient to examine the circumstances by an evidentiary hearing.

[x] Yes   [ ] No (This GROUND FIVE was raised in the Supreme Court).

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☒ Yes   ☐ No

24. If your answer to #23 is "Yes," give the following information:

    (a) Name of Court: California Supreme Court

    (b) Case Number: S164972

    (c) Date action filed: July 8, 2008

    (d) Nature of proceeding: Habeas Corpus

    (e) Name(s) of judges (if known): Unknown.

    (f) Grounds raised: Identical grounds as are raised herein.

    (g) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes   ☒ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a) At preliminary hearing ........ Megan Marcotte, Office of the San Diego County Public Defenders, 233 "A" Street, Room 400 San Diego, CA 92101-4009; Tel: AR(619) 338-4700.

    (b) At arraignment and plea ....... Megan Marcotte, APD

    (c) At trial .................... Megan Marcotte, APD

    (d) At sentencing .............. Megan Marcotte, APD

    (e) On appeal ................. Do not recall.

    (f) In any post-conviction proceeding . none

    (g) On appeal from any adverse ruling in a post-conviction proceeding: none

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
    [X] Yes    [ ] No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
    [ ] Yes    [X] No

    (a) If so, give name and location of court that imposed sentence to be served in the future:
        Not applicable.

    (b) Give date and length of the future sentence:  Not applicable.

    (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
        [ ] Yes    [X] No

28. Consent to Magistrate Judge Jurisdiction

    In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to proceed before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

    The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

    You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.
    Respectfully requested that the Magistrate Judge be permitted to decide the case, then the District Judge will decide to adopt it. Choose only one of the following:

    [ ] Plaintiff consents to magistrate judge jurisdiction as set forth above.

    **OR**

    [X] Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

29. Date you are mailing (or handing to a correctional officer) this Petition to this court:

                 AUGUST 13, 2008, WEDNESDAY P.M.

CIV 68 (Rev. Jan. 2006)

                              36

                                                          cv

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

(Petitioner is In Propria Persona)
_____
SIGNATURE OF ATTORNEY (IF ANY)


(Pursuant to Title 28 U.S.C.A. § 1746).
I declare under penalty of perjury that the foregoing is true and correct. Executed on

August 13, 2008 Wednesday
_____
(DATE)                          DEREK L. CORDEIRO
                                SIGNATURE OF PETITIONER

CIV 68 (Rev. Jan. 2006)

cv

## PROOF OF SERVICE BY MAIL

I, _____ **DEREK L. CORDEIRO** _____ depose and state:

1. I am over the age of 18 years, a resident and state prisoner of the State of California; my present mailing address is: P.O. Box 799003 F3-**11**-**124**, R.J. Donovan Correctional Facility, San Diego, California 92179-9003; I am a party to this action;

2. On this **13th** day of _____**AUGUST**_____, 20**08**___, I caused a true and duplicated copy of the following document(s) entitled:

### PETITION FOR WRIT OF HABEAS CORPUS

to be placed in a sealed envelope(s) with First Class postage affixed and prepaid and thereafter given into the hand of the proper institution authority with the understanding that said sealed envelopes will be immediately placed in the United States mails for delivery to the following person(s):

> **CLERK OF COURT**
> **U.S. DISTRICT COURT**
> **SO. DISTRICT CALIFORNIA**
> **880 Front Street, Rm. 4290**
> **San Diego, CA. 92101-8900**
>
> **(Orig. + one copy)**

To the best of my knowledge there is First Class mail delivery service to the aforementioned persons and addresses.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this **13th** day of _____**AUGUST**_____, 20**08**___, at R.J. Donovan Correctional Facility, San Diego, California.

_____ V64461
Declarant
**Derek L. Cordeiro, V-64461**





# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DEREK L. CORDEIRO,                    )      No. '08 CV 1519 H CAB
                                      )
                 Petitioner,          )
                                      )
        vs                            )
                                      )
ROBERT J. HERNANDEZ, Warden,          )
                                      )
                 Respondent,          )
                                      )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF A PETITION FOR HABEAS CORPUS

Derek L. Cordeiro, V-64461
R.J. Donovan Corr. Facility
P.O. Box 799003  F3-11-124
San Diego, CA. 92179-9003


In Pro Se

## I N D E X

TABLE OF CONTENTS                                          i

TABLE OF AUTHORITIES                                      ii - iv

MEMORANDUM OF POINTS AND AUTHORITIES                       1

    PRELIMINARY STATEMENT                             1-3

    STANDARD OF REVIEW FOR 28 U.S.C. § 2254           3-4

    ARGUMENTS:                          I             5-9

                PETITIONER WAS DENIED HIS
                RIGHT TO EFFECTIVE COUNSEL
                ON APPEAL

                       II             10 - 26

                PETITIONER WAS DENIED HIS
                SIXTH AMENDMENT RIGHT TO
                EFFECTIVE TRIAL COUNSEL

                      III            27 - 36

                THE CUMULATIVE EFFECT OF
                 TRIAL COUNSEL'S ERRORS
                DENIED PETITIONER'S RIGHT
                 TO EFFECTIVE TRIAL COUNSEL

                      IV             37 - 39

                WHERE A PRIMA FACIE CASE OF
                INEFFECTIVE COUNSEL IS MADE
                AN EVIDENTIARY HEARING IS
                 REQUIRED WHEN NO STATE COURT
                AFFORDS SUCH A HEARING

CONCLUSION                                               39

TABLE OF AUTHORITIES

U.S. Supreme Court                                      Page(s):
////
Anders v California,                                    5
        386 US 738; 87 S.Ct. 1396 (1967)

Andrade v Lockyer,                                      4
        538 US 63; 123 S.Ct. 1166 (2003)

Boykin v Alabama,                                       14
        395 US 238 (1969)

Blackledge v Allison,                                   37
        431 US 63; 97 S.Ct. 1023 (1977)

Brady v United States,                                  14
        397 US 742; 90 S.Ct. 1463 (1970)

Burgett v Texas,                                        14
        389 US 109; 88 S.Ct. 258 (1967)

Calderon v Coleman,                                     32,36
        525 US 141; 119 S.Ct. 500 (1998)

Evitts v Lucey,                                         5, 6
        469 US 387; 105 S.Ct. 1358 (1985)

Gideon v Wainwright,                                    10
        372 US 335; 83 S.Ct. 792 (1963)

Jones v Barnes,                                         5, 6
        466 US 473; 103 S.Ct. 2415 (1983)

Lopez v Beto,                                           14
        405 US 473; 92 S.Ct. 1014 (1972)

Mabry v Johnson,                                        14
        467 US 504; 104 S.Ct. 2543 (1984)

Park v Raley,                                           14
        526 US 20; 113 S.Ct. 517 (1992)

Reece v Georgia,                                        12
        350 US 85; 76 S.Ct. 167 (1955)

Strickland v Washington,                               3,5,10,20
        466 US 668; 104 S.Ct. 2052 (1984)                 28,32,36

Wiggins v Smith,                                       10,11
        539 US 510; 123 S.Ct. 2527 (2003)

Williams v Taylor,                                     3,4,11,12
        529 US 562; 120 S.Ct. 1425 (2000)

<u>Ninth Circuit</u>                                              <u>Page(s):</u>
////
<u>Alcala</u> v <u>Woodford</u>,                                   32,32
    334 F.3d. 862 (9th. 2003)

<u>Bibbs</u> v <u>Twomey</u>,                                      34
    506 F.2d. 1120 (9th 1974)

<u>Davis</u> v <u>Kramer</u>,                                      3,5
    167 F.3d. 976 (9th 1997)

<u>Delgado</u> v <u>Lewis</u>,                                     4,5,8
    223 F.3d. 976 (9th 2000)

<u>Duhaime</u> v <u>Ducharme</u>,                                  5,27
    200 F.3d. 597 (9th 1999)

<u>Harris</u> v <u>Wood</u>,                                       27,32,33,
    64 F.3d. 1432 (9th 1995)

<u>Himes</u> v <u>Thompson</u>,                                    3,4,27
    336 F.3d. 1058 (9th 2003)

<u>Hoffman</u> v <u>Arave</u>,                                     12,28,33
    455 F.3d. 926 (9th 2006)

<u>Insyziegmay</u> v <u>Morgan</u>,                                37
    403 F.3d. 607 (9th 2005)

<u>Mak</u> v <u>Blodgett</u>,                                      27,32
    972 F.2d. 614 (9th 1992)

<u>Moran</u> v <u>Godinez</u>,                                     14
    57 F.3d. 690 (9th 1994)

<u>Riggs</u> v <u>Farmon</u>,                                      13
    399 F.3d. 1179 (9th 2004)

<u>Stankewitz</u> v <u>Woodford</u>,                              37
    365 F.3d. 706 (9th 2004)

<u>Thomas</u> v <u>Hubbard</u>,                                    32
    273 F.3d. 1164 (9th 2001)

<u>Van Tran</u> v <u>Lindsey</u>,                                  4
    212 F.3d. 1143 (9th 2000)

<u>Watts</u> v <u>United States</u>,                               37
    841 F.2d. 275 (9th 1988)

<u>Weighall</u> v <u>Middle</u>,                                   5,9
    215 F.3d. 1058 (9th 2000)

California Citations                                        Page(s):
////

Bunnell v Superior Court,                                  15
     13 Cal 3d 592 (1975)

Curl v Superior Court,                                     8,13
     51 Cal 3d 1292 (1990)

In re Birch,                                               38
     10 Cal 3d 314 (1973)

In re Lower,                                               38
     23 Cal 3d 144 (1979)

In re Moser,                                               15,16
     6 Cal 4th 342 (1993)

In re Yurko,                                               15
10 Cal 3d 851 (1974)

People v Bracamonte,                                       35
     119 Cal App 3d 644 (1981)

People v Calderon,                                         19
     9 Cal 4th 69 (1994)

People v Coffey,                                           6,13
     67 Cal 2d 209 (1967)

People v Hall,                                             7,19,35
     28 Cal 3d 143 (1980)

People v Jones,                                            23
     29 Cal 4th 1229 (2003)

People v Johnson,                                          6
     123 Cal App 3d 106 (1981)

People v McClellan,                                        15
     6 Cal 4th 367 (1993)

People v Nation,                                           7
     26 Cal 3d 169 (1980)

People v Pope,                                             18,21,26,
     23 Cal 3d 412 (1979)

People v Shaw,                                             26
     35 Cal 3d 535 (1984)

People v Sumstine,                                         8
     36 Cal 3d 909 (1984)

People v Witcher,                                          15,16
     41 Cal App 4th 213 (1995)

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

The petitioner herein was convicted of two counts of violating Penal Code §288(a) (lewd acts upon a child, one count of Indecent exposure, and one count of child annoyance with a Pen. Code § 288(a) prior conviction. Petitioner was also convicted of two prior "serious" strike felonies. Petitioner was sentenced to 85-years to life under Pen. Code § 667.61, 667.71(a)(c)(d) § 1170.12, and 10 years under Pen. Code § 667(a).

On direct appeal, petitioner contended that the prosecution committed four acts of misconduct, that trial counsel was ineffective for failing to object to these instances of misconduct, and that the cumulative effect of the errors deprived petitioner of a fair trial and due process.

The court of appeals rejected these contentions because (1) trial counsel's failure to object to the prosecutorial misconduct waived the objections; (2) counsel was not ineffective for failing to object because of alleged possible tactics, and because petitioner's admissions from the stand made any objections futile; (3) because counsel was not ineffective because counsel's errors were harmless, therefore no cumulative error occurred. EXHIBIT A. The State Supreme Court denied review.

Petitioner filed a petition for Habeas Corpus in the trial court below. Petitioner alleged the same causes of action and ground presented herein, namely that the prior convictions are unconstitutional and could not be used to enhance petitioner's sentence, making his sentence illegal and thus in excess of the trial court's jurisdiction; Ineffective Trial Counsel where counsel

deliberately chose and employed a strategy with tactics designed to "dump" petitioner's case. Counsel deliberately chose not to move to have Count 4, Child annoyance with a prior conviction for child molestation bifurcated and tried separately along with petitioner's prior convictions, the prejudicial result being that the prosecution introduced petitioner's prior convictions in their case-in-chief, destroying the petitioner's credibility and any presumption of innocence at the onset. This tactic also withdrew the only plausible defense available to petitioner - factual innocence. This omission, along with the aggregate of errors by counsel's omission cumulatively deprived petitioner of the effective assistance of trial counsel.

Petitioner further alleges that appellate counsel was ineffective for not urging this error on appeal and its cumulative effects. As a matter of law, trial counsel should have raised this error at a pre-trial hearing outside of the presence of a jury. Hence there would be no tactical reason for not doing so.

Instead, appellate counsel urged errors which were harmless, without benefit of the full factual picture although present in the record, by omitting the error that caused the errors alleged.

These contentions were raised both in the trial court and through the highest state court. The trial court below denied the petition, holding that, (a) the prior convictions were valid because petitioner did not present any authority holding it to be error not to advise a defendant of the future consequences of a plea of guilty and sentence; (b) the ineffective counsel

claim was "essentially the same" as that raised on direct appeal and therefore was denied because habeas corpus cannot serve as a second appeal. The state appellate court and state supreme court denied the petition without opinion.

This petition follows, urging these same errors and allegations that the State courts misapplied well-established United States Supreme Court precedent in reaching their decision. 28 U.S.C., § 2254(d)(1), and in so doing refused to grant an evidentiary hearing required to allow counsel to explain her choice of tactics given the state of the evidence and attending circumstances. For the following reasons, petitioner is entitled to relief.

**STANDARD OF REVIEW FOR 28 U.S.C. §2254 PETITIONS**

Under 28 U.S.C., § 2254(d)(1), all claims of error must show that the state court adjudication must have (1) resulted in a decision that was contrary to or involved in an unreasonable application of clearly established federal law or, (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Williams v Taylor, (2000) 529 US 362, 405; 120 S.Ct. 1425. Delgado v Lewis, supra, 181 F.3d. @ 1091; Davis v Kramer, 167 F.3d. 494, 500 (9th cir. 1997), Himes v Thompson, 336 F.3d. 1058, 10611062 (9th cir. 2003).

A state court decision is "contrary to law" where it outright contradicts controlling United States Supreme Court precedent, when independent review of the legal question leaves the reviewing court with a "firm conviction that one answer

, 3

- the one rejected by the courts below was incorrect - in other words clear error occurred." <u>Van Tran</u> v <u>Lindsey</u>, 212 F.3d. 1143, 1153-1154 (9th cir 2000); <u>Himes</u>, supra, 336 F.3d @ 852-853.

A state court decision is an "unreasonable application" of clearly established federal law where "it correctly identifies the governing rule, but unreasonably applies it to anew set of facts, or fails to extend clearly established precedent to a new context in a way that is reasonable." <u>Himes</u> v <u>Thompson</u>, supra, 336 F.3d. 852-853 (quoting <u>Williams</u> v <u>Taylor</u>, supra, 529 US @ 405-406); <u>Delgado</u> v <u>Lewis</u>, supra, 181 F.3d. @ 1091.

An "unreasonable application" of federal law error is "must be 'objectively unreasonable' not just incorrect or erroneous...[U]n reasonable application error is one in excess of even a reviewing court's perception of 'clear error'..." <u>Lockyer</u> v <u>Andrade</u>, (2003) 538 US 63, 75; 123 S.Ct. 1166.

Where state courts have not addressed a constitutional issue in dispute in a reasoned opinion the district court must conduct "an independent review" of the record in adjudication of the issue. Independent review "is not de novo review of the constitutional issue, but rather, the only way we can determine whether a silent state court decision is objectively unreasonable." <u>Himes</u> v <u>Thompson</u>, supra, 336 F.3d. @ 853 (citing <u>Delgado</u> v <u>Lewis</u>, 223 F.3d. 976, 981 (9th cir. 2000)[quoting <u>Bell</u> v <u>Jarvis</u>, 236 F.3d 149, 163 (4th cir. 2000)(en banc)]. Circuit law is deemed persuasive authority in determining whether a state court decision is objectively reasonable. <u>Van Tran</u>, supra, 212 F.3d. 1154; <u>Himes</u>, supra, 336 F.3d @ 853 (quoting <u>Duhaime</u> v <u>Ducharme</u>, 200 F.3d. 597, 600-601 (9th cir. 1999)).

I

## THE PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The petitioner alleges that he was denied his Sixth Amendment right to the effective assistance of appellate counsel. The Sixth Amendment right to effective appellate counsel is conferred on the states through the Fourteenth Amendment. Anders v California, (1967) 386 US 738, 742-43; 87 S.Ct. 1396. Claims of ineffective assistance of appellate counsel are evaluated under the standards of Strickland v Washington, (1984) 466 US 668; 104 S.Ct. 2052. Delgado v Lewis, 181 F.3d. 1087, 1090-1091 (9th cir 1999), using the "unreasonable application of controlling Supreme Court precedent" prism. Weighall v Middle, 215 F.3d. 1058, 1061-1062 (9th cir 2000). The elements of this claim are identical to the criterion of 28 U.S.C. § 2254(d)(1). Davis v Kramer, supra. 167 F.3d @ 497-498.

Hence, petitioner must demonstrate first, that counsel's errors fell well "below the wide range of competent representation" and second, that "but for counsel's error(s), a more favorable result is reasonably probable." Id. 466 US 692-693; Delgado, supra, 181 F.3d. 1090.

The scope of representation and what an appellate attorney is required to file in a criminal appeal are controlled under Jones v Barnes, (1983) 466 US 743, 754-755; 103 S.Ct. 2415, and Evitt v Lucey, (1985) 469 US 387, 393-395; 105 S.Ct. 1358.

////

////

Under these cases, an appellate attorney need not file every non-frivolous issue, <u>Jones</u> v <u>Barnes</u>, supra, 463 US 754, but only those of constitutional dimension likely to reverse the conviction or substantially affect the sentence or judgment. <u>Jones</u> v <u>Barnes</u>, supra, <u>Evitt</u> v <u>Lucey</u>, supra, 469 US 395. In California, appellate counsel is duty-bound to raise "only arguable issues" that are likely to reverse the judgment or result in modification of the defendant's sentence. <u>People</u> v <u>Johnson</u>, (1981) 123 al App 3d 106, 109-112.

In the instant case, petitioner' counsel raised the correct issue - ineffective trial counsel. However, counsel tap danced around the prejudicial errors and cited only errors resulting from them, which by themselves were held harmless by the appellate court.

The central errors, failing to investigate the viability of the chosen defense and, failing to have the trial court bifurcate Count 4, Child Annoyance with a prior child molestation conviction, from the other substantive counts and have it tried <u>after</u> the other counts with the trial on the prior convictions, went unmentioned, despite ample state court authority allowing this to alert appellate counsel as to this error. <u>Cal Pen. Code § 1025</u> (authorizing bifurcated trial on issues involving prior convictions; <u>Cal. Pen. Code § 1093</u> (reading of information including prior conviction allegations at start of trial may be waived); <u>Cal. Pen. Code § 1158</u> (authorizes separate trial on truth of prior convictions); <u>People</u> v <u>Bracamonte</u> (1981) 119 Cal App 3d 644 Hn 4 (where jury allowed to hear detailed evidence

of prior convictions for identical offenses during trial a prejudicial denial of due process); <u>People</u> v <u>Hall</u> (1980) 28 Cal 3d 143, 157 fn 9 (either obtain waiver of <u>Boykin/Tahl</u> rights prior to admission of ex-felon status or bifurcate ex-felon in possession of weapon charge).

The prejudicial effect of these two errors set in train, (1) an uninformed choice of a non-viable defense - rehabilitated pedophile, which opened the door for, (2) admissibility of the otherwise excluded testimony of prosecution witnesses regarding their knowledge of petitioner's prior convictions for child molestation, **EXHIBIT F** through **EXHIBIT L** inclusive; (3) trial counsel to admit that petitioner had prior convictions for child molestation; (4) admission of evidence of petitioner's prior uncharged sex crimes, and (5) providing trial counsel a "window dressing" reason to put petitioner on the stand and be completely impeached with both prior convictions and prior uncharged sex crimes (all as a tactical ploy so that if challenged, counsel could say she had no other defense available). In the process, petitioner's credibility was utterly destroyed along with any presumption of innocence, <u>before</u> any defense could be raised.

Had appellate counsel raised these errors in conjunction with the errors that were raised, it is reasonably probable that petitioner's conviction would have been reversed under <u>People</u> v <u>Nation</u>, 26 Cal 3d 169, 174-176 (failure to make pre-trial challenge to impermissibly suggestive identification outside presence of jury Ineffective assistance of counsel; ////

7

no tactical reason conceivable for not making potentially meritorious pre-trial objection/motion) and In re Hall, (1981) 30 Cal 3d 408 (same).

In the same vein, trial counsel did not make any pre-trial challenges to the prior convictions as unconstitutional under People v Sumstine (1984) 36 Cal 3d 909, 918-919; Curl v Superior Court, (1990) 51 Cal 3d 1292, 1304. Thus, the issue was not preserved for appeal. Trial counsel could have no possible explanation in terms of strategy or tactics for this omission either. Where there can be no tactical or strategic reason conceivable for counsel's actions, an appellate court may reverse the conviction on direct appeal. People v Jones, (2003) 29 Cal 4th 1229, 1254. People v Nation, supra. This omission when aggregated with the other omissions not mentioned by appellate counsel been raised, it is more than likely that a more favorable result would have occurred. Strickland, supra, 466 US @ 694.

Accordingly, petitioner was deprived of the effective assistance of appellate counsel. Therefore, he is entitled to either a remand for a new appeal or, be released from custody. Delgado v Lewis, supra, 181 F.3d. @ 1090.

////

////

////

////

////

////

////

8

## II

### THE PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The petitioner alleges that he was denied his Sixth Amendment right to the effective assistance of trial counsel. The petitioner alleges that his trial counsel deliberately chose trial tactics and a strategy designed to withdraw and undermine petitioner's only viable defense - factual innocence.

Instead, counsel deliberately chose the defense "rehabilitated pedophile," despite knowledge obtained from petitioner's therapists and expert witnesses that pedophilia was not curable nor was petitioner "rehabilitated" despite the span of time between his prior offenses and the instant case.

The petitioner further alleges that trial counsel deliberately chose to "dump" petitioner's case, based on a pre-trial opinion to petitioner that he was guilty, and implied a great revulsion and disgust from petitioner's criminal history and the charges alleged against him that she felt forced to defend against.

Claims of ineffective trial counsel ar controlled by U.S. Supreme Court precedent set forth in Strickland v Washington, (1984) 466 US 668, 690-694; 104 S.Ct. 2052.

Under 28 U.S.C., § 2254(d)(1), claims of ineffective counsel are evaluated under the :unreasonable application of controlling U.S. Supreme Court precedent. Weighall v Middle, supra, 215 F.3d. 1061-1062.

////

The Sixth Amendment right to counsel is applicable to the states through the Fourteenth Amendment. <u>Gideon</u> v <u>Wainwright</u>, (1963) 372 US 335; 83 S.Ct. 792. This right implies the right to the effective assistance of trial counsel. <u>Strickland</u> v <u>Washington</u>, supra, 466 US 687-688.

To show counsel was ineffective, the petitioner must make two showings: (1) counsel's errors "fell below an objective standard of reasonableness...under prevailing professional norms..." and (2) counsel's performance prejudiced the defense" <u>Strickland</u>, supra, 466 US 688, 692.

The first prong is viewed under a standard of "deferential scrutiny." <u>Strickland</u>, supra, @ 689. This standard is particularly applicable to claims that counsel failed to investigate defenses, or witnesses, and choices of trial tactics. <u>Wiggins</u> v <u>Smith</u>, (2003) 539 US 510, 536-537; 123 S.Ct. 2527.

Under this standard, counsel is granted a "strong presumption" that his or her conduct fell within the "wide range of reasonable professional assistance." <u>Wiggins</u>, supra, 539 US @ 536. Thus, a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight. Thus, evaluation of the attorney's challenged conduct is made "in a context-dependent" evaluation of the attending circumstances. <u>Wiggins</u>, supra, 539 US @ 536.

In claims involving a failure to investigate, counsel must first make a rational and informed decision as to tactics and strategy "founded upon adequate investigation and preparation." <u>Strickland</u>, supra, 466 US @ 689. The focus, then, centers "on

whether the investigation supporting counsel's decisions (as to choice of defense and/or tactics)...was itself reasonable." Wiggins, supra, 539 US @ 536 (quoting Williams v Taylor, (2000) 529 US 362, 397-398; 120 S.Ct. 1495.

The second prong, petitioner must show that counsel's errors prejudiced the defense. To show prejudice, petitioner must show that there is "...a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different...a reasonable probability is a probability sufficient to undermine confidence in the outcome..." of the trial or proceeding. Strickland, supra, 466 US @ 687-688, 693-694.

To evaluate the prejudice alleged, the reviewing court must "...re-weigh the evidence in aggravation and the 'totality' of the evidence adduced at trial and in any habeas hearings..." Wiggins v Smith, supra, 539 US 536-537; Williams v Taylor, supra, 529 US @ 397-398.

However, a reviewing court "...need not determine whether counsel's performance was deficient before examining the prejudice suffered...as a result of the alleged deficiencies...[I]f it is easier to dispose of an ineffectiveness claim on ground of lack of prejudice, which we expect will often be so, that course should be followed." Strickland, supra, 466 US @ 697. This initial review does not obviate a full analysis of deficient performance by reliance upon the faulty analysis of the end result, created by the errors, renders the error(s) themselves harmless - in other words, the end justifies the methods used. As the record is scrupulous to reveal, petitioner has made the required showings and is entitled to relief.

A.    **Counsel's Errors**

    1.  Failure To Investigate

The petitioner alleges that trial counsel either failed to investigate the charges and available defenses and the law supporting them, or, delberately chose trial tactics designed to withdraw the only potentially meritorious defense possible - factual innocence.

It is the primary duty of an attorney for the defense to investigate the charges and all substantial defenses available, and to assert them in a timely and proper manner. Reece v Georgia, (1955) 350 US 85, 89-91; 76 S.Ct. 167; Williams v Taylor, 529 US @ 396-397. It is upon this first basic investigation that counsel's choice(s) of strategy and tactics rests. Hence, to be effective, counsel's choices must rest on adequate investigation and preparation. Strickland, supra, 466 US @ 689; Wiggins, supra, 539 US @ 635-636. To evaluate such choices, one must first determine whether the choice not to investigate was itself based on a reasonable factual inquiry. and thus, knowledgeable. Wiggins, supra, 539 US @ 636.

In Hoffman v Arave, 455 F.3d. 926, 934-936, the Ninth Circuit held that in analyzing claims of counsel's failure to investigate a possible defense, the focus is on the prejudice - whether there is "a reasonable probability that a competent investigation would have turned up evidence bearing on that defense or would have affected the outcome of the trial. Id. 455 F.3d @ 934.

////

Viewing counsel's errors in context of the actual evidence adduced at trial, the only direct evidence was the statement from the victim, a pre-teen girl, claiming that petitioner exposed himself to her and asked her to touch him, her grandparents and a social worker testified as to what the victim told each of them. A neighbor testified that he saw the petitioner and the victim together at the approximate time of the alleged offense. The petitioner also admitted to the responding police officer that he may have accidentally exposed himself to the victim, as he was wearing very short shorts with no underwear. This was the totality of the prosecution's case.

The prosecution also alleged that petitioner had two prior convictions for child molestation, and that there were several uncharged prior bad acts of the same nature they wanted to bring up. Against this backdrop, counsel's failure to investigate, or her choice not to do so, the prejudicial effects become starkly apparently.

First, counsel failed to challenge the constitutionality of the petitioner's prior convictions and move to strike them in a pre-trial motion, or at sentencing, under state law. People v Coffey, (1967) 67 Cal 2d 215-218; Curl v Superior Court, (1990) 51 Cal 3d 1292, 1304 (pre-trial motion or moton at sentencing only way to prevent a jury from considering unwarranted counts).

In Riggs v Farmon, 399 F.3d. 1179, 1184-86, the Ninth Circuit upheld habeas corpus relief where the District Court held it to be ineffective trial counsel where counsel failed to investigate the possible (3-strikes) sentence the defendant could receive for a guilty plea, and failing to investigate

13

the facts relevant to a possible sentence (failure to pull defendant's "RAP" sheet, transcripts of prior robbery convictions by plea bargain) prior to advising to enter into an open plea. The attorney represented the plea "deal" to be 5 years; 25-life under 3 strikes was the actual sentence imposed.

Here, even the most cursory investigation of petitioner's prior convictions would have alerted competent counsel to their constitutional defects.  It is black-letter law that a criminal sentence may not be enhanced with a constitutionally defective prior conviction. <u>Burgett</u> v <u>Texas</u>, (1967) 389 US 109, 112; 88 S.Ct. 258; <u>Lopez</u> v <u>Beto</u>, (1972) 405 US 473, 483; 92 S.Ct. 1014.

For any guilty plea to be valid, it must be voluntarily and intelligently made, with the full knowledge of the constitutional rights involved and the penal consequences. <u>Brady</u> v <u>U.S.</u>, (1970) 397 US 742, 748; 90 S.Ct. 1463; <u>Mabry</u> v <u>Johnson</u>, (1984) 467 US 504-508; 104 S.Ct. 2543.  <u>Boykin</u> v <u>Alabama</u> (1969) 395 US 238, 244-245.

On collateral attack via habeas corpus, the petitioner bears the burden of showing that (a) the prior conviction is invalid, <u>Moran</u> v <u>Godinez</u>, 57 F.3d. 690, 704 (9th cir. 1994). Such claims are viewed under the "totality of the circumstances" whether proper advisements were given. <u>Park</u> v <u>Raley</u>, (1992) 526 US 20, 36-37; 113 S.Ct. 517.

Hence, as a matter of both state and federal law, counsel should have seen the infirmities. As shown below, these prior convictions are invalid and counsel should have seen this, to wit:

wit:

14

### 1982 Prior Conviction

The petitioner alleges that in the 1982 prior conviction, that he was not informed of the full penal consequences of the plea and what he would be exposed to by waiving his Boykin/Tahl rights, nor was he ever informed that he was waiving his right to counsel, even though he appeared with one initially. The petitioner further alleges that had he been informed of the full nature of the charge, i.e. that it was a "serious" felony requiring registration as a sex offender, People v McClellan, (1993) 6 Cal 4th 367; In re Birch, (1973) 10 Cal 3d 314, he would not have pled guilty to the charge. EXHIBIT D.

Hence, petitioner did not knowingly and voluntarily waive his rights, nor was he aware of the full penal consequences of the plea, In re Yurko, supra, 10 Cal 3d 863-864, McClellan, supra, 6 Cal 4th 367, In re Birch, supra, 10 Cal 3d 314, requiring that the conviction be vacated, the prior conviction stricken, and the matter remanded for a new trial. **See also:** People v Witcher, (1995) 41 Cal App 3d 223 Hn 2, 226-227 (defendant not advised that he was pleading to a "serious" felony and "strike"; conviction vacated).

### 1985 Prior Conviction

The petitioner alleges that this prior is unconstitutional and invalid because, as with the 1982 prior conviction, he was not told of the full direct penal consequences of a plea of guilty resulting from his waiver of his Boykin-Tahl rights; thus the waiver was not knowing and intelligently made and is therefore invalid. In re Moser, (1993) 6 Cal 4th 342, 351; Bunnell v Superior Court, (1975) 13 Cal 3d 592, 605.

Specifically, petitioner was not apprised that he would have the right to withdraw his plea pursuant to Penal Code § 1192.5, In re Moser, supra, 6 Cal 4th @ pg. 351, nor was he told that he had to register as a sex offender upon release, McClellan, supra, 6 Cal 4th 367; In re Birch, supra, 10 Cal 3rd 314. See : EXHIBIT  C.

Again, the record is devoid of any of these admonishments, and had petitioner known of these restrictions and rights that he waived, he would not have waived them and would have taken the matter to trial. EXHIBIT D.  Therefore, the 1985 prior conviction is invalid and may not be used to enhance petitioner's sentence or impeach petitioner at trial.  Accordingly, petitioner's conviction must be vacated and petitioner given a new trial without use of either the 1982 or 1985 prior conviction.

Moreover, per the express language of Penal Code § 667(d)(1), because the courts did not determine that the prior convictions were "strikes" on the date of those convictions may not be used to enhance petitioner's sentence. People v Wrice, (1995) 38 Cal App 4th 767; People v Witcher, supra, 41 Cal 4th @ pp. 226-227.

Indeed, Pen. Code § 667(d)(1) could not be clearer: "The determination of whether a prior conviction is a prior felony conviction for purposes of subdivisions (b) through (i) inclusive **shall be made on the date of that prior conviction.**" (emphasis added).  Thus, because every provision of the 3-strikes law applies to every prior felony conviction for purposes of enhancement, then petitioner's prior convictions are invalid absent this finding, or, they are to be excluded as "strikes" because they occurred before the 3-Strikes laws were enacted on March 7, 1994.

Thus, per § 667(d)(1), if the courts did not declare the convictions "strikes" they are not strikes.    Therefore they may not be used to enhance petitioner's sentence or impeach

Therefore,    petitioner's    prior    convictions    are constitutionally invalid as petitioner was not advised as to the direct consequences of either of his 1982 or his 1985 pleas of guilt.  Hence they may not be used against him for impeachment or enhancement of any sentence her may receive. <u>Burgett</u> v <u>Texas,</u> <u>supra</u>; <u>Lopez</u> v <u>Beto</u>, supra.  The end result and prejudice by this failure was that both priors were used (a) to form the basis for Count 4, child annoyance <u>with</u> <u>prior</u> <u>conviction</u> for child molestation; (b) which allowed the state to "parade" petitioner's prior convictions in front of the jury in their case-in-chief, thus destroying any presumption of innocence and credibility; (c) to impeach petitioner on the witness stand; and (d) to enhance petitioner's sentence.

2.   <u>Failure To Investigate Defense</u>

Petitioner alleges that counsel either totally did not investigate the defense of "rehabilitated pedophile" or, deliberately ignored the facts underlying this defense.  As the record shows, petitioner's counsel was informed by petitioner, and by the defense expert witness, Larry Corrigan, that pedophilia was not and is not "curable" and that petitioner was not "rehabilitated."

////

////

////

17

The prejudice to the case by this choice of defense, opened the door to the full introduction of petitioner's prior convictions to the jury, destroying petitioner's credibility and any presumption of innocence, before ever putting on a defense. The jury heard the first seven prosecution witnesses testify that they knew petitioner was a convicted sex offender or pedophile. Then, counsel stipulated as much, after which petitioner was put on the stand, where he admitted that he was not cured or rehabilitated. Following that, the defense expert witness who also testified to this effect. The trial became an inquisition, all because of counsel's uninformed, or perhaps informed and insidious choice of tactics. From this initial failure, the errors compounded as did the prejudice.

Indeed the prejudice goes deeper. Counsel knew at the beginning of the case that petitioner could not be rehabilitated and was not cured. Yet she chose the "rehabilitation" defense. In People v Pope, (1979) 23 Cal 3d 412, 424-425, the California Supreme Court didactically opined that, "...If a diligent, ordinarily prudent lawyer in a criminal case would not make a certain...tactical decision, then it may well prove incompetence of counsel to elect to follow such a tactical course. This is true even if the decision is not made from a position of ignorance of law or fact." Id. 23 Cal 3d 424.

No prudent defense attorney would have chosen what petitioner's counsel chose. Here, counsel's personal prejudices emanating from her revulsion at petitioner's charges and criminal history preempted any investigation or motive to defend her client. Instead, counsel abandoned her role as advocate of the defense and dumped the case.

As discussed above, petitioner's credibility and any presumption of innocence were gone at the very start of trial, he was impeached by his prior convictions, and sentenced to 85-years to life. The public outcries were heard and counsel responded.

### (3). Failure To Challenge Prior Convictions

As shown above, because of the failure to investigate, counsel did not challenge the constitutional invalidity of petitioner's prior convictions or move to have them stricken or excluded. As described above, the prejudice flowing from this compound error resulted in petitioner's entire criminal history and prior convictions for the same offense for which he was on trial, to be heard by the jury in the prosecution's case-in-chief. The petitioner's defense and presumption of innocence was utterly destroyed, as was his credibility.

### 4. Failure To Bifurcate Count 4

even assuming arguendo that petitioner's prior convictions were valid constitutionally, petitioner's counsel failed to move to have the Count, Child Annoyance with prior Molestation conviction, bifurcated and heard after the other substantive counts, along with the truth of the prior convictions. There was ample state statutory and case law permitting this. People v Hall, supra, 28 Cal 3d 157; People v Calderon, (1994) 9 Cal 4th 69, 77-78; Cal. Penal Code, §§ 1025 (authorizing bifurcated trial on issues involving prior convictions); § 1158 (authorizing bifurcated trial on truth of prior convictions). Thus there is no conceivable reason for this omission.

This error is what literally opened the door for the prosecution to utterly destroy petitioner's case and any hope of a fair trial. Failing to have this count bifurcated, or failing that, having petitioner properly advised and waive his <u>Boykin</u> rights as to the prior convictions, pre-trial, counsel allowed the state to try petitioner's prior convictions to the jury during its case-in-chief. As discussed above, this totally destroyed any presumption of innocence and credibility of the defendant, <u>before</u> any defense is raised.

The inflammatory nature of the charges are enough to arouse the passions of any normal, prudent person serving on a jury. When told of petitioner's criminal past, especially when the prior convictions are for the identical crime for which the petitioner is now charged, the effect can only be summed up by the phrase "Hang the sick S.O.B.!!" It is nearly judicially noticeable that literally every night, there is a news article or bulletin on television invlving child molesters or a victim of child molestation.

In sum, counsel could have avoided this prejudice by having the court bifurcate this substantive count. By not at least moving to have it done, the issue is foreclosed from appeal, and the prejudice to the petitioner's case is in the extremis. There is no doubt that a more favorable result would be, in the very least, "a reasonable probability." <u>Strickland</u> v <u>Washington</u>, supra.

////

////

## 5. Flawed Strategy/Tactics

The petitioner alleges that counsel deliberately ignored the facts of her investigation into the charges against petitioner. The petitioner alleges that as a result, counsel abandoned her role as a diligent advocate of the defense and adopted the role of judge and jury and pre-judged petitioner. Petitioner further alleges that counsel was motivated to do so because of the revulsive and passionately inflammatory nature of the charges and petitioner's criminal history.

Succombing to those revulsed passions, counsel deliberately implemented a flawed defense strategy and trial tactics so as to "dump" petitioner's case. Thus, petitioner's counsel abdicated her duties and role as a "diligent, conscientious advocate of the defense." People v Pope, supra, _The petitioner's only viable defense, factual innocence, was withdrawn.

To prevail on this claim, petitioner must show that (1) counsel's errors fell "below an objective standard of reasonable professional representation" and (2) that counsl's errors prejudiced the defense. Strickland v Washington, supra 466 US 687-689; In re Marquez, supra, 1 Cal 4th 603 (quoting Strickland). As the record shows, petitioner has made these showings and is entitled to relief.

### A. Counsel's Errors

Specifically, against the evidentiary backdrop of the prosecution's case, the trial bifurcated as petitioner pled not guilty to the prior conviction allegations, EXHIBIT E, counsel was warned both by the court and prosecution that the petitioner would be impeached with not only the 1982 and 1985 prior convictions

for child molestation, but uncharged crimes involving child molestation during the period of 1972-1979. EXHIBIT E, pp. 3-4.

Counsel erred prejudicially in that ( ) counsel did not investigate or move to strike petitioner's prior convictions, allowing them to be used to be used to both impeach petitioner and, to enhance his sentence; (2) counsel talked with petitioner's therapist and determined before trial that petitioner was neither "cured" or "rehabilitated" and said so to petitioner. EXHIBIT D, then put on the "rehabilitation" defense anyway.

Further, (3) Counsel knew and stated she knew that despite the bifurcated trial, the fact of petitioner's 1982 conviction was going to come out in the prosecution's case-in-chief, and failed to object or move to suppress it. EXHIBIT E, pp. 5-6;

Further still, (4) with prompting from the court, counsel stated on record that she was going to elicit from the prosecution witnesses, their knowledge of petitioner's prior convictions for child molestation EXHIBIT E, pp. 15-16; (5) counsel failed to obtain a final ruling on the admissibility of the uncharged prior bad acts involving petitioner's nieces occurring in the 1970's, with the result that they were admitted to impeach petitioner. EXHIBIT E, pp. 7-10; (6) Counsel allowed the prosecutor to elicit from each prosecution witness, their knowledge of petitioner's prior sex offenses on direct examination, even before petitioner counsel could do so, before any character witnesses were put on the stand, and before petitioner took the stand, without any objection or motion for mis-trial by defense counsel.

The objective of these acts and omissions, (7) put petitioner on the witness stand after he had already been impeached with his prior convictions in front of the jury to subject him to devastating cross-examination, to "make" the prosecution's case and ensure the conviction, parenthetically sotto voce ( to put this abhorrent, sleazy monster in a cage where he belongs). Such was counsel's strategy illustrated by the foregoing tactics.

In addition, (7) as set forth in petitioner brief on appeal, counsel failed to object to and/or litigate to suppress, (a) improperly elicited hearsay testimony from the victim's grandparents about the incident after the victim talked with a police officer; (b) the prosecution improperly cross-examined petitioner about the prior uncharged bad acts in the 1970's involving his nieces; (c) the prosecutor impermissibly suggested that petitioner had the burden of producing the shorts he was wearing by asking him why he did not bring them to court; (d) comments in closing argument that petitioner failed to tell his parole officer that he was experiences "urges" to molest little girls, despite there being no evidence of this in the record.[1]/

////

////

---

[1]/: The Court of Appeals rejected both the prosecution misconduct argument as waived by failure to object and the Ineffective Counsael claim as harmless error. Petitioner incorporates these errors to illustrate the complete picture which appellate counsel should have raised on Habeas Corpus to allow trial counsel to explain this otherwise unexplanable choice of tactics. People v Pope, supra 23 Cal 3d 424-426. This is also the basis for the Ineffective Appellate Counsel claim, ante, despite there being "no conceivable reasons" for counsel's acts or omissions" appearing in the record, thereby precluding direct appellate review. People v Jones, (2003) 29 Cal 4th 1229, 1254.

B. **The Prejudice**

To show prejudice, the petitioner must demonstrate, "...that there is a 'reasonable probability that, but for counsel's errors, the result of the proceeding would have been more favorable. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" Marquez, supra, 1 Cal 4th @ 604 quoting Strickland v Washington, supra, 466 US 694.

To evaluate the prejudicial effect of each of these errors, one need only substitute what a diligent, conscientious advocate of the defense would ordinarily have done: challenge the prior convictions and move to strike them; suppress the prosecution witnesses' inadmissible hearsay testimony and testimony about their knowledge of petitioner's prior convictions for child molestation, exclude witnesses whose testimony deals strictly with petitioner's prior convictions, object to the prosecution's eliciting damaging inadmissible testimony regarding prior convictions, and, keep petitioner off of the witness stand. These actions were permissible under existing law. The trial court itself said that none of the issues regarding petitioner's prior convictions or bad acts could come in if petitioner did not testify. EXHIBIT E, pp. 2-16.

Further, under existing law, our courts have held counsel to be prejudicially ineffective and reversed the resulting convictions for the same errors appearing in tis case, namely: (a) failure to minimize the prejudicial effect of prior convictions, People v Zimmerman, (1980) 102 Cal App 3d 647; (b) for bringing out a defendant's prior convictions on direct examination due to a mis-reading of the governing law, thereby

24

destroying the client's credibility before the jury, People v Perez, (1978) 83 Cal App 3d 718; (c) by eliciting otherwise inadmissible hearsay evidence from a prosecution witnesses that incriminated the defendant. In re Jerome B., (1977) 68 Cal App 3d 395, 406;

Counsel was also held prejudicially ineffective by failing to obtain clear rulings on evidentiary motions to suppress damaging evidence, thus allowing its admission and not preserving the issue for appeal. People v Haynes, (1980) 104 Cal App 3d 104, 108 ("a reasonably competent counsel acting in a diligent manner should surely attempt to suppress the evidence which forms the basis for the case against his client where there is some likelihood for success in an unsettled area of law and where failure to do so prevents appellate review."); People v Ellers, (1980) 108 Cal App 3d 943 (failure to get clear rulings on evidentiary motions and preserve issues for appeal ineffective assistance of counsel).

Had counsel done any and/or all of these things, it would have left the state with one witness - the victim- and it is her credibility vis-a-vis the petitioner's credibility in a defense that any exposure was accidental. An entirely different result is a reasonable probability.

Additionally, the Count III Child annoyance with a Pen. Code § 288(a) prior, would have been stricken in because the prior convictions could not be used to impeach or to enhance the sentence. This would leave petitioner's sentence at about 12-16 years versus 85 years to life. This again is a more than a reasonable probability - it would be a matter of law.

As the record scrupulously reveals, every one of these prejudicial errors was made by trial counsel as a direct result of the tactics and flawed defense chosen. And, in terms of sound trial strategy and tactics, there is no conceivable or even a discernible basis for such a defense that leaves a defendant so utterly vulnerable to attack by the state. The petitioner has met his burden.

However, this is not the end. Under both <u>Strickland</u> v <u>Washington</u>, supra, and <u>People</u> v <u>Pope,</u> supra, and its progeny, once a claim of ineffective trial counsel is stated, the court must issue an order to show cause to allow counsel to explain his/her choice of tactics in context of the evidence existing before trial. The court must then hold an evidentiary hearing to examine the evidence proffered. <u>Strickland</u> v <u>Washington</u>, supra, 466 US @ 693-694; <u>People</u> v <u>Pope</u>, supra 23 Cal 3d @ 424-425; <u>People</u> v <u>Shaw</u>, (1984) 35 Cal 3d 535, 540-541.

The petitioner is mindful of the social stigmata and inflamed passions aroused in cases such as this. The petitioner asserts that neither public antipathy nor inflamed passions may be substituted for due process and fair proceedings. The record shows that petitioner's trial was a trial on his prior convictions, and virtually none of the evidence of those prior convictions should have been heard by the jury in a bifurcated trial, as this one purportedly was. Therefore, an order to show cause should issue and an evidentiary hearing should be held in this matter, to allow petitioner's counsel to explain, if possible, her reasons for the demonstrably incompetent tactics used.

////

## III

**THE CUMULATIVE EFFECT OF TRIAL COUNSEL'S ERRORS DEPRIVED PETITIONER OF HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

The petitioner alleges that, even assuming that trial counsel's errors specified above, individually did not amount to prejudicial error and ineffective assistance of counsel, the cumulative and domino effect of these errors amounted to a gross violation of Petitioner's Sixth Amendment right to the effective assistance of trial counsel, a fair trial, and to due process.

**A.    Standard of Review**

Sixth Amendment claims of ineffective assistance of trial counsel based upon cumulative error are reviewed under the standards set forth in Strickland v Washington, supra, 466 US @ 689-693. Harris v Blodgett, 853 F.Supp. 1239, 1248-1251; **Aff'd** sub nom Harris v Wood, 64 F.3d. 1432, 1437-1439 (9th cir. 1995)(quoting Mak v Blodgett, 970 F.2d. 614, 624-625 (9th cir. 1992)).

Sixth Amend claims of ineffective assistance of counsel are also reviewed under 28 U.S.C. § 2254(d)(1) for the "unreasonable application" of current Supreme Court precedent standard. Williams v Taylor, supra, 529 US 362, 407408. Under this standard, the application of federal law must be "objectively unreasonable" and not simply incorrect. Id. @ 410-411. Circuit law precedent is relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Himes v Thompson, supra, 336 F.3d. @ 853 citing Duhaime v Ducharme, 200 F.3d. 597, 600-601 (9th cir. 1999).

27

In reviewing trial counsel's errors in the aggregate and their cumulative impact, courts view the conduct with a "strong presumption that counsel's conduct fall within the wide range of reasonable representation...Rather, we review counsel's actions based on the facts as known to the attorney or as reasonably could have been known at the time he or she acted." Hoffman v Arave, 455 F.3d 926, 931 (9th cir. 2006) quoting Strickland v Washington, supra 466 US @ 687, 692-693.

## 1. The Evidentiary Context

The evidentiary picture facing petitioner's counsel before trial and facts known to counsel were as follows: (1) Petitioner was charged with inter alia, child molestation, with two prior convictions for the same thing in 1982 and 1985; (2) per petitioner's therapist, petitioner was a pedophile and could not be "cured" or "rehabilitated" and was not rehabilitated; (3) Both prior convictions were unconstitutional and subject to be stricken upon motion; (4) the victim would testify she told police that petitioner exposed himself to her, touched her leg, all as they stooped down to pet petitioner's dog; (5) Two police witnesses, the arresting officer would testify that petitioner was a registered sex offender and admitted that he may have "accidentally exposed himself" to the victim, EXHIBIT K, and a retired detective, who would testify as to petitioner's prior 1982 conviction and circumstances; (6) the victim's grandparents, who would testify as to what the victim told them about the incident, and a social worker who would testify what the victim told her; (7) a neighbor who would testify he saw the victim and petitioner together, but nothing else.

## 2. **Counsel's Errors**

During the pre-trial proceedings is where counsel's fatal errors were made. As illustrated by the colloquy in **EXHIBIT E**, the trial court ordered the trial bifurcated. Trial counsel was repeatedly warned by the trial court and prosecution that if petitioner testified, he would be impeached with his prior convictions from 1982 and 1985, and possibly prior uncharged crimes involving petitioner's nieces occurring between 1972 and 1979. The trial court did not make any definitive ruling as to the prior uncharged acts and counsel did not press for a ruling. As the record shows, the cumulative impact of counsel's errors transformed petitioner's trial from an adversarial process to a devstating inquisition, the outcome of which inspires no confidence in its safety.

First, counsel did not investigate the charges against her client, specifically the prior convictions, and as a result did not challenge them as unconstituitonal and move for their exclusion.

Second, she did not move to bifurcate Count 3, child annoyance with a child molestation prior conviction. These two errors alone opened the door for the prosecution to inform the jury of petitioner's prior convictions during its case-in-chief, destroy any presuption of innocence, the defense of factual innocence and petitioner's credibility, all before any defense was raised. They also allowed petitioner's sentence to be enhanced under 3-strikes, Pen. Code §§ 667.61 and 667.71. The resulting sentence was 85 years to life.

Third, during pre-trial, <u>EXHIBIT E</u>, counsel indicated, with prompting from the prosecution, that she would elicit from the prosecution witnesses what they knew about petitioner's prior convictions for child molestation. <u>EXHIBIT E</u>, pp. 15-16.

**Fourth,** counsel did not press for rulings on either the admissibility of the grandmother's hearsay testimony or the admissibility of the prior uncharged acts in the 1970's.

**Fifth,** counsel did not object to police witness testimony as to petitioner's prior convictions during the prosecution's case-in-chief either before trial and during the prosecution's case. <u>EXHIBIT K</u>, <u>EXHIBIT L</u>. The jury heard that petitioner had prior convictions for child molestation.

**Sixth,** counsel did not object when the prosecutor elicited testimony from virtually every prosecution witness as to their knowledge of petitioner's prior convictions for child molestation, <u>EXHIBIT F</u> through <u>EXHIBIT M</u>, or move for a mistrial due to prejudice because the trial was ordered bifurcated, <u>EXHIBIT A</u>. pg. 10. As a result, the jury heard eight witnesses testify as to their knowledge of petitioner's prior convictions, utterly destroying petitioner's credibility before the jury, and with it, the only viable defense of factual innocence available to petitioner.

**Seventh,** (and perhaps first and foremost) counsel elected the defense of "rehabilitation of a pedophile" despite prior knowledge from petitioner's therapists, her own anticipated expert witness testimony, that pedophilia was not curable, nor could pedophiles be "rehabilitated." Yet counsel put on this defense.

////

**Eighth,** counsel stipulated to the jury at the opening of the defense case that petitioner had prior convictons for child molestation, EXHIBIT N, corroborating the testimony of the eight witnesses the prosecution put on in their case-in-chief, and arguing against her client - who pled "not guilty" to these prior convictions.

**Ninth,** counsel put the petitioner on the witness stand against his wishes, EXHIBIT D, subjecting him to utterly devastating and humiliating cross-examination on not just his prior convictions, but prior uncharged child molesting acts as well, further inflaming already inflamed passions and prejudices against child molesters held by the jury, and society at large.

**Tenth,** Counsel did not object to petitioner being cross-examined on or press for a ruling on the prior uncharged acts in the 1970's, or move to limit it in any way to minimize prejudice. The result was the jury not only heard about the prior convictions in explicit detail, they also heard about several other pre-teen victims for which petitioner was not punished for, exacerbating already enraged antipathies towards petitioner and pedophiles in general.

**Eleventh** counsel did not object to the prosecution improperly alluding that because the defense did not bring the short shorts petitioner was wearing to court to show the jury, the defense was hiding evidence of guilt.

counsel put on an expert witness who testified, inter alia, that pedophilia was not curable or subject to rehabilitation, thereby further undermining petitioner's defense even further.

B.  <u>Cumulative Effect/Prejudice</u>

In cases where there are a number of errors committed by trial counsel, courts have found that "a balkanized issue-by-issue harmless error review is far less effective that analyzing the overall effect of all the errors in context of the evidence introduced at trial." <u>Alcala</u> v <u>Woodford</u>, 334 F.3d. 862, 883 (9th cir. 2003, citing <u>U.S.</u> v <u>Frederick</u>, 78 F.3d. 1370, 1381 (9th cir. 1996)(quoting <u>U.S.</u> v <u>Wallace</u>, 848 F.2d. 1464, 1476 (9th cir. 1988); <u>Harris</u> v <u>Blodgett</u>, 853 F.Supp. 1239, 1245-1251 (W.D. Wash. 1994); **Aff'd sub nom** <u>Harris</u> v <u>Wood</u>, 64 F.3d 1432, 1438-1439 (9th cir. 1995). The efficacy of the cumulative error analysis is enhanced because "In those cases where the government's case is weak, a defendant is more likely to be prejudiced by the cumulative effect of the errors." <u>U.S.</u> v <u>Frederick</u>, supra, 78 F.3d. @ 1381; <u>Alcala</u> v <u>Woodford</u>, supra 334 F.3d. @ 883; **Accord:** <u>Thomas</u> v <u>Hubbard</u>, 273 F.3d. 1164, 1180 (9th cir. 2001).

Under cumulative error analysis, there is no need to evaluate errors individually, <u>Mak</u> v <u>Blodgett</u>, 970 F.2d 614, 622 (9th cir. 1992) c.f. <u>Harris</u> v <u>Wood</u>, supra, 64 F.3d. @ pg. 1439 Hn.12. The prejudicial effect or impact on the trial process itself is measured under <u>Strickland</u> v <u>Washington</u>, supra, <u>Mak</u> v <u>Blodgett</u>, supra, 970 F.2d. @ 624-625, <u>Harris</u> v <u>Wood</u>, supra 64 F.3d. @ 1438-1439. However one court analyzed an ineffective counsel claim under <u>Calderon</u> v <u>Coleman</u>, (1998) 525 U.S. 141, 145; 119 S.Ct. 500 (whether the errors had a 'substantial and injurious effect or influence on the jury's verdict.'"(citations omitted); c.f. <u>Alcala</u> v <u>Woodford</u>, supra, 334 F.3d. 893. Under either anaslytical rubric, petitioner has been irreparably prejudiced and is entitled to relief.

In Harris v Blodgett, supra, the court held that where counsel failed to timely object and preserve fundamental constitutional issues for appeal, challenge admissibility of inadmissible evidence, failure to investigate mental deficiencies and defsne, collectively showed counsel's conduct to be prejudicially deficient. Id. 853 F.Supp. 1248, 1251.

In Alcala v Woodford, supra, the Ninth Circuit granted habeas corpus relief on grounds of ineffective assistance of counsel based on cumulative effects of counsel's errors. The court held where counsel did not object to the exclusion of expert witness testimony damaging the state's star witness, failure to investigate evidence deemed relevant and defense of mental incapacity, failure to call or prep witnesses, failure to investigate the crime scene or the value of evidence discovered in terms of relevancy, holding that the cumulative effect of these errors deprived petitioner of his effective assistance of counsel. Id. 334 F.3d. @ 889-893.

In Hoffman v Arave, supra, the Ninth Circuit again found counsel to be ineffective based on the cumulative effects of counsel's errors. There, the combination of defense counsel's failure to investigate a mental deficiency defense, despite ample evidence and long history of his client's mental deficiencies and cognitive disabilities, or present them at trial, deprived the petitioner of the effective assistance of counsel, and a new trial was ordered. 455 F.3d. @ 934-936.

Here, counsel failed to object to the exposure of her client's prior convictions for child molestation to the jury in the prosecution's case-in-chief, despite court orders bifurcating the

from the trial on the other substantive charges, indecent exposure, and child molestation. Thus, there was no viable tactical reason to allow prosecution witnesses to testify as to their knowledge of those prior offenses. Worse, on cross-examination, counsel elicited further such testimony.

As recounted above, without petitioner's prior criminal history, the case against petitioner was weak and flimsy. The whole case turned on credibility. Anything tending to undermine petitioner's credibility would be inherently prejudicial, such as his history of pedophilia and prior convictions. This would allow the jury to essentially convict petitioner on the substantive offense(s) based on a pre-disposition to commit the offenses solely because of his prior record. People v Castro, supra. Bibbs v Twomey, 506 F.2d. 1120 (9th cir. 1974).

The prejudice suffered cannot be overstated. After petitioner pled, "Not guilty" to both the charges and prior conviction allegations, petitioner's counsel chose a flawed and illusory defense which counsel knew beforehand was implausible and unsustainable. Then, counsel deliberately chose to commit one prejudicial error after another as recounted above, all of which either by design or through ignorance, allowed the jury to hear all about petitioner's prior convictions for child molestation, thus destroying his credibility totally and completely undermining his only defense - not guilty- before the defense put on a case and before petitioner ever took the witness stand. These errors ulminated ultimately in the petitioner being impeached with not only his prior convictions, but also petitioner's uncharged crimes of child

34

molestation for which he was not punished. Parenthetically, the trial was ordered bifurcated under Pen. Code § 1025 to shield the petitioner from just such prejudice and reversible error. EXHIBIT E, @ pg 10. People v Castro, (1985) 38 Cal 3d 301; People v Hull, (1980) 28 Cal 3d 143, 150; People v Bracamonte, (1981) 119 Cal App 3d 644, 647-650.

Thus, petitioner has made the reqisite showings required under Strickland v Washington, supra. Petitioner has shown counsel's deliberate choices of flawed strategy and tactics, none of which an ordinarily prudent defense attorney acting as a diligent advocate would choose or implement in context of the evidence and case. The errors resulting from these choices demonstrate that counsel's performance fell far below the "wide range of reasonable professional representation..." Strickland, supra, 466 US 692-693; Harris v Wood, supra, 64 F.3d. 1438-1439.

Second, the cumulative prejudicial effect of these errors torpedoed petitioner's entire defense and completely assassinated his credibility before the defense even put on its case. Thus, Absent counsel's errors, which reduced the trial from an adversarial proceeding on the substantive offenses to an inquisition of his prior convictions and uncharged crimes, indeed, a more favorable result is more than "reasonably probable." Strickland, supra, 466 US 692-693; Harris v Wood, supra. This is hardly a proceeding in which confidence in the reliability of its outcome and verdict can rest.

////

////

Under the rubric stated in <u>Calderon</u> v <u>Coleman</u>, supra, 525 US @ 145, the cumulative effect of these errors cannot help but have had "...a substantial and injurious effect or influence on the jury's verdict." <u>Id</u>. Exposing petitioner's prior convictions to the jury at the onset of trial during the prosecution's case is inherently prejudicial in light of the pre-trial bifurcation order. A mistrial should have been moved for but was not. No objection was ever made.

Nor can this error be deemed harmless because of the defendant's testimony. His credibility was already destroyed before he ever took the stand because counsel erred before that, and erred again by putting him on the stand to raise a defense designed to convict petitioner not defend him. Thus, the end, the verdict of guilt, cannot be held to justify the unconstitutional means by which it was obtained.

Accordingly, petitioner has demonstrated ineffective assistance of counsel in violation of the Sixth Amendment. Therefore, petitioner is entitled to a writ of Habeas Corpus and a new trial, represented by competent counsel.

////

////

////

////

////

////

////

////

////

**36**

IV

## WHEN A VALID PRIMA FACIE CLAIM IS SHOWN AN EVIDENTIARY HEARING IS REQUIRED TO REVIEW CLAIMS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE NO STATE COURT EVIDENTIARY HEARING WAS HELD

The petitioner alleges that as a matter of due process, claims of ineffective assistance of counsel on Habeas Corpus review require an evidentiary hearing where, as here, a prima facie claim for relief is made, and the record shows no plausible or even conceivable reason(s) for counsel's choices underlying a failure to investigate, failing to move to shield prior convictions from the jury, allowing damaging, inadmissible evidence to be presented, and trial tactics withdrawing a potentially meritorious defense, are alleged and no state court evidentiary hearing was afforded or held. Strickland v Washington, supra, 466 US @ 693-694; Insyziengmay v Morgan, 403 F.3d. 607, 669-670 (9th cir. 2005); Stankewitz v Woodford, 365 F.3d. 706, 708 (9th cir. 2004), to allow a petitioner to develop facts which, if true, would entitle a habeas petitioner to relief. Williams v Woodford, 384 F.3d. 567, 586 (9th 2004).

This hearing is especially required where, as here, the factual allegations and the underlying reasons for them are outside the record, namely, the defense attorney's explanation for her choices of trial strategy, choice of defense, and tactics are missing. Phillips v Woodford, 267 F.3d. 966, 973 (9th 2001).

Where the credibility of a witness/declarant is at issue, rarely, can credibility be established without an evidentiary hearing, Blackledge v Allison, (1977) 431 US 63, 82; 97 S.Ct., 1023; Watts v U.S., 841 F.2d. 275, 277 (9th 1988).

37

The state has similar requirements and criteria for evidentiary hearings where trial counsel's performance is called into question and no plausible or conceivable reason for the challenged conduct or choices appears on the record. People v Pope, (1979) 23 Cal 3d, 412, 425-426; In re Lower, (1979) 23 Cal 3d 144, 152; People v Russell, (1980) 101 Cal App 3d 665, 671 (Grodin, J.)

An evidentiary hearing is required under state law because reviewing courts will not second-guess trial counsel' choice of tactics or strategy on direct appeal. It therefore becomes necessary to follow the Pope rationale as a matter of due process - to let the petitioner make his/her allegations, then giving the defense attorney the opportunity to rebut the allegations and explain his/her choices and the underlying reasons for them. Pope, supra, 23 Cal 3d 425; Russell, supra 101 Cal App 3d 671.

This process was not afforded the petitioner, and, because it mirrors the process exposited by Ninth Circuit and U.S. Supreme Court precedent, this failure was contrary to current federal law precedent. 28 U.S.C. 2254(d)(1).

As recounted above, counsel's choices of defense and tactics and omissions during the pre-trial proceedings, which at trial allowed petitioner to be impeached with his entire criminal past during the state's case-in-chief through damaging and otherwise inadmissible evidence, introducing harmful evidence from defense expert witnesses, subjecting petitioner to impeachment by putting him on the stand to testify, and not objecting to prosecution misconduct, all based on a defense

that was unviable from the start, specifically, pedophilia can be "cured" and pedophiles "rehabilitated" counsel's own defense expert said was not true. Such choices defy any conceivable explanation in terms of strategy or tactics from any prudent defense attorney acting as a diligent advocate for the defense.

Hence, a hearing is necessary because the obvious prejudicial effect of these errors that resulted demand an explanation from counsel. <u>Strickland</u> v <u>Washington</u>, supra.

### CONCLUSIONS

For the foregoing reasons, petitioner is entitled to habeas corpus relief.

DATED: AUGUST 13, 2008                    Respectfully submitted,


_Derek L. Cordeiro_  V-64461
Derek L. Cordeiro, V-64461
R.J. Donovan Corr. Facility
P.O. Box 799003  F3-11-124
San Diego, CA. 92179-9003

In Propria Persona

////

////

////

////

////

////

////

////

////

////

39

## PROOF OF SERVICE BY MAIL

I, _____**DEREK L. CORDEIRO**_____ depose and state:

1.  I am over the age of 18 years, a resident and state prisoner of the State of California; my present mailing address is: P.O. Box 799003  F3-!! -**124**, R.J. Donovan Correctional Facility, San Diego, California 92179-9003;  I am a party to this action;

2.  On this **13th** day of _____**AUGUST**_____ , 20**08**__ , I caused a true and duplicated copy of the following document(s) entitled:

**MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING A PETITION FOR HABEAS CORPUS**

to be placed in a sealed envelope(s) with First Class postage affixed and prepaid and thereafter given into the hand of the proper institution authority with the understanding that said sealed envelopes will be immediately placed in the United States mails for delivery to the following person(s):

**CLERK OF COURT
U.S. DISTRICT COURT
SO. DISTRICT CALIFORNIA
880 Front Street, Rm 4290
San Diego, CA. 92101-8900**

**(Orig. + one Copy)**

To the best of my knowledge there is First Class mail delivery service to the aforementioned persons and addresses.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this **13th** day of _____**AUGUST**_____ , 20**08**__ , at R.J. Donovan Correctional Facility, San Diego, California.

_____
Declarant
**Derek L. Cordeirp, V-64461**

 

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DEREK L. CORDEIRO,                  )     No. '08 CV 1519 H CAB
                                    )
            Petitioner,             )
                                    )
        vs                          )
                                    )
ROBERT J. HERNANDEZ, Warden,        )
                                    )
            Respondent,             )
                                    )
_____)

**APPENDIX OF EXHIBITS IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS**

                    Derek L. Cordeiro, V-64461
                    R.J. Donovan Corr. Facility
                    P.O. Box 799003  F3-11-124
                    San Diego, CA. 92179-9003

                    In Pro Se

## INDEX TO EXHIBITS

**EXHIBIT  A:**   Lower Court Denials of Relief

**EXHIBIT  B:**   Court Records of 1982 Prior Conviction

**EXHIBIT  C:**   **Court records of 1985 Prior Conviction**

**EXHIBIT  D:**   Petitioner's Declaration

**EXHIBIT  E:**   Reporters' Transcripts pp 1-18 ; **pre-trial motions**

**EXHIBIT  F:**   Reporter's Transcripts, pp 30, 38-40: Erica Wilson
        Testimony

**EXHIBIT  G:**   Reporter's transcripts, pg 53: Darby Wilson Testimony

**EXHIBITI H:**   Reporter's Transcript, pp105-06; 116: Margaret Wear
        Testimony

**EXHIBIT  I:**   Reporters Transcript pp 16-128, 133: David  Wear
        Testimony

**EXHIBIT  J:**   Reporter's Trabscript, pp, 151, 160-162; Joe Garcia
        Testimony

**EXHIBIT  K:**   Reporter's Transcript, pg 202: Scott Sandefur (Officer)
        Testimony

**EXHIBIT  L:**   Reporter's Transcript, pp 207-212: Hanley Pry (retired
        police Detective) testimony

**EXHIBIT  M:**   Reporter's Transcript, pp 271-280: Kristi Gaines
        Testimony

**EXHIBIT  N:**   Reporter's Transcript, pg 282: Defense Counsel stip-
        ulaiton to jury - petitioner prior sex offenses.

////

////

////

////

////

////

////

////

**E X H I B I T   A**

Lower Court denials/Decisions

Filed 4/27/06  P. v. Cordeiro CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D045966 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD181044) |
| DEREK CORDEIRO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Laura Palmer Hammes, Judge.  Affirmed.

### I.

### INTRODUCTION

Defendant Derek Cordeiro appeals his convictions on two counts of lewd and lascivious acts upon a minor child, one count of indecent exposure, and one count of child annoyance.  The charges resulted from an incident involving the eight-year-old granddaughter of his next-door neighbors in which Cordeiro rubbed the girl's leg,

CLIENTS COPY

exposed his penis to her, and grabbed her hand, asking her to touch him as he pulled her hand toward his penis. Cordeiro contends that prosecutorial misconduct, coupled with his trial counsel's failure to object to the instances of misconduct, deprived him of due process and a fair trial.

Cordeiro specifically claims that the prosecutor (1) improperly elicited hearsay testimony regarding additional statements the victim made to her grandparents about the incident after she had spoken with a police officer; (2) improperly cross-examined him about his having molested two of his nieces during the 1970's; (3) impermissibly suggested that he had the burden to produce the shorts he was wearing at the time of the incident by questioning him as to why he had not brought the shorts to court; and (4) commented in closing argument that Cordeiro failed to tell his parole officer that he was experiencing urges to molest little girls, despite a lack of evidence in the record on this issue.

In addition to arguing that his trial counsel's failure to object to the prosecutor's conduct in each of these instances constituted ineffective assistance of counsel, Cordeiro contends that his attorney's performance was deficient because the attorney failed to object to testimony by the victim's grandparents as to what the victim told them about the incident in statements made some time after her initial disclosure, and failed to object to testimony by a social worker that children sometimes do not immediately provide the details of abuse, but rather do so at a later point in time. Finally, Cordeiro asserts that even if the claimed errors do not individually constitute reversible error, the cumulative effect of the errors requires reversal. We conclude that the prosecutor did not engage in

2

misconduct that amounted to a denial of due process, and that Cordeiro's counsel did not render ineffective assistance. We thus affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Procedural background*

On November 9, 2004, Cordeiro was charged in an amended felony information with two counts of lewd and lascivious acts upon a minor child (Pen. Code, § 288, subd. (a) (counts 1 and 2)), one count of indecent exposure (Pen. Code, § 314, subd. (1) (count 3)), and one count of child annoyance (Pen. Code, § 647.6, subd. (c)(2) (count 4)), enhanced by virtue of a prior conviction under Penal Code section 288. Cordeiro was also charged with having suffered two prison/strike priors for lewd acts upon a child, within the meaning of the one strike and habitual offender laws. (Pen. Code, §§ 667, subd. (a)(1); 668; 1192.7, subd. (c); 667.71, subds. (a), (c), (d).)

On December 13, 2004, after a five-day trial, the jury found Cordeiro guilty on all counts. Cordeiro admitted that the charged prison/strike priors were true.

On January 12, 2005, the court sentenced Cordeiro to a total prison term of 85 years to life. The sentence included 75 years to life, plus 10 years consecutive for the two priors as to count 1, and 75 years to life concurrent as to count 2. The court stayed the midterm sentences of two years on count 3 and four years on count 4, pursuant to Penal Code section 654.

Cordeiro filed a timely notice of appeal on February 23, 2005.

3

B.    *Factual background*

1.    *The incident*

On February 25, 2004, at approximately 4:00 in the afternoon, Cordeiro walked

out of his house with his dog, Cocoa.  D.W., the granddaughter of Cordeiro's next-door

neighbors, was riding her scooter nearby at the time.  D.W. was familiar with Cordeiro

and Cocoa.  She stopped in front of Cordeiro's house, approached the front porch where

Cordeiro and Cocoa were standing, and knelt down to pet Cocoa.  While she was petting

Cocoa, D.W. talked with Cordeiro about "Girl Scout stuff."  Cordeiro squatted about one

to two feet away from D.W.  He began rubbing the top of D.W.'s thigh with his hand,

which was shaking, and said to Cocoa, "Isn't [D.W.] getting so beautiful?"  Cordeiro's

comment made D.W. feel a little uncomfortable, but also good about herself.  She

thanked Cordeiro, and he removed his hand from her thigh.  At this point, D.W. noticed

Cordeiro's penis protruding from the right side of his shorts.  He was not wearing

underwear.

D.W. became uncomfortable and backed away from Cordeiro.  Cordeiro scooted

forward and then both he and D.W. stood up.  Cordeiro pulled his penis out farther and

asked D.W. if she wanted to touch it as he grabbed her hand and pulled it toward his

penis.  D.W. pulled her hand back.  Cordeiro apologized, stating that he did not know that

what he had done would offend her, and put his penis back in his shorts.  D.W. sat with

Cordeiro in the chairs on Cordeiro's front porch and wondered whether she should tell

anyone what had happened.  After a few more minutes of discussion about the Girl

Scouts, D.W. returned to her grandparents' house.

Jose Garcia, another neighbor, happened to be watching the interaction between D.W. and Cordeiro from his front window. Garcia saw D.W. petting Cocoa while Cordeiro was standing next to her, talking with her. However he could not see what Cordeiro was doing with his hand or what happened while Cordeiro and D.W. were squatting down, because his view was blocked by a bush in Cordeiro's yard.

When D.W. returned to her grandparents' house, her grandmother thought she was behaving in an odd manner. D.W.'s grandmother asked D.W. if she was okay, and D.W. said she was. Her grandmother then asked, "Is there a problem?" In response, D.W. told her grandmother that she had been petting Cocoa in front of Cordeiro's house and that Cordeiro had exposed himself to her, asking if she wanted to touch "it." About five or ten minutes later, D.W. related the same events to her grandfather. D.W.'s grandfather telephoned the police.

San Diego Police Officer Scott Sandefur responded to the call. After speaking with D.W. and her grandparents, Officer Sandefur returned to his patrol car. At this point, Cordeiro came out of his house. When Sandefur told Cordeiro that he was being accused of indecent exposure, Cordeiro told the officer that he may have accidentally exposed himself, because he was wearing very short shorts and wasn't wearing underwear. Officers then arrested Cordeiro, who was still wearing the shorts. Cordeiro's penis was not accidentally exposed at any time while Officer Sandefur was speaking with Cordeiro, while he placed Cordeiro in the patrol car, or when Cordeiro put on a pair of jeans over his shorts.

5

Later that evening, D.W. disclosed to her grandmother that Cordeiro had grabbed

her hand when he asked her if she wanted to touch his penis. A few days later, D.W. told

her grandmother that Cordeiro had also touched her leg.

Five days later, Anne-Marie Aguilar, a social worker at Children's Hospital,

interviewed D.W. about the incident. The statements D.W. made during this videotaped

interview were consistent with her testimony at trial, except that she did not mention that

Cordeiro had grabbed her hand. In response to questioning by the prosecutor at trial,

Aguilar testified regarding Child Sexual Abuse Accommodation Syndrome (CSAAS).

Specifically, Aguilar said that children sometimes do not disclose information about an

incident right away or disclose the incident but provide more details later, and that this

behavior is known as "delayed disclosure."

2.    *Evidence of prior sex offenses*

Thirty-five-year-old Kristi B. testified that when she was 12 years old, Cordeiro's

daughter Stacie was her best friend. Kristi would visit Stacie's house, where Cordeiro

and his first wife lived, and would sometimes spend the night there. Kristi remembered

that Cordeiro would often wear only a towel while walking around the house, and that he

would often sit in a manner that exposed his genitals. One night, while she and Stacie

were sleeping in the living room of Stacie's house, Kristi awoke during the middle of the

night and discovered that her panties had been pulled down and that Cordeiro was

kneeling next to her. Cordeiro began fondling her and orally copulated her.

Kristi eventually told her mother about what had happened with Cordeiro, and the

incident was reported to authorities. When confronted by police officers about the

incident with Kristi, Cordeiro initially denied having had physical contact with her. He told an investigating officer that he had been wearing a towel and that he had to step over the girls to let the cat out. He explained that this may have been how they saw his nude body underneath the towel. Cordeiro later admitted that he had fondled and orally copulated Kristi, but said that he had been drinking at the time, and that when he drank, he could be a real "asshole."

       3.    *The defense*

Cordeiro admitted that he had touched D.W.'s hand and leg, but said that he had done so with an innocent intent, and that exposing his penis to her had occurred accidentally. Cordeiro said that he first realized he was attracted to young girls when he was stationed in Vietnam as a soldier in the late 1960's or early 1970's. He sustained his first conviction for committing a lewd act upon a child in 1982, as a result of a guilty plea arising from the incident involving Kristi. Cordeiro testified that at the time of that incident, he smoked marijuana and drank alcohol regularly, and that he also occasionally used methamphetamine and cocaine. After pleading guilty, Cordeiro was placed on probation and sought court-ordered counseling.

Cordeiro also admitted that in 1985 he incurred a second conviction for lewd conduct involving his current wife's oldest daughter, Tina, which began when Tina was 10 or 11 years old. Cordeiro said that over a period of a couple of months, he orally copulated, digitally penetrated, and fondled Tina. Cordeiro pled guilty and received an 11-year sentence. It was only after his conviction for the incidents involving Tina that Cordeiro admitted that his conduct was wrong. He served three years in prison as a result

7

of this conviction.  When he was released from prison in 1989, Cordeiro contacted Larry

Corrigan, a therapist who provides treatment for sex offenders, and began counseling.

Corrigan diagnosed Cordeiro as a pedophile.  Cordeiro admitted to Corrigan that he was a

pedophile and said he believed his sexual impulse for young girls would never go away.

Cordeiro testified that although he has not been cured of pedophilia, he has taken a

number of steps to avoid acting upon his impulses, including (1) driving past the prison in

Norco every six months, (2) attending church, (3) no longer consuming alcohol or drugs,

(4) staying away from children unless their parents are around, and (5) having his wife

with him most of the time.

With regard to the current charges, Cordeiro testified that he and Cocoa were

outside when D.W. approached them and asked why Cocoa was limping.  While D.W.

was squatting down petting Cocoa, Cordeiro knelt down and took D.W.'s hand so she

could feel the knot on Cocoa's arthritic leg, but D.W. yanked her hand away.  Cordeiro

thought D.W. pulled her hand away because she did not want to touch Cocoa's leg, but

when he looked down, he realized that he had exposed himself to D.W.  Cordeiro

apologized to D.W., moved back, and adjusted himself.  He denied that he had caressed

D.W.'s thigh or leg, or that he tried to get D.W. to touch his penis.  He admitted that he

had touched the back of D.W.'s legs, but said he had done so only in order to move her

over after he realized that she was standing on his wife's flowers.  Cordeiro denied that he

had said to Cocoa, "Isn't D.W. getting beautiful."  Rather, Cordeiro explained, he had told

Cocoa to "sit pretty."

8

Cordeiro admitted that he had lied about, or failed to acknowledge, that he fantasized about young girls when he was interviewed by probation officers and health care professionals in 1982, 1985, and 1986. He also acknowledged that he had lied to doctors in 1982 when he told them that he did not realize he had exposed himself to Kristi and his daughter. When the prosecutor asked Cordeiro whether he had ever exposed his penis to other people and other children, Cordeiro said he had not. In response to further questioning by the prosecutor, Cordeiro then admitted that he had sexually molested his nieces, Michelle and Kimberly, in the 1970's. Cordeiro had Michelle orally copulate him, and fondled and orally copulated her over a seven-year period, from the time she was nine years old until she was 16. He had also fondled Kimberly and exposed his penis to her.

The last time Cordeiro had seen a therapist for his pedophilia was 17 years prior. However, during that time, he had not reoffended, had been an active member of his church, and had been a good friend and father. He had worked as a manager for United Van Lines since 1989.

Cordeiro presented the testimony of five character witnesses. The witnesses testified that they had seen Cordeiro interact with girls between the ages of 7 and 16, after 1989, on a regular basis, and that they never saw Cordeiro engage in any inappropriate touching. They also said that Cordeiro did not appear to show any particular interest or fascination with girls in that age group.

9

III.

DISCUSSION

Cordeiro contends that the prosecutor committed four acts of misconduct during his trial, and that his attorney failed to object to this misconduct or to request that the jury be admonished regarding the prosecutor's misconduct, rendering his trial counsel's assistance ineffective. He further contends that his attorney failed to render effective assistance with regard to other evidence the prosecution presented. Cordeiro asserts that the prosecutorial misconduct and ineffective assistance of counsel rendered his trial fundamentally unfair.

A.     *Standards of review*

"A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' [Citation.]" (*People v. Espinoza* (1992) 3 Cal.4th 806, 820.) "In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1202, quoting *United States v. Agurs* (1976) 427 U.S. 97, 108.) Misconduct that falls short of rendering a trial fundamentally unfair may nevertheless violate the California Constitution, but " 'only if it "involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' [Citation.]" (*People v. Harrison* (2005) 35 Cal.4th 208, 242.)

In deciding whether a prosecutor has engaged in misconduct, the court "must determine at the threshold how the remarks would, or could, have been understood by a

10

reasonable juror." (*People v. Benson* (1990) 52 Cal.3d 754, 793.)  However, the crucial

factor in determining whether prosecutorial misconduct has occurred is the "potential

injury to the defendant." (*Ibid.*)  Misconduct is established only when the defendant

demonstrates that his right to a fair trial has been prejudiced.  (*People v. Bolton* (1979) 23

Cal.3d 208, 213-214.)

In order to preserve a claim of prosecutorial misconduct, a defendant generally

"must make a timely objection, make known the basis of his objection, and ask the trial

court to admonish the jury." (*People v. Brown* (2003) 31 Cal.4th 518, 553.)  If a

defendant fails to make a specific objection, he forfeits the issue on appeal, unless

objecting would have been futile. (*Ibid.*)  However, in cases where a defendant raises a

claim of ineffective assistance of counsel due to counsel's failure to object to the alleged

prosecutorial misconduct, as Cordeiro does, courts have reached the merits of the

misconduct claim.  (See, e.g., *People v. Cottingham* (2001) 25 Cal.4th 926, 1038.)

To prevail on a claim of ineffective assistance of counsel, a defendant must

demonstrate (1) that "counsel's representation fell below an objective standard of

reasonableness" (*Strickland v. Washington* (1984) 466 U.S. 668, 688), and (2) that "there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." (*Id.* at p. 694.)  " 'If the defendant makes an

insufficient showing on either one of these components, the ineffective assistance claim

fails.' " (*People v. Holt* (1997) 15 Cal.4th 619, 703.)  The inquiry as to counsel's

performance "must be whether counsel's assistance was reasonable considering all the

circumstances." (*Strickland v. Washington, supra,* 466 U.S. at p. 688.)  A reasonable

11

probability is " 'a probability sufficient to undermine confidence in the outcome.' " (*In re Cordero* (1988) 46 Cal.3d 161, 180, quoting *Strickland v. Washington, supra,* at pp. 693-694.)

B.    *Testimony by D.W.'s grandmother and grandfather as to what D.W. told them about the incident*

Cordeiro contends that the prosecutor's eliciting hearsay testimony from D.W.'s grandmother, Margaret, and her grandfather, David, about what D.W. told them about the incident later in the evening on the day it occurred, as well as several days later, amounted to prosecutorial misconduct. According to Cordeiro, the trial court had not ruled on whether or not it would allow testimony regarding the statements D.W. made to Margaret later on the night of the incident, when she told her grandmother that Cordeiro had grabbed her hand and pulled it toward his penis, and that the court had not made a ruling regarding D.W.'s statement several days later that Cordeiro had touched her leg. The prosecutor nevertheless questioned Margaret and David about what D.W. had told them, without objection from the defense.

Although Cordeiro has forfeited any direct challenge to this line of questioning on the grounds of prosecutorial misconduct, since his trial counsel failed to object, we nevertheless consider the merits of this argument in the context of Cordeiro's assertion that counsel's failure to object constituted ineffective assistance of counsel.[1]

---

[1]    The same applies to Cordeiro's other claims of prosecutorial misconduct. We thus consider the merits of each of Cordeiro's contentions in turn.

During a hearing regarding the admissibility of D.W.'s out-of-court statements, the court tentatively ruled that the statements D.W. made to Margaret 10 minutes after the incident were admissible. The following discussion occurred:

> "The Court: All right. The next issue we talked about was admission of hearsay statements. The People have indicated they will be offering a—what they consider a spontaneous declaration to the grandparents to the police [sic]. There's a third one on a videotape. It's a separate consideration, I think, but the first two would be spontaneous declarations to the police and to the grandparents. [¶] Am I correct, Ms. Weismantel?
>
> "[Prosecutor]: Yes, Your Honor. They would be offered as spontaneous statements to Margaret Wear, which is her grandmother, and also under a fresh complaint theory to Margaret Wear, her grandmother; and David Wear, the alleged victim's grandfather.
>
> "The Court: Okay. Not to the police, then. We're talking about strictly the grandparents, and separately would be the Children's Hospital videotape?" . . . [¶] . . . Okay. . . . And tentatively the Court has indicated that it would rule to admit those statements to the grandmother, I understand, within about ten minutes of the incident itself. . . ."

It appears that the trial court did not address the prosecutor's contentions that the statements D.W. made to her grandmother and grandfather after the initial disclosure were admissible under the fresh complaint doctrine, or pursuant to Evidence Code section 1360.

D.W. testified on direct examination that when she returned to her grandparents' house after the incident, she told her grandmother what had happened, and then told her grandfather. On cross-examination, D.W. said she had initially told her grandmother that Cordeiro touched her hand, but that she had not mentioned that Cordero had touched her

13

thigh during that conversation. D.W. also testified on cross-examination that she told her grandfather that Cordeiro had touched her hand.

On direct examination, the prosecutor elicited testimony from both Margaret and David regarding what D.W. had told each of them about the incident, both before and after she was interviewed by the police. Margaret testified that D.W. first told her that Cordeiro had exposed himself and asked her whether she wanted to touch his penis. After the police left, D.W. told Margaret that Cordeiro had grabbed her hand and asked if she wanted to touch his penis. On cross-examination, Margaret said that D.W. had not initially told her about Cordeiro having grabbed her hand, even in response to Margaret's questions about inappropriate touching. She also testified on cross-examination that D.W. told her about the leg rubbing a few days after the incident.

David testified on direct examination that D.W. told him that Cordeiro had exposed his penis and asked her to touch it. On cross-examination, David testified that D.W. never mentioned to him that Cordeiro had touched her hand or her leg.

The prosecutor's eliciting testimony from Margaret and David regarding what D.W. told them about the incident "did not constitute an egregious pattern of misconduct and did not infect the trial with unfairness." (*People v. Prieto* (2003) 30 Cal.4th 226, 260.) While the prosecutor should have obtained a more definitive ruling on the matter before posing the questions at issue in view of the previous discussion between the court and counsel, the failure to do so prior to asking Margaret and David what D.W. had told them after her initial disclosure was not prejudicial.

14

When Cordeiro testified, he admitted that he had touched D.W.'s leg and hand. The fact that Cordeiro had touched D.W. was therefore not in contention. The issue the jury had to determine with regard to the touching was whether Cordeiro possessed the requisite criminal intent, not whether the touching had or had not occurred. Evidence tending to establish that Cordeiro did have the requisite intent included D.W.'s testimony that Cordeiro asked her whether she wanted to touch his penis. Margaret also testified that D.W. told her that Cordeiro had asked her if she wanted to touch his penis. This testimony was admissible pursuant to the court's earlier ruling because it referred to what D.W. told her grandmother immediately after the incident. Cordeiro does not challenge this testimony on appeal. The only additional information gleaned from Margaret's testimony about what D.W. told her *after* D.W.'s initial description of the event was that Cordeiro had grabbed D.W.'s hand and that he had touched her leg—both acts that Cordeiro admitted. Thus, even if Margaret's testimony about D.W.'s later statements was erroneously admitted, it was merely cumulative to evidence that was properly before the jury, some of which was presented by the defense. Similarly, David's testimony was merely cumulative to the portion of Margaret's admissible testimony about what D.W. initially told her, since D.W. did not tell her grandfather anything more than what she had already told her grandmother. The prosecutor's eliciting this testimony did not render the trial fundamentally unfair, nor did it amount to the use of a deceptive or reprehensible method to persuade the jury of Cordeiro's guilt.

Similarly, Cordeiro's claim that his counsel was ineffective for failing to object to this testimony fails. Cordeiro's attorney may have wanted to allow D.W.'s grandmother

15

to testify regarding when D.W. told her about Cordeiro grabbing her hand and touching her thigh because that testimony contradicted D.W.'s testimony on cross-examination that she had told her grandmother about the hand-grabbing when she initially disclosed the incident. Alternatively, counsel may have believed that D.W.'s testimony about Cordeiro having touched her was credible, and knew that Cordeiro intended to admit the touching when he testified. Thus, there could have been a tactical decision behind defense counsel's failure to object to this testimony. "The choice of when to object is inherently a matter of trial tactics not ordinarily reviewable on appeal." (*People v. Frierson* (1991) 53 Cal.3d 730, 749.)

Further, for the reasons discussed above with regard to the issue of prosecutorial misconduct, there is no reasonable probability that absent the failure to object to this testimony, the outcome of the trial would have been different. D.W. testified that Cordeiro rubbed her thigh and pulled her hand toward his penis after he exposed himself to her. Cordeiro admitted that he had touched D.W.'s leg and pulled D.W.'s hand, albeit under circumstances different from those D.W. described. Even if the challenged testimony of D.W.'s grandparents had been excluded pursuant to a defense objection, the jury still would have heard that Cordeiro had touched D.W.'s leg and hand. The grandparents' testimony that D.W. told them that Cordeiro had touched her hand and leg, even if improperly admitted, was ultimately harmless.

C.    *Testimony regarding Cordeiro's sexual misconduct with his nieces*

Prior to trial, the prosecutor moved to admit evidence of uncharged lewd acts Cordeiro committed against his niece, Michelle, that occurred throughout the 1970's. At

16

the in limine hearing on the motion, the trial court indicated that its tentative ruling was to allow the prosecution to introduce evidence of the 1982 prior conviction pertaining to Kristi under Evidence Code section 1108, but to disallow the 1970's prior acts evidence involving Michelle on the ground that this evidence was more prejudicial than probative.[2] At the same hearing, the court addressed the prosecutor's request to introduce in evidence the 1982 and 1985 convictions, and the incidents of sexual misconduct involving Michelle during the 1970's, to impeach Cordeiro if he were to testify. The court tentatively ruled that all of those incidents would be admissible "if the defendant testifies."[3] Cordeiro's counsel sought clarification of the trial court's ruling, and the following exchange occurred:

> "[Defense Counsel]: Your Honor, it was my understanding that his convictions would be used to impeach him, but I thought the Court was still excluding the '72 through '75 prior bad acts.
>
> "The Court: Yeah, Well, actually—okay. Let me clarify. I think the Court's reasoning is the '82 and '85 are convictions and those would be strictly felony impeachment convictions. Normally I

---

[2]    The court said, "[I]t is the Court's tentative to admit the 1982 9-year-old's testimony and any necessary corroboration for that under [Evidence Code section] 1108, but to exclude under [Evidence Code section] 352 as more prejudicial than probative the '72-to '79 incidents that have been offered. And this would be tentative. And of course, I have to look at the evidence as it unfolds in the trial before I can really make a final determination."

[3]    With regard to impeachment, the court stated: "Finally, the People have offered that they would wish to impeach the defendant on credibility issue [sic], if he testifies, with a 1985 conviction involving a molest, a 1982 conviction, and then with—with actions from '72 to '79, which would be not convictions but incidents that were related later by a niece who had been molested. [¶] And I've indicated tentatively that all of that would be admissible if the defendant testifies."

17

would sanitize a same or similar or inflammatory conviction if it's just offered on a straight felony conviction theory, but here it would seem to me that all three of those areas—the '85 incident, the '82, and '72 to '79 incidents—would be admissible to impeach more on the actions than they would be on the felony convictions. [¶] So if—in other words, I think it's fair game for cross-examination to ask him whether he's committed any same or similar acts if he takes the stand. And then as a separate consideration would be the convictions for the same thing. So I think the whole thing comes in one way or the other." [4]

In arguing that the court should not allow the prosecutor to impeach Cordeiro with evidence regarding the 1970's misconduct because that evidence was inflammatory and cumulative to the evidence of his convictions, defense counsel stated:

"So I'd ask the Court not to go into the '72 through '75 prior bad acts. *I don't suspect Mr. Cordeiro would say, you know, I've only ever molested two people: the '82 and '85 victims. And obviously if he said something like that, then I think they would become relevant,* but I think with the two convictions that this would be enough." (Italics added.)

After hearing the prosecutor's response,[5] the court concluded that it would wait to see what developed at trial. The court stated, "Then on the '72-to-'79 incident, at the point at which the People feel they should have a right to go into that, let me know and

---

4    The trial court repeatedly referred to the prior acts of sexual misconduct from the 1970's as having occurred between 1972 and 1979 while defense counsel repeatedly referred to the acts as having occurred between 1972 and 1975. It appears from the record that Cordeiro molested Michelle between 1972 and 1979.

5    The prosecutor responded in part that she would be offering only the evidence pertaining to Michelle, one of the two nieces Cordeiro molested during the 1970's, because the other niece, Kimberly, suffers from developmental disabilities and might not make a credible witness.

we'll go to sidebar rather than get ourselves tripped up here." The prosecution did not

bring up the 1970's misconduct involving Michelle during its case-in-chief.

The issue of Cordeiro's prior sexual misconduct arose again near the close of the

prosecution's case when Cordeiro's counsel asked for a summary of what evidence the

prosecution would be allowed to use to impeach Cordeiro if he were to take the stand.

The court replied:

> "Well, it [evidence of the 1985 conviction] would come in just as
> cross-examination. In other words, I'm guessing from the offer that
> was made during the defense opening statement that basically he had
> a problem that he's overcome. In other words, that's what the
> defense basically is. And that he's had rehabilitation, and that it's
> pretty old, the things that he did in the past. [¶] *So I think because
> of that it makes it relevant for the People to go into the extent of
> what the problem was in the past to see whether or not it's
> reasonable that he overcame it. Because of that, I think that the
> People should be allowed to talk about the facts of the prior
> incidents.* And now it appears to me they could go back even to the
> '72 to '79 [*sic*] and talk about that." (Italics added.)

Defense counsel again objected on that basis that the evidence of prior sexual

misconduct, particularly evidence going to the uncharged misconduct from the 1970's,

was highly inflammatory and not necessary in light of the fact that the court was going to

allow the prosecutor to present evidence of the 1982 and 1985 convictions. The court

expressed its concern that Cordeiro's theory of defense, i.e., that he had had a problem in

the past, but had been rehabilitated, raised a question as to whether allowing in only the

1982 and 1985 convictions would give the jury a misleading impression that his sexual

misconduct had been transitory:

> "But when you add in the '72 to '79, you get a really long spread of
> time then. And we're talking cross-examination after he proffers the

19

defense that he had a problem, it was a defined problem, it's done with, he paid the price, he got rehabilitation, he's done. [¶] And it seems to me then the People should be able to talk about the problem: Is it reasonable it was just situational and only lasted three years and then it was done?  So that's what bothers me. [¶] I haven't heard his testimony yet though, so I really can't be absolutely certain until I hear it.  So I told you I'd reserve before.  I'm more inclined to let it in after the opening statement, but okay.  I'm willing to say let me listen again, but I think there's a possibility that it would still be fair for the People to cross-examine on the '72 to '79 as they have requested from the beginning.  [¶] So in concrete terms right now, the '72 to '79 is a probably, but not yet until I hear his testimony.  The '82 and '85 facts are admissible."

A short time later, the prosecutor sought clarification, asking, "And then from the Court's—it's possible that I can go into the facts of the '72 to '79?"  The court responded, "Yeah.  Just don't do it before we go to sidebar because at that point I would have to do a 352 analysis to see how probative versus how prejudicial it would be.  Okay."

Cordeiro testified in his own defense.  On direct examination, he admitted that he had purposely exposed himself to his daughter and Kristi, and that he had molested Tina.6 He said that he had exposed himself to D.W. by accident.  During cross-examination, the following exchange occurred regarding Cordeiro's history of exposing himself to young girls:

"Q.  Isn't it true that you enjoy exposing your penis?

"A.  No.

"Q.  Well, you exposed it to Kristi [ ], correct?

"A.  Uh-huh.

---

6      This conduct related to the 1982 and 1985 prior convictions, the admissibility of which the court and the attorneys had discussed and resolved.

"Q. You exposed your penis to Stacie, your daughter; correct?

"A. Yes.

"Q. You exposed your penis to Tina; correct?

"A. Yes.

"Q. Have you exposed your penis to other people?

"A. No.

"[Defense Counsel]: Objection, Your Honor.

"The Court: Overruled.

"[Prosecutor]: Other children?

"A. No.

"Q. Isn't it true you've exposed your penis to Michelle [ ]?

"[Defense Counsel]: Objection, Your Honor.

"The Court: Overruled. You may answer.

"A. Yes.

"[Prosecutor]: And Michelle [ ] was a child; correct?

"A. Yes."

Without further objection, the prosecutor elicited Cordeiro's testimony that he had

Michelle masturbate and orally copulate him and that he had fondled Michelle's vaginal

area and orally copulated her from the early 1970's until the late 1970's. Cordeiro also

testified that he had fondled Kimberly and exposed his penis to her. Cordeiro further

21

admitted that he had lied to police, a probation officer, and doctors about having molested Michelle and Kimberly.

Cordeiro asserts that the prosecutor's questions regarding his prior sexual misconduct with Michelle and Kimberly amounted to prosecutorial misconduct because the prosecutor posed these questions without first seeking a sidebar conference, as the trial court had requested.[7]  We agree that the prosecutor should have requested a sidebar conference to discuss the matter with the court before asking Cordeiro questions about his having exposed himself to Michelle and Kimberly.  However, considering the court's prior indications that it was inclined to allow the prosecution to introduce evidence regarding Cordeiro's uncharged sexual misconduct from the 1970's if Cordeiro were to testify, Cordeiro's denial that he had exposed himself to anyone other than Kristi, Stacie and Tina, and the trial court's overruling of defense counsel's objection when the prosecutor began to ask Cordeiro about exposing himself to Michelle, the prosecutor's questioning Cordeiro about these prior acts did not amount to misconduct.[8]

One can infer from the fact that the trial court overruled two defense objections to this line of questioning that the court weighed the potential prejudice of the anticipated

---

[7]    Cordeiro does not contend that the prosecutor posed the questions at issue for the sole purpose of eliciting testimony to be contradicted.  (See *People v. Lavergne* (1971) 4 Cal.3d 735, 743-744.)

[8]    The fact that we do not reverse on the ground that the prosecutor elicited this testimony without first seeking a sidebar conference, as the trial court had requested, does not mean that we approve of the manner in which the prosecutor handled this matter.  In the future, the prosecutor must comply with the rulings of the court and remain aware of the state of the admitted evidence.

evidence against its probative value, without requiring a sidebar conference. The trial court knew that evidence of Cordeiro's sexual misconduct with his nieces contradicted Cordeiro's testimony that he had never exposed himself to anyone else. Further, Cordeiro's attorney had conceded that if Cordeiro were to deny that he had molested anyone other than the victims of his 1982 and 1985 convictions, then evidence of the prior uncharged sexual misconduct from the 1970's would become relevant. This is essentially what occurred during Cordeiro's cross-examination.

The prosecutor's failure to seek a sidebar conference prior to eliciting testimony about the 1970's sexual misconduct did not unfairly prejudice Cordeiro. The court had previously indicated that it was inclined to admit *all* of the evidence pertaining to the 1970's sexual misconduct, but said that it would wait to hear Cordeiro's testimony so that it could better determine whether the evidence should be excluded pursuant to Evidence Code section 352. Once Cordeiro denied that he had purposely exposed his penis to any girls other than Kristi, Stacie and Tina, the potential prejudice to Cordeiro from introducing evidence of his having exposed himself to his nieces in the 1970's was outweighed by the probative value of this evidence to impeach Cordeiro.

While there is no question that the fact that Cordeiro had exposed himself to his nieces was admissible to impeach Cordeiro's denial that he had ever exposed himself to anyone other than Kristi, Stacie and Tina, the breadth of the prosecutor's questions went beyond what was necessary to impeach Cordeiro on this specific point. However, when Cordeiro denied that he had exposed himself to anyone else, it is likely that the trial court determined that its tentative decision to allow in evidence of Cordeiro's prior sexual

23

misconduct with his nieces was correct, and that the prosecutor should be allowed to cross-examine him about those acts. The court had stated earlier that if the jury was allowed to hear only about Cordeiro's prior convictions in 1982 and 1985, the jury might be left with a misimpression of the nature and duration of Cordeiro's problem and whether it was reasonable to believe he had been rehabilitated. The court had indicated earlier that it would probably allow in *all* of the evidence regarding Cordeiro's prior sexual misconduct from the 1970's. There is no indication in this record that the trial court would have ruled otherwise if the prosecutor had requested a sidebar conference to discuss the matter before posing the questions at issue.

Under these circumstances, we reject Cordeiro's claim that his attorney was ineffective for failing to object to this line of questioning and to seek a sidebar conference, as the court had previously requested. Cordeiro's counsel did object when the prosecution first began asking about other incidents of sexual misconduct, and specifically objected when the prosecutor asked Cordeiro whether he had exposed himself to Michelle. After the court overruled these objections and instructed Cordeiro to answer the question regarding Michelle, defense counsel may have reasonably concluded that it would be futile to interrupt the line of questioning with additional objections or with a request for a sidebar conference, and that doing so might be perceived in a negative light by the jury. "In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions. [Citations.]" (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)

24

Because there are conceivable tactical reasons for counsel's failure to raise further

objections to this evidence, we do not find counsel's performance deficient in this regard.

D.     *Questioning regarding Cordeiro's shorts*

During the prosecution's case-in-chief, the arresting officer testified about the

shorts Cordeiro was wearing at the time of his arrest, and stated that Cordeiro's penis was

not accidentally exposed at any time while the officer was placing Cordeiro under arrest,

when he placed Cordeiro in the patrol car, or when Cordeiro put on a pair of jeans over

the shorts.  The officer did not seize the shorts as evidence, and admitted that his failure

to do so was probably a mistake.

Cordeiro testified that he had inadvertently exposed himself to D.W. because he

had been wearing short shorts with no underwear.  This is the same thing Cordeiro told

the arresting officer at the time of his arrest.  During cross-examination of Cordeiro, the

following exchange occurred, without objection:

> "[Prosecution]:  Now, let's talk about the shorts in this case.  Did you
> bring them to court?
>
> "A:  No.
>
> "Q:  So you've known about this trial, and you did not bring the
> shorts that you were wearing to court?
>
> "A:  No."

Cordeiro complains that the prosecutor committed misconduct by suggesting that

Cordeiro had the burden to produce the shorts, and that he was willfully suppressing

evidence.  Cordeiro has forfeited any argument regarding this line of questioning because

his trial counsel did not object.  However, because Cordeiro raises this claim in the

25

context of his assertion that counsel's failure to object constituted ineffective assistance, we reach the merits of his contention.

The prosecutor should not have asked Cordeiro why he did not bring the shorts to court. Her questioning in this regard implied that Cordeiro bore the burden to produce that evidence. However, this conduct did not infect the trial with such unfairness as to render Cordeiro's conviction a denial of due process. It also does not appear to us that this questioning constituted a "deceptive or reprehensible" method to persuade the jury of Cordeiro's guilt.

We reject Cordeiro's contention that trial counsel's failure to object to the prosecutor's questions pertaining to the shorts constituted ineffective assistance of counsel. We need not address whether counsel's performance was deficient, because there is no reasonable probability that if counsel had objected to the prosecutor's questions regarding Cordeiro's shorts, the result of the proceeding would have been different. The prosecutor properly introduced a booking photograph of Cordeiro wearing the shorts in question. D.W., the arresting officer, and Cordeiro all testified regarding what the shorts looked like. Further, the arresting officer admitted that he should have seized the shorts on the night of the arrest, thus implying that it was not Cordeiro's burden to produce the shorts as evidence. In view of the strength of the case against Cordeiro, we are confident that the result of the proceeding would not have been different if Cordeiro's counsel had objected to the prosecutor's improper suggestion that Cordeiro should have produced the shorts. Accordingly, Cordeiro's claim of ineffective assistance of counsel fails.

26

E.    *Closing argument*

During closing argument, the prosecutor stated:

> "[Cordeiro] [g]oes to prison, gets out in three years. He's out in the community again. Does he tell his parole officer: Look, I'm still a child molester. I still have these urges for little girls. I still cannot control myself. Doesn't tell him that."

Cordeiro contends that these statements amounted to prosecutorial misconduct because the prosecutor was commenting on matters as to which no evidence had been introduced at trial. According to Cordeiro, the prosecutor was "attempting to smuggle in by inference claims [t]hat could not be argued openly and legally" by "improperly suggesting that appellant was hiding his urges from his parole officer after he had been released from prison." Cordeiro asserts that this undermined his defense—i.e., that he had been in a state of remission for almost 15 years—and raised an inference of lack of credibility on Cordeiro's part.

Cordeiro testified that after his release from prison in 1989, he was diagnosed as a pedophile and obtained extensive counseling from Larry Corrigan. On cross-examination, Cordeiro conceded that he had not admitted to his probation officers or doctors in 1982, 1985, or 1986 that he was attracted to young girls. However, the prosecutor did not elicit similar testimony about what Cordeiro either told or withheld from his parole officer in 1989, which is the time period to which the prosecutor referred in the challenged portion of the closing argument.

A prosecutor may not go beyond the evidence in making a closing argument to the jury. (*People v. Benson* (1990) 52 Cal.3d 754, 794.) The prosecutor should not have

27

commented on what Cordeiro did or did not tell his parole officer after his release from

prison in 1989 because there was no evidence elicited during the trial pertaining to what

Cordeiro did or did not tell his parole officer during that time period. Nevertheless, the

prosecutor's misstatement did not prejudice Cordeiro, in light of the other evidence

presented at trial. There was abundant evidence going to Cordeiro's credibility on issues

related to his sexual misconduct with young girls. There is no reason to believe that the

challenged comment rendered Cordeiro's trial fundamentally unfair.

Further, we cannot conclude that Cordeiro's counsel's performance in failing to

object to this portion of the prosecution's closing argument was deficient. Counsel may

have had a tactical reason for not objecting during closing argument. We thus reject

Cordeiro's claim that trial counsel rendered ineffective assistance in failing to object to

the prosecutor's statements regarding what Cordeiro did not tell his parole officer in

1989. (See *People v. Frierson, supra,* 53 Cal. 3d at p. 749 ["The choice of when to

object is inherently a matter of trial tactics not ordinarily reviewable on appeal"].)

F.    *Additional claims of ineffective assistance of counsel*

In addition to his claims of ineffective assistance of counsel regarding the alleged

incidents of prosecutorial misconduct, Cordeiro contends that his counsel was ineffective

in (1) failing to object to and seek an Evidence Code section 402 hearing regarding

statements D.W. made to her grandmother, after D.W. had spoken to the police, to the

effect that Cordeiro had touched her hand and leg, and (2) failing to object to testimony

by Anne-Marie Aguilar regarding CSAAS. According to Cordeiro, Aguilar had not been

qualified as an expert in the mental health field prior to offering this testimony, and did

28

not provide sufficient foundation to support her "opinion testimony." We reject both contentions.

Assuming that testimony regarding what D.W. told her grandmother both hours and days after the incident would have been admissible pursuant to Evidence Code section 1360, which provides that out-of-court hearsay statements about sexual abuse made by children under 12 years of age are admissible under certain circumstances,[9] Cordeiro contends that his counsel should have objected so that an Evidence Code section 402 hearing could have been conducted to assess the reliability of D.W.'s statements. Cordeiro's attorney's failure to object was not prejudicial because once D.W. and Cordeiro both testified at trial that Cordeiro had touched her hand and her leg, the

---

[9]    Evidence Code section 1360 provides in relevant part:

"(a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse . . . performed with or on the child by another, . . . is not made inadmissible by the hearsay rule if all of the following apply: [¶] (1) The statement is not otherwise admissible by the statute or court rule. [¶] (2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability. [¶] (3)The child either: [¶] (A) Testifies at the proceedings. [¶] (B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child.

"(b) A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party the intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement.

"(c) For purposes of this section, 'child abuse' means an act proscribed by Section 273a, 273d, or 288.5 of the Penal Code, or any of the acts described in Section 11165.1 of the Penal Code, and 'child neglect' means any of the acts described in Section 11165.2 of the Penal Code."

The continuing viability of this section is in question after the United States Supreme Court's decision in *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*).

fact that Margaret testified that D.W. had told her that Cordeiro had touched her hand and leg was of little significance. Cordeiro admitted that he had touched D.W.'s leg and grabbed her hand. He said he touched D.W.'s leg only in order to get her to move off of his wife's flowers, and that he grabbed her hand to have her feel Cocoa's arthritic leg. Because there was no conflicting testimony about the fact that Cordeiro touched D.W.'s hand and leg, the jury had only to determine whether Cordeiro had touched D.W. with the requisite intent. The fact that D.W. told her grandmother that Cordeiro had touched her hand and leg some time after her initial disclosure of the incident would not have affected the jury's determination of Cordeiro's intent during his interaction with D.W.

Cordeiro also contends that his attorney should have objected to Aguilar's testimony regarding CSAAS and delayed disclosure. Cordeiro asserts that "the prosecution made an insufficient showing that Aguilar had the training or expertise to be able to adequately articulate the behavioral symptoms of CSAAS as a mental health professional." He asserts that even if Aguilar had been qualified as an expert, his counsel should have requested that the court instruct the jury with CALJIC No. 10.64, a standard limiting instruction intended to assure that the jury gives expert testimony regarding CSAAS the proper weight.

Counsel's failure to object to this testimony or to request a limiting instruction did not constitute ineffective assistance, because counsel may have had a strategic reason for not doing either. Aguilar provided very little testimony regarding the issue of delayed

---

However, because D.W. testified at trial and Cordeiro had the opportunity to cross-

disclosure. In fact, the court sustained defense counsel's objection when the prosecutor first asked Aguilar whether there might be a reason why children sometimes provide more details regarding a sexual molestation well after the incident at issue. Aguilar then answered foundational questions about her training with regard to delayed disclosure, and eventually defined the term. However, she did not offer an opinion as to whether D.W.'s behavior was consistent with the concept of delayed disclosure, nor did she discuss the matter further.[10] It is possible that defense counsel concluded that the prosecution had gained very little from this limited testimony and chose not to highlight Aguilar's testimony by posing objections or by requesting a specific instruction pertaining to CSAAS evidence.

Even if the jury should have been instructed with CALJIC No. 10.64, it is not reasonably probable that the jury would have reached a different outcome if the trial court had given the instruction. The testimony in question involves the statements D.W. made to her grandmother that Cordeiro had grabbed her hand and touched her leg. As noted above, both D.W. and Cordeiro testified that he had touched D.W.'s hand and leg. The fact that D.W.'s later statements to her grandmother about the touching may have been consistent with delayed disclosure seen in other victims of sexual abuse offers very little,

---

examine her, there is no *Crawford* issue in this case.

[10]    While discussing whether to give a jury instruction regarding expert testimony, the court and the attorneys agreed that Aguilar had not offered an expert opinion, but had testified as to her background and training, her interview with D.W., and her experience in conducting interviews with children.

31

if any, additional evidence regarding the nature of the touching, and does not go to the issue of Cordeiro's intent in touching D.W. Thus, Aguilar's testimony defining delayed disclosure was of little significance in this trial.

G.    *Cumulative error*

Cordeiro asserts that even if no single error requires reversal, the cumulative effect of the claimed errors was prejudicial and requires reversal of the judgment. While there were several missteps by the prosecutor in this case, we have determined that none of the challenged conduct amounted to a due process violation. With regard to Cordeiro's claims of ineffective assistance of counsel, we have determined either that counsel's assistance was not deficient, or that any potential deficiency in counsel's failures to object was not prejudicial because the result of the trial would not have been different even if counsel had made the objections. We therefore conclude that neither the individual nor the cumulative effect of any alleged errors requires reversal, and that Cordeiro received a fundamentally fair trial.

IV.

DISPOSITION

The judgment is affirmed.

_____

AARON, J.

WE CONCUR:

_____

HALLER, Acting P. J.

_____

McINTYRE, J.

F I L E D
Clerk of the Superior Court

OCT 2 9 2007

By:_____Deputy
R. SCHACH

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

IN RE THE PETITION OF:                          )   HC 19093
                                                )   SCD 181044
DEREK CORDEIRO,                                 )
                                                )
            Petitioner.                         )   ORDER DENYING PETITION
                                                )   FOR WRIT OF HABEAS CORPUS
                                                )
                                                )

_____

    THIS COURT, HAVING READ AND CONSIDERED THE PETITION FOR WRIT OF
HABEAS CORPUS, AND THE FILE IN THE ABOVE CAPTIONED MATTER, FINDS:

    On January 12, 2005, the Court sentenced Petitioner to the total term or 85 years to life
for two counts of lewd and lascivious acts upon a minor child (Penal Code § 288(a)), one count
of indecent exposure (Penal Code § 314(1), one count of child annoyance (Penal Code §
647.6(c)(2)), one prior lewd act upon a child conviction and two strike priors. Petitioner filed a
timely appeal, but on April 27, 2006, the Fourth Appellate District, Division One, Court affirmed
the judgment in case D045966.

    Now, more than one year later, Petitioner has filed the present Petition for Writ of Habeas
Corpus, asking the Court to grant him a new trial. Petitioner cites three grounds for the granting
of this request: (1) The above-referenced sentence was illegally enhanced with prior convictions,
(2) Petitioner received ineffective assistance of counsel through various alleged acts and/or
omissions, and; (3) The cumulative errors of counsel deprived Petitioner of effective assistance.

1    The Court denies this Petition for the following reasons:

2    Petitioner complains the sentencing court exceeded its jurisdiction by using prior
3    convictions from 1982 and 1985 because he was not told and/or advised at the time that by
4    pleading guilty to each of these offenses that either one could also be used to enhance the
5    sentence for an offense he would commit years later. He complains that by not advising him that
6    these convictions could be used in the future there was an implied promise not to use them.
7    Petitioner also claims it was a breach of these agreements to use the convictions in CR 59299
8    and CR 77137 to enhance a later sentence because he was not advised of this potential
9    consequence.

10    Petitioner is in error regarding the law in this situation.

11    Basically, Petitioner complains that when he pled guilty to the earlier offense, he had no
12    way to foresee the consequence that it would increase his punishment for any offenses
13    committed later in his criminal career.

14    Regarding this issue, the California Supreme Court said in People v. Tuggle (1991) 232
15    Cal.App.3d 147, 155, "In response to the defendant's argument that it was unfair to allow
16    enhancements to be predicated on matters which the defendant did not know the significance of
17    at the time of the prior proceeding, the court stated: "The law regularly requires persons to suffer
18    the consequences of their actions, even though they had not or could not foresee those
19    consequences. . . . 'Of course the admission concerning the residential nature of the burglary was
20    made without the knowledge that it could one day result in an enhanced sentence for later
21    crimes. That is true, however, of every guilty plea to a charge of felony: it is seldom entered in
22    anticipation of the commission of future crimes. Nevertheless if there are subsequent crimes, in
23    most instances there will be enhanced punishment.'" (People v. Guerrero (1988) 44 Cal.3d 343,
24    355-356).

25    Moreover, it has been held that "In the context of habitual criminal statutes, 'increased
26    penalties for subsequent offenses are attributable to the defendant's status as a repeat offender
27    and arise as an incident of the subsequent offense rather than constituting a penalty for the prior
28    offense'" People v. Jackson (1985) 37 Cal.3d 826, 833; People v. Sipe (1995) 36 Cal.App.4[th]
29    468, 479.

30    When a criminal defendant chooses to plead guilty, both the United States and California

1    Supreme Courts have required that the defendant be advised on the record that, by pleading, the
2    defendant forfeits the constitutional rights to a jury trial, to confront and cross-examine the
3    People's witnesses, and to be free from compelled self-incrimination. (Boykin v. Alabama (1969)
4    395 U.S. 238; In re Tahl (1969) 1 Cal. 3d 122.) In addition, the California Supreme court has
5    required, as a judicially declared rule of state criminal procedure, that a pleading defendant also
6    be advised of the direct consequences of his plea. (People v. Barella (1999) 20 Cal. 4th 261, 266;
7    Bunnell v. Superior Court (1975) 13 Cal. 3d 592, 605.)

8          However, if the consequence is only collateral, no advisement is required.

9          There is no authority holding that a prior serious felony conviction enhancement pursuant
10   to section 667, subdivision (a) cannot be imposed because the defendant had not been advised,
11   prior to pleading in an earlier case, that his conviction could be used to enhance a future sentence
12   should he re-offend. In such cases, the appellate courts have held that the "possible future use of
13   a current conviction is not a direct consequence of the conviction." (People v. Bernal (1994) 22
14   Cal. App. 4th 1455, 1457; accord, People v. Crosby (1992) 3 Cal. App. 4th 1352, 1355, as cited
15   in People v. Gurule (2002) 28 Cal.4th 557, 634-635.)

16         Thus, Petitioner is incorrect when he claims that his plea bargain was breached because
17   he was not informed that this conviction could be used to enhance future sentences. It is
18   Petitioner who caused the problem when he re-offended after the conviction in those two cases,
19   causing his latest sentence to be enhanced because he was a repeat offender.

20         Regarding Petitioner's claims that he received ineffective assistance of counsel, a large
21   portion of the 33-page unpublished appellate opinion in case D045966 dealt with that same
22   general complaint.

23         The general rule is that habeas corpus cannot serve as a substitute for an appeal, and that
24   matters that "could have been, but were not, raised on a timely appeal from a judgment of
25   conviction" are not cognizable on habeas corpus in the absence of special circumstances
26   warranting departure from that rule. In re Clark (1993) 5 Cal.4th 750, 765 [quoting In re Dixon
27   (1953) 41 Cal.2d 756, 759]; In re Walker (1974) 10 Cal.3d 764, 773. In general, habeas corpus
28   also cannot serve as a second appeal, and matters that were raised and rejected on appeal are not
29   cognizable on state habeas corpus in the absence of special circumstances. In re Huffman (1986)
30   42 Cal.3d 552, 554-55; In re Terry (1971) 4 Cal.3d 911, 927.)

1    A Petitioner in habeas corpus bears the burden of proving the facts upon which he bases

2 his claim for relief. In re Riddle (1962) 57 Cal.2d 848, 852. Every Petitioner, even one filing in

3 pro per, must set forth a prima facie statement of facts which would entitle him to habeas corpus

4 relief under existing law. In re Bower (1985) 38 Cal.3d 865, 872. Vague or conclusory

5 allegations do not warrant habeas relief. People v. Duvall (1995) 9 Cal.4th 464, 474. The

6 petitioner then bears the burden of proving the facts upon which he bases his claim for relief.

7 Riddle, supra, at 852. Petitioner's assertions must be corroborated independently by objective

8 evidence. In re Alvernaz (1992) 2 Cal.4th 924, 933. The petition should include copies of

9 "reasonably available documentary evidence in support of claims, including relevant . . .

10 affidavits or declarations." Duvall, supra, at 474.

11    It should be noted that, while Petitioner makes certain allegations and then refers to

12 various documents as verification, he has failed to provide copies of that cited material and, as

13 noted above in the quotation from the Duvall case, the Court is not obligated to seek out that

14 evidence by itself.

15    To show that counsel was ineffective, Petitioner must show (1) his counsel's

16 representation was deficient in that it "fell below an objective standard of reasonableness . . .

17 under prevailing professional norms," and (2) his counsel's deficient performance prejudiced his

18 defense. Strickland v. Washington (1984) 466 U.S. 668, 688; People v. Ledesma (1987) 43

19 Cal.3d 171.)

20    The first prong is reviewed under a standard of deferential scrutiny. (Strickland, supra, at

21 689; Ledesma, supra, at 216.) Counsel is given the benefit of a strong presumption that his or

22 her conduct fell within the "wide range of reasonable professional assistance." (Id.) "A fair

23 assessment of attorney performance requires that every effort be made to eliminate the distorting

24 effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

25 evaluate the conduct from counsel's perspective at the time." In re Marquez (1992) 1 Cal.4th 584,

26 603, citing Strickland, supra, at 689.

27    "To establish ineffective assistance of counsel under either the federal or state guarantee,

28 a defendant must show that counsel's representation fell below an objective standard of

29 reasonableness under prevailing professional norms, and that counsel's deficient performance

30 was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result

ORDER - 4

1   would have been more favorable to the defendant." (<u>Ledesma</u>, <u>supra</u>, at 239, citing <u>Strickland</u>,

2   <u>supra</u>, at 687-688; <u>People v. Waidla</u> (2000) 22 Cal. 4th 690, 718). "A court need not determine

3   whether counsel's performance was deficient before examining the prejudice suffered by the

4   defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness

5   claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course

6   should be followed." (<u>Strickland</u>, <u>supra</u>, at 697).

7          As noted, Petitioner has already raised issues of ineffective assistance of counsel in his

8   appeal and as discussed above, the priors were litigated in trial and the enhancements are valid,

9   so there is no question regarding what an attorney should have done about them. If the legal

10  result is proper, there is no question regarding an attorney's handling of it.

11         Most of Petitioner's complaints about ineffective assistance go to an attempt to re-litigate

12  the entire case, which as noted above is not the function of a habeas corpus petition. Further,

13  sufficiency of evidence claims are not cognizable on habeas corpus. <u>In re Lindley</u> (1947) 29 Cal.

14  2d 709, 723; <u>In re Adams</u> (1975) 14 Cal. 3d 629, 635.

15         In evaluating a defendant's showing of incompetence, reviewing courts accord great

16  deference to the tactical decisions of trial counsel. "A fair assessment of attorney performance

17  requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct

18  the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

19  perspective at the time." <u>In re Jackson</u> (1992) 3 Cal.4th 578, 610; <u>In re Marquez</u> (1992) 1

20  Cal.4th 584, 603, citing <u>Strickland</u>, <u>supra</u>, 466 U.S. at p. 689.)

21         "[W]hen the facts that support a certain potential line of defense are generally known to

22  counsel because of what the defendant has said, the need for further investigation may be

23  considerably diminished or eliminated altogether.   And when a defendant has given counsel

24  reason to believe that pursuing certain investigations would be fruitless or even harmful,

25  counsel's failure to pursue those investigations may not later be challenged as unreasonable."

26  <u>Ledesma</u>, <u>supra</u>, 43 Cal.3d at p. 222, citing <u>Strickland</u>, <u>supra</u>, 466 U.S. at p. 691.

27         While Petitioner claims that the 85 years-to-life sentence is enough to show prejudice, he

28  still has failed to show how any of the alleged acts or omissions of trial counsel caused the jury

29  to find as it did. Petitioner speculates with hindsight, but is never clear as to how anything

30  counsel did or did not do turned the jury so that it found him guilty.

1    Moreover, Petitioner has already had one full chance to argue the record to the appellate

2   court with many of the same points and he cannot now do it a second time. Any argument

3   concerning issues outside the record has not been substantiated with evidence as required by

4   Duvall. It is also interesting to note that the appellate court already found some error by trial

5   counsel but also found there was not substantial enough to have changed the end result.

6    Said the Fourth Appellate District Court in conclusion at page 32 of the opinion: "With

7   regard to Cordeiro's claims of ineffective assistance of counsel, we have determined either that

8   counsel's assistance was not deficient, or that any potential deficiency in counsel's failures to

9   object was not prejudicial because the result of the trial would not have been different even if

10   counsel had made objections. We therefore conclude that neither the individual nor the

11   cumulative effect of any alleged errors requires reversal, and that Cordeiro received a

12   fundamentally fair trial."

13    Because Petitioner's current arguments are basically the same in this Petition as those

14   presented (or which could have been presented) in the appeal, this Court determines both that

15   Petitioner cannot bring them a second time and that he has failed to show again that assistance of

16   counsel was ineffective.

17    For these reasons, the Petition is denied.

18    It is further ordered that a copy of this Order be served upon Petitioner and the Office of

19   the San Diego District Attorney, Appellate Division.

20    IT IS SO ORDERED.

21   DATED: _10/29/07_____    _____

22                                        CHARLES G. ROGERS

23                                        JUDGE OF THE SUPERIOR COURT

24

25   I hereby certify that the foregoing instrument is a
     full, true & correct copy of the original on file in
26   this office, that said document has not been revoked,
     annulled or set aside, and it is in full force and effect.

27   Attest: **OCT 3 1 2007** at 4:00 PM
     Clerk of the Superior Court of the State
28   of California, in and for the County of San Diego

29                          By _____ Deputy

30

ORDER - 6

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
☒ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA. 92101-3814
☐ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
☐ FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3296
☐ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105
☐ KEARNY MESA BRANCH, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123-1187
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649
☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792
☐ JUVENILE COURT, 1701 MISSION AVE., OCEANSIDE, CA 92054-7102

PLAINTIFF(S)/PETITIONER(S)

The People of The State of California

DEFENDANT(S)/RESPONDENT(S)

DEREK CORDEIRO

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**
(CCP 1013a(4))

FOR COURT USE ONLY

F I L E D
Clerk of the Superior Court

OCT 31 2007

By: _____, Deputy

JUDGE: _____

DEPT: _____

CASE NUMBER

HC 19093
SCD 181044

I certify that:  I am not a party to the above-entitled case; that on the date shown below, I served the following document(s):
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

on the parties shown below by placing a true copy in a separate envelope, addressed as shown below; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at:  ☒ San Diego  ☐ Vista  ☐ El Cajon
☐ Chula Vista  ☐ Oceanside  ☐ Ramona, California.

| NAME | ADDRESS |
|---|---|
| DEREK CORDEIRO | CDC # V-64461<br>F3-12-124<br>R. J. DONOVAN CORRECTIONAL FACILITY<br>P. O. BOX 799003<br>SAN DIEGO, CA 92179 |
| SAN DIEGO COUNTY DISTRICT ATTORNEY'S OFFICE<br>APPELLATE DIVISION | P.O. BOX 121011<br>SAN DIEGO, CA 92112-1011 |

CLERK OF THE SUPERIOR COURT

Date:10/31/2007 _____        By _____, Deputy

E X H I B I T  B

```
Clerk's    and    Reporter's
Transcripts of 1982 Prior
Conviction July 13, 1982
```

7

1  THE ATTENDANCE OF WITNESSES IN YOUR OWN BEHALF?

2       A    YES, SIR.

3       Q    DO YOU UNDERSTAND IN ORDER TO PLEAD GUILTY TO THE

4  CHARGE YOU WISH TO PLEAD GUILTY TO, YOU MUST VOLUNTARILY WAIVE

5  THESE CONSTITUTIONAL RIGHTS?  IN OTHER WORDS, YOU'RE GIVING THEM

6  UP.

7       A    YES, SIR.

8       Q    IS THAT WHAT YOU WANT TO DO?

9       A    YES, SIR.

10      Q    TECHNICALLY, WHAT YOU'RE DOING IS YOU'RE CONVICTING

11 YOURSELF OF THAT CHARGE YOU SAY YOU'RE GUILTY OF; IS THAT RIGHT?

12      A    YES, SIR.

13      Q    ARE YOU NOW ON PROBATION OR PAROLE?

14      A    NO, SIR.

15      Q    ARE YOU A CITIZEN OF THE UNITED STATES?

16      A    YES, SIR.

17      Q    NOW, YOU UNDERSTAND THAT IN THIS SITUATION, MENTALLY

18 DISORDERED SEX OFFENDER PROCEEDINGS WILL BE INSTITUTED?

19      A    YES, SIR.

20      Q    AND THAT WAS COVERED BY THE DEPUTY DISTRICT ATTORNEY IN

21 THIS CASE.  AND, AGAIN, I ASK YOU:  DO YOU HAVE ANY QUESTIONS

22 ABOUT ANY OF THE INFORMATION SHE STATED ON THE RECORD?

23      A    NO, SIR.

24      Q    DO YOU UNDERSTAND THAT THE MATTER OF SENTENCING AND/OR

25 PROBATION IS A MATTER THAT RESIDES SOLELY WITHIN THE DISCRETION

26 OF THIS COURT?

27      A    YES, SIR.

28      Q    YOU'RE PLEADING GUILTY FREELY AND VOLUNTARILY?

6

1       Q     DO YOU UNDERSTAND WHILE YOU'RE PLACED ON PAROLE,

2   THAT IF YOU VIOLATE ANY OF THE TERMS AND CONDITIONS OF PAROLE,

3   YOU COULD BE SUBJECT TO FURTHER INCARCERATION IN EACH INSTANCE

4   OF VIOLATION FOR UP TO 12 MONTHS, FOR A TOTAL OF 48 MONTHS IN

5   ALL?

6       A     YES, SIR.

7       Q     DO YOU STILL WISH TO PLEAD GUILTY?

8       A     YES, SIR.

9       Q     DO YOU UNDERSTAND THAT YOU HAVE AN ABSOLUTE RIGHT TO

10  A TRIAL BY JURY?  THAT'S A SPEEDY TRIAL BY JURY.

11      A     YES, SIR.

12      Q     DO YOU UNDERSTAND YOU HAVE AN ABSOLUTE RIGHT TO CROSS-

13  EXAMINE OR QUESTION ANY WITNESSES WHO WOULD TESTIFY AGAINST YOU?

14      A     YES, SIR.

15      Q     DO YOU UNDERSTAND YOU HAVE AN ABSOLUTE RIGHT TO THE

16  PRIVILEGE AGAINST SELF-INCRIMINATION, WHICH MEANS YOU CANNOT BE

17  REQUIRED TO TESTIFY AGAINST YOURSELF IN A COURT OF LAW?

18      A     YES, SIR.

19      Q     DO YOU UNDERSTAND, SIR -- WELL, THE CRIMINAL MATTER

20  THAT'S AGAINST YOU.  DO YOU UNDERSTAND THAT?

21      A     YES, SIR.

22      Q     DO YOU UNDERSTAND THAT YOU CANNOT BE REQUIRED TO --

23  STRIKE THAT.

24      YOU HAVE AN ABSOLUTE RIGHT TO PRODUCE EVIDENCE IN YOUR

25  OWN BEHALF.

26      A     YES, SIR.

27      Q     DO YOU UNDERSTAND YOU HAVE AN ABSOLUTE RIGHT TO SUBPOENA

28  WITNESSES AND TO THE PROCESS AND ASSISTANCE OF THE COURT TO COMPEL

5

1      A    YES, YOUR HONOR.

2      THE COURT:  DOES EVERYBODY UNDERSTAND?

3      MR. ERIKSEN:  YES, YOUR HONOR.

4      MS. GUY-SCHALL:  YES, YOUR HONOR.

5      THE COURT:  I DO EXERCISE THAT OPTION.

6      Q    OKAY.  DO YOU UNDERSTAND IF YOU'RE GRANTED PROBATION

7  AS A SENTENCE OF THIS COURT THAT CERTAIN CONDITIONS OF PROBATION

8  COULD INCLUDE, NUMBER ONE, LOCAL CUSTODY, UP TO ONE YEAR; NUMBER

9  TWO, NO VIOLATION OF ANY STATE OR FEDERAL LAW; NUMBER THREE,

10 REPORTING TO A PROBATION OFFICER AT SUCH TIMES AND MANNERS AS

11 THE PROBATION OFFICER DIRECTS; NUMBER FOUR, COUNSELING; AND, NUMBER

12 FIVE, ANY AND ALL OTHER REASONABLE TERMS AND CONDITIONS OF

13 PROBATION THAT I FEEL ARE NECESSARY IN YOUR CASE?

14     A    YES, SIR.

15     Q    NOW, DO YOU UNDERSTAND THAT IF YOU ARE NOT SENTENCED

16 TO STATE PRISON AS ORIGINAL SENTENCE OF THIS COURT, YOU'RE GRANTED

17 PROBATION, IF YOU VIOLATE ANY OF THE TERMS AND CONDITIONS OF

18 YOUR PROBATION, THAT YOU CAN BE BROUGHT BACK INTO COURT, YOUR

19 PROBATION CAN BE REVOKED, AND AT THAT TIME YOU COULD BE SENTENCED

20 TO STATE PRISON?

21     A    YES, SIR.

22     Q    YOU UNDERSTAND THAT ONCE YOU DO ANY TIME THAT IT'S

23 NECESSARY FOR YOU TO DO IN STATE PRISON, THAT YOU THEN WILL BE

24 RELEASED ON PAROLE?

25     A    YES, SIR.

26     Q    AND YOU UNDERSTAND THAT THAT PERIOD OF PAROLE IS NOT

27 TO EXCEED 48 MONTHS?

28     A    YES, SIR.

4

1     MR. ERIKSEN:  NO, YOUR HONOR.  WE HAVE AN APPOINTMENT WITH

2   A PSYCHIATRIST SCHEDULED WITH AN OUTSIDE PSYCHIATRIST.  I UNDER-

3   STAND THERE'S GOING TO BE NO REQUEST BY THE DISTRICT ATTORNEY AT

4   THIS TIME TO HAVE --

5     THE COURT:  WHO'S THE OUTSIDE PSYCHIATRIST?

6     MR. ERIKSEN:  A GUY OVER AT KAISER NAMED DAVID KEYSER.

7   I UNDERSTAND FROM TALKING TO HIM THAT KAISER IS RELUCTANT TO

8   PREPARE AND SUBMIT ANY TYPE OF MEDICAL REPORTS, SO WE MAY HAVE TO

9   GET A REFERRAL FROM HIM THROUGH KAISER.   THAT'S BEEN IN THE WORKS

10  FOR SEVERAL WEEKS.

11  BY THE COURT:

12    Q   NOW, MR. CORDEIRO, YOU SHOULD BE ADVISED OF THIS FACT:

13  IT --

14    THE COURT:  IS THERE GOING TO BE AN ARBUCKLE WAIVER HERE?

15    MS. GUY-SCHALL:   NO.

16    MR. ERIKSEN:  NO, YOUR HONOR.

17  BY THE COURT:

18    Q   YOU WANT ME TO BE YOUR SENTENCING JUDGE, YOU BETTER BE

19  AWARE OF THIS:  THIS AGREEMENT BINDS THE HANDS OF THE DISTRICT

20  ATTORNEY.  IN OTHER WORDS, THEY HAVE MADE AN AGREEMENT WITH YOU AS

21  TO WHAT THE PLEA BARGAIN IS.  IF AT THE TIME OF SENTENCING, LET'S

22  SAY, WE HAD REPORTS THAT  SAY YOU ARE NOT A M.D.S.O. AND YOU HAVE

23  AN AGREEMENT HERE WITH THE DISTRICT ATTORNEY THAT THEY WILL NOT

24  ASK FOR STATE PRISON.  HOWEVER, YOU SHOULD BE ADVISED THAT AS FAR

25  AS I'M CONCERNED, IF I READ THE REPORT AND I FEEL YOU SHOULD GO

26  TO STATE PRISON, I WILL NOT GIVE YOU A PROBATIONARY-TYPE SENTENCE.

27  I WILL ALLOW THIS PLEA TO BE WITHDRAWN.  I WILL ALLOW THIS TO GO

28  TO TRIAL.

3

1   WOULD BE SENT TO PATTON OR ATASCADERO.  UPON THE COMPLETION OF

2   THE STATE PRISON TERM HE COULD HAVE GOTTEN ON THIS CASE HAD HE

3   BEEN SENT TO STATE PRISON, HE WILL BE BROUGHT BACK EVERY TWO YEARS

4   FOR A REVIEW HEARING AS TO HIS MENTAL CAPACITY TO REMAIN IN OR

5   OUT OF CUSTODY.  AFTER THAT EIGHT-YEAR PERIOD, WHICH WOULD BE THE

6   MAXIMUM HE COULD GET, WHEN THESE REVIEW HEARINGS START, IT WOULD

7   BE THE PEOPLE'S BURDEN TO PROVE THAT HE IS STILL A DANGER UNDER

8   THE M.D.S.O. STANDARD FOR HIM TO REMAIN THERE.

9   BY THE COURT:

10      Q    DID YOU HEAR THAT, MR. CORDEIRO?

11      A    YES.

12      Q    HAVE YOU BEEN ADVISED OF THAT BEFORE ENTERING INTO

13  THIS PLEA?

14      A    YES.

15      Q    KNOWING THAT, DO YOU HAVE ANY QUESTIONS ABOUT ANYTHING

16  THE DEPUTY DISTRICT ATTORNEY JUST STATED?

17      A    NO.

18      Q    DO YOU UNDERSTAND EVERYTHING SHE JUST STATED?

19      A    YES, SIR.

20      Q    HAVING THAT IN MIND, THE POSSIBLE PENALTY IN THIS CASE,

21  DO YOU STILL WISH TO PLEAD GUILTY?

22      A    YES, SIR.

23      THE COURT:  NOW, THE PLEA BARGAIN DOES CONTEMPLATE, DOES IT

24  NOT, THAT SHOULD HE BE FOUND NOT TO BE AN M.D.S.O., A PROBATIONARY-

25  TYPE SENTENCE WOULD BE GIVEN?  IS THAT CORRECT?

26      MR. ERIKSEN:  THAT IS CORRECT.

27      THE COURT:  WHO'S GOING TO MAKE THE DETERMINATION OF M.D.S.O.?

28  ARE WE USING COUNTY PEOPLE?

2

1    A    YES, SIR.

2    Q    DO YOU HAVE ANY QUESTIONS YOU'D LIKE TO ASK ME ABOUT

3   THIS FORM BEFORE WE START THIS HEARING?

4    A    NO, SIR.

5    Q    DO YOU UNDERSTAND, SIR, THAT THE MAXIMUM CHARGE -- THE

6   MAXIMUM PENALTY FOR THE CHARGE YOU'RE PLEADING GUILTY TO IS

7   EIGHT YEARS IN THE STATE PRISON?

8    A    YES, SIR.

9    Q    NOW, THE PLEA BARGAIN AS OUTLINED IN PARAGRAPH NO. 12

10   OF THIS SECTION READS AS FOLLOWS:  THAT YOU WILL BE PLEADING

11   GUILTY TO COUNT TWO; THE DISTRICT ATTORNEY WILL DISMISS COUNT ONE;

12   NOLT, WHICH MEANS AT THE TIME OF SENTENCING THE DISTRICT ATTORNEY

13   WILL HAVE NO OPPOSITION TO LOCAL TIME; PROBATIONARY SENTENCE IF THE

14   DEFENDANT IS FOUND TO BE M.D.S.O.

15        NOW, IS THAT WHAT'S BEEN PROMISED TO YOU IN ORDER TO

16   INDUCE YOU TO PLEAD GUILTY IN THIS CASE?

17    A    YES, SIR.

18   THE COURT:  NOW, THIS IS DIRECTED TO THE ATTORNEYS IN THIS

19   CASE.  DOES THIS MEAN, SAY, THAT IF HE'S FOUND M.D.S.O. THAT THERE

20   IS NO NOLT AND THERE'S NO AGREEMENT AS TO NO STATE PRISON AT THE

21   TIME OF SENTENCING?

22   MS. GUY-SCHALL:  THAT'S CORRECT, YOUR HONOR.  WELL, BECAUSE IT'S

23   MY UNDERSTANDING IF THE COURT FOLLOWS THE STATE LAWS THAT NOW

24   EXIST AND THE DEFENDANT IS FOUND TO BE A MENTALLY DISORDERED SEX

25   OFFENDER, THE COURT AT THIS TIME CAN INSTRUCT THE DEFENDANT THAT

26   HE COULD BE SENT TO A STATE MENTAL HOSPITAL, EITHER PATTON OR

27   ATASCADERO, FOR THE REST OF HIS LIFE, AND -- POSSIBLY FOR THE REST

28   OF HIS LIFE.  IN FACT, WHAT WOULD HAPPEN IS THAT THE DEFENDANT

1

SAN DIEGO, CALIFORNIA - TUESDAY, JULY 13, 1982 - 3:05 P.M.

P R O C E E D I N G S

THE COURT:  CORDEIRO.

MR. ERIKSEN:  VIC ERIKSEN APPEARING FOR MR. CORDEIRO.

THE COURT:  MR. CORDEIRO, WOULD YOU RAISE YOUR RIGHT HAND, PLEASE.


DEREK LANE CORDEIRO,

HAVING BEEN DULY SWORN, TESTIFIED AS FOLLOWS:


EXAMINATION

BY THE COURT:

Q     ALL RIGHT.  MR. ERIKSEN HAS HANDED ME A CHANGE OF PLEA FORM.  IT SAYS THAT YOU WISH TO PLEAD GUILTY TO LEWD ACTS ON THE BODY OF A CHILD; IS THAT RIGHT?

A     YES, SIR.

Q     THAT'S AS A FELONY?

A     YES.

Q     I'M SHOWING YOU THIS CHANGE OF PLEA FORM.  WHERE MY FINGER IS LOCATED, IS THAT YOUR SIGNATURE?

A     YES, YOUR HONOR.

Q     DID YOU READ THIS FORM BEFORE YOU SIGNED IT OR WAS IT READ TO YOU?

A     IT WAS READ TO ME, AND I READ IT.

Q     AND DID YOU PUT YOUR INITIALS ON THE BOXES ON BOTH SIDES?

ORIGINAL

IN THE MUNICIPAL COURT OF THE SAN DIEGO JUDICIAL DISTRICT

COUNTY OF SAN DIEGO, STATE OF CALIFORNIA

FELONY ARRAIGNMENT DEPARTMENT

BEFORE HONORABLE FREDERIC L. LINK, JUDGE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>　　　　　　　PLAINTIFF,<br><br>VS.<br><br>DEREK LANE CORDEIRO,<br><br>　　　　　　　DEFENDANT. | CHANGE OF PLEA<br><br>CR 59199<br><br>F73255<br>DA A60557 |

FILED
DEC 26  4:13 PM '84
ROBERT D. ZUMWALT
COUNTY CLERK

REPORTER'S TRANSCRIPT

SAN DIEGO, CALIFORNIA

JULY 13, 1982

COUNSEL APPEARING:

　FOR THE PLAINTIFF:　　　　　　LISA GUY-SCHALL,
　　　　　　　　　　　　　　　　DEPUTY DISTRICT ATTORNEY

　FOR THE DEFENDANT:　　　　　　VICTOR S. ERIKSEN, ESQ.


　　　　　　　　　　　　　　　　LORI L. BROWN, CSR NO. 5477
　　　　　　　　　　　　　　　　MUNICIPAL COURT REPORTER PRO
　　　　　　　　　　　　　　　　　　　　　　　TEMPORE
　　　　　　　　　　　　　　　　SAN DIEGO COUNTY COURTHOUSE
　　　　　　　　　　　　　　　　SAN DIEGO, CALIFORNIA 92101

# Fivecoat and With 

Certified Shorthand Reporters, Inc.
902 Chamber Bldg. • 110 West C Street • San Diego, CA 92101-3986

(714) 236-0333

8

1      A    YES, SIR.

2      Q    HAS ANYBODY THREATENED YOU OR ANYBODY NEAR AND DEAR

3  TO YOU TO GET YOU TO PLEAD GUILTY?

4      A    NO, SIR.

5      THE COURT:  MR. ERIKSEN, DO YOU BELIEVE THAT YOUR CLIENT

6  UNDERSTANDS THE RAMIFICATIONS OF THE PLEA AND THE PLEA BARGAIN

7  IN THIS CASE?

8      MR. ERIKSEN:  YES, YOUR HONOR.

9      THE COURT:  DO YOU CONCUR WITH THE PLEA?

10     MR. ERIKSEN:  YES, I DO.

11     THE COURT:  HAVE YOU PREVIOUSLY ADVISED HIM OF HIS

12  CONSTITUTIONAL RIGHTS?

13     MR. ERIKSEN:  FULLY.

14     THE COURT:  IN YOUR OPINION, IS HE PLEADING GUILTY FREELY

15  AND VOLUNTARILY?

16     MR. ERIKSEN:  YES.

17     THE COURT:  PERMISSION TO WITHDRAW THE PREVIOUSLY ENTERED

18  PLEA OF NOT GUILTY IS GRANTED, AND THE PLEA IS HEREBY WITHDRAWN.

19         MR. DEREK LANE CORDEIRO, HOW DO YOU NOW PLEAD, SIR --

20  THAT IS TO COUNT TWO; IS THAT CORRECT?

21     MS. GUY-SCHALL:    CORRECT.

22     MR. ERIKSEN:  YES.

23     THE COURT:  HOW DO YOU NOW PLEAD, SIR, TO ON OR ABOUT THE

24  DATES BETWEEN NOVEMBER THE 1ST, 1981 AND NOVEMBER THE 26TH, 1981,

25  YOU DID WILLINGLY AND LEWDLY COMMIT A LEWD AND LASCIVIOUS ACT UPON

26  AND WITH THE BODY AND PARTS AND MEMBERS THEREOF  OF A CHILD UNDER

27  THE AGE OF 14 YEARS, WITH THE INTENT OF AROUSING, APPEALING TO,

28  AND GRATIFYING THE LUST, PASSIONS, AND SEXUAL DESIRES OF YOURSELF

9

1    AND THE VICTIM, IN VIOLATION OF PENAL CODE SECTION 288(A)?

2    GUILTY OR NOT GUILTY?

3    THE DEFENDANT:  GUILTY.

4    THE COURT:  JUST SO YOU KNOW WHAT YOU'VE JUST DONE, SIR,

5    YOU'VE JUST PLED GUILTY TO FELONY LEWD AND LASCIVIOUS ACTS UPON

6    THE BODY OF A CHILD UNDER THE AGE OF 14 YEARS; IS THAT CORRECT?

7    THE DEFENDANT:  YES, SIR.

8    THE COURT:  OKAY.  NOW, WOULD YOU PLEASE TELL ME IN YOUR

9    OWN WORDS  WHAT YOU DID THAT MAKES YOU THINK THAT YOU'RE GUILTY

10   OF THIS CRIME.

11   THE DEFENDANT:  I CAME HOME, AND I PULLED HER PANTS DOWN

12   AND SET MY MOUTH ON HER VAGINA.

13   THE COURT:  AND BY "HER," I ASSUME THIS IS A GIRL UNDER THE

14   AGE OF 14?

15   THE DEFENDANT:  YES, SIR.

16   THE COURT:  OKAY. HOW OLD WAS THIS GIRL?

17   MS. GUY-SCHALL:  SHE WAS BORN IN 1969, YOUR HONOR, JULY 26TH.

18   MR. ERIKSEN:  WOULD HAVE MADE HER 12.

19   THE COURT:  12?

20   MS. GUY-SCHALL:  12 YEARS OLD.

21   THE COURT:  OKAY.  I ASSUME THAT YOU THINK IT'S NECESSARY

22   FOR ME TO GO INTO THE LUST, PASSIONS, OR DESIRES PART,  OR ARE YOU

23   SATISFIED?

24   MS. GUY-SCHALL:  I'M SATISFIED.

25   THE COURT:  THE COURT FINDS THE DEFENDANT IS IN FULL

26   POSSESSION OF HIS FACULTIES.  I FIND THAT HE UNDERSTANDS AND

27   FREELY WAIVES HIS CONSTITUTIONAL RIGHTS.  I FIND THAT THIS PLEA

28   IS FREE AND VOLUNTARY AND THERE EXISTS A FACTUAL BASIS FOR IT.

10

1   IT IS ORDERED THAT THE PLEA OF GUILTY AND THE WAIVER OF HIS

2   CONSTITUTIONAL RIGHTS BE ACCEPTED AND ENTERED INTO THE MINUTES

3   OF THIS COURT.

4         IS THERE A MOTION BY THE PEOPLE?

5     MS. GUY-SCHALL:  THE PEOPLE MOVE TO DISMISS COUNT ONE, YOUR

6   HONOR.  IN LIGHT OF THE CODE SECTION 654, THE DEFENDANT WILL BE

7   BARRED FROM BEING SENTENCED ON THAT COUNT WITH HIS PLEA TO COUNT

8   TWO, AND PEOPLE FEEL NOW THE COURT HAS SUFFICIENT PARAMETERS TO

9   MAKE A FAIR AND JUST SENTENCING.

10     THE COURT:  ALL RIGHT.  MY UNDERSTANDING IS THAT THIS CLIENT

11   WISHES TO EXERCISE HIS RIGHTS UNDER ARBUCKLE.

12     MR. ERIKSEN:  YES, YOUR HONOR.

13     THE COURT:  SO IN ORDER FOR HIM TO DO THAT, HE MUST WAIVE

14   HIS RIGHT TO BE SENTENCED WITHIN 28 DAYS OF TODAY'S DATE.

15     MR. ERIKSEN:  THAT WOULD BE WAIVED.

16     THE COURT:  IS THAT RIGHT, MR. CORDEIRO?

17     THE DEFENDANT:  YES, SIR.

18     THE COURT:  MATTER WILL BE SET DOWN FOR SENTECING IN MY

19   DEPARTMENT ON AUGUST THE 27TH, 1982, AT 3:00 P.M.

20       NOW, IS THERE ANYTHING FURTHER?

21     MS. GUY-SCHALL:  NO, YOUR HONOR.  AT THAT TIME, I BELIEVE HE

22   WILL BE RECOMMENDED FOR AN M.D.S.O. EXAM.

23     THE COURT:  YES.

24

25           - - - -

26

27

28

1 STATE OF CALIFORNIA  )
                       :    SS.
2 COUNTY OF SAN DIEGO  )

3

4    I, _____LORI L. BROWN_____, DO HEREBY CERTIFY THAT

5 I AM A PRO TEMPORE SHORTHAND REPORTER OF THE MUNICIPAL COURT OF

6 THE SAN DIEGO JUDICIAL DISTRICT, CITY OF SAN DIEGO, COUNTY OF

7 SAN DIEGO, STATE OF CALIFORNIA; THAT AS SUCH REPORTER, I

8 REPORTED IN SHORTHAND THE PROCEEDINGS HAD AT THE CHANGE OF PLEA

9 IN THE MATTER OF THE PEOPLE OF THE STATE OF CALIFORNIA, PLAINTIFF,

10 V.        DEREK LANE CORDEIRO,      DEFENDANT; THAT THE FOREGOING

11 TRANSCRIPT, CONSISTING OF PAGES NUMBERED 1 THROUGH 10,

12 INCLUSIVE, CONTAINS A FULL, TRUE AND CORRECT RECORD OF MY

13 SHORTHAND NOTES OF THE PROCEEDINGS HAD AT SAID CHANGE OF PLEA.

14    DATED AT SAN DIEGO, CALIFORNIA, _____JULY 22_____, 1982.

15

16

17 _____

18 LORI L. BROWN, CSR NO. 5477

19

20

21

22

23

24

25

26

27

28

MUNICIPAL COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
San Diego Judicial District                                      CR 53199

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

No. F 73255

vs.

F I L E D
Robert D. Zumwalt, Clerk
JUL 15 1982
Deputy

CHANGE OF PLEA
(GUILTY)
(FELONY)

DEREK LANE CORDEIRO

Defendant.

DEFENDANT TO INITIAL EACH ITEM

Comes now ...... Derek Lane Cordeiro ......
defendant in the above-entitled criminal action, and in support of his motion to change his plea(s) to be made in open court personally and by his attorney, does declare:

1. That his attorney in the above-entitled criminal action is ...Victor S. Eriksen...... ;                                      [IQ]

2. That he is charged in complaint number .F... 73255 .................with having violated
...Count One: 288 a (c) P.C.    Count Two: 288(a) P.C. ;                                      [IQ]
(Code Section(s) and Count(s))

3. That he desires to change his plea(s) and desires to plead guilty to .....Count Two: 288 (a) P.C.                      [IQ]
(Code Section(s) and Count(s))

4. That he ...is... now and ...was... at the time this form was prepared in possession of all his faculties
(is/is not)      (was/was not)
and has not consumed any drug, narcotic or alcoholic beverage in the 24-hour period preceding the entry
of this plea to the extent that his sound judgment is impaired;                                      [IQ]

5. That he ...does... understand the nature of the charge(s) against him;                                      [IQ]
(does/does not)

6. That he ...has... discussed the nature of the charge(s) against him and the possible defense(s) thereto
(has/has not)
with his attorney and understands the consequences of a plea of Guilty.                                      [IQ]

7. That he violated the aforementioned Penal Code section(s) by ...committing lewd and.......
...lascivious acts upon a minor by using hands to....
...touch victim's genitals and mouth to orally....
...copulate victim under the age of 14 years.....
................................................................................
................................................................................
................................................................................

8. Defendant in this matter declares that he has been advised of the following constitutional rights:
   (a)   The right to be tried by a jury;
   (b)   The right to confront and to cross-examine all the witnesses against him;
   (c)   The right at the trial to present evidence in his favor and either to testify for himself or, if he wishes,
         he may remain silent;
   (d)   The right to a speedy and public trial;
   (e)   The right to have witnesses subpoenaed to testify in his behalf and to obtain all evidence which might
         exonerate the defendant;
   (f)   The right to have a qualified lawyer defend him at all stages of the proceedings; that said attorney
         may be of defendant's own choice or shall be court appointed if the defendant is unable to afford
         counsel.                                      [IQ]

8a. That he ...does... except for his right to be represented by an attorney, knowingly and intelligently waive
(does/does not)
each and every one of his rights at set forth in item 8 above, including:
   (a)   The right to be tried by a jury;
   (b)   The right to confront and to cross-examine all the witnesses against him;
   (c)   The right against self-incrimination.                                      [IQ]

9. That his decision to change his plea(s) ...has... been made freely and voluntarily, without threat or fear
(has/has not)
to him or to anyone closely related to or associated with him;                                      [IQ]

10. That his attorney ...has... explained the possible sentence(s), and the defendant understands the max-
(has/has not)
imum punishment(s) which could be imposed as a result of a plea of Guilty to be: ...three, six...
...or maximum eight (8) years state prison.                                      [IQ]

11. That his attorney ...has... explained the possible penalties and consequences of a plea of Guilty to be:
(has/has not)
...8 years state prison; registration per P.C. 290; MDSO....
...commitment; probationary sentence; counseling....                                      [IQ]
...48 month parole period.

Form 333 (Rev. 6-72)

(vertical, right margin) Date OCT 14 1982   Attest: A true copy.   D. KENT PEDERSEN, Clerk/Admin. Officer   By ......   Deputy

Case 3:04-cv-01234-J-JB   Document 2-2   Filed 08/16/2004   Page 68 of 84
JR-09159

12. That he **has not** been induced to plead Guilty by any promise or representation of a lesser sentence, pro-
(has/has not)
bation, reward, immunity, or anything else, except as stated below. If defendant's plea of Guilty is the result
of discussions with the District Attorney (eg, that the District Attorney has agreed to move to dismiss a
count if defendant pleads Guilty to another count), explain briefly such promise or plea bargaining in the
following space:
COP Count Two, Dismiss Count One, N.O.L.T. probationary
sentence if the defendant is found not to be MDSO.

13. That he **does** understand that the matter of probation and sentence is to be determined solely by the
(does/does not)
court; and

14. That he is pleading Guilty because in truth and in fact he **is** Guilty, and for no other reason.
(is/is not)

Defendant has    (Cross out the inapplicable phrase)
~~1. personally prepared and discussed with his attorney~~

2. read, discussed and has had explained to him by his attorney

each of the above items, and understands same. Defendant has initialed each item as proof thereof.

Executed this **13th** day of **July** 19**82** in the County of San Diego, State of
California.

_____
(Defendant's signature)

**Victor S. Eriksen** states that he is the attorney for
defendant in the above-entitled criminal action; that he personally read, discussed and explained the contents
of the above declaration of the defendant and each item thereof; that defendant's constitutional rights have
not been violated; that no meritorious defense exists to the charge(s) to which defendant is pleading Guilty;
that he personally observed the defendant (fill in and initial each item, or read and initial each item) ack-
nowledging explanation of the contents of each item; that he observed defendant date and sign said declara-
tion; that he concurs in defendant's withdrawal of his plea(s) of not guilty; that he concurs in defendant's
plea(s) of Guilty to the charge(s) as set forth by the defendant in the above declaration.

Dated this **13th** day of **July** 19**82**

_____
(Attorney's signature)

The People of the State of California, plaintiff in the above-entitled criminal action, by and through its
attorney, EDWIN L. MILLER, JR., District Attorney, concurs in the defendant's withdrawal of his plea(s) of
not guilty and in the defendant's plea of Guilty to the charge(s) as set forth by the defendant in the above
declaration.

Dated this **13** day of **July**, 19**82**

EDWIN L. MILLER, JR.
District Attorney

By: _____
(Deputy District Attorney)

Defendant personally and by his attorney having in open court moved to withdraw his plea(s) of not
guilty as heretofore entered and the People of the State of California, by and through its attorney, having con-
curred in said motion;

IT IS HEREBY ORDERED that said motion be and the same is hereby granted.

Dated: **7-13-82**

_____
(Judge of the Municipal Court)

Date: JUL 14 1982
Attest: A true copy.
B. KENT PEDERSEN, Clerk/Admin. Officer
By _____ Deputy

Form 333 reverse

# ORIGINAL

IN THE MUNICIPAL COURT OF THE SAN DIEGO JUDICIAL DISTRICT

COUNTY OF SAN DIEGO, STATE OF CALIFORNIA

FELONY ARRAIGNMENT DEPARTMENT

BEFORE HONORABLE FREDERIC L. LINK, JUDGE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | |
| PLAINTIFF, | CHANGE OF PLEA |
| VS. | CR 59199 |
| DEREK LANE CORDEIRO, | F73255 |
| DEFENDANT. | DA A60557 |

FILED
JUL 26  4 13 PM '82
ROBERT D. ZUHWALT
COUNTY CLERK

REPORTER'S TRANSCRIPT

SAN DIEGO, CALIFORNIA

JULY 13, 1982

COUNSEL APPEARING:

FOR THE PLAINTIFF:        LISA GUY-SCHALL,
                         DEPUTY DISTRICT ATTORNEY

FOR THE DEFENDANT:       VICTOR S. ERIKSEN, ESQ.

                         LORI L. BROWN, CSR NO. 5477
                         MUNICIPAL COURT REPORTER PRO
                                              TEMPORE
                         SAN DIEGO COUNTY COURTHOUSE
                         SAN DIEGO, CALIFORNIA 92101

# Fivecoat and With

Certified Shorthand Reporters, Inc.
902 Chamber Bldg. • 110 West C Street • San Diego, CA 92101-3986

(714) 236-0333

1

SAN DIEGO, CALIFORNIA - TUESDAY, JULY 13, 1982 - 3:05 P.M.

P R O C E E D I N G S

THE COURT:  CORDEIRO.

MR. ERIKSEN:  VIC ERIKSEN APPEARING FOR MR. CORDEIRO.

THE COURT:  MR. CORDEIRO, WOULD YOU RAISE YOUR RIGHT HAND, PLEASE.

DEREK LANE CORDEIRO,

HAVING BEEN DULY SWORN, TESTIFIED AS FOLLOWS:

EXAMINATION

BY THE COURT:

Q    ALL RIGHT.  MR. ERIKSEN HAS HANDED ME A CHANGE OF PLEA FORM.  IT SAYS THAT YOU WISH TO PLEAD GUILTY TO LEWD ACTS ON THE BODY OF A CHILD; IS THAT RIGHT?

A    YES, SIR.

Q    THAT'S AS A FELONY?

A    YES.

Q    I'M SHOWING YOU THIS CHANGE OF PLEA FORM.  WHERE MY FINGER IS LOCATED, IS THAT YOUR SIGNATURE?

A    YES, YOUR HONOR.

Q    DID YOU READ THIS FORM BEFORE YOU SIGNED IT OR WAS IT READ TO YOU?

A    IT WAS READ TO ME, AND I READ IT.

Q    AND DID YOU PUT YOUR INITIALS ON THE BOXES ON BOTH SIDES?

2

1    A    YES, SIR.

2    Q    DO YOU HAVE ANY QUESTIONS YOU'D LIKE TO ASK ME ABOUT

3  THIS FORM BEFORE WE START THIS HEARING?

4    A    NO, SIR.

5    Q    DO YOU UNDERSTAND, SIR, THAT THE MAXIMUM CHARGE -- THE

6  MAXIMUM PENALTY FOR THE CHARGE YOU'RE PLEADING GUILTY TO IS

7  EIGHT YEARS IN THE STATE PRISON?

8    A    YES, SIR.

9    Q    NOW, THE PLEA BARGAIN AS OUTLINED IN PARAGRAPH NO. 12

10  OF THIS SECTION READS AS FOLLOWS:  THAT YOU WILL BE PLEADING

11  GUILTY TO COUNT TWO; THE DISTRICT ATTORNEY WILL DISMISS COUNT ONE;

12  NOLT, WHICH MEANS AT THE TIME OF SENTENCING THE DISTRICT ATTORNEY

13  WILL HAVE NO OPPOSITION TO LOCAL TIME; PROBATIONARY SENTENCE IF THE

14  DEFENDANT IS FOUND TO BE M.D.S.O.

15        NOW, IS THAT WHAT'S BEEN PROMISED TO YOU IN ORDER TO

16  INDUCE YOU TO PLEAD GUILTY IN THIS CASE?

17    A    YES, SIR.

18    THE COURT:  NOW, THIS IS DIRECTED TO THE ATTORNEYS IN THIS

19  CASE.  DOES THIS MEAN, SAY, THAT IF HE'S FOUND M.D.S.O. THAT THERE

20  IS NO NOLT AND THERE'S NO AGREEMENT AS TO NO STATE PRISON AT THE

21  TIME OF SENTENCING?

22    MS. GUY-SCHALL:  THAT'S CORRECT, YOUR HONOR.  WELL, BECAUSE IT'S

23  MY UNDERSTANDING IF THE COURT FOLLOWS THE STATE LAWS THAT NOW

24  EXIST AND THE DEFENDANT IS FOUND TO BE A MENTALLY DISORDERED SEX

25  OFFENDER, THE COURT AT THIS TIME CAN INSTRUCT THE DEFENDANT THAT

26  HE COULD BE SENT TO A STATE MENTAL HOSPITAL, EITHER PATTON OR

27  ATASCADERO, FOR THE REST OF HIS LIFE, AND -- POSSIBLY FOR THE REST

28  OF HIS LIFE.  IN FACT, WHAT WOULD HAPPEN IS THAT THE DEFENDANT

1 WOULD BE SENT TO PATTON OR ATASCADERO. UPON THE COMPLETION OF

2 THE STATE PRISON TERM HE COULD HAVE GOTTEN ON THIS CASE HAD HE

3 BEEN SENT TO STATE PRISON, HE WILL BE BROUGHT BACK EVERY TWO YEARS

4 FOR A REVIEW HEARING AS TO HIS MENTAL CAPACITY TO REMAIN IN OR

5 OUT OF CUSTODY. AFTER THAT EIGHT-YEAR PERIOD, WHICH WOULD BE THE

6 MAXIMUM HE COULD GET, WHEN THESE REVIEW HEARINGS START, IT WOULD

7 BE THE PEOPLE'S BURDEN TO PROVE THAT HE IS STILL A DANGER UNDER

8 THE M.D.S.O. STANDARD FOR HIM TO REMAIN THERE.

9 BY THE COURT:

10      Q      DID YOU HEAR THAT, MR. CORDEIRO?

11      A      YES.

12      Q      HAVE YOU BEEN ADVISED OF THAT BEFORE ENTERING INTO

13 THIS PLEA?

14      A      YES.

15      Q      KNOWING THAT, DO YOU HAVE ANY QUESTIONS ABOUT ANYTHING

16 THE DEPUTY DISTRICT ATTORNEY JUST STATED?

17      A      NO.

18      Q      DO YOU UNDERSTAND EVERYTHING SHE JUST STATED?

19      A      YES, SIR.

20      Q      HAVING THAT IN MIND, THE POSSIBLE PENALTY IN THIS CASE,

21 DO YOU STILL WISH TO PLEAD GUILTY?

22      A      YES, SIR.

23      THE COURT:  NOW, THE PLEA BARGAIN DOES CONTEMPLATE, DOES IT

24 NOT, THAT SHOULD HE BE FOUND NOT TO BE AN M.D.S.O., A PROBATIONARY-

25 TYPE SENTENCE WOULD BE GIVEN?  IS THAT CORRECT?

26      MR. ERIKSEN:  THAT IS CORRECT.

27      THE COURT:  WHO'S GOING TO MAKE THE DETERMINATION OF M.D.S.O.?

28 ARE WE USING COUNTY PEOPLE?

1  MR. ERIKSEN: NO, YOUR HONOR. WE HAVE AN APPOINTMENT WITH

2  A PSYCHIATRIST SCHEDULED WITH AN OUTSIDE PSYCHIATRIST. I UNDER-

3  STAND THERE'S GOING TO BE NO REQUEST BY THE DISTRICT ATTORNEY AT

4  THIS TIME TO HAVE --

5      THE COURT: WHO'S THE OUTSIDE PSYCHIATRIST?

6      MR. ERIKSEN: A GUY OVER AT KAISER NAMED DAVID KEYSER.

7  I UNDERSTAND FROM TALKING TO HIM THAT KAISER IS RELUCTANT TO

8  PREPARE AND SUBMIT ANY TYPE OF MEDICAL REPORTS, SO WE MAY HAVE TO

9  GET A REFERRAL FROM HIM THROUGH KAISER. THAT'S BEEN IN THE WORKS

10  FOR SEVERAL WEEKS.

11  BY THE COURT:

12      Q   NOW, MR. CORDEIRO, YOU SHOULD BE ADVISED OF THIS FACT:

13  IT --

14      THE COURT: IS THERE GOING TO BE AN ARBUCKLE WAIVER HERE?

15      MS. GUY-SCHALL: NO.

16      MR. ERIKSEN: NO, YOUR HONOR.

17  BY THE COURT:

18      Q   YOU WANT ME TO BE YOUR SENTENCING JUDGE, YOU BETTER BE

19  AWARE OF THIS: THIS AGREEMENT BINDS THE HANDS OF THE DISTRICT

20  ATTORNEY. IN OTHER WORDS, THEY HAVE MADE AN AGREEMENT WITH YOU AS

21  TO WHAT THE PLEA BARGAIN IS. IF AT THE TIME OF SENTENCING, LET'S

22  SAY, WE HAD REPORTS THAT SAY YOU ARE NOT A M.D.S.O. AND YOU HAVE

23  AN AGREEMENT HERE WITH THE DISTRICT ATTORNEY THAT THEY WILL NOT

24  ASK FOR STATE PRISON. HOWEVER, YOU SHOULD BE ADVISED THAT AS FAR

25  AS I'M CONCERNED, IF I READ THE REPORT AND I FEEL YOU SHOULD GO

26  TO STATE PRISON, I WILL NOT GIVE YOU A PROBATIONARY-TYPE SENTENCE.

27  I WILL ALLOW THIS PLEA TO BE WITHDRAWN. I WILL ALLOW THIS TO GO

28  TO TRIAL.

5

1    A    YES, YOUR HONOR.

2    THE COURT:  DOES EVERYBODY UNDERSTAND?

3    MR. ERIKSEN:  YES, YOUR HONOR.

4    MS. GUY-SCHALL:  YES, YOUR HONOR.

5    THE COURT:  I DO EXERCISE THAT OPTION.

6    Q    OKAY.  DO YOU UNDERSTAND IF YOU'RE GRANTED PROBATION

7    AS A SENTENCE OF THIS COURT THAT CERTAIN CONDITIONS OF PROBATION

8    COULD INCLUDE, NUMBER ONE, LOCAL CUSTODY, UP TO ONE YEAR; NUMBER

9    TWO, NO VIOLATION OF ANY STATE OR FEDERAL LAW; NUMBER THREE,

10   REPORTING TO A PROBATION OFFICER AT SUCH TIMES AND MANNERS AS

11   THE PROBATION OFFICER DIRECTS; NUMBER FOUR, COUNSELING; AND, NUMBER

12   FIVE, ANY AND ALL OTHER REASONABLE TERMS AND CONDITIONS OF

13   PROBATION THAT I FEEL ARE NECESSARY IN YOUR CASE?

14   A    YES, SIR.

15   Q    NOW, DO YOU UNDERSTAND THAT IF YOU ARE NOT SENTENCED

16   TO STATE PRISON AS ORIGINAL SENTENCE OF THIS COURT, YOU'RE GRANTED

17   PROBATION, IF YOU VIOLATE ANY OF THE TERMS AND CONDITIONS OF

18   YOUR PROBATION, THAT YOU CAN BE BROUGHT BACK INTO COURT, YOUR

19   PROBATION CAN BE REVOKED, AND AT THAT TIME YOU COULD BE SENTENCED

20   TO STATE PRISON?

21   A    YES, SIR.

22   Q    YOU UNDERSTAND THAT ONCE YOU DO ANY TIME THAT IT'S

23   NECESSARY FOR YOU TO DO IN STATE PRISON, THAT YOU THEN WILL BE

24   RELEASED ON PAROLE?

25   A    YES, SIR.

26   Q    AND YOU UNDERSTAND THAT THAT PERIOD OF PAROLE IS NOT

27   TO EXCEED 48 MONTHS?

28   A    YES, SIR.

1      Q    DO YOU UNDERSTAND WHILE YOU'RE PLACED ON PAROLE,

2 THAT IF YOU VIOLATE ANY OF THE TERMS AND CONDITIONS OF PAROLE,

3 YOU COULD BE SUBJECT TO FURTHER INCARCERATION IN EACH INSTANCE

4 OF VIOLATION FOR UP TO 12 MONTHS, FOR A TOTAL OF 48 MONTHS IN

5 ALL?

6      A    YES, SIR.

7      Q    DO YOU STILL WISH TO PLEAD GUILTY?

8      A    YES, SIR.

9      Q    DO YOU UNDERSTAND THAT YOU HAVE AN ABSOLUTE RIGHT TO

10 A TRIAL BY JURY?   THAT'S A SPEEDY TRIAL BY JURY.

11      A    YES, SIR.

12      Q    DO YOU UNDERSTAND YOU HAVE AN ABSOLUTE RIGHT TO CROSS-

13 EXAMINE OR QUESTION ANY WITNESSES WHO WOULD TESTIFY AGAINST YOU?

14      A    YES, SIR.

15      Q    DO YOU UNDERSTAND YOU HAVE AN ABSOLUTE RIGHT TO THE

16 PRIVILEGE AGAINST SELF-INCRIMINATION, WHICH MEANS YOU CANNOT BE

17 REQUIRED TO TESTIFY AGAINST YOURSELF IN A COURT OF LAW?

18      A    YES, SIR.

19      Q    DO YOU UNDERSTAND, SIR -- WELL, THE CRIMINAL MATTER

20 THAT'S AGAINST YOU.   DO YOU UNDERSTAND THAT?

21      A    YES, SIR.

22      Q    DO YOU UNDERSTAND THAT YOU CANNOT BE REQUIRED TO --

23 STRIKE THAT.

24      YOU HAVE AN ABSOLUTE RIGHT TO PRODUCE EVIDENCE IN YOUR

25 OWN BEHALF.

26      A    YES, SIR.

27      Q    DO YOU UNDERSTAND YOU HAVE AN ABSOLUTE RIGHT TO SUBPOENA

28 WITNESSES AND TO THE PROCESS AND ASSISTANCE OF THE COURT TO COMPEL

1    THE ATTENDANCE OF WITNESSES IN YOUR OWN BEHALF?

2        A    YES, SIR.

3        Q    DO YOU UNDERSTAND IN ORDER TO PLEAD GUILTY TO THE

4    CHARGE YOU WISH TO PLEAD GUILTY TO, YOU MUST VOLUNTARILY WAIVE

5    THESE CONSTITUTIONAL RIGHTS?  IN OTHER WORDS, YOU'RE GIVING THEM

6    UP.

7        A    YES, SIR.

8        Q    IS THAT WHAT YOU WANT TO DO?

9        A    YES, SIR.

10       Q    TECHNICALLY, WHAT YOU'RE DOING IS YOU'RE CONVICTING

11   YOURSELF OF THAT CHARGE YOU SAY YOU'RE GUILTY OF; IS THAT RIGHT?

12       A    YES, SIR.

13       Q    ARE YOU NOW ON PROBATION OR PAROLE?

14       A    NO, SIR.

15       Q    ARE YOU A CITIZEN OF THE UNITED STATES?

16       A    YES, SIR.

17       Q    NOW, YOU UNDERSTAND THAT IN THIS SITUATION, MENTALLY

18   DISORDERED SEX OFFENDER PROCEEDINGS WILL BE INSTITUTED?

19       A    YES, SIR.

20       Q    AND THAT WAS COVERED BY THE DEPUTY DISTRICT ATTORNEY IN

21   THIS CASE.  AND, AGAIN, I ASK YOU:  DO YOU HAVE ANY QUESTIONS

22   ABOUT ANY OF THE INFORMATION SHE STATED ON THE RECORD?

23       A    NO, SIR.

24       Q    DO YOU UNDERSTAND THAT THE MATTER OF SENTENCING AND/OR

25   PROBATION IS A MATTER THAT RESIDES SOLELY WITHIN THE DISCRETION

26   OF THIS COURT?

27       A    YES, SIR.

28       Q    YOU'RE PLEADING GUILTY FREELY AND VOLUNTARILY?

Case 2:09-cv-... Document 1-2 Filed 08/31/2009 Page 67 of 86

8

1  A    YES, SIR.

2  Q    HAS ANYBODY THREATENED YOU OR ANYBODY NEAR AND DEAR

3  TO YOU TO GET YOU TO PLEAD GUILTY?

4  A    NO, SIR.

5  THE COURT:  MR. ERIKSEN, DO YOU BELIEVE THAT YOUR CLIENT

6  UNDERSTANDS THE RAMIFICATIONS OF THE PLEA AND THE PLEA BARGAIN

7  IN THIS CASE?

8  MR. ERIKSEN:  YES, YOUR HONOR.

9  THE COURT:  DO YOU CONCUR WITH THE PLEA?

10  MR. ERIKSEN:  YES, I DO.

11  THE COURT:  HAVE YOU PREVIOUSLY ADVISED HIM OF HIS

12  CONSTITUTIONAL RIGHTS?

13  MR. ERIKSEN:  FULLY.

14  THE COURT:  IN YOUR OPINION, IS HE PLEADING GUILTY FREELY

15  AND VOLUNTARILY?

16  MR. ERIKSEN:  YES.

17  THE COURT:  PERMISSION TO WITHDRAW THE PREVIOUSLY ENTERED

18  PLEA OF NOT GUILTY IS GRANTED, AND THE PLEA IS HEREBY WITHDRAWN.

19  MR. DEREK LANE CORDEIRO, HOW DO YOU NOW PLEAD, SIR --

20  THAT IS TO COUNT TWO; IS THAT CORRECT?

21  MS. GUY-SCHALL:   CORRECT.

22  MR. ERIKSEN:  YES.

23  THE COURT:  HOW DO YOU NOW PLEAD, SIR, TO ON OR ABOUT THE

24  DATES BETWEEN NOVEMBER THE 1ST, 1981 AND NOVEMBER THE 26TH, 1981,

25  YOU DID WILLINGLY AND LEWDLY COMMIT A LEWD AND LASCIVIOUS ACT UPON

26  AND WITH THE BODY AND PARTS AND MEMBERS THEREOF OF A CHILD UNDER

27  THE AGE OF 14 YEARS, WITH THE INTENT OF AROUSING, APPEALING TO,

28  AND GRATIFYING THE LUST, PASSIONS, AND SEXUAL DESIRES OF YOURSELF

9

1  AND THE VICTIM, IN VIOLATION OF PENAL CODE SECTION 288(A)?

2  GUILTY OR NOT GUILTY?

3       THE DEFENDANT:  GUILTY.

4       THE COURT:  JUST SO YOU KNOW WHAT YOU'VE JUST DONE, SIR,

5  YOU'VE JUST PLED GUILTY TO FELONY LEWD AND LASCIVIOUS ACTS UPON

6  THE BODY OF A CHILD UNDER THE AGE OF 14 YEARS; IS THAT CORRECT?

7       THE DEFENDANT:  YES, SIR.

8       THE COURT:  OKAY.  NOW, WOULD YOU PLEASE TELL ME IN YOUR

9  OWN WORDS  WHAT YOU DID THAT MAKES YOU THINK THAT YOU'RE GUILTY

10 OF THIS CRIME.

11      THE DEFENDANT:  I CAME HOME, AND I PULLED HER PANTS DOWN

12 AND SET MY MOUTH ON HER VAGINA.

13      THE COURT:  AND BY "HER," I ASSUME THIS IS A GIRL UNDER THE

14 AGE OF 14?

15      THE DEFENDANT:  YES, SIR.

16      THE COURT:  OKAY. HOW OLD WAS THIS GIRL?

17      MS. GUY-SCHALL:  SHE WAS BORN IN 1969, YOUR HONOR, JULY 26TH.

18      MR. ERIKSEN:  WOULD HAVE MADE HER 12.

19      THE COURT:  12?

20      MS. GUY-SCHALL:  12 YEARS OLD.

21      THE COURT:  OKAY.  I ASSUME THAT YOU THINK IT'S NECESSARY

22 FOR ME TO GO INTO THE LUST, PASSIONS, OR DESIRES PART,  OR ARE YOU

23 SATISFIED?

24      MS. GUY-SCHALL:  I'M SATISFIED.

25      THE COURT:  THE COURT FINDS THE DEFENDANT IS IN FULL

26 POSSESSION OF HIS FACULTIES.  I FIND THAT HE UNDERSTANDS AND

27 FREELY WAIVES HIS CONSTITUTIONAL RIGHTS.  I FIND THAT THIS PLEA

28 IS FREE AND VOLUNTARY AND THERE EXISTS A FACTUAL BASIS FOR IT.

1  IT IS ORDERED THAT THE PLEA OF GUILTY AND THE WAIVER OF HIS

2  CONSTITUTIONAL RIGHTS BE ACCEPTED AND ENTERED INTO THE MINUTES

3  OF THIS COURT.

4         IS THERE A MOTION BY THE PEOPLE?

5     MS. GUY-SCHALL:  THE PEOPLE MOVE TO DISMISS COUNT ONE, YOUR

6  HONOR.  IN LIGHT OF THE CODE SECTION 654, THE DEFENDANT WILL BE

7  BARRED FROM BEING SENTENCED ON THAT COUNT WITH HIS PLEA TO COUNT

8  TWO, AND PEOPLE FEEL NOW THE COURT HAS SUFFICIENT PARAMETERS TO

9  MAKE A FAIR AND JUST SENTENCING.

10     THE COURT:  ALL RIGHT.  MY UNDERSTANDING IS THAT THIS CLIENT

11  WISHES TO EXERCISE HIS RIGHTS UNDER ARBUCKLE.

12     MR. ERIKSEN:  YES, YOUR HONOR.

13     THE COURT:  SO IN ORDER FOR HIM TO DO THAT, HE MUST WAIVE

14  HIS RIGHT TO BE SENTENCED WITHIN 28 DAYS OF TODAY'S DATE.

15     MR. ERIKSEN:  THAT WOULD BE WAIVED.

16     THE COURT:  IS THAT RIGHT, MR. CORDEIRO?

17     THE DEFENDANT:  YES, SIR.

18     THE COURT:  MATTER WILL BE SET DOWN FOR SENTECING IN MY

19  DEPARTMENT ON AUGUST THE 27TH, 1982, AT 3:00 P.M.

20         NOW, IS THERE ANYTHING FURTHER?

21     MS. GUY-SCHALL:  NO, YOUR HONOR.  AT THAT TIME, I BELIEVE HE

22  WILL BE RECOMMENDED FOR AN M.D.S.O. EXAM.

23     THE COURT:  YES.

24

25              - - - - -

26

27

28

Case 3:08-cv-01013-H-LSP    Document 1-2    Filed 06/16/2008    Page 70 of 90

1    STATE OF CALIFORNIA    )
                            :    SS.
2    COUNTY OF SAN DIEGO    )

3

4        I, _____ LORI L. BROWN _____, DO HEREBY CERTIFY THAT

5    I AM A PRO TEMPORE SHORTHAND REPORTER OF THE MUNICIPAL COURT OF

6    THE SAN DIEGO JUDICIAL DISTRICT, CITY OF SAN DIEGO, COUNTY OF

7    SAN DIEGO, STATE OF CALIFORNIA; THAT AS SUCH REPORTER, I

8    REPORTED IN SHORTHAND THE PROCEEDINGS HAD AT THE CHANGE OF PLEA

9    IN THE MATTER OF THE PEOPLE OF THE STATE OF CALIFORNIA, PLAINTIFF,

10   V.        DEREK LANE CORDEIRO,     DEFENDANT; THAT THE FOREGOING

11   TRANSCRIPT, CONSISTING OF PAGES NUMBERED 1 THROUGH 10,

12   INCLUSIVE, CONTAINS A FULL, TRUE AND CORRECT RECORD OF MY

13   SHORTHAND NOTES OF THE PROCEEDINGS HAD AT SAID CHANGE OF PLEA.

14        DATED AT SAN DIEGO, CALIFORNIA, _____ JULY 22 _____, 1982.

15

16

17   _____

18        LORI L. BROWN, CSR NO. 5477

19

20

21

22

23

24

25

26

27

28

MUNICIPAL COURT OF CALIFORNIA, COUNTY OF SAN DIEGO    CR 99199

San Diego Judicial District

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,                    No. F 73255

vs.                                        FILED

DEREK LANE CORDEIRO          Robert D. Zumwalt, Clerk    CHANGE OF PLEA
                                              (GUILTY)    (FELONY)
Defendant.          JUL 15 1982

                                   Deputy     DEFENDANT TO INITIAL EACH ITEM

Comes now     Derek Lane Cordeiro
defendant in the above-entitled criminal action, and in support of his motion to change his plea(s) to be
made in open court personally and by his attorney, does declare:

1. That his attorney in the above-entitled criminal action is ...... Victor S. Eriksen ............................... ; [ ]

2. That he is charged in complaint number  F- 73255 ...................................... with having violated [ ]
   Count One: 288 a (c) P.C.   Count Two: 288 (a) P.C. .......... ;
                          (Code Section(s) and Count(s))

3. That he desires to change his plea(s) and desires to plead guilty to .... Count Two: 288 (a) P.C. ....... [ ]
                                                              (Code Section(s) and Count(s))

4. That he .... is ..... now and .... was ..... at the time this form was prepared in possession of all his faculties
   (is/is not)          (was/was not)
   and has not consumed any drug, narcotic or alcoholic beverage in the 24-hour period preceding the entry
   of this plea to the extent that his sound judgment is impaired;    [ ]

5. That he .... does ..... understand the nature of the charge(s) against him;    [ ]
   (does/does not)

6. That he .... has ..... discussed the nature of the charge(s) against him and the possible defense(s) thereto
   (has/has not)
   with his attorney and understands the consequences of a plea of Guilty.    [ ]

7. That he violated the aforementioned Penal Code section(s) by .... Committing lewd and .............
   lascivious act upon a minor by using hands to ....
   touch victim's genitals and mouth to orally .....
   copulate victim under the age of 14 years. ....
   ..................................................................................................................

8. Defendant in this matter declares that he has been advised of the following constitutional rights:

   (a)  The right to be tried by a jury;
   (b)  The right to confront and to cross-examine all the witnesses against him;
   (c)  The right at the trial to present evidence in his favor and either to testify for himself or, if he wishes,
        he may remain silent;
   (d)  The right to a speedy and public trial;
   (e)  The right to have witnesses subpoenaed to testify in his behalf and to obtain all evidence which might
        exonerate the defendant;
   (f)  The right to have a qualified lawyer defend him at all stages of the proceedings; that said attorney
        may be of defendant's own choice or shall be court appointed if the defendant is unable to afford
        counsel.    [ ]

8a. That he .... does ..., except for his right to be represented by an attorney, knowingly and intelligently waive
    (does/does not)
    each and every one of his rights at set forth in item 8 above, including:

   (a)  The right to be tried by a jury;
   (b)  The right to confront and to cross-examine all the witnesses against him;
   (c)  The right against self-incrimination.    [ ]

9. That his decision to change his plea(s) .... has ..... been made freely and voluntarily, without threat or fear
   (has/has not)
   to him or to anyone closely related to or associated with him;    [ ]

10. That his attorney .... has ..... explained the possible sentence(s), and the defendant understands the max-
    (has/has not)
    imum punishment(s) which could be imposed as a result of a plea of Guilty to be: three, six [ ]
    or maximum eight (8) years state prison.

11. That his attorney .... has ..... explained the possible penalties and consequences of a plea of Guilty to be:
    (has/has not)
    8 years state prison; registration per P.C. 290; MDSO [ ]
    commitment; probationary sentence; counseling
         48 month parole period

Form 333 (Rev. 6-72)

UN 03 435 /35 /15 th

12. That he ..has not.. been induced to plead Guilty by any promise or representation of a lesser sentence, pro-
(has/has not)
bation, reward, immunity, or anything else, except as stated below. If defendant's plea of Guilty is the result
of discussions with the District Attorney (eg, that the District Attorney has agreed to move to dismiss a
count if defendant pleads Guilty to another count), explain briefly such promise or plea bargaining in the
following space:

...COP Count Two, Dismiss Count One., N.O.L.T. probationary.....
....Sentence if the defendant is found not to be MDSO............... 📭

13. That he ..does.. understand that the matter of probation and sentence is to be determined solely by the 📭
(does/does not)
court; and

14. That he is pleading Guilty because in truth and in fact he ....is...... Guilty, and for no other reason. 📭
(is/is not)

Defendant has     (Cross out the inapplicable phrase)

1. personally prepared and discussed with his attorney

2. read, discussed and has had explained to him by his attorney

each of the above items, and understands same. Defendant has initialed each item as proof thereof.

Executed this ...13th..... day of ....July.............. 19.82.. in the County of San Diego, State of
California.

_____
(Defendant's signature)

....Victor S. Eriksen.................................... states that he is the attorney for
defendant in the above-entitled criminal action; that he personally read, discussed and explained the contents
of the above declaration of the defendant and each item thereof; that defendant's constitutional rights have
not been violated; that no meritorious defense exists to the charge(s) to which defendant is pleading Guilty;
that he personally observed the defendant (fill in and initial each item, or read and initial each item) ack-
nowledging explanation of the contents of each item; that he observed defendant date and sign said declara-
tion; that he concurs in defendant's withdrawal of his plea(s) of not guilty; that he concurs in defendant's
plea(s) of Guilty to the charge(s) as set forth by the defendant in the above declaration.

Dated this .....13th..... day of ......July.........; 19.82..

_____
(Attorney's signature)

The People of the State of California, plaintiff in the above-entitled criminal action, by and through its
attorney, EDWIN L. MILLER, JR., District Attorney, concurs in the defendant's withdrawal of his plea(s) of
not guilty and in the defendant's plea of Guilty to the charge(s) as set forth by the defendant in the above
declaration.

Dated this ....13.. day of ...July..... 19.82..

EDWIN L. MILLER, JR.
District Attorney

By: _____
(Deputy District Attorney)

Defendant personally and by his attorney having in open court moved to withdraw his plea(s) of not
guilty as heretofore entered and the People of the State of California, by and through its attorney, having con-
curred in said motion;

IT IS HEREBY ORDERED that said motion be and the same is hereby granted.

Dated: ....7-13-82..........

_____
(Judge of the Municipal Court)

Date:   JUL 14 1982
Attest: A true copy.
B. KENT PEDERSEN, Clerk/Admin. Officer
By _____ Deputy

Form 333 reverse

CR 59199

# IN THE MUNICIPAL COURT OF THE SAN DIEGO JUDICIAL DISTRICT

## COUNTY OF SAN DIEGO, STATE OF CALIFORNIA

### DOCKET

F I L E D
Robert D. Zumwalt, Clerk

JUL 15 1982

NO. F 73255

Deputy

The People of the State of California vs. ......... DEREK LANE CORDEIRO ..................................................

.................. Attorney for Defendant.....................................................................................................

.......................... Bail set at $ ................... & Pen. Asst. $ .........................................................

.......................... Bail Deposited $ ................... & Pen. Asst. $ .........................................................

### PROCEEDINGS

| | |
|---|---|
| JUN 0 3 1982 | Complaint Filed  CHARGE: Vio. of Sec. 288a (c) / 288 (a)  of the  PC / PC  Code |

Notify warrant - Defendant to appear *June 16, 82 @ 10 Am*

JUN 1 6 1982

For the People: *Clifford Doburn*
For the Defendant: *in person and by Donald Russell for Victor Erickson, retained*
Court Reporter: *Duane Rankin*
Defendant in court, gives true name as...*charged*...
Defendant informed of the charge against him, his
rights, of his right to the aid of counsel in every
stage of the proceedings, and is delivered a copy
of the complaint.
Defendant arraigned. Advised of constitutional rights.
Defendant pleads not guilty.

Acknowledgement of Advisal of Constitutional
Rights signed and filed in open Court.

Continued to *6-23-82 @ 9:30 Am for disposition*

Defendant released on his own recognizance.

Order for book and release per P.C. 13150 issued.

Date: JUL 14 1982
Attest: A true copy.
D. KENT PEDERSEN, Clerk/Admin. Officer
By _____ Deputy

FREDERIC L. LINK
*s*

| | |
|---|---|
| JUN 2 3 1982 | DDA/~~DCA~~: *Clifford Doburn*  DEFENSE COUNSEL: *in person and Victor Eriksen by Donald Russell*  REPORTER: *Norman Brown*  PROB. OFF.:  *no disposition reached* |

Page 2

$1^-73255^-$

JUN 23 1982

Defendant is hereby ordered to appear for preliminary hearing
in Presiding Dept. on _7-13-82_ at _1:15 PM_

CR 53199

*and*

Continued to _7-2-82_ @ $1^{30}$ *in Department*

*4 for disposition*

Defendant released on own recognizance.

FREDERIC L. LINK

JUL 2 1982

TRANSFERRED FROM PRESIDING DEPT. TO DEPT _4_

DDA: *CHUCK PATRICK*
DEFENSE: *VICTOR ERIKSEN*
REPORTER: —

*AT REQUEST OF COUNSEL FOR DEFENDANT*

Case continued to _7-9-82_ at _1:30_ P.M.
*for possible disposition.*

No disposition reached at this time.
Preliminary hearing date to remain as set.
Bail $ _____

Defendant released on his own recognizance. *Continued in effect*

Richard J. Hanscom

JUL 9 1982

TRANSFERRED FROM PRESIDING DEPT. TO DEPT _5_

DDA: *WAYNE MAYER*
DEFENSE: *Victor Eriksen and in person*
REPORTER: *J. SPERANZA*
No disposition reached at this time.
Preliminary hearing date to remain as set.
Bail $ _____

Order for release on his own recognizance
continued in effect.

BARBARA TUTTLE GAMER

Date: JUL 14 1982  Attest: A true copy,  G. KENT PEDERSEN, Clerk / Admin. Officer  By _____ Deputy

# Municipal Court of California, County of San Diego

## San Diego Judicial District   CR 59199

The People of the State of California vs. ........DEREK LANE CORDEIRO...........................................................

CRIMINAL DOCKET · PAGE __3__                    No. .....F73255.............

JULY 13, 1982 TRANSFERRED FROM _ PRESIDING _____ DEPT. TO DEPT. FELONY ARRAIGNMENT

      PEOPLE APP. BY:  DDA LISA GUY-SCHALL

      DEFENDANT APP. IN PERSON AND BY VICTOR ERIKSEN

      REPORTER: LORI BROWN

      DEFENDANT SWORN AND EXAMINED

      AS TO COUNT 2, 288(a) PC:


      Defendant advised of his right to trial by
jury and confrontation by witnesses, and
privilege against self incrimination, and
of the maximum penalties provided for the
offense.  Court questions defendant and
finds guilty plea has factual basis and
is freely and intelligently made.

      Defendant withdraws plea of not guilty, and personally
and through his attorney enters a plea of guilty.  It
is therefore ordered by the court that the defendant
be certified to the Superior Court.

      Further proceedings in Superior Court set for_____ 3:00  AM/PM
on____ 8-27-82 _____in Dept. OF FREDERIC L. LINK
TIME WAIVED
Probation referral issued.

      Change of Plea Form signed by all
parties and incorporated herein.

      As to count(s):___ 288a(c) PC _____
Dismissed in the furtherance of justice on
motion of Deputy District Attorney in view
of plea to other count(s). #177

      Order to appear in Superior Court/XXXXXX signed
Bail $_____ ---

      ☐ Bail posted to remain in force.


      ☒ Released on O/R

      PRELIMINARY HEARING DATE IS HEREBY VACATED

      Files to Superior Court:  No. CR_____

JUL 14 1982

Date:_____ A true copy.
Attest:_____ Clerk/Admin. Officer
R. KENT PEDERSEN
By_____

FREDERIC L. LINK φ

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CR ___ 59199 ___ DA ___ A60557 ___

DATE ___ AUGUST 27, 1982 ___ AT ___ 3 ___ M.

PRESENT: HON. ___ FREDERIC L. LINK ___    JUDGE PRESIDING DEPARTMENT ___ MUNI COURT ONE ___

CLERK ___ P. Burke-Jarvis ___    REPORTER ___ Joe Operapari ___

Frank Setter

THE PEOPLE OF THE STATE OF CALIFORNIA                    DEPUTY DISTRICT ATTORNEY

VS

___ DEREK LANE CORDEIRO ___                    ___ VICTOR ERIKSEN ___
DEFENDANT                    ATTORNEY FOR DEFENDANT (APPT) (RETAINED)

VIOLATION OF ___ PC 288(a) ___                    PROB

DEFENDANT          ☐ DULY ARRAIGNED FOR JUDGMENT          ☑ WAIVES ARRAIGNMENT          ☑ NOT PRESENT

☐ DEFENDANT ADVISED OF RIGHTS AND (ADMITS) (DENIES) A VIOLATION OF PROBATION   ☐ WAIVES HEARING

PROBATION IS     ☐ DENIED     ☐ REVOKED     ☐ REINSTATED     ☐ MODIFIED     ☐ CONTINUED     ☐ GRANTED ___ YEARS

☐ FORMAL/SUMMARY

☐ DEFENDANT COMMITTED TO CUSTODY OF SHERIFF FOR ___ ADULT INSTITUTIONS RECOMMENDED

AS PER ORDER SIGNED AND FILED          ☐ DEFENDANT NOT TO BE GRANTED PAROLE          (STRIKE IF NOT APPLICABLE)

☐ DEFENDANT REFERRED TO DIRECTOR OF CORRECTIONS UNDER PC 1203.03. HEARING SET FOR ___

AT ___ M IN DEPARTMENT ___

☐ DEFENDANT COMMITTED TO DIRECTOR OF CORRECTIONS:          (LOWER) (MIDDLE) (UPPER) TERM          CREDIT TIME SERVED:

☐ DEFENDANT COMMITTED TO CALIFORNIA YOUTH AUTHORITY:     OF ___ YRS.          ___ DAYS LOCAL

☐ DEFENDANT NOTIFIED OF APPEAL RIGHTS IN ACCORDANCE WITH RULE 250, CALIFORNIA RULES OF COURT          ___ DAYS PRISON

☐ ADVISED OF PAROLE RIGHTS.          ___ DAYS GT/WT

☑ DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT          ___ DAYS TOTAL

___ CONTINUED TO ___ 10-31-82 ___ DEPT. ___ MC Dpt 1 ___

AT ___ 1:30 ___ M ON MOTION OF COURT / DDA / DEFENDANT / PROBATION OFFICER   Defendant waived time. ___

PROCEEDINGS ADJOURNED TO DETERMINE WHETHER DEFENDANT   ☐ IS PRESENTLY SANE (PC 1368)   ☐ IS MENTALLY DISORDERED SEX OFFENDER (WI 6300 ET. SEQ.)

☐ ADDICTED OR IN IMMINENT DANGER OF BECOMING ADDICTED TO NARCOTICS, AS PER ORDER SIGNED AND FILED (WI 3051)

DEFENDANT REMAINS AT LIBERTY:   ☐ ON BOND POSTED $ ___          ☑ ON OWN RECOGNIZANCE   ☐ ON PROBATION

☐ DEFENDANT REMANDED TO CUSTODY OF SHERIFF WITHOUT BAIL          ☐ DEFENDANT ORDERED RELEASED FROM CUSTODY OF SHERIFF

☐ DEFENDANT REMANDED TO CUSTODY OF SHERIFF WITH BAIL SET AT $ ___

☐ COURT DETERMINES DEFENDANT HAS / DOES NOT HAVE ABILITY TO REIMBURSE THE COUNTY FOR COURT APPOINTED COUNSEL IN THE AMOUNT OF $ ___

PAYABLE $ ___ PER MONTH COMMENCING ___

☐ BENCH WARRANT TO ISSUE, BAIL SET AT $ ___          SERVICE WITHHELD TO ___

☐ BAIL BOND EXONERATED          ☐ DMV ABSTRACT FORWARDED

☐ BOND FORFEITED $ ___          BOND COMPANY ___

BOND NO. ___          AGENT ___

☐ DEFENDANT ORDERED TO PAY A FINE OF $ ___ INCLUDING PENALTY ASSESSMENT (PC 1350) (GC 13967)
(STRIKE ONE)

AT $ ___ BEGINNING ___ PLUS PENALTY ASSESSMENT (GC 13967)

☐ DEFENDANT ORDERED TO MAKE RESTITUTION OF ___ AT ___ COMMENCING ___
OTHER

CR-20 (2-81)          **CRIMINAL MINUTES—PRONOUNCEMENT OF JUDGMENT**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

9199 ___ DA __ A60557 _____

XT 21, 1982 __ AT ___ 1:30 ___ M.

HON. _____ FREDERIC L. LINK _____ JUDGE PRESIDING DEPARTMENT __ MUNI CT ONE __

_____ REPORTER _____

PEOPLE OF THE STATE OF CALIFORNIA
VS                                              DEPUTY DISTRICT ATTORNEY

REK LANE CORDEIRO _____            V. ERIKSEN
DEFENDANT                           ATTORNEY FOR DEFENDANT (APPT DIR ☐ RETAINED)

ON OF __ PC 288(a) ___            PROB /SENT

NT        ☐ DULY ARRAIGNED FOR JUDGMENT        ☐ WAIVES ARRAIGNMENT        ☐ NON PRESENT

ENDANT ADVISED OF RIGHTS AND (ADMITS) (DENIES) A VIOLATION OF PROBATION  ☐ WAIVES HEARING
ON IS  ☐ DENIED  ☐ REVOKED  ☐ REINSTATED:  ☐ MODIFIED  ☐ CONTINUED  ☐ GRANTED __ YEARS
                                                                      ☐ CRIM JUDGMENT

ENDANT COMMITTED TO CUSTODY OF SHERIFF FOR _____                  ADULT INSTITUTION RECOMMENDED
                              ☐ DEFENDANT NOT TO BE GRANTED PAROLE   (STRIKE IF NOT APPLICABLE)
PER ORDER SIGNED AND FILED

ENDANT REFERRED TO DIRECTOR OF CORRECTIONS UNDER PC 1203.03. HEARING SET FOR _____

_____ M IN DEPARTMENT _____

ENDANT COMMITTED TO DIRECTOR OF CORRECTIONS:        (LOWER) (MIDDLE) (UPPER) TERM       CREDIT TIME SERVED:

FENDANT COMMITTED TO CALIFORNIA YOUTH AUTHORITY:    OF ____ YRS.           ____ DAYS LOCAL

ENDANT NOTIFIED OF APPEAL RIGHTS IN ACCORDANCE WITH RULE 250, CALIFORNIA RULES OF COURT   ____ DAYS PRISON

VISED OF PAROLE RIGHTS.                                                    ____ DAYS GT/WT.

ENDANT WAIVED STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT                 ____ DAYS TOTAL

_____ CONTINUED TO _____ DEPT _____

M ON MOTION OF COURT / DDA / DEFENDANT / PROBATION OFFICER

☐ IS PRESENTLY SANE (PC 1368)  ☐ IS MENTALLY DISORDERED SEX OFFENDER (WI 6300 ET. SEG.)

☐ ADDICTED OR IN IMMINENT DANGER OF BECOMING ADDICTED TO NARCOTICS, AS PER ORDER SIGNED AND FILED (WI 3051)

DANT REMAINS AT LIBERTY:  ☐ ON BOND POSTED $ _____  ☐ ON OWN RECOGNIZANCE  ☐ ON PROBATION

DEFENDANT REMANDED TO CUSTODY OF SHERIFF WITHOUT BAIL  ☒ DEFENDANT ORDERED RELEASED FROM CUSTODY OF SHERIFF

DEFENDANT REMANDED TO CUSTODY OF SHERIFF WITH BAIL SET AT $ _____

COURT DETERMINED DEFENDANT HAS / DOES NOT HAVE ABILITY TO REIMBURSE THE COUNTY FOR COURT APPOINTED COUNSEL IN THE AMOUNT OF $ _____

AYABLE $ _____ PER MONTH COMMENCING _____

ENCH WARRANT TO ISSUE, BAIL SET AT $ _____   SERVICE WITHHELD TO _____

AIL BOND EXONERATED  ☐ DMV ABSTRACT FORWARDED

BOND FORFEITED $ _____   BOND COMPANY _____

BOND TO _____   AGENT _____

DEFENDANT ORDERED TO PAY A FINE OF $ _____ INCLUDING PENALTY ASSESSMENT (PC 1362) (H&S 1197) (STRIKE ONE)

_____ BEGINNING _____   PLUS PENALTY ASSESSMENT (PC 1397)

DEFENDANT ORDERED TO MAKE RESTITUTION OF $ _____ AT _____   COMMENCING _____

OTHER _____

CRIMINAL MINUTES — PRONOUNCEMENT OF JUDGMENT — COPY

# MUNICIPAL COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
## SAN DIEGO JUDICIAL DISTRICT

CR 59199 *FA COP Felony*

The People of the State of California,

Plaintiff,

vs.

DEREK LANE CORDEIRO

Defendant

F I L E D
Robert D. Zumwalt, Clerk

JUL 15 1982

Deputy

## Complaint – Criminal
### (FELONY)

D. A. No.   A60557

Case No.   73255

The undersigned complains that in the County of San Diego, State of California, and before the making or filing of this Complaint, the Defendant(s) did commit the following crime(s):

COUNT ONE:  On or about the dates between November 1, 1981 and November 26, 1981, DEREK LANE CORDEIRO did unlawfully participate in an act of oral copulation with a person under the age of 14 and who was more than 10 years younger than said defendant, in violation of Penal Code section 288a(c).

COUNT TWO:  On or about the dates between November 1, 1981 and November 26, 1981, KEREK LANE CORDEIRO did wilfully and lewdly commit a lewd and lascivious act upon and with the body, and parts and members thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, and gratifying the lust, passions, and sexual desires of the defendant and the victim, in violation of Penal Code section 288(a).

Date:   JUL 14 1982
Attest: A true copy.
C. KENT PEDERSEN, Clerk/Admin Officer
By _____ Deputy

Subscribed and sworn to before me on
this date: _____

_____
Judge of the Municipal Court, San Diego
Judicial District, County of San Diego,
State of California

I certify under penalty of perjury that the foregoing is true and correct. Executed at San Diego, California on the date:

June 2, 1982

_____
Complainant

Case 3:08-cv-01519-H-CAB   Document 1-3   Filed 08/18/2008   Page 162 of 254

MUNICIPAL COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

SAN DIEGO JUDICIAL DISTRICT

CR 53199

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

vs.

DEREK LANE CORDEIRO

Defendant,

NO: F73255

CR 53199

**Acknowledgement of Advisal of Constitutional Rights**

F I L E D
Robert D. Zurtwalt, Clerk

JUL 15 1982

**Deputy**

Defendant in this matter declares that he has been advised of the following constitutional rights:

(a) The right to be tried by a jury;

(b) The right to confront and to cross-examine all the witnesses against him;

(c) The right at the trial to present evidence in his favor and either to testify for himself or, if he wishes, he may remain silent;

(d) The right to a speedy and public trial;

(e) The right to have witnesses subpoenaed to testify in his behalf and to obtain all evidence which might exonerate the defendant;

(f) The right to have a qualified lawyer defend him at all stages of the proceedings; that said attorney may be of defendant's own choice or shall be court appointed if the defendant is unable to afford counsel.

Defendant also understands, if an attorney is appointed to represent him, that at the conclusion of the criminal proceedings, the court will, after a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost of the attorney. If the court determines that the defendant has such present ability, the court will order the defendant to pay all or part of such cost. Such an order will have the same force and effect as a judgment in a civil action and will be subject to execution. PC 987.8

That defendant also understands if he is not a citizen, the conviction of the offense for which he is charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

Date 6-9-16-82

_____
Signature of Defendant

I certify under penalty of perjury that I, _Donald Russell_ have advised this defendant of all rights referred to above.

Date 6-16-82

_____
Signature of Attorney

Form 528 (Rev. 5-78)

REPORT—INDETERMINATE SENTENCE,
OTHER SENTENCE CHOICE

FORM CR⬤

[PER]IOR COURT OF CALIFORNIA, COUNTY OF __SAN DIEGO__

[COU]RT I.D. _____    BRANCH _____

[PEO]PLE OF THE STATE OF CALIFORNIA    versus    [X] PRESENT

[DE]FENDANT: DEREK LANE CORDEIRO
AKA: _____    [ ] NOT PRESENT

[RE]PORT TO JUDICIAL COUNCIL OF: [ ] INDETERMINATE SENTENCE
[ ] STATE PRISON [X] SENTENCE CHOICE OTHER THAN STATE PRISON

CASE NUMBER(S)
CR 59199 — A
— B
— C
— D
— E

F I L E D
Robert D. Zurmuelt, Clerk
OCT 2 6 1982
R. Henderson, Deputy

| DATE OF HEARING (MO.) (DAY) (YR.) | DEPT. NO. | JUDGE | CLERK |
|---|---|---|---|
| 10, 21, 82 | MUNI ONE | FREDERIC L. LINK | P. BURKE–JENNINGS |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| R. ROSS | L. GUY-SCHALL | V. ERIKSEN | S. STAPEL |

DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES:

[ ] ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT _____

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO | DAY | YEAR | CONVICTION BY JURY TRIAL | COURT TRIAL | PLEA | 654 STAY | 12022(a) | 12022(b) | 12022.1(b) | 12022.5 | 12022.6(a) | 12022.6(b) | 12022.7 | 1203.4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | PC | 288(a) | COMMIT LEWD ACT ON BODY OF CHILD UNDER 14 YRS | 81 | 10 | 13 | 82 | | | X | | | | | | | | | |

A. Number of prior prison terms charged and found

| SECTION | NUMBER |
|---|---|
| 667.5(a) | 0 |
| 667.5(b) | 0 |
| 667.6(b) | 0 |

B. Number of prior felony convictions

| SECTION | NUMBER |
|---|---|
| 667.6(a) | 0 |

[ ] Defendant was sentenced to death on counts _____ , _____ , _____ , _____ .

[ ] Defendant was sentenced to State Prison:

A. [ ] For life, or a term such as 15 or 25 years to life, with possibility of parole, on counts _____ , _____ , _____ , _____ .

B. [ ] For life without the possibility of parole on counts _____ , _____ , _____ , _____ .

C. [ ] For other term prescribed by law on counts _____ , _____ , _____ , _____ .

[ ] Counts _____ , _____ , _____ , _____ , were deemed misdemeanors.

A. [ ] Defendant sentenced to _____ days in county jail for all counts.
       NUMBER

B. [ ] Defendant fined in sum of $ _____ .

[X] For counts __1__ , _____ , _____ , _____ , the defendant was placed on probation.

A. (1) [ ] Sentence pronounced and execution of sentence was suspended; or

   (2) [X] Imposition of sentence was suspended.

B. Conditions of probation included [X] Jail Time __180__ days    [ ] Fine

Other dispositions

A. [ ] Defendant was committed to California Youth Authority.

B. [ ] Proceedings suspended, and defendant was committed to California Rehabilitation Center.

C. [ ] Proceedings suspended, and defendant was committed as a Mentally Disordered Sex Offender.

D. [ ] Proceedings suspended, and defendant was committed as mentally incompetent.

E. [ ] Other (Specify) _____

NOTE: PURSUANT TO ARTICLE VI, SECTION 6 OF THE CALIFORNIA CONSTITUTION AND SECTION 68505 OF THE GOVERNMENT CODE, CHIEF JUSTICE REQUIRES THAT EACH SUPERIOR COURT SHALL COMPLETE THIS FORM FOR EACH INDETERMINATE SENTENCE, STATE PRISON OR SENTENCE CHOICE OTHER THAN STATE PRISON. THE REPORTS IMPLEMENT SECTION 1170.4 OF THE PENAL AND SHALL BE MAILED TO: ADMINISTRATIVE OFFICE OF THE COURTS, 350 McALLISTER, 3200 STATE BUILDING, SAN FRANC CALIFORNIA 94102

DATE OCT 2 6 1982    SIGNATURE OF CLERK _____

REPORT—INDETERMINATE SENTENCE,
OTHER SENTENCE CHOICE

Const., Art.
Pen C. 1170.4.

**E X H I B I T   C**

Clerk's/Reporter's Transcripts
of Prior Plea Bargain  and
Conviction dated 11/13/85

[illegible header links across top]

MUNICIPAL COURT OF CALIFORNIA COUNTY OF SAN DIEGO   CR 77137
SAN DIEGO JUDICIAL DISTRICT

People vs. _Derek Lane Cordero_ ................ Case No. _M31177_

## PLEA OF GUILTY/NO CONTEST — FELONY/MISDEMEANOR

The defendant in the above-entitled action, in support of his motion to change his plea(s) in open Court personally and by his attorney, does declare that his attorney in this case is _Michael J. McKisson_ and does further declare as follows:

Of those charges now filed against me in this case, I wish to plead:  Guilty/No Contest:  [initials]
to the following violations: (List Crimes and Code Sections)
Count three: willful and lewdly commit a
lewd and lascivious act upon and with the
body of a child under 14 years of age
in violation of P.C. §288(a)

4. (If Applicable) I also wish to admit the following enhancement(s)/prior conviction(s)  [initials]
with which I am charged: (List Court, Docket No. and Date of any Prior Conviction)
P.C. 288(a) in SDSC No. CR59199 on 6/21/62
within the meaning of P.C. 1203.066(a)(9)
+ 667.51(a)

I have not been induced to enter the above plea by any promise or representation of  [initials]
any kind, except: (Briefly state any plea bargain with the District Attorney.)
Dismissal of remaining charges and
enhancements. No revocation of probation
in CR59199.

## RIGHT TO A LAWYER

I understand that I have the right to be represented by a lawyer at all stages of the proceedings, including this one. I can hire my own lawyer, or the Court will appoint  [W]
a lawyer for me if I cannot afford one.

F  Robert B. Lummis, Clerk
NOV 13 1985
By _____ DEPUTY

## CONSTITUTIONAL RIGHTS

I understand that I also have the following constitutional rights, which I _____ to plead, either Guilty or No Contest.

| | I understand this right | I give up this right |
|---|---|---|
| The right to be tried by a jury, in a speedy, public trial. | [W] | [W] |
| The right to confront and to cross-examine all the witnesses against me. | [W] | [W] |
| The right to remain silent (unless I choose to testify on my own behalf). | [W] | [W] |
| The right to present evidence and to have witnesses subpoenaed to testify in my behalf at no cost to me. | [W] | [W] |

## CONSEQUENCES OF PLEA OF GUILTY OR NO CONTEST

I understand that I may serve this maximum sentence as a result of my plea:  [W]
_13_ years in State Prison, $_____ fine and 48 months parole,
with up to one year return to prison for every parole violation. If I should receive probation (for up to five years), I understand that I may be given up to a year in local custody, plus the fine, and any other conditions deemed reasonable by the Court. I understand that if I violate any terms or conditions of probation I can be sent to State Prison for the maximum term as stated above.

My attorney has explained to me that other possible consequences of this plea may  [W]
be: (Circle applicable consequences.)

(a) Consecutive sentences.        (d) Registration as a sex offender.
(b) Loss of driving privileges.   (e) Ineligibility for probation.
(c) Commitment to the Youth Authority.  (f) Registration as a narcotics offender.

I understand that if I am not a citizen of the United States a plea of Guilty or No Contest  [W]
could result in deportation, exclusion from admission to this country, or denial of naturalization.

I understand that my plea of Guilty or No Contest in this case could result in revocation  N/A
of my probation or parole in other cases.

SDMC Form 711 (03/85)

11. I now plead ___Guilty___ to the charge(s) described in #1 above,
Guilty/No Contest
and admit that on the date charged I: (Describe facts as to each charge in #1.)
orally copulated a 13 year old girl

11a. (If Applicable) I understand that as to any and all prior conviction(s)/enhancement(s)
alleged against me in this case, I have all the constitutional rights listed in #3 - #7
above. As to any prior convictions alleged, I understand that if I request a jury trial
on the current case, the jury would not learn of, or decide, the prior conviction(s) unless
and until the jury found me guilty on the current charges.

11b. (If Applicable) I hereby admit the prior conviction(s)/enhancement(s) listed in this
form, and give up my constitutional rights, including the right to a separate jury
determination on the issue of the prior conviction(s).

12. I do understand that the matter of probation and sentence is to be determined solely
by the Court.

13. (Harvey Waiver) The sentencing judge may consider my prior criminal history and the
entire factual background of the case, including any unfiled, dismissed or stricken charges
or allegations or cases when granting probation, ordering restitution or imposing sentence.

14. I am entering my plea freely and voluntarily, without threat or fear to me or anyone
closely related to me.

15a. I am pleading Guilty because in truth and in fact I AM GUILTY.

15b. I understand that a plea of No Contest is the same as a plea of Guilty in this criminal
case and for all purposes has the same consequences as a plea of Guilty.

16. I am now sober. I have not consumed any drug, alcohol or narcotic within the past 24
hours to the extent that my judgment is impaired.

17. I declare under penalty of perjury under the laws of the State of California, that I have
read, understood, and initialed each item above, and everything on the form is true
and correct.

Dated: 11-13-85

_____
Defendant's Signature

2128 Thomas Street #6
_____
Defendant's Address

San Diego Ca 92109
_____
City        State      Zip

(619) 270-2110
_____
Defendant's Telephone Number

## ATTORNEY'S STATEMENT

The undersigned states that (s)he is the attorney for defendant in the above-entitled action, that (s)he personally
read and explained the contents of the above declaration to the defendant and each item thereof, that no
meritorious defense exists to the charge(s) to which defendant is pleading Guilty/No Contest; that (s)he
personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge
explanation of the contents of each item; that (s)he observed defendant date and sign said declaration; that
(s)he concurs in defendant's above plea and in defendant's waiver of constitutional rights.

Dated: 11-13-85

_____
Attorney for Defendant

## INTERPRETER'S STATEMENT (If Applicable)

I, the interpreter in this proceeding, having been duly sworn, truly translated this form and all the questions
therein to the defendant in the _____ language. The defendant indicated
that (s)he understood the contents of the form and (s)he then initialed and signed the form.

Dated: _____

_____
Court Interpreter

## PROSECUTOR'S STATEMENT

The People of the State of California, plaintiff in the above-entitled criminal action, by and through its
attorney, EDWIN L. MILLER, JR., District Attorney, concurs in the defendant's plea of Guilty/No Contest as set
forth above.

Dated: 11-13-85

_____
Deputy District Attorney

## COURT'S FINDINGS AND ORDER

The Court, having questioned the defendant concerning the defendant's constitutional rights, finds that defendant
has voluntarily and intelligently waived his/her constitutional rights. The Court finds that defendant's plea
and admissions are freely and voluntarily made, that defendant understands the nature of the charges and the
consequences of the plea, and that there is a factual basis for the plea. The Court accepts defendant's plea,
and the defendant is hereby convicted on his plea.

Dated: 11-13-85

_____
Judge of the Municipal Court

SDMC Form 11 (03/85)

Case 3:07-cv-02387-CAB Document 13 Filed 09/15/2008 Page 141 of 254

# SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN DIEGO

CR __CR77157__ DA __A9400307__

DATE __01-22-86__ __01:30__ At ___ M __PROB. HEAR-SENTENCING__

PRESENT HON. __JOE O. LITTLEJOHN__     JUDGE PRESIDING DEPARTMENT __M12__

CLERK __W. Mianowski__     REPORTER ___

THE PEOPLE OF THE STATE OF CALIFORNIA
VS     DEPUTY DISTRICT ATTORNEY
__CORDEIRO     DEREK     L__     __V. ERIKSEN__
DEFENDANT     ATTORNEY FOR DEFENDANT (APPOINTED/RETAINED)

VIOLATION OF __PC288(A)__

☐ DEFENDANT ☐ NOT PRESENT ☐ ARRAIGNED FOR JUDGMENT ☐ WAIVES ARRAIGNMENT
☐ DEFENDANT ADVISED OF RIGHTS AND (ADMITS/DENIES) A VIOLATION OF PROBATION ☐ WAIVES HEARING
PROBATION IS ☐ DENIED ☐ REVOKED ☐ REINSTATED ☐ CONTINUED ☐ MODIFIED ☐ GRANTED ___ YEARS (FORMAL/SUMMARY)

☐ IMPOSITION OF SENTENCE IS SUSPENDED ☐ DEFENDANT SENTENCED TO STATE PRISON, EXECUTION STAYED (SEE BELOW FOR TERM)
CONDITIONS OF PROBATION INCLUDE, BUT ARE NOT LIMITED TO:
☐ COMMITMENT TO SHERIFF FOR ___ DAYS ☐ ADULT INSTITUTIONS RECOMMENDED ☐ PAROLE NOT TO BE GRANTED
☐ FINE OF $ ___ INCLUDING PENALTY ASSESSMENT AT $ ___ PER MONTH, COMMENCING ___ THROUGH REVENUE AND RECOVERY
☐ RESTITUTION OF $ ___ TO VICTIM/RESTITUTION FUND AT $ ___ PER MONTH, COMMENCING ___ THROUGH REVENUE AND RECOVERY
☐ RESTITUTION/FINE OF $ ___ PER GC 13967, STAYED PER PC 1202.4(b)
☐ PARTICIPATION IN COMMUNITY SERVICES PROGRAM IN LIEU OF RESTITUTION
☐ FOURTH AMENDMENT WAIVER OF PERSON/AUTO/RESIDENCE/PERSONAL EFFECTS
☐ REGISTRATION PER PC 290/H&S 11590

☐ DEFENDANT IS COMMITTED TO DEPARTMENT OF CORRECTIONS FOR LOWER/MIDDLE/UPPER TERM OF ___ YEARS
(SEE BELOW FOR ADDITIONAL COUNTS) ___ COUNT ___
☐ DEFENDANT IS COMMITTED TO CALIFORNIA YOUTH AUTHORITY ☐ PER W&I 707.2 ☐ PER W&I 1731
(SEE BELOW FOR FINDINGS)
☐ DEFENDANT IS ADVISED OF APPEAL RIGHTS ☐ DEFENDANT IS ADVISED REGARDING PAROLE

CREDIT FOR TIME SERVED
___ DAYS LOCAL
___ DAYS STATE INST.
___ DAYS PC 4019
___ TOTAL DAYS CREDIT

DEFENDANT REMAINS AT LIBERTY:
☑ ON BOND POSTED $ __15,000__
☐ ON OWN RECOGNIZANCE
☐ ON PROBATION

DEFENDANT REMANDED TO CUSTODY:
☐ WITHOUT BAIL
☐ WITH BAIL SET AT $ ___

☐ DEFENDANT ORDERED RELEASED FROM CUSTODY

☑ DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT
__PA&S__ CONTINUED TO/SET FOR __2-19-86__ AT __1:30__ M IN DEPT __M12__ ON MOTION OF
☐ COURT/DA/DEFENDANT/PROBATION OFFICER. REASON: __Re-referred to Probation Dept__
☐ DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION PER PC 1203.03 FURTHER HEARING SET FOR ___ AT ___ M IN DEPT ___

☐ BENCH WARRANT TO ISSUE, BAIL SET AT $ ___ SERVICE WITHHELD TO ___
☐ BENCH WARRANT, ISSUED ___ IS RECALLED
☐ BOND FORFEITED BOND AMOUNT ___ BOND NO. ___ BOND COMPANY ___ AGENT ___
☐ BOND IS EXONERATED

☐ PROCEEDINGS SUSPENDED PER: ☐ PC 1368, MENTAL COMPETENCY (SEE BELOW FOR DATES OF EXAMINATION AND HEARING)
☐ W&I 3051 ADDICTION OR DANGER OF ADDICTION (SEE BELOW FOR DATE OF SERVICE OF PETITION AND ORDER)

OTHER ☐ REFERRED TO DEPT. OF REVENUE AND RECOVERY

CRIMINAL MINUTES—PRONOUNCEMENT OF JUDGMENT

Case 3:06-cv-01916-H-CAB   Document 1-3   Filed 09/18/2006   Page 68 of 90

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

SDS

CR __CR77137__ DA __4949HC1__

DATE __01-22-86__     __01:30__ AT _____ M     PROB HEAR-SENTENCING

PRESENT: HON. __JOE O LITTLEJOHN__     JUDGE PRESIDING DEPARTMENT __M12__

CLERK __W Muamouta__     REPORTER __D. Ucampos__

THE PEOPLE OF THE STATE OF CALIFORNIA
vs
__CORDEIRO   DEREK__     L
DEFENDANT

DEPUTY DISTRICT ATTORNEY __J. Marx Fagner__

ATTORNEY FOR DEFENDANT (APPTD/RETAINED) __J. ERIKSEN__

VIOLATION OF __*PC288(A)__

DEFENDANT ☐NOT PRESENT ☐ARRAIGNED FOR JUDGMENT ☐WAIVES ARRAIGNMENT
☐DEFENDANT ADVISED OF RIGHTS AND (ADMITS/DENIES) A VIOLATION OF PROBATION ☐WAIVES HEARING
PROBATION IS: ☐DENIED ☐REVOKED ☐REINSTATED ☐CONTINUED ☐MODIFIED ☐GRANTED ____YEARS (FORMAL/SUMMARY)

☐IMPOSITION OF SENTENCE IS SUSPENDED. ☐DEFENDANT SENTENCED TO STATE PRISON, EXECUTION STAYED (SEE BELOW FOR TERM).

**PROBATION** CONDITIONS OF PROBATION INCLUDE, BUT ARE NOT LIMITED TO:
☐COMMITMENT TO SHERIFF FOR ____ DAYS. ☐ADULT INSTITUTIONS RECOMMENDED ☐PAROLE NOT TO BE GRANTED
☐FINE OF $_____ INCLUDING PENALTY ASSESSMENT AT $____ PER MONTH, COMMENCING ____ THROUGH REVENUE AND RECOVERY.
☐RESTITUTION OF $_____ TO VICTIM/RESTITUTION FUND AT $____ PER MONTH, COMMENCING ____ THROUGH REVENUE AND RECOVERY.
☐RESTITUTION/FINE OF $_____ PER GC 13967, STAYED PER PC 1202.4(b).
☐PARTICIPATION IN COMMUNITY SERVICES PROGRAM IN LIEU OF RESTITUTION.
☐FOURTH AMENDMENT WAIVER OF PERSON/AUTO/RESIDENCE/PERSONAL EFFECTS
☐REGISTRATION PER PC 290/H&S 11590.

**STATE COMMITMENT**
☐DEFENDANT IS COMMITTED TO DEPARTMENT OF CORRECTIONS FOR LOWER/MIDDLE/UPPER TERM OF ____ YEARS.
(SEE BELOW FOR ADDITIONAL COUNTS) COUNT ____
☐DEFENDANT IS COMMITTED TO CALIFORNIA YOUTH AUTHORITY. ☐PER W&I 707.2 ☐PER W&I 1737
(SEE BELOW FOR FINDINGS)
☐DEFENDANT IS ADVISED OF APPEAL RIGHTS ☐DEFENDANT IS ADVISED REGARDING PAROLE

CREDIT FOR TIME SERVED
____ DAYS LOCAL
____ DAYS STATE INST.
____ DAYS PC 4019
____ TOTAL DAYS CREDIT

**CUSTODY STATUS**
DEFENDANT REMAINS AT LIBERTY:
☒ON BOND POSTED $ __15,000__
☐ON OWN RECOGNIZANCE
☐ON PROBATION

DEFENDANT REMANDED TO CUSTODY:
☐WITHOUT BAIL
☐WITH BAIL SET AT $_____

☐DEFENDANT ORDERED RELEASED FROM CUSTODY

**FUTURE HEARINGS**
☒DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT
__P H+S__ CONTINUED TO/SET FOR __2-19-86__ AT __1:30__ M IN DEPT __M12__ ON MOTION OF
COURT/DA/DEFENDANT/PROBATION OFFICER. REASON: __Re- referred to Probation Dept.__
☐DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION PER PC 1203.03. FURTHER HEARING SET FOR ____ AT ____ M IN DEPT. ____

**BONDS/WARRANTS**
☐BENCH WARRANT TO ISSUE, BAIL SET AT $_____ SERVICE WITHHELD TO _____
☐BENCH WARRANT, ISSUED _____ IS RECALLED.
☐BOND FORFEITED. BOND AMOUNT _____ BOND NO. _____ BOND COMPANY _____ AGENT _____
☐BOND IS EXONERATED.

**MH** ☐PROCEEDINGS SUSPENDED PER: ☐PC 1368, MENTAL COMPETENCY (SEE BELOW FOR DATES OF EXAMINATION AND HEARING.)
☐W&I 3051 ADDICTION OR DANGER OF ADDICTION (SEE BELOW FOR DATE OF SERVICE OF PETITION AND ORDER.)

OTHER: ☐REFERRED TO DEPT. OF REVENUE AND RECOVERY

DATED __1-22-86__     __Joe O. Littlejohn__
JUDGE OF THE SUPERIOR COURT

PRONOUNCEMENT OF JUDGMENT-ORDER

CR-2B (3/85)

Case 3:08-cv-01341-LAB-POR    Document 7-7    Filed 08/15/2008    Page 169 of 254

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

SDS

CR __CR77137__ DA __A440*301__

DATE __02-19-86__ __01:30__ AT _____ M          PROB HEAR-SENTENCING

PRESENT: HON. __JOE O LITTLEJOHN__ _____ JUDGE PRESIDING DEPARTMENT __M12__

CLERK __W Muramoto__ REPORTER __E. Henderson__

THE PEOPLE OF THE STATE OF CALIFORNIA
vs                                                DEPUTY DISTRICT ATTORNEY

__CORDEIRO      DEREK__        L          __V. ERIKSEN__
       DEFENDANT                          ATTORNEY FOR DEFENDANT (APPTD/RETAINED)

VIOLATION OF __*PC206(A)__

DEFENDANT ☒ NOT PRESENT ☐ ARRAIGNED FOR JUDGMENT ☐ WAIVES ARRAIGNMENT
☐ DEFENDANT ADVISED OF RIGHTS AND (ADMITS/DENIES) A VIOLATION OF PROBATION. ☐ WAIVES HEARING
PROBATION IS: ☐ DENIED ☐ REVOKED ☐ REINSTATED ☐ CONTINUED ☐ MODIFIED ☐ GRANTED ____ YEARS (FORMAL/SUMMARY)

☐ IMPOSITION OF SENTENCE IS SUSPENDED. ☐ DEFENDANT SENTENCED TO STATE PRISON, EXECUTION STAYED (SEE BELOW FOR TERM).
CONDITIONS OF PROBATION INCLUDE, BUT ARE NOT LIMITED TO:
☐ COMMITMENT TO SHERIFF FOR ____ DAYS. ☐ ADULT INSTITUTIONS RECOMMENDED. ☐ PAROLE NOT TO BE GRANTED.
☐ FINE OF $_____ INCLUDING PENALTY ASSESSMENT AT $____ PER MONTH, COMMENCING _____ THROUGH REVENUE AND RECOVERY.
☐ RESTITUTION OF $_____ TO VICTIM/RESTITUTION FUND AT $____ PER MONTH, COMMENCING _____ THROUGH REVENUE AND RECOVERY.
☐ RESTITUTION/FINE OF $_____ PER GC 13967, STAYED PER PC 1202.4(b).
☐ PARTICIPATION IN COMMUNITY SERVICES PROGRAM IN LIEU OF RESTITUTION.
☐ FOURTH AMENDMENT WAIVER OF PERSON/AUTO/RESIDENCE/PERSONAL EFFECTS.
☐ REGISTRATION PER PC 290/H&S 11590.

☐ DEFENDANT IS COMMITTED TO DEPARTMENT OF CORRECTIONS FOR LOWER/MIDDLE/UPPER TERM OF ____ YEARS.
    (SEE BELOW FOR ADDITIONAL COUNTS)                          COUNT ____
☐ DEFENDANT IS COMMITTED TO CALIFORNIA YOUTH AUTHORITY. ☐ PER W&I 707.2 ☐ PER W&I 1737
    (SEE BELOW FOR FINDINGS)
☐ DEFENDANT IS ADVISED OF APPEAL RIGHTS ☐ DEFENDANT IS ADVISED REGARDING PAROLE

CREDIT FOR TIME SERVED
____ DAYS LOCAL
____ DAYS STATE INST.
____ DAYS PC 4019
____ TOTAL DAYS CREDIT

CUSTODY STATUS
DEFENDANT REMAINS AT LIBERTY:
☒ ON BOND POSTED $ __15,000__
☐ ON OWN RECOGNIZANCE
☐ ON PROBATION

DEFENDANT REMANDED TO CUSTODY:
☐ WITHOUT BAIL
☐ WITH BAIL SET AT $_____

☐ DEFENDANT ORDERED RELEASED FROM CUSTODY

FUTURE HEARINGS
☒ DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT
__[signature]__ CONTINUED TO/SET FOR __3-4-86__ AT __2:30__ M IN DEPT __M12__ ON MOTION OF
COURT/DA/DEFENDANT/PROBATION OFFICER. REASON: _____
☐ DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION PER PC 1203.03. FURTHER HEARING SET FOR _____ AT ____ M IN DEPT. _____

WARRANTS/BONDS
☐ BENCH WARRANT TO ISSUE, BAIL SET AT $_____ SERVICE WITHHELD TO _____
☐ BENCH WARRANT, ISSUED _____ IS RECALLED.
☐ BOND FORFEITED. BOND AMOUNT _____ BOND NO. _____ BOND COMPANY _____ AGENT _____
☐ BOND IS EXONERATED.

MH
☐ PROCEEDINGS SUSPENDED PER: ☐ PC 1368, MENTAL COMPETENCY. (SEE BELOW FOR DATES OF EXAMINATION AND HEARING.)
    ☐ W&I 3051 ADDICTION OR DANGER OF ADDICTION. (SEE BELOW FOR DATE OF SERVICE OF PETITION AND ORDER.)

OTHER: ☐ REFERRED TO DEPT. OF REVENUE AND RECOVERY

CRIMINAL MINUTES — PRONOUNCEMENT OF JUDGMENT

CR-28 (3/85)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

SUS

CR CR77137 DA 34403601

DATE 00-15-88 01:30 AT _____ M    PROC HEAR-SENTENCING

PRESENT: HON. JOE O LITTLEJOHN _____ JUDGE PRESIDING DEPARTMENT M12

CLERK W Muramoto _____ REPORTER S Henderson

THE PEOPLE OF THE STATE OF CALIFORNIA

VS _____ DEPUTY DISTRICT ATTORNEY

CORDEIRO      DEREK      L      W. ERIKSON

DEFENDANT _____ ATTORNEY FOR DEFENDANT (APPT'D/RETAINED)

VIOLATION OF $ PC2 33(A)

DEFENDANT ☒NOT PRESENT ☐ARRAIGNED FOR JUDGMENT ☐WAIVES ARRAIGNMENT
☐DEFENDANT ADVISED OF RIGHTS AND (ADMITS/DENIES) A VIOLATION OF PROBATION. ☐WAIVES HEARING
PROBATION IS: ☐DENIED ☐REVOKED ☐REINSTATED ☐CONTINUED ☐MODIFIED ☐GRANTED_____YEARS (FORMAL/SUMMARY)

☐IMPOSITION OF SENTENCE IS SUSPENDED. ☐DEFENDANT SENTENCED TO STATE PRISON. EXECUTION STAYED (SEE BELOW FOR TERM).
CONDITIONS OF PROBATION INCLUDE, BUT ARE NOT LIMITED TO:

**P R O B A T I O N**
☐COMMITMENT TO SHERIFF FOR_____ DAYS. ☐ADULT INSTITUTIONS RECOMMENDED ☐PAROLE NOT TO BE GRANTED.
☐FINE OF $_____ INCLUDING PENALTY ASSESSMENT AT $_____ PER MONTH, COMMENCING _____ THROUGH REVENUE AND RECOVERY.
☐RESTITUTION OF $_____ TO VICTIM/RESTITUTION FUND AT $_____ PER MONTH, COMMENCING _____ THROUGH REVENUE AND RECOVERY.
☐RESTITUTION/FINE OF $_____ PER GC 13967, STAYED PER PC 1202.4(b).
☐PARTICIPATION IN COMMUNITY SERVICES PROGRAM IN LIEU OF RESTITUTION.
☐FOURTH AMENDMENT WAIVER OF PERSON/AUTO/RESIDENCE/PERSONAL EFFECTS
☐REGISTRATION PER PC 290/H&S 11590.

**CREDIT FOR TIME SERVED**
_____ DAYS LOCAL
_____ DAYS STATE INST.
_____ DAYS PC 4019
_____ TOTAL DAYS CREDIT

**S T A T E   C O M M I T**
☐DEFENDANT IS COMMITTED TO DEPARTMENT OF CORRECTIONS FOR LOWER/MIDDLE/UPPER TERM OF_____YEARS.
(SEE BELOW FOR ADDITIONAL COUNTS)      COUNT _____
☐DEFENDANT IS COMMITTED TO CALIFORNIA YOUTH AUTHORITY. ☐PER W&I 707.2 ☐PER W&I 1737
(SEE BELOW FOR FINDINGS)
☐DEFENDANT IS ADVISED OF APPEAL RIGHTS ☐DEFENDANT IS ADVISED REGARDING PAROLE

**C U S T O D Y   S T A T U S**
DEFENDANT REMAINS AT LIBERTY:
☒ON BOND POSTED $ 15,000
☐ON OWN RECOGNIZANCE
☐ON PROBATION

DEFENDANT REMANDED TO CUSTODY:
☐WITHOUT BAIL
☐WITH BAIL SET AT $_____

☐DEFENDANT ORDERED RELEASED FROM CUSTODY

**F U T U R E   H R N G S**
☒DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT
status _____ CONTINUED TO/SET FOR 3-4-88 AT 30 M IN DEPT 1712 ON MOTION OF
COURT/DDA/DEFENDANT/PROBATION OFFICER. REASON: _____
☐DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION PER PC 1203.03. FURTHER HEARING SET FOR _____ AT _____ M IN DEPT _____

**W A R R A N T S / B O N D S**
☐BENCH WARRANT TO ISSUE, BAIL SET AT $_____ . SERVICE WITHHELD TO _____
☐BENCH WARRANT, ISSUED _____ IS RECALLED.
☐BOND FORFEITED, BOND AMOUNT _____ BOND NO. _____ BOND COMPANY _____ AGENT _____
☐BOND IS EXONERATED.

**M H**
☐PROCEEDINGS SUSPENDED PER: ☐PC 1368, MENTAL COMPETENCY. (SEE BELOW FOR DATES OF EXAMINATION AND HEARING.)
☐W&I 3051 ADDICTION OR DANGER OF ADDICTION. (SEE BELOW FOR DATE OF SERVICE OF PETITION AND ORDER.)

OTHER: ☐REFERRED TO DEPT. OF REVENUE AND RECOVERY

DATED 2-19-86 _____ _____ JUDGE OF THE SUPERIOR COURT

PRONOUNCEMENT OF JUDGEMENT - ORDER

CR-28 (3/85)

Case 3:08-cv-01773-JAH Document 1-2 Filed 09/29/2008 Page 84 of 98

# SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN DIEGO

SDS

CR CR77137  DA A-2400801

DATE 05-04-85  02:36  AT _____ M  PROB HEAR-SENTENCING

PRESENT HON. JOE O. LITTLEJOHN  JUDGE PRESIDING DEPARTMENT  M17

CLERK _____ REPORTER _____

THE PEOPLE OF THE STATE OF CALIFORNIA
VS  K. HAMBRI
CORDEIRO  DEREK  L  DEPUTY DISTRICT ATTORNEY
DEFENDANT  V. ERIKSEN
ATTORNEY FOR DEFENDANT (APPTD/RETAINED)

VIOLATION OF  +PC2861(A)

DEFENDANT ☒ PRESENT. ☐ ARRAIGNED FOR JUDGMENT. ☒ WAIVES ARRAIGNMENT.
☐ DEFENDANT ADVISED OF RIGHTS AND (ADMITS/DENIES) A VIOLATION OF PROBATION. ☒ WAIVES HEARING.
PROBATION IS ☒ DENIED ☐ REVOKED ☐ REINSTATED ☐ CONTINUED ☐ MODIFIED ☐ GRANTED _____ YEARS (FORMAL/SUMMARY)

☐ IMPOSITION OF SENTENCE IS SUSPENDED. ☐ DEFENDANT SENTENCED TO STATE PRISON, EXECUTION STAYED (SEE BELOW FOR TERM).
**CONDITIONS OF PROBATION INCLUDE, BUT ARE NOT LIMITED TO:**
☐ COMMITMENT TO SHERIFF FOR _____ DAYS. ☐ ADULT INSTITUTIONS RECOMMENDED. ☐ PAROLE NOT TO BE GRANTED.
☐ FINE OF $ _____ INCLUDING PENALTY ASSESSMENT AT $ _____ PER MONTH, COMMENCING _____ THROUGH REVENUE AND RECOVERY.
☐ RESTITUTION OF $ _____ TO VICTIM/RESTITUTION FUND AT $ _____ PER MONTH, COMMENCING _____ THROUGH REVENUE AND RECOVERY.
☒ RESTITUTION/FINE OF $ 10000 PER GC 13967, _____ PER PC _____ 28.85 S
☐ PARTICIPATION IN COMMUNITY SERVICES PROGRAM IN LIEU OF RESTITUTION.
☐ FOURTH AMENDMENT WAIVER OF PERSON/AUTO/RESIDENCE/PERSONAL EFFECTS.
☐ REGISTRATION PER PC 290/H&S 11590.

CREDIT FOR TIME SERVED
5 DAYS LOCAL
___ DAYS STATE INST.
___ DAYS PC 4019
5 TOTAL DAYS CREDIT

☒ DEFENDANT IS COMMITTED TO DEPARTMENT OF CORRECTIONS FOR LOWER/MIDDLE/UPPER TERM OF 6 YEARS.
(SEE BELOW FOR ADDITIONAL COUNTS)  COUNT 3
☐ DEFENDANT IS COMMITTED TO CALIFORNIA YOUTH AUTHORITY  ☐ PER W&I 707.2  ☐ PER W&I 1737.
(SEE BELOW FOR FINDINGS)
☐ DEFENDANT IS ADVISED OF APPEAL RIGHTS.  ☐ DEFENDANT IS ADVISED REGARDING PAROLE.

☐ DEFENDANT REMAINS AT LIBERTY  DEFENDANT REMANDED TO CUSTODY:
☐ ON BOND POSTED $ _____  ☒ WITHOUT BAIL
☐ ON OWN RECOGNIZANCE  ☐ WITH BAIL SET AT $ _____
☐ ON PROBATION
☐ DEFENDANT ORDERED RELEASED FROM CUSTODY.

☐ DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT
☐ _____ CONTINUED TO/SET FOR _____ AT _____ M IN DEPT _____ ON MOTION OF _____
COURT/DDA/DEFENDANT/PROBATION OFFICER. REASON: _____
☐ DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION PER PC 1203.03. FURTHER HEARING SET FOR _____ AT _____ M IN DEPT _____

☐ BENCH WARRANT TO ISSUE. BAIL SET AT $ _____ SERVICE WITHHELD TO _____
☐ BENCH WARRANT ISSUED _____ IS RECALLED.
☐ BOND FORFEITED. BOND AMOUNT _____ BOND NO. _____ BOND COMPANY _____ AGENT _____
☐ BOND IS EXONERATED.

☐ PROCEEDINGS SUSPENDED PER: ☐ PC 1368, MENTAL COMPETENCY. (SEE BELOW FOR DATES OF EXAMINATION AND HEARING.)
☐ W&I 3051 ADDICTION OR DANGER OF ADDICTION. (SEE BELOW FOR DATE OF SERVICE OF PETITION AND ORDER.)

OTHER: ☐ REFERRED TO DEPT. OF REVENUE AND RECOVERY _____

5 year enhancement

total term 11 years

CRIMINAL MINUTES — PRONOUNCEMENT OF JUDGMENT

Case 3:06-cr-00105-... Document 1-2 Filed 01/18/2016 Page 88 of 90

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

SDS

CR. _CR77137_ DA _A4400401_

DATE _03-04-86_ _02:30_ AT _____ M    DEPT HEAR-SENTENCING

PRESENT: HON. _JOE B. LITTLEJOHN_ _____ JUDGE PRESIDING DEPARTMENT _M12_

CLERK _A. Fernandez_ REPORTER _____

THE PEOPLE OF THE STATE OF CALIFORNIA                     _____
                                    vs                    DEPUTY DISTRICT ATTORNEY

_CORDEIRO      DEREK_     L     _____
        DEFENDANT                 ATTORNEY FOR DEFENDANT (APPT'D/RETAINED)

VIOLATION OF _* PC 288(A)_

DEFENDANT ☒ IS PRESENT ☐ ARRAIGNED FOR JUDGMENT ☒ WAIVES ARRAIGNMENT
☐ DEFENDANT ADVISED OF RIGHTS AND (ADMITS/DENIES) A VIOLATION OF PROBATION. ☐ WAIVES HEARING
PROBATION IS: ☒ DENIED ☐ REVOKED ☐ REINSTATED ☐ CONTINUED ☐ MODIFIED ☐ GRANTED ___ YEARS (FORMAL/SUMMARY)

☐ IMPOSITION OF SENTENCE IS SUSPENDED. ☐ DEFENDANT SENTENCED TO STATE PRISON, EXECUTION STAYED (SEE BELOW FOR TERM).
CONDITIONS OF PROBATION INCLUDE, BUT ARE NOT LIMITED TO:

**P R O B A T I O N**

☐ COMMITMENT TO SHERIFF FOR ___ DAYS.  ☐ ADULT INSTITUTIONS RECOMMENDED.  ☐ PAROLE NOT TO BE GRANTED
☐ FINE OF $ _____ INCLUDING PENALTY ASSESSMENT AT $ _____ PER MONTH, COMMENCING _____ THROUGH REVENUE AND RECOVERY.
☐ RESTITUTION OF $ _____ TO VICTIM/RESTITUTION FUND AT $ _____ PER MONTH, COMMENCING _____ THROUGH REVENUE AND RECOVERY.
☒ RESTITUTION/FINE OF $ _1000_ PER GC 13967. ☐ PER PC 1203.04 _2085.5_
☐ PARTICIPATION IN COMMUNITY SERVICES PROGRAM IN LIEU OF RESTITUTION.
☐ FOURTH AMENDMENT WAIVER OF PERSON/AUTO/RESIDENCE/PERSONAL EFFECTS.
☐ REGISTRATION PER PC 290/H&S 11590.

| CREDIT FOR TIME SERVED | |
|---|---|
| _2_ | DAYS LOCAL |
| ___ | DAYS STATE INST. |
| _2_ | DAYS PC 4019 |
| _2_ | TOTAL DAYS CREDIT |

**S T A T E   C O M M I T**

☒ DEFENDANT IS COMMITTED TO DEPARTMENT OF CORRECTIONS FOR LOWER/MIDDLE/UPPER TERM OF _6_ YEARS, COUNT _3_
    (SEE BELOW FOR ADDITIONAL COUNTS)
☐ DEFENDANT IS COMMITTED TO CALIFORNIA YOUTH AUTHORITY.  ☐ PER W&I 707.2  ☐ PER W&I 1737
    (SEE BELOW FOR FINDINGS)
☐ DEFENDANT IS ADVISED OF APPEAL RIGHTS   ☐ DEFENDANT IS ADVISED REGARDING PAROLE

**C U S T O D Y**

☐ DEFENDANT REMAINS AT LIBERTY:              DEFENDANT REMANDED TO CUSTODY:
☐ ON BOND POSTED $ _____             ☒ WITHOUT BAIL
☐ ON OWN RECOGNIZANCE                        ☐ WITH BAIL SET AT $ _____
☐ ON PROBATION
                ☐ DEFENDANT ORDERED RELEASED FROM CUSTODY

**F U T U R E   H E A R I N G S**

☐ DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT
                         CONTINUED TO/SET FOR _____ AT ___ M IN DEPT. ___ ON MOTION OF
COURT/DDA/DEFENDANT/PROBATION OFFICER. REASON:
☐ DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION PER PC 1203.03. FURTHER HEARING SET FOR _____ AT ___ M IN DEPT. ___

**W A R R A N T S / B O N D S**

☐ BENCH WARRANT TO ISSUE, BAIL SET AT $ _____ SERVICE WITHHELD TO _____
☐ BENCH WARRANT, ISSUED _____ IS RECALLED.
☐ BOND FORFEITED. BOND AMOUNT _____ BOND NO. _____ BOND COMPANY _____ AGENT _____
☐ BOND IS EXONERATED.

**M H**

☐ PROCEEDINGS SUSPENDED PER: ☐ PC 1368, MENTAL COMPETENCY. (SEE BELOW FOR DATES OF EXAMINATION AND HEARING.)
                              ☐ W&I 3051 ADDICTION OR DANGER OF ADDICTION. (SEE BELOW FOR DATE OF SERVICE OF PETITION AND ORDER.)

OTHER: ☐ REFERRED TO DEPT. OF REVENUE AND RECOVERY

_5 years enhancement_

_Total term 11 years_

DATED: _3-4-86_ _____
                              JUDGE OF THE SUPERIOR COURT
        PRONOUNCEMENT OF JUDGEMENT — ORDER

CR-2B (3/85)



IN THE MUNICIPAL COURT OF THE SAN DIEGO JUDICIAL DISTRICT

COUNTY OF SAN DIEGO, STATE OF CALIFORNIA

DEPARTMENT NO. 12, BEFORE HON. JOE O. LITTLEJOHN, JUDGE

THE PEOPLE OF THE STATE OF
CALIFORNIA,

        PLAINTIFF,

  VS.

DEREK CORDEIRO,

        DEFENDANT.

CHANGE OF PLEA TO FELONY

NO. CR. 00137

F 93117
A 94008

REPORTER'S TRANSCRIPT

SAN DIEGO, CALIFORNIA

NOVEMBER 13, 1985

COUNSEL APPEARING:

  FOR THE PLAINTIFF:        EDWIN L. MILLER, JR.
                      DISTRICT ATTORNEY
                      BY: KERRY W. HAMOR
                      DEPUTY DISTRICT ATTORNEY

  FOR THE DEFENDANT:        VICTOR S. ERIKSEN,
                      ATTORNEY AT LAW.

                      KEMARY L. CROWDER, CSR NO. 509
                      MUNICIPAL COURT REPORTER

Case 3:08-cv-01374-BG   Document 14   Filed 06/30/08   Page 1 of 1

```
 1   SAN DIEGO, CALIFORNIA, WEDNESDAY, NOVEMBER 13, 1985, 10:30 A.M.

 2

 3        THE COURT:  PEOPLE VERSUS DEREK LANE CORDEIRO.

 4        MS. HAMOR:  KERRY WELLS HAMOR FOR THE PEOPLE.

 5        MR. ERIKSEN:  GOOD MORNING.  VICTOR ERIKSEN APPEARING ON

 6   BEHALF OF MR. CORDEIRO, PRESENT ON BAIL.

 7        THE COURT:  OKAY, SIR.  IS YOUR TRUE NAME DEREK LANE

 8   CORDEIRO?

 9        THE DEFENDANT:  YES, SIR.

10        THE COURT:  RAISE YOUR RIGHT HAND TO BE SWORN, PLEASE.

11            (WHEREUPON, THE DEFENDANT WAS SWORN BY THE CLERK.)

12        THE COURT:  IS YOUR TRUE NAME DEREK LANE CORDEIRO?

13        THE DEFENDANT:  YES, SIR.

14        THE COURT:  HAVE YOU TAKEN ANY ALCOHOL OR DRUGS IN THE

15   LAST 24 HOURS?

16        THE DEFENDANT:  NO, SIR.

17        THE COURT:  DO YOU READ AND UNDERSTAND ENGLISH?

18        THE DEFENDANT:  YES, SIR.

19        THE COURT:  I HAVE A CHANGE OF PLEA FORM BEFORE ME WITH

20   INITIALS IN BOXES, AND ON THE LINE RESERVED FOR DEFENDANT'S

21   SIGNATURE I READ THE WORDS "DEREK L. CORDEIRO."  DID YOU

22   INITIAL AND SIGN THIS FORM?

23        THE DEFENDANT:  YES, SIR.

24        THE COURT:  AND BY INITIALING AND SIGNING THIS FORM

25   ARE YOU TELLING ME THAT YOU HAVE READ THE FORM AND UNDERSTOOD

26   IT?

27        THE DEFENDANT:  YES, SIR.

28        THE COURT:  DID YOU TALK WITH MR. ERIKSEN ABOUT THIS
```

1  CHANGE OF PLEA FORM?

2  THE DEFENDANT: YES, SIR.

3  THE COURT: DID HE ANSWER ALL OF YOUR QUESTIONS REGARDING

4  THIS FORM?

5  THE DEFENDANT: YES, SIR.

6  THE COURT: DO YOU UNDERSTAND BY ENTERING A PLEA OF GUILTY

7  THAT YOU ARE GIVING UP YOUR RIGHTS AS SPECIFIED ON THIS FORM?

8  THE DEFENDANT: YES, SIR.

9  THE COURT: THAT INCLUDES YOUR RIGHT TO A SPEEDY AND PUBLIC

10  TRIAL BY JURY, THE RIGHT TO CONFRONT AND CROSS-EXAMINE THE

11  WITNESSES AGAINST YOU AND YOUR PRIVILEGE AGAINST SELF-

12  INCRIMINATION. DID YOU DISCUSS THESE RIGHTS WITH YOUR

13  ATTORNEY, MR. ERIKSEN?

14  THE DEFENDANT: YES, SIR.

15  THE COURT: AND DO YOU UNDERSTAND YOUR RIGHTS?

16  THE DEFENDANT: YES, SIR.

17  THE COURT: ARE YOU TELLING ME THAT YOU NOW GIVE UP EACH

18  OF THESE RIGHTS EXCEPT YOUR RIGHT TO BE REPRESENTED BY YOUR

19  ATTORNEY?

20  THE DEFENDANT: YES, SIR.

21  THE COURT: MR. ERIKSEN, DO YOU BELIEVE THAT YOUR CLIENT

22  UNDERSTANDS HIS CONSTITUTIONAL RIGHTS AND THE RIGHTS AS SPECI-

23  FIED IN THIS FORM AND DO YOU CONCUR IN THE WAIVER OF THOSE

24  RIGHTS?

25  MR. ERIKSEN: YES, YOUR HONOR.

26  THE COURT: THE PLEA BARGAIN INDICATES THAT MR. CORDEIRO

27  WILL BE ENTERING A PLEA TO COUNT 3, WILLFULLY AND LEWDLY COMMIT-

28  TING A LEWD AND LASCIVIOUS ACT UPON AND WITH THE BODY OF A

1  CHILD UNDER THE AGE OF 14 YEARS OLD IN VIOLATION OF SECTION

2  288A(A), PENAL CODE, THAT HE IS ADMITTING HAVING BEEN CONVICTED

3  OF A PRIOR OFFENSE ON CASE NO. CR 59199, AND THE REMAINING

4  OF THE CHARGES WILL BE DISMISSED WITH ENHANCEMENTS AND THERE

5  IS A COMMITMENT ON THE PART OF THE PEOPLE NOT TO REVOKE ON

6  PROBATION IN CASE CR 59199.

7        OKAY, IS THAT YOUR UNDERSTANDING OF THE PLEA BARGAIN?

8    THE DEFENDANT: YES, SIR.

9    THE COURT: I AM SORRY?

10    THE DEFENDANT: YES, SIR.

11    THE COURT: AND COUNSEL, DID I GET THE ESSENCE OF THE

12  PLEA BARGAIN ON THE RECORD?

13    MR. ERIKSEN: YES, YOUR HONOR. THAT IS THE EXTENT OF THE

14  PLEA BARGAIN.

15    MS. HAMOR: YES, AS LONG AS HE UNDERSTANDS THAT HE IS

16  ADMITTING THE PRIOR FOR PURPOSES OF PENAL CODE SECTION

17  1203.066(A)(5) AS WELL AS PENAL CODE SECTION 667.51(A).

18    THE COURT: OKAY, IS THAT YOUR UNDERSTANDING?

19    MR. ERIKSEN: YES, SIR.

20    THE COURT: WITH THE KNOWLEDGE THAT THIS WILL ENHANCE

21  ANY PENALTY, ANY SENTENCING THAT YOU WOULD GET ON THE BASIC

22  CHARGE OF COUNT 3?

23    THE DEFENDANT: YES, SIR.

24    MS. HAMOR: AND IT ALSO MAKES HIM INELIGIBLE FOR PROBATION

25  ON COUNT 3.

26    THE COURT: DO YOU UNDERSTAND THAT?

27    THE DEFENDANT: YES, SIR.

28    THE COURT: OKAY, THEN FOR THE RECORD THAT IS THE ESSENCE

1    THE COURT: PEOPLE, ARE YOU SATISFIED?

2    MS. HAMOR: YES, YOUR HONOR.

3    THE COURT: SIR, DO YOU UNDERSTAND THAT YOU HAVE A RIGHT

4    TO BE SENTENCED IN THIS MATTER WITHIN 28 DAYS OF TODAY'S DATE?

5    THE DEFENDANT: YES, SIR.

6    THE COURT: WITH THAT UNDERSTANDING AND KNOWLEDGE, ARE

7    YOU TELLING THE COURT YOU ARE WILLING TO GIVE UP THAT RIGHT

8    AND ALLOW THESE MATTERS TO GO BEYOND THAT LIMIT OF TIME TO BE

9    SENTENCED BEYOND THE STATUTORY LIMIT?

10   THE DEFENDANT: YES, SIR.

11   THE COURT: OKAY, THE RECORD REFLECTS A WAIVER ON YOUR

12   PART AND I WILL ORDER YOU BACK TO THIS DEPARTMENT, ROOM 2021,

13   ON JANUARY 22, 1986, AT 1:30 P.M. FOR FURTHER PROCEEDINGS.

14   FAILURE TO APPEAR IN THIS DEPARTMENT WILL SUBJECT

15   YOU TO THE PROVISIONS AS SET FORTH IN SECTION 979 OF THE

16   PENAL CODE, IN THE FORFEITURE OF ANY BAIL POSTED AND THE

17   ISSUANCE OF A BENCH WARRANT.

18   DO YOU UNDERSTAND, SIR?

19   THE DEFENDANT: YES, SIR.

20   THE COURT: THAT IS THE ORDER OF THE COURT THEN. THAT

21   CONCLUDES THIS HEARING.

22   MS. HAMOR: YOUR HONOR, EXCUSE ME. THE PEOPLE WILL MOVE

23   TO DISMISS COUNTS 1 AND 2 AND THE SERIOUS PRIOR FELONY ALLEGA-

24   TION IN VIEW OF THE DEFENDANT'S PLEA TO COUNT 3 WITH AN ADMIS-

25   SION OF THE PRIOR CONVICTION.

26   IT IS THE PEOPLE'S POSITION THAT THAT GIVES THE

27   COURT ADEQUATE SENTENCING PARAMETERS IN VIEW OF THE DEFENDANT'S

28   CONDUCT.

Case 2:09-cv-03767-R-GW    Document 12-7    Filed 08/10/2009    Page 5 of 7

1          THE COURT: THANK YOU, COUNSEL. THOSE ITEMS ARE
2    DISMISSED.
3          MS. HAMOR: THANK YOU.
4          MR. ERIKSEN: THANK YOU, YOUR HONOR.
5                              * * *
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STATE OF CALIFORNIA)
                    ) SS.
COUNTY OF SAN DIEGO)

I, KEMARY L. CROWDER, CSR NO. 509, CERTIFIED SHORTHAND
REPORTER, AN OFFICIAL REPORTER OF THE MUNICIPAL COURT,
SAN DIEGO JUDICIAL DISTRICT, COUNTY OF SAN DIEGO, STATE OF
CALIFORNIA, DO HEREBY CERTIFY:

THAT AS SUCH REPORTER I REPORTED IN STENOTYPE THE
PROCEEDINGS HAD IN THE FOREGOING MATTER ON THE AFOREMENTIONED
DATE; THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING
UNDER MY DIRECTION, AND THE FOREGOING PAGES NUMBERED 2 TO 8
BOTH INCLUSIVE, CONTAIN A FULL, TRUE AND CORRECT COPY OF SAID
PROCEEDINGS.

DATED AT SAN DIEGO, CALIFORNIA, THIS 15TH DAY OF
NOVEMBER, 1985.

KEMARY L. CROWDER, CSR NO. 509,
MUNICIPAL COURT REPORTER

## MUNICIPAL COURT OF CALIFORNIA
## COUNTY OF SAN DIEGO, SAN DIEGO JUDICIAL DISTRICT

CR 77137

The People of the State of California

93117

vs. DEREK LANE CORDEIRO

FILED
NOV 13 1985
A. TALBOTT, DEPUTY

A9400B

**Date:**

10/31/85  Complaint filed.

Amended complaint filed.

As to:

Notify warrant issued.

Declaration in support of issuance of warrant filed.

Warrant issued, bail set at $_____ by Judge _____

Bail/bond posted $_____ # _____ by _____

Defendant released on own recognizance by Judge _____

Bail set at $_____ by Judge _____

To appear at 2:00P m. in Felony Arraignment.  Date: October 31, 1985
per Attorney Victor Erikson

As to:

Notify warrant issued.

Declaration in support of issuance of warrant filed.

Warrant issued, bail set at $_____ by Judge _____

Bail/bond posted $_____ # _____ by _____

Defendant released on own recognizance by Judge _____

Bail set at $_____ by Judge _____

To appear at _____ m. in Felony Arraignment.  Date: _____

As to:

Notify warrant issued.

Declaration in support of issuance of warrant filed.

Warrant issued, bail set at $_____ by Judge _____

Bail/bond posted $_____ # _____ by _____

Defendant released on own recognizance by Judge _____

Bail set at $_____ by Judge _____

To appear at _____ m. in Felony Arraignment.  Date: _____

Form-699                     FELONY DOCKET—GENERAL

A0406001                                    CR 77137

| CASE | ASSAULT JOAN KIDDER | EV ARRAIGNMENT | SAN DIEGO MUNICIPAL COURT |
| DATE | 11-1-85 | TIME 2:00 | DEPT FA | JUDGE ROBERT C. COATES |
| CLK | JOAN COOPER | RPT K. R. DIXON | PEO VS CORDEIRO DEREK LANE |

VIOLATION(S) PC288a(c) PC289(a) PC288(a)

_____ VICTOR ERICKSON

| Deputy District Attorney | Atty for Def. (App) (Ret) (AD) | Interpreter | Bkg # |

[ ] Arraignment    [ ] Bail Review    [ ] Other

[ ] COMPLAINT
  [ ] Defendant duly arraigned     Defendant Pleads     [ ] AMENDED COMPLAINT
     and receives copy of          [ ] Not Guilty       Defendant
     complaint                      [ ] Other            [ ] Admits _____ prior felony
  [ ] Is charged                                         [ ] Denies convictions as alledged

TRUE NAME is stated by defendant to be _____ [ ] Other _____

CONSTITUTIONAL RIGHTS                    WAIVERS BY DEFENDANT
  [ ] Defendant advised and acknowledgment  [ ] Statutory time
     signed and filed                        [ ] Personal presence    [ ] 977 P.C. form filed
COUNSEL
  [ ] Appointed counsel requested    [ ] Granted _____ appointed
                                      [ ] Denied  [ ] To retain counsel
                                      [ ] Referred to Near Indigent Panel
[ ] MOTION for O.R. _____ by DDA/Defendant with/without objection granted/denied

[ ] HEARINGS
  [✓] Bail Review          [ ] Disposition/Name Atty        [ ] Preliminary Hearing
     Date  11-6-85            Date  11-13-85                   Date  11-18-85
     Time  8:30 AM            Time  8:15  AM                   Time  8:28
     Felony Arraignment Dept  Dept  H-12                        Presiding Dept (Est)

[ ] CONTINUANCE
  On motion of Court/DDA/Defendant Defendant ordered to appear for
  Date _____ Time _____ Dept _____

CUSTODY STATUS of defendant
  [✓] Remanded to custody of Sheriff  [ ] Released  [ ] After Bkg  [ ] CASE DISMISSED on motion
     [ ] Without bail                 [ ] Previous bail                of Court/DDA/Defendant
     Bail $15000                      [ ] Own recognizance             for

[ ] FAILED TO APPEAR                          [ ] ARREST/BENCH WARRANT
  [ ] Bail bond forfeited                        [ ] Ordered Bail $ _____
  [ ] Affidavit requested                        [ ] Issued on _____ by Presiding Judge
  [ ] Bondsman and surety/depositor notified of  [ ] Recalled
     forfeiture on                               [ ] Served and returned

[ ] BAIL EXONERATED
[ ] OTHER

_____

                                              Dated: _____

Minute Form               CLERK by _____ Deputy Clerk
Type 70

                    FELONY DOCKET — ARRAIGNMENT

CR 77137

CASE F93117   DA A/9400801   EV BAIL BOND POSTED   SAN DIEGO MUNICIPAL COURT
DATE  11-1-85  AT  --   DEPT. FELONY ARRN   JUDGE  ROBERT C COATES
CLK    baw    RPT  --   PEO VS.  CORDEIRO, DEREK CASE

NOV 1, 1985
Bail Bond posted in the amount of $ 15,000.00 by A to Z BAIL BONDS

Bail Bond #  MS 7792   Bkg #  85-1868G7A

Set for appearance on  NOVEMBER 13, 1985 at  8:15 AM Dept. in  B-12

BAIL REVIEW DATE OF 11-6-85 @ 8:30  VACATED   baw

SUPPLEMENTAL DOCKET

SDMC Form 700

CASE: 93-117          DA - A94-1801     EV: MENT READINESS CONF SAN DIEGO MUNICIPAL COURT
DATE 1-22-99       AT 08:15        DEPT   EDC          JUDGE  WE D     LITTLE JOHN
CLK  M. MIRAMONTE      RPT  K. CRONDER        PEO VS   CORDEIRO          CLERK
VIOLATION(S)  PC288A(C)        PC289(A)          PC289(A)          PC647.6(A)
PC667(A)                                              THE

K. HAMOR                 V. ERIKSEN                       Interpreter        Pkg
Deputy District Attorney    Atty. for Def. (Apptd/Ret/PD)                  Deft. Appearing
Depo      Motion                Other                                   Deft. Not Appearing

[ ] NOT NEGOTIABLE  Preliminary hearing date confirmed/set for _____ at ____ m p.m.
    in Presiding Department (East)
[ ] MOTION for _____ by DDA/Defendant with/without objection granted/denied
[ ] AMENDED COMPLAINT filed
    [ ] Defendant duly arraigned    Defendant pleads:            Defendant:
        and receives copy of        [ ] Not Guilty              [ ] Admits _____ prior felony
        amended complaint           [ ] Other _____     [ ] Denies  convictions as alleged
[X] DEFENDANT SWORN and examined
[X] WAIVERS by defendant
    [X] Constitutional Rights    [X] Harvey/Arbuckle    [X] Statutory Time
[X] CHANGE OF PLEA form filed
    [X] Guilty    [ ] Nolo Contendere    to charge(s)  PC 288(A) (CT.3)
[ ] CHARGE(S) DECLARED MISDEMEANOR(S) per Section 17(b)5 of the Penal Code
[X] CHARGES DISMISSED/ALLEGED PRIOR STRICKEN
    [X] On motion of People charge(s)                      [X] On motion of People alleged prior(s) _____ is/are stricken
        _____ is/are dismissed for                 _____
[ ] DIVERSION granted, proceedings suspended for _____ months on defendant's motion per 1000 P.C. to
    charge(s) _____                              [ ] Remaining charges held in abeyance
[ ] IMMEDIATE SENTENCING
[X] DEFENDANT ORDERED TO REPORT IMMEDIATELY to Probation Department, 232 W. Ash Street, for:
    [X] Presentence Report   [ ] Supplemental Report   [ ] P.C. §1000   [ ] SB-38
[ ] DEFENDANT ORDERED TO WAIT IN THE COURTROOM to be interviewed by a Probation Presiding Court
    Officer for:
    [X] Presentence Report   [ ] Supplemental Report   [ ] Limited Report for _____
[X] PROBATION HEARING/SENTENCING set for  1-22-99  at  1:30 PM  m in Dept.  Dct
[ ] CONTINUANCE for _____ on _____ at _____ m in Dept. _____
[ ] Defendant ordered to report to Revenue and Recovery forthwith to determine ability to repay court appointed
    attorney costs in the sum of $_____ to be determined, and to make payments as directed by the
    Department of Revenue and Recovery
[ ] CUSTODY STATUS of defendant:
    [ ] Remanded to custody of Sheriff  [X] Released          [ ] Case dismissed on motion of
        [ ] Without bail                   [X] Previous bail       Court/DDA/Defendant for _____
        [ ] Bail $ _____                 [ ] Own recognizance
[ ] FAILED TO APPEAR                        [ ] ARREST/BENCH WARRANT
    [ ] Bail/bond forfeited                     [ ] Ordered; Bail $ _____
    [ ] Affidavit requested                     [ ] Issued on _____ by Presiding Judge
    [ ] Bondsman and surety/depositor           [ ] Recalled
        notified of forfeiture on _____       [ ] Served and returned
[X] BAIL EXONERATED
[X] OTHER
    Vacate Prelim Date

                                                        Dated  1-13-99

Minute Form                          CLERK, by _____ Deputy Clerk
Type (1
                        FELONY DOCKET — MISCELLANEOUS

Case 3:09-cv-01018-H-CAB   Document 14   Filed 06/16/2009   Page 1 of 6

# MUNICIPAL COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
## SAN DIEGO JUDICIAL DISTRICT

FILED

Oct 31  11  11 AM '85

CLERK OF MUNICIPAL
COURT SAN DIEGO
JUDICIAL DISTRICT

The People of the State of California

DEREK LANE CORDEIRO

Defendant

FILED
NOV 1 3 1985
DEPUTY

**Complaint – Criminal**
**(FELONY)**

CR 77137

D.A. No. A94008

F    93117

Case No.

The undersigned complains that in the County of San Diego, State of California, and before the making or filing of this Complaint, the Defendant(s) did commit the following crime(s):

COUNT ONE: On or about the dates between September 23, 1985 and October 17, 1985, DEREK LANE CORDEIRO did unlawfully accomplish an act of oral copulation with another person, which act was accomplished against the victim's will by means of force, violence, duress, menace, and fear of immediate and unlawful bodily injury on the victim, in violation of Penal Code section 288a(c).

COUNT TWO: On or about the dates between September 23, 1985 and October 17, 1985, DEREK LANE CORDEIRO did unlawfully cause the penetration of the genital and anal openings of another person by any foreign object, substance, instrument, and device, which act was accomplished against the victim's will by means of force, violence, duress, menace, and fear of immediate and unlawful bodily injury on the victim, and another person, for the purpose of sexual arousal, gratification, and abuse, in violation of Penal Code section 289(a).

COUNT THREE: On or about the dates between September 23, 1985, and October 17, 1985, DEREK LANE CORDEIRO did wilfully and lewdly commit a lewd and lascivious act upon and with the body, and parts and members thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, and gratifying the lust, passions, and sexual desires of the defendant and the victim, in violation of Penal Code section 288(a).

And, it is further alleged that said defendant, DEREK LANE CORDEIRO, was on or about July 13, 1982, in the Superior Court of the State of California, for the County of San Diego, convicted of a felony, to wit: PC288(a), within the meaning of Penal Code section 1203.066(a)(5).

PRIOR), And it is further alleged that said defendant, DEREK LANE CORDEIRO was on or about July 13, 1982 in the Superior Court of the State of California, for the County of San Diego, convicted of Lewd Acts on a Child, in violation of Penal Code section 288.(a) and was on October 21, 1982, in pursuance of said conviction received probation, and he has not remained free of the commission of an offense resulting in a felony conviction for ten years subsequent to his conviction for the above-said felony, within the meaning of Penal Code section 667.51(a).

SERIOUS FELONY PRIOR. And it is further alleged that said defendant, DEREK LANE CORDEIRO was on or about July 13, 1982, in the Superior Court of the State of California for the County of San Diego, convicted of a serious felony, to wit, Lewd Acts on a Child, in violation of Penal Code section 288(a), CR59199, separately brought and tried within the meaning of Penal Code sections 667.(a) and 1192.7(c)(6).

Date: 11-13-85

KENT PEDERSEN, Clerk Municipal Court

By _____ Deputy

Subscribed and sworn to before me on this date: _____

Judge of the Municipal Court, San Diego Judicial District, County of San Diego, State of California

I certify under penalty of perjury that the foregoing is true and correct. Executed at San Diego, California on this date: October 31, 1985.

_____
Complainant

MUNICIPAL COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

SAN DIEGO JUDICIAL DISTRICT

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

NO. F93117 CR 77137

vs.

Derek Lane Cordeiro          Defendant,

**FILED**

NOV 13 1985

A. TALBOTT, DEPUTY

## Acknowledgement of Advisal of Constitutional Rights

Defendant in this matter declares that he has been advised of the following constitutional rights:

(a)  The right to be tried by a jury;

(b)  The right to confront and to cross-examine all the witnesses against him;

(c)  The right at the trial to present evidence in his favor and either to testify for himself or, if he wishes, he may remain silent;

(d)  The right to a speedy and public trial;

(e)  The right to have witnesses subpoenaed to testify in his behalf and to obtain all evidence which might exonerate the defendant;

(f)  The right to have a qualified lawyer defend him at all stages of the proceedings, that said attorney may be of defendant's own choice or shall be court appointed if the defendant is unable to afford counsel.

Defendant also understands, if an attorney is appointed to represent him, that at the conclusion of the criminal proceedings, the court will, after a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost of the attorney.  If the court determines that the defendant has such present ability, the court will order the defendant to pay all or part of such cost.  Such an order will have the same force and effect as a judgment in a civil action and will be subject to execution. PC 987.8

That defendant also understands if he is not a citizen, the conviction of the offense for which he is charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States

Date  11/1/85                          Signature of Defendant

I certify under penalty of perjury that I  VICTOR B. ERIKSEN  have advised this defendant of all rights referred to above

Date  11/1/85                          Signature of Attorney

## ABSTRACT OF JUDGMENT – COMMITMENT
### SINGLE OR CONCURRENT COUNT FORM
(Not to be used for Multiple Count Convictions nor Consecutive Sentences)

FORM DSL 290.1

SUPERIOR COURT OF CALIFORNIA, COUNTY OF __SAN DIEGO__

BRANCH _____

COURT I.D. 3,7,

I L E D
Rober: D. Zumwalt, Clerk

MAR 6 1986

BY   T. KURA   DEPUTY

PEOPLE OF THE STATE OF CALIFORNIA    versus

DEFENDANT: DEREK LANE CORDEIRO    [X] PRESENT   [ ] NOT PRESENT

AKA:

COMMITMENT TO STATE PRISON
ABSTRACT OF JUDGMENT    [ ] AMENDED ABSTRACT

CASE NUMBER CR77137

| DATE OF HEARING (mo) (day) (yr) | DEPT. NO. | JUDGE | CLERK |
|---|---|---|---|
| 03 04 86 | M12 | JOE O. LITTLEJOHN | W. MIRAMONTES |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| J. SPERAPANI | K. HAMOR | V. ERIKSEN | J. SPICER |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONY:

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO DAY YEAR | CONVICTION BY JURY | COURT TRIAL | PLEA | TIME IMPOSED YEARS MONTHS |
|---|---|---|---|---|---|---|---|---|---|
| 3 | PC | 288(a) | CCMMIT LEWD ACT ON CHILD UNDER 14 YEARS | 85 | 11 13 85 | | X | M | 6  — |

2. ENHANCEMENTS (CHARGED AND FOUND, STRICKEN, TIME IMPOSED):

| COUNT | 12012.5(a) | 12022(b) | 12022.3(a) | 12022.5(b) | 12022.5 | 12022.6(a) | 12022.6(b) | 12022.7 | 12022.8 |
|---|---|---|---|---|---|---|---|---|---|
| C/F S | C/F S | C/F S | C/F S | C/F S | C/F S | C/F S | C/F S | C/F S |  |
| | | | | | | | | | |

3. OTHER ORDERS:

4. A. NUMBER OF PRIOR PRISON TERMS:

| | S | C/F | S | I |
|---|---|---|---|---|
| 667.5(a) | 0 | | | |
| 667.5(b) | 0 | | | |
| 667.5(b) | 0 | | | |

B. NUMBER OF PRIOR FELONY CONVICTIONS:

| | S | C/F | S | I |
|---|---|---|---|---|
| 667.6(a) | 0 | | | |

5. TIME STAYED §1170.1(f) [ ] DOUBLE BASE LIMIT):

6. TOTAL TERM IMPOSED: ⟶ 6  —

7. [ ] THIS SENTENCE IS TO RUN CONCURRENT WITH ANY PRIOR UNCOMPLETED SENTENCE(S).

8. EXECUTION OF SENTENCE IMPOSED:

A. [X] AT INITIAL SENTENCING HEARING   B. [ ] AT RESENTENCING PURSUANT TO DECISION ON APPEAL   C. [ ] AFTER REVOCATION OF PROBATION   D. [ ] AT RESENTENCING PURSUANT TO RECALL OF COMMITMENT (PE1170(d))

9. DATE SENTENCE PRONOUNCED:

| MONTH | DAY | YEAR | CREDIT FOR: TIME SPENT IN CUSTODY: | TOTAL DAYS | ACTUAL LOCAL TIME | LOCAL CONDUCT CREDITS | STATE INSTITUTIONS: |
|---|---|---|---|---|---|---|---|
| 03 | 04 | 86 | | 2 | INCLUDING: 2 | | [ ] DMH   [ ] CDC |

10. DEFENDANT IS REMANDED TO THE CUSTODY OF THE SHERIFF, TO BE DELIVERED:

[X] FORTHWITH
[ ] AFTER 48 HOURS EXCLUDING SATURDAYS, SUNDAYS AND HOLIDAYS

INTO THE CUSTODY OF THE DIRECTOR OF CORRECTIONS AT THE RECEPTION-GUIDANCE CENTER LOCATED AT:

[ ] CALIF. INSTITUTION FOR WOMEN – FRONTERA
[ ] CALIF. MEDICAL FACILITY – VACAVILLE
[X] CALIF. INSTITUTION FOR MEN – CHINO
[ ] OTHER (SPECIFY):

CLERK OF SUPERIOR COURT

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

DEPUTY'S SIGNATURE    T. Kura    _T. Kura_    DATE    March 6, 1986

This form is prescribed pursuant to Penal Code §1213.5 to satisfy the requirements of Penal Code §1213 (Abstract of Judgment and Commitment for determinate sentences under Penal Code §1170. A copy of probation report shall accompany the Department of Corrections' copy of this form pursuant to Penal Code §1203c). A copy of the sentencing proceedings and any supplementary probation report shall be transmitted to the Department of Corrections pursuant to Penal Code §1203.01. Attachments may be used but must be incorporated by reference.

Form Adopted by the Judicial Council of California Effective July 1, 1981

### ABSTRACT OF JUDGMENT – COMMITMENT
### SINGLE OR CONCURRENT COUNT FORM
(Not to be used for Multiple Count Convictions nor Consecutive Sentences)
FORM DSL 290.1

Pen. C. 1213.5.

DISTRIBUTION:    PINK COPY – COURT FILE.    YELLOW COPY – DEPARTMENT OF CORRECTIONS.    WHITE COPY – ADMINISTRATIVE OFFICE OF THE COURTS.

**E X H I B I T   D**

Declaration of Petitioner
DEREK L. CORDEIRo.

Derek L. Cordero, V-64461
R.J. Donovan Corr. Fac.
P.O. BOX 799003  F3-12-124
San Diego, CA. 92179-9003

**In Propria Persona**


IN THE COURT OF APPEALS OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DEREK L. CORDEIRO, | ) | NO._____ |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs | ) | DECLARATION OF PETITIONER |
| | ) | SUPPORTING  PETIITON  FOR |
| ROBERT J. HERNANDEZ, Warden, | ) | WRIT  OF  HABEAS  CORPUS |
| | ) | |
| Respondent, | ) | |
| | ) | |
| _____ | ) | |

I, Derek L. Cordeiro, depose and state:

1.    I am the petitioner herein, a state prisoner currently incarcerated at R.J. Donovan Correctional Facility, Sandiego, California, and proceeding as a poor person; I am a layman at law; At all times specified herein unless otherwise stated, I was so incarcerated.

2.    All statements made herein are based upon my own personal knowledge, and if called upon to testifya s to these statements I could do so competently as a sworn witness.

////

////

////

1

3. On or about 3/4/04, at arraignment, I was appointed Ms. Megan Marcotte, a Deputy Public Defender. I was released on $27,000 bail that same day. The preliminary hearing for my case was held on or about 4-22-04. Between my release and preliminary hearing, I attempted to contact Ms. Marcotte by telephone several times. Each time I was unable to talk to her because she was "busy" or "away from her desk" or "not in the office." When the preliminary hearing took place, Ms. Marcotte and I had not spoken about my case outside of the courtroom.

At the conclusion of the preliminary hearing when I was bound over to superior court for trial, I was directed by the court to stay in touch with my counsel as a condition of my bail being continued.

4. During the time period of 4/22/04 through until 11/9/04, I remained out on bail and made approximately three appearances in Superior Court. Prior to these appearances, I attempted to contact Ms. Marcotte. I was only able to contact her once, before the 7/14/04 hearing. She stated that she was obtaining a continuance because she was not ready for trial and had a large number of other cases she was dealing with. This was the same thing she said at the May 5, 2004 hearing and the August 19, 2004 hearing.

5. When I contacted her just prior to the November, 2004 hearing, Ms. Marcotte made a rather obtuse remark when she answered her telephone, stating, "Oh. You're still around? I thought you would have run by now." I told her that only guilty people run from their troubles, that I was not guilty. She

responded by saying, "That's right, of course you're not. I talked to your therapist, and he is sadly mistaken, you're really cured, and the victim is a liar." She then told me about the November hearing and when to be there.

6. On or about December 7, 2004, at the start of my trial, Ms. Marcotte and I were discussing what was going to happen at trial and what defense we were going to present. She told me that I was going to testify. I told Ms. Marcotte that I was not going to testify because of my prior convictions and the uncharged matters regarding my nieces in the 1970's. I told her that with my character witnesses, we had a good defense if she could keep my prior convictions out.., and I did not testify. She said that she would keep that in mind.

7. Towards the end of the prosecution's case, Ms. Marcotte said that because the prosecution's case had not changed that I would have to testify or I would have no defense at all. I again told her that I did not want to testify because of my prior convictions. Again, she said that she would keep that in mind.

8. At the conclusion of the prosecution's case, Ms. Marcotte told me again that if I did not testify, I would have no defense at all. She said not to worry about the jury finding out about my priors because they already knew that I had them and what they were. I again told her that I did not want to testify and be cross-examined. Ms. Marcotte said that I did not have a choice in the matter, that she was conducting the defense. I was put on the witness stand, testified and was impeached.

////

3

At the conclusion of my testimony when I went off the witness stand, Ms. Marcotte stated that the jury saw that I was a "horrible pedophile" and a "poor witness" and that I was going to be found guilty. When I told her that she should not have put me on the stand as I had asked her not to do. She just smiled at me and said nothing else.

9.  I reiterate that although I do suffer from pedophilia, I did not intentionally expose myself to the victim or touch the victim in any manner with any lascivious or criminal intent, not did I ask her if she wanted to tough my genitalia. I am not guilty of the crimes for which I was convicted.

10.  Regarding the 1982 prior conviction, neither my attorney nor the judge, nor anyone else told me that, (1) I was waiving my right to counsel upon pleading guilty, even though I already had one, and (2) that I was pleading guilty to a "serious" felony and would have to register as a sex offender because of my plea. Had I known these things, I would not have pled guilty, as there was no evidence against me.

11.  Regarding the 1985 prior conviction, again, I was not warned that by pleading guilty I was waiving (1) my right to counsel, (2)  I was waiving my right to withdraw my guilty plea, and (3) I would have to register as a sex offender when I was released from prison. Had I known of these direct consequences of pleading guilty, I would not have pled guilty and I would have taken the matter to trial.

////

////

////

4

## E X H I B I T   E

Reporter's   Transcripts   pp   1-18
Pre-trial rulings in limine motions
for suppression of priors/bifurcate
trial/testimony re prior convictions
Defense atty's "tactics"

1

```
 1        San Diego, California; Tuesday, December 7, 2004; 10:17 a.m.
 2                              * * *
 3               THE COURT:  This is the matter of People versus
 4    Derek Lane Cordeiro.
 5               MS. WEISMANTEL:  Lucy Weismantel for the People.
 6               MS. MARCOTTE:  Megan Marcotte, deputy public
 7    defender, for Mr. Cordeiro.  He's present out of custody on
 8    bail.
 9               THE COURT:  Thank you.
10               Counsel and I have been able to talk this
11    morning about the pretrial issues.  In the meantime, we do
12    have a jury being prescreened now for their time
13    availability through this week and next week.  And we have
14    talked about this Court's preferred manner of jury
15    selection.
16               Any comments or objections to just the manner of
17    jury selection?
18               MS. WEISMANTEL:  No, Your Honor.
19               MS. MARCOTTE:  No, Your Honor.
20               THE COURT:  Other issues that we have talked
21    about include, first, the People's motion to admit 1108
22    prior act evidence offered to the Court.  Instance One in
23    1982 with a 9-year-old, and then with a niece of the
24    defendant from the year '72 to '79.
25               I've listened to the offers on both of those,
26    and it is the Court's tentative to admit the 1982
27    9-year-old's testimony and any necessary corroboration for
28    that under 1108 but to exclude under 352 as more
```

1   prejudicial than probative the '72-to-'79 incidents that

2   have been offered.  And this would be tentative.  And of

3   course, I have to look at the evidence as it unfolds in the

4   trial before I can really make a final determination.

5           Anything by way of argument on that ruling and

6   offer?

7           MS. WEISMANTEL:  Just for clarification,

8   Your Honor, the prior conviction that the Court is

9   tentatively ruling, it applies to the prior victim by the

10  name of Kristi Aikin, A-i-k-i-n.  And I apologize.  The

11  error is that she was 11 years old when this incident

12  happened, and it was between November 1st and November 26

13  of 1981.  The conviction was on July 13th, 1982.

14          THE COURT:  All right.  Those changes are minor,

15  in my view.  Don't change the Court's tentative.

16          All right.  Anything --

17          Ms. Marcotte, I know you have objected to this

18  in final points and authorities, and I've taken that under

19  consideration.  Anything else you'd like to argue in that

20  area?

21          MS. MARCOTTE:  I don't have anything further on

22  the Court's ruling at this time.

23          THE COURT:  All right.  The next issue we talked

24  about was admission of hearsay statements.  The People have

25  indicated they will be offering a -- what they consider a

26  spontaneous declaration to the grandparents to the police.

27  There's a third one on a videotape.  It's a separate

28  consideration, I think, but the first two would be

1    spontaneous declarations to the police and to the

2    grandparents.

3              Am I correct, Ms. Weismantel?

4              MS. WEISMANTEL:  Yes, Your Honor.  They would be

5    offered as spontaneous statements to Margaret Wear, which

6    is her grandmother, and also under a fresh complaint theory

7    to Margaret Wear, her grandmother; and David Wear, the

8    alleged victim's grandfather.

9              THE COURT:  Okay.  Not to the police, then.

10   We're talking about strictly the grandparents, and

11   separately would be the Children's Hospital videotape?

12             MS. WEISMANTEL:  Correct.

13             THE COURT:  But not strictly any statements

14   directly to the police officers.  Okay.

15             And tentatively the Court has indicated that it

16   would rule to admit those statements to the grandmother, I

17   understand, within about ten minutes of the incident

18   itself.  On the videotape it's offered under Evidence Code

19   section 1360.  I've gone over those subsections with

20   counsel and believe it would apply.

21             Ms. Marcotte, anything further you would like to

22   argue on those rulings?

23             MS. MARCOTTE:  No, Your Honor.  Thank you.

24             THE COURT:  Next, the People have raised the

25   issue that the defense will be offering character witnesses

26   and People would want to impeach those witnesses with

27   information concerning the prior convictions of the

28   defendant.

1    My tentative on that has been that the -- if the

2    character witnesses are simply saying they knew the

3    defendant for a short period of time subsequent to the

4    prior convictions and they've never observed anything that

5    would indicate he's done anything lewd or lascivious with

6    underage children, then the People could not impeach with

7    prior convictions.

8    On the other hand, if they raise something

9    different, like their belief that he would never do such a

10   thing or something along that line that would indicate a

11   more global aspect to it, then I think it would be relevant

12   for the People to be able to impeach such witnesses with

13   having heard or did you know he had been convicted on the

14   dates listed in the Information.

15   Anything further on that, starting with the

16   People?

17   MS. WEISMANTEL:  No, Your Honor.

18   THE COURT:  Okay.  And Ms. Marcotte.

19   MS. MARCOTTE:  No.  Thank you.

20   THE COURT:  Finally, the People have offered

21   that they would wish to impeach the defendant on

22   credibility issue, if he testifies, with a 1985 conviction

23   involving a molest, a 1982 conviction, and then with --

24   with actions from '72 to '79, which would be not

25   convictions but incidents that were related later by a

26   niece who had been molested.

27   And I've indicated tentatively that all of that

28   would be admissible if the defendant testifies.

1          Anything further from the People on that?

2          MS. WEISMANTEL:  No, Your Honor.

3          THE COURT:  And from the defense.

4          MS. MARCOTTE:  Your Honor, it was my

5  understanding that his convictions would be used to impeach

6  him, but I thought the Court was still excluding the '72

7  through '75 prior bad acts.

8          THE COURT:  Yeah.  Well, actually -- okay.  Let

9  me clarify.  I think the Court's reasoning is the '82 and

10 '85 are convictions and those would be strictly felony

11 impeachment convictions.  Normally I would sanitize a same

12 or similar or inflammatory conviction if it's just offered

13 on a straight felony conviction theory, but here it would

14 seem to me that all three of those areas -- the '85

15 incident, the '82, and '72 to '79 incidents -- would be

16 admissible to impeach more on the actions than they would

17 be on the felony convictions.

18          So if -- in other words, I think it's fair game

19 for cross-examination to ask him whether he's committed any

20 same or similar acts if he takes the stand.  And then as a

21 separate consideration would be the convictions for the

22 same thing.  So I think that the whole thing comes in one

23 way or the other.

24          MS. MARCOTTE:  I think that -- the prior bad

25 acts, '72 to '75, and with that I think the People are even

26 offering two nieces in that time period -- I think that it

27 is irrelevant especially if the '82 and '85 convictions are

28 already coming in to impeach him and the '82 conviction is

1    already coming in in the case in chief.

2         I think that they could already assume

3    Mr. Cordeiro has a propensity to commit child molest.  I

4    don't think the '72 to '75 prior bad acts add anything

5    more.  I think that they're very remote even before the two

6    convictions.  We're going back 35 years.  I also think that

7    they will take up an undue amount of time.  There are no

8    police reports with regards to that.  Mr. Cordeiro has

9    never admitted or pled guilty to those.

10         We're uncertain of the commission of those

11   crimes, basically, because they were reported more

12   recently.  And they are obviously difficult to defend

13   against at this point.  I don't think they're as probative

14   as the two convictions.  And I think that would be

15   extremely prejudicial and don't necessarily add anything to

16   the People's case or the impeachment of Mr. Cordeiro.

17         The jury could be inflamed that he was never

18   punished for those crimes against those two girls.  And the

19   conduct that's involved with those two girls is similar

20   conduct to the '82 and 85 convictions, much more so than to

21   the acts that he's on trial for today.  And, again, I think

22   it's cumulative.

23         So I'd ask the Court not to go into the '72

24   through '75 prior bad acts.  I don't suspect Mr. Cordeiro

25   would say, you know, I've only ever molested two people:

26   the '82 and the '85 victims.  And obviously if he said

27   something like that, then I think they would become

28   relevant, but I think with the two convictions that this

1    would be enough.

2            Definitely would affect whether Mr. Cordeiro

3    chooses to testify or not.  Those are uncharged acts.  I

4    think they're probably beyond the statute of limitations at

5    this point.  But that's obviously a concern for him.  And

6    obviously allowing in two more victims in front of the jury

7    is going to affect his decision whether or not to testify.

8            THE COURT:  All right.  Ms. Weismantel.

9            MS. WEISMANTEL:  Yes, Your Honor.  I would not

10   be offering the evidence concerning the victim

11   Kimberly Scott.  That time frame was 1976 through 1979.

12   She is the defendant's niece.  She has some developmental

13   disabilities.  So if he were to deny, I don't think I could

14   bring her in.  She would not make a credible witness.  She

15   has difficulty articulating things and becomes very upset,

16   and I don't think it would be fair to have her come in.

17           I would be offering the evidence of

18   Michelle Scott, which is the defendant's niece.  She says

19   that the defendant began molesting her when she was age 9

20   through age 16 or 17.  She reported the incident in 1990 to

21   her counselor and to her sister Kimberly and also her

22   mother.  And I would also -- they did not report it to law

23   enforcement and instead chose not to have the defendant

24   around the family, the two girls.

25           I believe it's probative for certain reasons,

26   and one is the nature of the offense, the molest, with

27   Michelle, again, when she was 9.  In this case we have a

28   victim who's 8 years old, so they're only one year apart.

1    The victim Michelle -- or -- told our

2    investigator that the defendant would expose himself, would

3    masturbate and then would proceed to do acts upon her which

4    I think is very similar in this case where he's exposing

5    himself and then trying to get this current victim to touch

6    him.

7        She also said that he would do these things when

8    they went on camping trips, when there were other people

9    near the vicinity of where this was happening.  There was a

10   certain risk of them being caught, and she felt that this

11   was something that the defendant liked to do.  This was

12   part of the thrill, not only molesting a child, but also

13   the risk of being caught.

14       And in this case he's touching this 8-year-old

15   on his front porch while his wife is inside.  There are --

16   it's in a neighborhood.  There happens to be one neighbor

17   who's across the street who could see them, but then the

18   defendant moves behind a pillar and he can't see anything

19   else what's happening.  But I think it's part of the whole

20   thing:  the risk, the child, the youthfulness of the child.

21   I think it's part of his MO.

22       So I think he should certainly be questioned

23   about that, particularly if he's claiming that this was an

24   accidental exposure or touching or that he didn't have lewd

25   intent.

26       THE COURT:  All right.  What I'm going to do, I

27   think, is wait until we see what develops.  Obviously, the

28   352 weighing process is difficult to do in advance of a

1   trial before I've had a chance to see how probative some of
2   these things become versus how prejudicial.
3           So I'm going to leave the ruling at this point
4   as a question mark on the '72 to '79 incidents with the
5   niece.  But the '85 and '82 incidents are closer, and I
6   think the defendant can be cross-examined with respect to
7   those actions.
8           I want to put the -- a different spin, however,
9   on the way this might come out.  I think that he can be
10  cross-examined with respect to the '85 and '82 incidents.
11  There's a separate question whether you impeach with a
12  felony conviction and name what the conviction was for.
13  Ordinarily I would say no, you don't -- you can't impeach
14  with something so inflammatory or same or similar.
15  However, if you are already cross-examining on the action,
16  then it seems to me if you don't say that's the conviction,
17  you run the risk of making it look to the jury as if not
18  only did he molest somebody in '85 and '82, but he had
19  separate felony convictions for yet something else that
20  they don't know about.
21          But let me leave that up to the defense.  It
22  seems to me that the defense should make the choice whether
23  they want the fact of the felony convictions for molest to
24  be brought out or just leave it as two felony convictions.
25          Now, let me -- let me even complicate this a
26  little bit further.  Let's say defendant takes the stand,
27  he denies doing these actions in '85 and '82.  Then I think
28  the People have a right to cross-examine him with respect

1    to the convictions in order to prove that he did the

2    actions. So it might come in anyway, but --

3              Did you have a thought, Ms. Marcotte?

4              MS. MARCOTTE:  I anticipate that if he

5    testifies, he will admit the convictions and admit the

6    acts.

7              THE COURT:  The acts.  Okay.  So that becomes a

8    nonquestion, then.  I'll just leave it that it all can be

9    cross-examined on the convictions and the actions for '85

10   and '82.  It may already be brought out on direct

11   examination by the defense.  If it's brought out -- the

12   date, the place of the conviction, the nature of the

13   conviction -- then it can't be cross-examined again, but

14   you can fill in anything that's left out so that we just

15   don't have it be cumulative.

16             Then on the '72-to-'79 incident, at the point at

17   which the People feel they should have a right to go into

18   that, let me know and we'll go to sidebar rather than get

19   ourselves tripped up here.

20             MS. WEISMANTEL:  Okay.

21             THE COURT:  Last but not least, we talked

22   about -- actually, two more things -- bifurcation of the

23   priors.  And we've indicated that everything will be

24   bifurcated.  And the defendant will decide whether he's

25   going to admit or not at least on or before the time the

26   jury is out deliberating, but otherwise all of the priors

27   alleged next to the counts' sentencing options, for

28   instance, 314, prior or alleged or the serious felony

1  priors alleged, will all be bifurcated.

2            And then the People have also indicated that

3  they would want to offer a psychiatrist or psychologist

4  testimony in rebuttal to character witnesses so that if

5  character witnesses come forward and say their observations

6  and opinions are that the defendant is not someone who

7  molests children, then you can respond with an expert who

8  says that pedophilia is a lifelong issue mentally and

9  whether they act on it or not is a separate issue, is my

10 understanding.

11            Is that correct?

12            MS. WEISMANTEL:  Yes, Your Honor.

13            THE COURT:  And I've tentatively indicated it

14 seems that that would be fair rebuttal.  But, again, I

15 would have to hear the character witnesses and the extent

16 of what they say before that kind of expert testimony would

17 be admitted.

18            Ms. Marcotte, anything you wanted to say at this

19 point on that?

20            MS. MARCOTTE:  No, Your Honor.

21            THE COURT:  Okay.  Is there anything else that

22 we talked about or that you want to talk about now we

23 haven't brought up?

24            MS. WEISMANTEL:  I don't believe so, Your Honor.

25            MS. MARCOTTE:  I have nothing further.

26            THE COURT:  Do we know when the jury will be

27 sent in?

28            THE CLERK:  They're already here.

```
 1              THE COURT:   They're already here.

 2              Okay.   So then I'm going to go back to chambers

 3    and fill in the Court's seating chart.   And as soon as I

 4    have that done, then we'll have the jury come in.

 5                   (Recess)

 6                   (The prospective jurors enter the courtroom)

 7                   (Whereupon jury voir dire reported for remainder

 8    of this day's proceedings, not herein transcribed)

 9

10                          *   *   *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

San Diego, California; Wednesday, December 8, 2004; 9:13 a.m.

\* \* \*

THE COURT: All right. For our record, both counsel and the defendant are present this morning.

MS. WEISMANTEL: I just wanted to get clarification for the record about the admissibility concerning the prior sexual offenses of the defendant with respect to the victim Kristi Aiken. Was the Court admitting that evidence under both Evidence Code section 1101(b) and 1108?

THE COURT: It was my understanding you were offering it only under 1108. I thought that's what our discussion was in chambers. I raised that and --

MS. WEISMANTEL: It's actually under both theories, and the reason is there's a similarity in what the defendant did with Kristi as far as exposing himself, later molesting her and then claimed that it was accidental, the exposure. And in this case he is exposing himself, touching the victim and then claiming to the police that it's accidental. So I was moving to admit it under both sections.

THE COURT: I think it would probably be best if I reserve on that until I've heard the testimony since it's coming in anyway. Why don't I listen to it and then I'll really get a good idea whether or not it would come in under 1101(b).

In general, I think it's a little confusing for juries when you admit it under both sections. They really

1  have to do some thinking, as do we, in how you think in

2  terms of its propensity.  And it's also admitted on the

3  notion of intent and motive, et cetera, maybe MO and

4  identity.

5        I don't know.  It depends on where the

6  categories fall, but -- and I don't see what's to be gained

7  by it because it seems to me that once it comes in under

8  propensity, you can argue the whole thing.  If you think

9  it's similar enough, then you can argue it that way so then

10 why confuse the issue by bringing it down to an 1101(b)

11 because, for one thing, 1101(b) says it's not admitted to

12 show the defendant is a person of bad character or he has a

13 disposition to commit crimes.  Then you turn right around

14 and say under 1108 it's being offered to show he has a

15 disposition to commit at least sexual crimes.  So that's a

16 hard distinction to do.  How do you do that?

17       I think my druthers would be stick with the

18 1108.  But I'll reserve on your request and see how the

19 evidence flows, and then we can talk about that, I think,

20 more comfortably at the end of the case.

21       MS. WEISMANTEL:  Okay.  That's fine.

22       And also as far as mentioning the conviction, my

23 understanding is that the Court is permitting the People to

24 ask the witness if he was convicted, et cetera.

25       THE COURT:  The defendant, if he takes the

26 stand?

27       MS. WEISMANTEL:  No.  As far as presenting the

28 evidence from Ms. Aiken.  Is the Court allowing this

1    mention of a conviction?

2            THE COURT: No. It's -- no. Because the

3    conviction itself would not be relevant to the propensity

4    evidence.

5            MS. WEISMANTEL: Okay. So just so I can make

6    sure to instruct them properly as far as what their

7    parameters are.

8            THE COURT: Just the actions. And also on

9    those -- the 1108 evidence, I think you mentioned a number

10   of witnesses. And it seems to me that you need to cut that

11   down, in other words, not try the whole case again,

12   obviously, but just put on what's essential to get it

13   across.

14           So I'm thinking in terms of analyzing whether

15   the victim and maybe that victim and one other person would

16   be sufficient without going into a whole lot else.

17   Depends, obviously, on how it starts to flow and what the

18   attack may be.

19           MS. MARCOTTE: With the conviction, I don't

20   think there's going to be much attack on the victim in that

21   particular --

22           THE COURT: Yeah, okay. So that would tend to

23   indicate -- put the victim on, and I don't know whether you

24   need anything else beyond that.

25           MS. WEISMANTEL: I did plan to put the police

26   officer that the defendant admitted some statements to.

27           THE COURT: Okay. That sounds reasonable.

28           MS. WEISMANTEL: Okay. The other matter was, as

1    far as the current victim, she is unaware about the

2    defendant's history.  However, her mother and her

3    grandmother, the neighbor of the defendant, knew about his

4    conviction concerning his stepdaughter, Tina Gaines.  That

5    was the 1986 -- excuse me -- '85 conviction.

6        And when they are being questioned, I just want

7    to make sure that they don't blurt something out that

8    they're not supposed to concerning -- you know, if the

9    question is asked were you aware about the defendant's

10    history.  The Court, from my understanding, does not want

11    them to mention anything about knowing that he's a

12    convicted child molester, knowing that he was convicted for

13    molesting his stepdaughter.

14        THE COURT:  Well, if it's solicited by the

15    defense for tactical reason, then obviously they can get

16    that out.  But, correct, that it would not be appropriate

17    to come through the People.  I can't see how you -- it

18    would be hearsay anyway coming through them and otherwise

19    irrelevant to the presentation of your case in chief.

20        MS. WEISMANTEL:  Okay.

21        MS. MARCOTTE:  Just for tactical, I do plan on

22    asking them if they knew he was a sex offender, basically,

23    because they did know.  And obviously that's important to

24    the defense, but that's about the extent.  I'm not going

25    into, obviously, any details that they may or may not know

26    about any of the cases.  Just asking in general nature.

27        THE COURT:  All right.  I don't know what that

28    might open up as far as the People wanting to follow that

1  up at this point.  Is there anything beyond that that you

2  would want to open up that you can think of now?  In other

3  words, if the defense brings it out from the grandmother,

4  for instance, that she already knew that he was a sex

5  offender, does that open up anything, in your view, we

6  should talk about now?

7          MS. WEISMANTEL:  I believe so.  I believe I

8  would ask them what did you know because they knew -- they

9  didn't really know the whole story.  They didn't know the

10  facts.  They knew a minimization from either the defendant

11  telling others or rumors that it was just a simple

12  fondling.  And that it was kind of a mis- --

13  misunderstanding amongst the family.  They didn't really

14  know what the facts were, and that's one of the reasons

15  that they even allowed their daughter -- granddaughter to

16  go over.  Had they known the truth, they probably would not

17  have permitted her to go over there.

18          THE COURT:  Okay.  So I'm assuming those would

19  be the follow-up questions along the line they only thought

20  it was something minimal, and therefore they allowed the

21  daughter to go over -- the granddaughter to go over there.

22  Okay.  I think we're all right.

23          (Whereupon jury voir dire continues from

24  9:21 a.m. to 9:25 a.m. when the following proceedings were

25  had:)

26          MS. WEISMANTEL:  Your Honor, as far as the

27  charges, I think -- I don't know if I had already done

28  this, but on Count 3 the title should be "Indecent Exposure

1  with a PC 288 Prior."

2          THE COURT:  All right.  I think, Ms. Marcotte,

3  you were aware it was a 288 prior being alleged on

4  Count 3.  Am I correct?

5          MS. MARCOTTE:  Right.

6          THE COURT:  It's just the title.  So we will

7  show amended by interlineation Count 3 to show with the 288

8  prior.  Okay.  Thank you.

9          (Whereupon jury voir dire continues from

10  9:40 a.m. to 4:00 p.m. when a jury of 12 and 2 alternate

11  jurors were duly impaneled and sworn and the following

12  proceedings were had:)

13          THE COURT:  All right.  Thank you, ladies and

14  gentlemen.  I'm going to give you a couple minutes' worth

15  of pretrial instructions at this time, and then we'll begin

16  the opening statements in the case.  The evidence will

17  begin tomorrow, and it will be tomorrow when we pass out

18  notepads and papers for you.

19          Let me begin just with the pretrial instructions

20  for you.

21          Ladies and gentlemen, now that you have been

22  selected to act as jurors and the alternates, you will, in

23  essence, be judges.  Because you will be the judges of the

24  facts, I will be the judge of the law, and at the

25  conclusion of the case I will instruct you on all the law

26  that applies to the case.

27          In fulfilling your responsibility as judges of

28  the facts, you will have to determine from the evidence

**E X H I B I T   F**

Reporters'Transcripts, RT 30,38-40;
Tesimony of Erica Wilson, re:
prior knowledge of petitioner's
prior sex offense convictions

1    Mr. Cordeiro's house?

2        A    No.

3        Q    And before February 25th had Darby ever made any

4    complaints or any reports to you concerning Mr. Cordeiro's

5    behavior toward her?

6        A    No.

7        Q    Do you see Mr. Cordeiro in court here today?

8        A    Yes.

9        Q    Could you point him out and describe what he's

10   wearing.

11       A    He's wearing a gray suit with a blue shirt.

12            THE COURT:  Indicating the defendant, for the

13   record.

14            MS. WEISMANTEL:  Thank you.

15   BY MS. WEISMANTEL:

16       Q    Did you know anything about Mr. Cordeiro's prior

17   sexual history?

18       A    Yes.

19       Q    What did you know?

20       A    Not much.  I didn't know any specifics.

21       Q    Did you know that he had been convicted for a

22   sexual offense?

23       A    Yes.

24       Q    And what was your understanding about that?

25       A    I had thought it was different.  I thought it

26   was older, and I was told there was maybe a

27   misunderstanding.

28       Q    Okay.  Knowing that -- did you know that before

1  is really good at just making them comfortable with being

2  in a courtroom and seeing how the process goes.

3      Q    Okay.  And at any time have you told your

4  daughter what to say in court?

5      A    No.  Well, I've told her what everyone else has,

6  just to tell the truth.

7      Q    Has she asked any other questions about

8  Mr. Cordeiro?

9      A    No.

10      MS. WEISMANTEL:  Thank you.  I have nothing

11  further.

12      THE COURT:  Thank you.

13      Ms. Marcotte.

14      MS. MARCOTTE:  Thank you.

15

16                  CROSS-EXAMINATION

17  BY MS. MARCOTTE:

18      Q    Good morning, Ms. Wilson.

19      A    Good morning.

20      Q    You said that your parents have lived at that

21  address somewhere between 15 to 25 years?

22      A    Yeah.

23      Q    Did you know Mr. Cordeiro pretty much that whole

24  time?

25      A    Um, no, not the whole time.  I moved back here

26  in '94.

27      Q    So for ten years or so?

28      A    Uh-huh.

```
1      Q      Is that a "yes"?

2      A      Yes.

3      Q      Sorry.  Court reporter has to write it down.

4             And during that ten years, is it fair to say

5    that you would just exchange pleasantries, like neighbors

6    would, with Mr. Cordeiro, or did you even do that?

7      A      Um, I didn't really see them very often.

8      Q      Did you speak about him with your parents, the

9    Wears?

10     A      No.

11     Q      Where is it that you learned the information

12   about his past conviction?  Do you remember?

13     A      From another neighbor.

14     Q      In that the same area on Bali Street?

15     A      Yes.

16     Q      And do you recall when you discovered that

17   information?  Was it a while ago or was it just --

18     A      It's probably been a few years.

19     Q      So it was before February 25th incident?

20     A      Correct.

21     Q      Once you found out about it, did you speak with

22   your parents at all about it?

23     A      I asked if they knew 'cause there's -- I know

24   there's a lot of things you can be convicted of, so I asked

25   if they knew anything about it, and they said they really

26   didn't know specifics.

27     Q      So is it fair to say you just heard rumors from

28   various people?
```

1    A    Yes.

2    Q    Did you yourself ever confront Mr. Cordeiro

3 about his past?

4    A    No.

5    Q    Did you ever discuss with your parents about

6 Darby going over to the Cordeiros' house?

7    A    I did have concerns, yes.

8    Q    And did you in any way prohibit her from going

9 over there?

10    A    No.

11    Q    Did you give her any type of warnings prior to

12 going over to Mr. Cordeiro's house?

13    A    No.

14    Q    Did you discuss any parameters of when she would

15 go over to Mr. Cordeiro's house with your parents?  Did you

16 give any direction as to when she was allowed to go over

17 there?

18    A    No.  The only time she went over there was when

19 Destiny was there.  She liked to play with Destiny.

20    Q    Do you know how often Darby would go over to

21 Mr. Cordeiro's house?

22    A    Not often.  I would say maybe once every couple

23 weeks.  Every few weeks.

24    Q    Would she report to you when she got to play

25 with Destiny?

26    A    Oh, yeah.  We always talk about the day.

27    Q    And do you know for how long in terms of months

28 or years that she did, in fact, go over to Mr. Cordeiro's

**E X H I B I T   G**

Reporter's transcript, pg 53
Victim Darcy Wilson Testimony
knowledge of petiitoner's past
prior sex convictions

1    Q    And what areas would you call those?

2    A    My private part.

3    Q    During the time that you went to Mr. -- to

4  Derek's house, did you ever see him touch Destiny any other

5  area than where you described him as tickling her?

6    A    No.

7    Q    Did he tickle Destiny on her sides too?

8    A    Yes.

9    Q    And how many times would you say that you were

10  over there and he tickled you?

11    A    I don't know.

12    Q    Like more than once?

13    A    Yes.

14    Q    More than five times?

15    A    Yes.

16    Q    When Mr. Cordeiro did the tickling, was Patty

17  ever in the room?

18    A    Sometimes.

19    Q    Would she do anything?

20    A    No.

21    Q    Do you remember talking to the police?

22    A    Yes.

23    Q    Before the day that you talked to the police

24  about Mr. Cordeiro, did you ever know anything about Derek

25  touching somebody in the past?

26    A    No.

27    Q    Have you been told anything about him whether or

28  not he's touched anybody other than you?

**E X H I B I T    H**

Reporter's Transcript, pp 105-06; 116
Testimony of Margaret Wear, re: know-
ledge of petitioner's prior sex
offense convicitons

```
 1   socialized with them.  Just that's about it.

 2        Q     Did he have any grandchildren?

 3        A     Yes.

 4        Q     Do you know the names of his grandchildren?

 5        A     I know one, Destiny.

 6        Q     And how old is Destiny?

 7        A     Well, maybe 5 or 6.  I'm not real sure.

 8        Q     Prior to February 25th of this year, did you

 9   ever have Darby -- did you allow her to play with Destiny?

10        A     On occasion.  There were a few times, not very

11   many times because Destiny didn't live there, and on

12   occasion she'd come over and want Darby to come over and

13   play with her.

14        Q     Were you aware of Derek talking to Darby about

15   Destiny being there at his home?

16        A     As what point?  Ever?

17        Q     Prior to February 25th.

18        A     No.

19        Q     Okay.  Did you ever have Destiny come to your

20   house?

21        A     She would come over when she was over there.

22   She'd come over, and sometimes she'd come in the backyard.

23   They'd play with the dog, or then they would go over to her

24   house.

25        Q     Were you aware of Mr. Cordeiro having been

26   convicted of some type of sexual offense?

27        A     Yes.

28        Q     And what was your understanding of that?
```

1      A     I just knew that he had been in prison.  I don't

2 know any of the details at all.  It had just been --- I just

3 knew it before I moved in there.  Never really knew too

4 much more about it other than that.

5      Q     How were you made aware of those details?

6      A     I think my husband told me.  And then we have a

7 neighbor that used to live two doors down from us that has

8 known Mr. Cordeiro's wife for a long time, and he had

9 mentioned it, but no real details.

10     Q     Did you have any concerns knowing that

11 information about Darby going to his house to play with

12 Destiny?

13     A     Well, I made sure when Darby went over there

14 that Patty was at home.  And I trusted them, you know.  I

15 thought that was a long time ago, and they were -- they

16 seemed into their religion.

17     Q     Were you aware of Patty -- how were you made

18 aware she was home?

19     A     At which time?

20     Q     When Darby would go play at their home.

21     A     Well, I would usually ask Destiny, and then both

22 of their cars were always there.

23     Q     Okay.  Did you ever have any problems with

24 Mr. Cordeiro before February 25th?

25     A     Never.

26     Q     Any reports or rumors from neighbors about any

27 problems?

28     A     No.

1 prison.

2      Q     Okay.  And you had heard rumors basically that

3 he was convicted of sexual molest or what?

4      A     I'd heard he'd been in prison for sexually

5 molesting, but I know no details.

6      Q     Did you ever ask Patty about it?

7      A     No.

8      Q     And you were aware that he was an actual

9 registered sex offender?

10      A     Yes.

11      Q     Did you ever check the police computers to find

12 out more information?

13      A     No.

14      Q     And you said that Darby started coming over to

15 your house when she was in kindergarten?

16      A     Yes.

17      Q     So it would be about three or four years now

18 that she's been coming over?

19      A     From her first day in kindergarten, yes.

20      Q     Okay.  Did she start playing with Destiny that

21 early, as far back as kindergarten?

22      A     No.

23      Q     How long has she been playing with Destiny?

24      A     Probably not even a year maybe or slightly over.

25      Q     And you would let Darby play over at

26 Mr. Cordeiro's house?

27      A     I did.

28      Q     Okay.  Did you ever actually see Derek interact

**E X H I B I T    I**

Reporter's Transcript, pp126-128,133
Testimony of David Wear, re: petit-
ioner's prior sex opffenses and
convictions

```
 1   he's --
 2        A     He's sitting over here.
 3              THE COURT:  Indicating the defendant.
 4   BY MS. WEISMANTEL:
 5        Q     How long have you known Mr. Cordeiro?
 6        A     Approximately ten years.
 7        Q     Have you ever before February 25th -- had you
 8   ever been to his home?
 9        A     Several times.
10        Q     And how would you describe your relationship
11   with him?
12        A     Cordial.
13        Q     Did you socialize with him?
14        A     No.
15        Q     Were you aware of him having been convicted for
16   some type of sexual offense?
17        A     Yes, ma'am.
18        Q     How did you become aware of that?
19        A     I believe it was his wife who told me.
20        Q     Do you remember when approximately that was?
21        A     Um, over ten years ago.
22        Q     Did you ever ask Mr. Cordeiro about it?
23        A     No.
24        Q     Do you remember how that subject came up when
25   you were speaking to his wife?
26        A     No, I don't.
27        Q     Did any of -- before February 25th, did any of
28   your neighbors talk about it?
```

1    A    I had heard one neighbor speak about it.

2    Q    Did you know any specific details about what he

3    had been convicted of?

4    A    Yes, ma'am.

5    Q    And how were you made aware of that?

6    A    Conversation I had with my neighbor.

7    Q    Which neighbor was that?

8    A    Tom Morris.

9    Q    Do you remember when that was?

10   A    No.  I don't exactly.

11   Q    Was it your understanding that the offense

12   involved a child of the age of Darby?

13   A    I don't recall, ma'am.

14   Q    When Darby would come over to your home, did you

15   ever give her permission to go play at Mr. Cordeiro's home?

16   A    Yes.

17   Q    Knowing the information that you had, were you

18   concerned about her granddaughter being over there?

19   A    Derek's wife was there at the time, and I felt

20   comfortable with that.

21   Q    What was it about the fact that she was there

22   that made you feel comfortable?

23   A    The fact that she had her granddaughter there at

24   the time and she would come over and ask if Darby could

25   come over at times and play with her granddaughter.

26   Q    Were you aware of Derek ever talking to Darby

27   about Destiny being at his home?

28   A    No.

1      Q     Did you ever look at any of the police reports

2  concerning Mr. Cordeiro's past?

3      A     No.

4      Q     Did you ever research on the computer or get any

5  further details about the nature of his conviction?

6      A     No, ma'am.

7      Q     Did you share that information that you knew

8  with Darby at any time?

9      A     No, ma'am.

10      Q     Did you ever warn her when she went over to

11  Mr. Cordeiro's home about his history?

12      A     No.

13      Q     Why didn't you warn her?

14      A     I believe the problem he had in the past he had

15  taken care of, and that as long as his wife was present, I

16  didn't believe that there was a problem.

17      Q     Before February 25th had there been any reports

18  by Darby of any inappropriate behavior by Mr. Cordeiro?

19      A     No.

20      Q     Had you heard anything in the neighborhood, any

21  rumors or anything about him?

22      A     No, ma'am.

23      Q     Was there any cause for concern other than what

24  you've told us about his -- your knowledge that concerned

25  you when she went over to his house?

26      A     No, ma'am.

27      Q     As far as -- did you trust Mr. Cordeiro?

28      A     Enough that I allowed Darby to go over there as

| | | |
|---|---|---|
| 1 | A | No, ma'am. |
| 2 | Q | Oh, you've known them for ten years? |
| 3 | A | I've known him for ten years. |
| 4 | Q | Sorry.  When -- was Patty already living there |
| 5 | | in 19- -- |
| 6 | A | Yes, ma'am. |
| 7 | Q | And she was not married to Derek as that time? |
| 8 | A | No. |
| 9 | Q | Do you know when Derek moved into the Bali |
| 10 | | address with Patty? |
| 11 | A | I'm not sure.  Like I say, approximately ten |
| 12 | | years ago. |
| 13 | Q | Do you know if they got married at that time? |
| 14 | A | I wasn't sure. |
| 15 | Q | Did you have any information about where Derek |
| 16 | | had been prior to the ten years? |
| 17 | A | Yes, I did. |
| 18 | Q | That he had been in prison? |
| 19 | A | Yes, ma'am. |
| 20 | Q | And you knew it was for sexual molestation? |
| 21 | A | Yes, ma'am. |
| 22 | Q | And you knew that he was a registered sex |
| 23 | | offender? |
| 24 | A | I'd heard that, yes. |
| 25 | Q | And did you actually talk to Patty about it? |
| 26 | A | I had talked to her at one time about it, yes. |
| 27 | Q | Is that when Mr. Cordeiro first moved in? |
| 28 | A | Before. |

**E X H I B I T   J**

Reporter's t4ranscrip, pgs 151,160-61
Testimony of Joe Garcia, re: knowledge
petitioner's prior sex offenses and
convictions;

1    A    It's exactly, yes, it is.

2    Q    Okay.  And why did you -- why were you watching

3    what the little girl was doing with your neighbor?

4    A    It's just my neighbor on the right-hand side,

5    that he had already told me that he had -- well, he had

6    problems -- that he had abused children and he had been in

7    jail.

8    Q    Did Mr. Cordeiro tell you that himself?

9    A    No.  My next-door neighbor.

10   Q    Okay.  And what is your neighbor's name that

11   told you that?

12   A    Well, his name is Course, something like that.

13   Q    All right.  Had you ever talked to Mr. Cordeiro?

14   A    Yes.

15   Q    And did you speak to him in English or in

16   Spanish?

17   A    Well, sometimes I speak just like this, a little

18   bit of English, but not very much.  It's just that once I

19   bought a very big refrigerator, and him and Mr. Davis came

20   to help me to get it down.

21   Q    Into your house?

22   A    Yes, yes.

23   Q    Other than that have you talked at all with

24   Mr. Cordeiro?

25   A    Only when he arrived and we would see them --

26   see each other and just, like, "Hello."

27   Q    When you saw the little girl at Mr. Cordeiro's

28   house, did you see any -- anybody else around the street or

1    Q    Okay.  So that's after they had already sat down

2    in the porch area?

3    A    Yes.

4    Q    Okay.  So after they were seated in the porch

5    area, she stood up; correct?

6    A    No.  He did first.

7    Q    Okay.  So how long were they in the porch area

8    from the time they sat down until Mr. Cordeiro stood up?

9    A    About 40 seconds, I think.  Not very much.

10    Q    Okay.  And after he stood up, Darby stood up and

11    walked past him and left.  Is that correct?

12    A    Uh-huh, yes.

13    Q    And did Mr. Cordeiro then go back inside his

14    home?

15    A    Yes.  Well, yes.  I didn't see him anymore then.

16    Q    Did you actually see him go in, or did you stop

17    looking after that?

18    A    No, I just stopped looking at him.

19    Can I say something?

20    Q    Only in response to a question.  I'm sorry.

21    And you said that -- well, how long have you and

22    your wife lived on Bali Street?

23    A    Six years.

24    Q    And Mr. Cordeiro has lived across the street

25    from you those six years until he just moved away?

26    A    Yes.

27    Q    And when did you hear from your neighbor that

28    Mr. Cordeiro had a record?

1    A    Once when they were playing.  Like, his girl

2    plays with my grandson.

3    Q    Mr. Cordeiro's granddaughter plays with your

4    grandson?

5    A    No.  My neighbor's, with Mr. Course.

6    Q    When you moved in six years ago, did your

7    neighbor tell you then that Mr. Cordeiro had a record and

8    had been in jail?

9    A    No.  After a while.

10    Q    Okay.  How long have you known that he's got a

11    record?  Longer than a couple years?

12    A    No.  One year, I think.  About a year.

13    Q    And you have a grandson?

14    A    Yes.

15    Q    And how old is your grandson?

16    A    He just turned 9.

17    Q    You said that you saw the police arrive later in

18    the afternoon.  Is that right?

19    A    Yes.

20    Q    Did you go over -- you didn't go over to the

21    police to talk to them, did you?

22    A    No.

23    Q    And later you talked to Detective Ramirez, a

24    female detective; correct?

25    A    Yes.  She went to my house.

26    Q    And you told her everything that we've talked

27    about in court today?

28    A    Yes.

**E X H I B I T  K**

Reporter's transcripts, pg 202
Testimony of Arresting officer
Scott Sandefur, knowledge of
petitioner's prior sex offense
convictions

1      Q    Okay.  And does that refresh your recollection

2  as to whether Mr. Cordeiro was handcuffed in the back of

3  the patrol car?

4      A    Yes.

5      Q    Okay.  And was he initially when you placed him

6  in the patrol car?

7      A    No.  He was not handcuffed.

8      Q    Okay.  And prior to him coming out, you said

9  Officer Miller was running a criminal history check of

10  Mr. Cordeiro.  Correct?

11      A    No.

12      Q    Oh.

13      A    I was running the computer checks.

14      Q    Okay.  Did you have initial response before you

15  met Mr. Cordeiro about his criminal history?

16      A    No.

17      Q    As Mr. Cordeiro was seated in the back of the

18  patrol car without handcuffs, did you then confirm his

19  criminal history at that point?

20      A    Yes.

21      Q    Okay.  And you also confirmed that he was a sex

22  offender registrant.  Correct?

23      A    Yes.

24      Q    Did you confirm that he was in compliance with

25  his registration at that point?

26      A    No.

27      Q    No, you did not confirm or no, he was not?

28      A    No, I did not confirm that.

<u>**E X H I B I T   L**</u>

Reporter's Transcripts, pp 207-212
Testimony of Haley Pry, Retired
Police Officer, re: petitioner's
prior sex offenses/uncharged crimes

```
 1        A      I was assigned numerous investigative
 2   assignments ranging from juvenile to homicide.
 3        Q      When did you begin your career in law
 4   enforcement?
 5        A      1961.
 6        Q      Back on May 6th of 1982, were you assigned a
 7   case for investigation concerning an alleged victim by the
 8   name of Kristi Aikin -- actually, I'm sorry.  It was April
 9   25th, 1982.
10        A      Yes, I was.
11        Q      Okay.  And earlier this morning did you take a
12   look at the police reports for that case?
13        A      Yes, I did.
14        Q      Did doing so help in any way to refresh your
15   memory?
16        A      22 years is a long time.  But, yes, I did.
17        Q      Okay.  Did you have any independent recollection
18   about Mr. Cordeiro?
19        A      Only the name when I received my subpoena.  I
20   had a recollection of a child molest case that I was
21   assigned to while working in the Northeastern Division.
22        Q      Back on April 25th of 1982, did you interview
23   Kristi Aikin?
24        A      May I refer to my report?
25        Q      Yes.
26        A      On April 26, that's correct.
27        Q      Okay.  And did you also interview the
28   defendant's daughter, Stacie Cordeiro?
```

1    A    Yes, I did.

2    Q    Do you remember approximately how old Stacie was

3    then?

4    A    11 or 12, in that.

5    Q    And do you have any independent recollection of

6    what Kristi Aikin looked like or her age?

7    A    No.

8    Q    Okay.  Do you remember in reviewing the

9    reports -- does it help refresh your memory as far as her

10   age?

11   A    I don't see a reference to it right now.

12   Q    Do you remember if she was a minor?

13   A    Oh, yes, she was definitely a minor.  I

14   ascertained that the first point of my interview.

15   Q    After speaking to Stacie Cordeiro and

16   Kristi Aikin, did you then speak to Derek Cordeiro?

17   A    Yes, I did.

18   Q    Did you do that in person?

19   A    The first contact was made by telephone.  He

20   called and an appointment was made for him to come into my

21   office the following day, and that's when I interviewed him

22   in person.

23   Q    Okay.  And when you interviewed him in person,

24   did you admonish him of his Miranda rights?

25   A    Yes, I did.

26   Q    How did he respond?

27   A    He said he was willing to talk to me.

28   Q    Did he talk to you?

1    A    Yes, he did.

2    Q    Do you recall whether or not when you questioned

3 him whether you used leading questions or open-ended?

4    A    No.  I just asked him to tell me what had

5 happened.  And I had already taken a statement from Kristi,

6 and I used that as a comparison with what he was telling

7 me.

8    Q    What did Mr. Cordeiro tell you?

9    A    Well, he initially denied any physical contact.

10 He admitted that he had walked through the living room at

11 one point early in the morning wrapped with a towel around

12 him, but he said he went to let some cats out, I think was

13 his terminology, and went back to bed.  And there was no

14 contact.

15    Q    Did he offer an explanation about how the

16 children could have seen his body underneath that towel?

17    A    Well, he stepped over -- he said he stepped over

18 the girls while he was going to the front door.

19 Apparently, they were sleeping in the living room.  And he

20 had to step over them to get to the front door to let the

21 cats out.

22    Q    And on a later date did you talk to Mr. Cordeiro

23 again?

24    A    Yes, I did.

25    Q    Did he tell you anything further that second

26 conversation?

27    A    Well, prior to the second interview, I

28 readmonished him of his Miranda rights.  He waived them and

1   said he was willing to talk to me.  And at that point he

2   admitted that he had fondled and orally copulated the young

3   lady.

4         Q     Which young lady?

5         A     Kristi.

6         Q     Did he tell you anything about how he did it?

7         A     Well, he told me at the time that he had a

8   drinking problem and sometimes, he mentioned to me, a

9   real -- his terminology -- asshole when he's drinking.  And

10  at times it's like he's not even in his body and he's

11  watching somebody else perform these acts.  And he said

12  that's what happened the night that he fondled and

13  copulated Kristi.

14        Q     Okay.  What did you do after he admitted orally

15  copulating and fondling Kristi?

16        A     I submitted a report to the district attorney's

17  office for questioning him and charge with child molest.

18        Q     Do you recognize anybody here in court today?

19        A     No.

20        Q     Did you document in your report anything

21  concerning Mr. Cordeiro about where this all took place?

22        A     It was in his home in their living room in

23  Rancho Penasquitos.

24        Q     Did he tell you whether or not he was married at

25  the time?

26        A     I don't recall.

27        Q     Okay.  If you could look at Page 3 of your

28  report.

1    A    Yes.  He obviously was.  I put in my report that
2  he and his wife had gone to bed.
3    Q    Okay.  And did he say whether or not his --
4  whether he had two girls, two daughters?
5    A    I don't recall that.  I know there were two
6  young females in the living room that he told me he stepped
7  over when he --
8    Q    Okay.  And that was Kristi Aikin and who was the
9  other girl?
10    A    Young lady by the name of Stacie.
11    Q    Is that Stacie Cordeiro, his daughter?
12    A    Yes.
13    Q    And did he tell you that he had done these acts
14  while his wife was there in the house?
15    A    Obviously, yes.  She was still in bed when he
16  went out to the living room.
17    Q    And did he tell you there were -- they were in
18  the living room when this happened?
19    A    Yes.
20    Q    And that the television had been on?
21    A    Don't recall any television.  When I interviewed
22  the girls, they said they watched television until --
23            MS. MARCOTTE:  Objection.  Hearsay.
24            THE COURT:  Don't go any further.  Thank you.
25  BY MS. WEISMANTEL:
26    Q    Do you recall him telling you that he -- his
27  wife had gone to bed while the two girls were watching
28  TV --

**E X H I B I T   M**

Reporter's Transfcripts pp 271-280
Testimony of Kiristi Gaines, re:
knowledge of petitioner's prior sex
offenses (petitioner's step-daughter)

| 1 | A | Good morning. |
|---|---|---|
| 2 | Q | How old are you? |
| 3 | A | 25. |
| 4 | Q | And are you currently married? |
| 5 | A | No. |
| 6 | Q | Do you have any children? |
| 7 | A | Yes. |
| 8 | Q | How many? |
| 9 | A | One. |
| 10 | Q | And a girl or boy? |
| 11 | A | A girl. |
| 12 | Q | And what is her name? |
| 13 | A | Destiny. |
| 14 | Q | And how old is she? |
| 15 | A | 6. |
| 16 | Q | And where do the two of you live? |
| 17 | A | In Mira Mesa. |
| 18 | Q | Are you currently employed? |
| 19 | A | Yes. |
| 20 | Q | Where do you work? |
| 21 | A | At Gold Star. |
| 22 | Q | At where? |
| 23 | A | Gold Star. |
| 24 | Q | Gold Star? |
| 25 | A | Yeah. |
| 26 | Q | And what's that? |
| 27 | A | It's just a retail business.  We make products |
| 28 | | for different companies.  I do account coordinating. |

```
 1        Q      You do account --

 2               THE COURT:  Can you speak up just a little bit.

 3    If you just bring the microphone toward you, then you won't

 4    have to worry about it.

 5        A      I do account coordinating.

 6    BY MS. MARCOTTE:

 7        Q      And how long have you worked there?

 8        A      For about nine months.

 9        Q      Do you know Derek Cordeiro?

10        A      Yes.

11        Q      And do you see him here in court?

12        A      Yes.

13        Q      Can you point to him?

14        A      (Indicating)

15               THE COURT:  She's looking at the defendant and

16    pointing.

17    BY MS. MARCOTTE:

18        Q      How is it that you know Derek Cordeiro?

19        A      He's my stepfather.

20        Q      And how old, if you remember, were you when you

21    first met Mr. Cordeiro?

22        A      Like 4 or 5.

23        Q      And what's your mother's name?

24        A      Patty Cordeiro.

25        Q      And so your mom Patty was seeing Derek when you

26    were about 4 or 5 years old?

27        A      Correct.

28        Q      Did you have occasion to live with he and Patty
```

1    at that time?

2        A    Yeah.

3        Q    And was there a time eventually that

4    Mr. Cordeiro left the residence?

5        A    Yes.

6        Q    And he went to prison?

7        A    Yes.

8        Q    When Mr. Cordeiro got out of prison, where did

9    he go live?

10       A    In an apartment.

11       Q    Did he at some point get back together with

12   Patty?

13       A    Yes.

14       Q    When was that?

15       A    Um, I think like halfway through the year after

16   he got out.

17       Q    So about six months into it?

18       A    Yeah.

19       Q    And did he go live with her?

20       A    Us, yes.

21       Q    You lived with your mom Patty at the time?

22       A    Yes.

23       Q    Do you remember how old you were?

24       A    Um, like 10, I think.  I don't really recall.

25       Q    And was that the house on Bali Street?

26       A    Yes.

27       Q    And your mom and Derek resided there up until

28   February or March of this year?

1    A    Yes.

2    Q    And when was it that you moved out of the

3    Bali Street address?  Do you remember?

4    A    When I was 16.

5    Q    And how much contact do you have with

6    Mr. Cordeiro at this time in your life?

7    A    I don't know.  I speak to them frequently.

8    They're my parents.

9    Q    Do you go over to their house?

10    A    Yeah.

11    Q    Did you visit them at their Bali Street address?

12    A    Yes.

13    Q    And how often would you visit them, would you

14    say?

15    A    It varied, really.  I mean, anywhere from a few

16    times a month to every other month.  I couldn't really

17    state a certain amount of times I've been there.

18    Q    Would you take your daughter Destiny over to the

19    Bali Street --

20    A    Yes.

21    Q    -- address?

22    Did you ever notice Mr. -- did you ever watch

23    Mr. Cordeiro, Derek, and Destiny's interaction?

24    A    Yes.

25    Q    Did you ever notice anything of -- that would

26    cause you concern between him and Destiny?

27    A    No.

28    Q    Did you ever see any kind of touching that made

1    you nervous between Derek and Destiny?

2         A    No.

3         Q    Did you see him interact physically with

4    Destiny?

5         A    Yes.

6         Q    What kind of interaction would that be?

7         A    Like a normal grandfather and his granddaughter

8    would interact.

9         Q    Have you ever seen any attempts by him to try to

10   get alone with Destiny?

11        A    No.

12        Q    Have you seen Derek at home on the Bali Street

13   address when there have been other children around besides

14   Destiny?

15        A    Have I ever seen them interact?  Yeah.

16        Q    And what other children, if you recall

17   specifically?

18        A    I mean, when I lived with them, my friends, the

19   neighbors next door.  I mean, kids, family friends.

20        Q    And over the years since he's been back with

21   Patty after prison, have you ever seen him act

22   inappropriate to any of your friends?

23        A    No.

24        Q    Do you know Darby Wilson?

25        A    Yes.

26        Q    And who is Darby Wilson?

27        A    She is the neighbor's daughter's kid next door.

28        Q    Have you ever seen her over at your parents'

1    house?

2        A    Yes.   She played with my daughter.

3        Q    And did you see your stepfather interact with

4    Darby?

5        A    Yes.

6        Q    Did you see any particular, I don't know, what

7    would be unusual interest in specifically Darby?

8        A    No.

9        Q    Did you see any type of inappropriate touching

10   of Darby?

11       A    No.

12       Q    If you had, that would concern you, obviously;

13   correct?

14       A    Yeah.

15       Q    And your mom Patty and Derek continue to live

16   together; is that correct?

17       A    Yes.

18       Q    And does your mom work?

19       A    No.

20       Q    She stays at home?

21       A    Yes.

22       Q    And why is that?

23       A    Because she has MS.

24       Q    MS?

25       A    Multiple sclerosis.

26       Q    Can you describe Derek and Patty's relationship

27   from what you've seen being their daughter?

28       A    I guess what a normal family should be.

1    Q    Have you seen them interact physically together?

2    A    Yes.

3    Q    What types of things do you see?

4    A    Them hug, kiss, play around like a normal couple

5    would.

6    Q    Does he -- does Derek display affection towards

7    your mother?

8    A    Yes.

9    Q    Does he help care for her?

10    A    Yes.

11    MS. MARCOTTE:  I have nothing further.

12    THE COURT:  Thank you.

13    Ms. Weismantel.

14    MS. WEISMANTEL:  Thank you.

15

16    CROSS-EXAMINATION

17    BY MS. WEISMANTEL:

18    Q    Do you have a sister by the name of Tina?

19    A    Yes.

20    Q    And did you live in the home with Tina and

21    Mr. Cordeiro and your mother Patty?

22    A    Yes.

23    Q    How long did you live together, the four of you?

24    A    Until he went away.  I don't recall.  I was

25    young.

26    Q    When you said he went away, you are meaning when

27    Mr. Cordeiro went to prison?

28    A    Uh-huh.

1     Q     Is that a "yes"?

2     A     Yes.

3     Q     So your -- was your mother already married to

4 Mr. Cordeiro before he went to prison?

5     A     I don't know.

6     Q     Okay.  The four of you lived together.  Were you

7 placed in foster care?

8     A     Yes, I was.

9     Q     And then your father went to prison?

10     A     He's my stepfather.  But, yes.

11     Q     You were returned after Mr. Cordeiro was in

12 prison; correct?

13     A     Yeah.

14     Q     And then you continued to live with Kristy and

15 your --

16     A     I'm Kristy.

17     Q     I'm sorry.

18        -- Tina with your mother?

19     A     No.

20     Q     What happened after that?

21     A     I believe Tina didn't live with us any longer.

22     Q     Tina is older or younger than you?

23     A     Older.

24     Q     Now, you talked about how much you see your

25 stepfather, and I was trying to -- I was a little unclear.

26 Was it once a month?

27     A     It varies.  I don't go there like -- there's not

28 a set day and amount of time that I go over there during

1   the month.  I couldn't really give you an exact answer.

2       Q    Okay.  So on average would you say it was about

3   once a month?

4       A    Yeah.

5       Q    Now, when you have seen him interact with Darby,

6   you've been there, your mother's been there, and Destiny's

7   been there?

8       A    Yes.

9       Q    Were there any other persons present?

10      A    No.

11      Q    Okay.  And you were not at your father's -- or

12  your stepfather's home on February 25th in the afternoon;

13  correct?

14      A    Correct.

15      Q    Now, you mention that you've seen Mr. Cordeiro

16  play with Darby.  Correct?

17      A    Not necessarily play with her, but, I mean, I've

18  seen him speak with her when my daughter's playing with her

19  when she's over to their house.

20      Q    Have you ever seen him tickle her?

21      A    No.

22      Q    Have you seen him tickle your daughter?

23      A    Not in a way that you are trying to point out.

24  I mean, just as -- like I said, as a normal grandfather

25  would to his granddaughter.

26      Q    And how many times have you spoken to him since

27  he was arrested?

28      A    What -- from what incident?  From --

1    Q    From that one.

2    A    I can't even give you an answer.  Several.

3    Q    Now, when you've had -- seen Darby play with

4  your daughter, would you agree that Darby enjoyed playing

5  with your daughter?

6    A    Yes.

7    Q    And Darby appeared to enjoy being at the

8  Cordeiros' home?

9    A    Playing with my daughter, yes.

10        MS. WEISMANTEL:  Thank you.  I have nothing

11 further.

12        THE COURT:  Anything further?

13        MS. MARCOTTE:  No, Your Honor.

14        THE COURT:  All right.  Thank you, ma'am.  You

15 may step down.

16        Ms. Marcotte.

17        MS. MARCOTTE:  Can I approach?

18        (Chambers conference held, but not reported)

19        THE COURT:  All right.  Ms. Marcotte.

20        MS. MARCOTTE:  Your Honor, the defense may have

21 one additional witness.  If we could have until this

22 afternoon at 1:30 to arrange that.

23        THE COURT:  All right.  I'm going to allow this

24 time, ladies and gentlemen, for counsel to decide on

25 whether there will be a last witness in the defense case.

26        We will be in recess now until 1:30.  Please

27 remember the admonition.  Leave your notebooks on your

28 chairs.  Thank you so much.  We'll see you at 1:30.

**E X H I B I T     N**

Reporters' Transcript, pg 282
Defense Counsel's Stipulation, re:
petitioner was sex offenser with
prior convictions, to jury

1   instructions this afternoon.

2            MS. MARCOTTE:  So, yeah.  I'm assuming

3   Mr. Cordeiro is going to testify, direct and cross, and

4   then maybe we can do jury instructions and then closings

5   on -- or rebuttal --

6            THE COURT:  -- Monday.

7            MS. MARCOTTE:  -- or closings on Monday.

8            THE COURT:  Sure.  That sounds very good.

9            (Luncheon recess)

10           THE COURT:  Everyone is present.

11           And we're continuing with the defense case now.

12           Ms. Marcotte.

13           MS. MARCOTTE:  Before I call my next witness,

14  Your Honor, I do have a stipulation I would like to read

15  for the jury.

16           THE COURT:  All right.  Another stipulation.

17           MS. MARCOTTE:  It is stipulated between

18  Ms. Weismantel and myself that Mr. Cordeiro was a patient

19  at Larry Corrigan's sex offender treatment program from

20  1989 until 1992 where Mr. Corrigan is unable to provide a

21  copy of Mr. Cordeiro's records as Mr. Corrigan's files were

22  destroyed after seven years, which is the normal length of

23  time he's required to keep his patients' records.

24           THE COURT:  So stipulated by the People?

25           MS. WEISMANTEL:  Yes, Your Honor.

26           THE COURT:  Very well.

27           MS. MARCOTTE:  Thank you.

28           And the defense calls Derek Cordeiro.

## PROOF OF SERVICE BY MAIL

I, _____**DEREK L. CORDEIRO**_____ depose and state:

1.  I am over the age of 18 years, a resident and state prisoner of the State of California; my present mailing address is: P.O. Box 799003  F3-**11**-**124**, R.J. Donovan Correctional Facility, San Diego, California 92179-9003;  I am a party to this action;

2.  On this **13th** day of _____**AUGUST**_____, 20**08**___, I caused a true and duplicated copy of the following document(s) entitled:

### APPENDIX OF EXHIBITS TO PETITION FOR HABEAS CORPUS

to be placed in a sealed envelope(s) with First Class postage affixed and prepaid and thereafter given into the hand of the proper institution authority with the understanding that said sealed envelopes will be immediately placed in the United States mails for delivery to the following person(s):

> **CLERK OF COURT**
> **U.S. DISTRICT COURT**
> **So. DISTRICT OF CALIFORNIA**
> **880 Front Street, Rm 2549**
> **San Diego, CA. 92101-8900**
>
> **(one copy)** *(The Original)*

To the best of my knowledge there is First Class mail delivery service to the aforementioned persons and addresses.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this **13th** day of _____**AUGUST**_____, 20**08**___, at R.J. Donovan Correctional Facility, San Diego, California.

_____ V-64461
Declarant
**Derek L. Cordeiro, V-64461**

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

I (a) PLAINTIFFS

**Derek L. Cordeiro**

2254    1983

FILING FEE PAID

Yes        No

IFP MOTION FILED

Yes      No

COPIES SENT TO

Court      Pro Se

**FILED**

AUG 1 8 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**Hernandez, et al**

(b) COUNTY OF RESIDENCE OF FIRST LISTED   San Diego
PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

**Derek L. Cordeiro
PO Box 799003
San Diego, CA 92179
V-64461**

ATTORNEYS (IF KNOWN)

**'08 CV 1519 H CAB**

II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff       ☒ 3 Federal Question
                                          (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant      ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX
(For Diversity Cases Only)        FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

## 28 U.S.C. 2254

V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ | Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO |
|---|---|---|---|

VIII. RELATED CASE(S) IF ANY (See Instructions):     JUDGE                    Docket Number

DATE     8/18/2008          SIGNATURE OF ATTORNEY OF RECORD
                            R. Mulley