1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

DEREK L. CORDEIRO,

Petitioner,

vs.

ROBERT J. HERNANDEZ, Warden; and
EDMUND GERALD BROWN, JR., the
Attorney General of the State of California,

Respondents.

Civil No.    08-CV-01519-H (CAB)

**ORDER**

**(1) DENYING PETITION FOR WRIT
OF HABEAS CORPUS**

**(2) DENYING CERTIFICATE OF
APPEALABILITY**

## I.    INTRODUCTION

On August 13, 2008, Derek L. Cordeiro ("Petitioner"), a state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for two counts of lewd and lascivious acts upon a minor, one count of indecent exposure, and one count of child annoyance.  (Doc. No. 1 at 36.)

On March 10, 2009, Petitioner filed his First Amended Petition.  (Doc. No. 28.)  The Court denied Respondents' motion to dismiss the First Amended Petition and ordered Respondents to file an answer.  (Doc. Nos. 37-38.)  On March 24, 2010, Respondents filed an answer to the First Amended Petition.  (Doc. No. 41.) Petitioner filed a traverse on September 24, 2010. (Doc. No. 48.) On February

22, 2011, the magistrate judge issued a Report and Recommendation that the Court deny Petitioner's First Amended Petition in its entirety.  (Doc. No. 49).

For the reasons set forth below, the Court **DENIES** Petitioner's First Amended Petition and adopts the Report and Recommendation.

## II.   <u>STATE PROCEEDINGS</u>

On November 9, 2004, Petitioner was charged with commission of a lewd act upon a child for touching of child's thigh in violation of California Penal Code § 288(a) (count 1); commission of a lewd act upon a child for touching of child's hand in violation of California Penal Code § 288(a) (count 2); indecently exposing himself in violation of California Penal Code § 314.1 (count 3); and child molesting in violation of California Penal Code § 647.6(a) (count 4).  (Lodg. No. 14 at 7-10.)  Petitioner had previously been convicted of two felonies, making him eligible for sentencing under California's Three Strikes Law (California Penal Code §§ 667(b)-(i), 1170.12).  (<u>Id.</u>)  On December 13, 2004, a jury found Petitioner guilty of all counts.  (Lodg. No. 14 at 149-152).

On January 12, 2005, Petitioner appeared before the state trial court for sentencing and requested to strike a prior conviction alleged under three strikes.  (Lodg. No. 15 at 492-502.)   The trial court denied Petitioner's request to strike a prior and sentenced Petitioner to 75 years to life plus 10 years for two serious felony priors with credit for time served.  (Lodg. No. 14 at 503-04.)

On February 23, 2005, Petitioner filed a direct appeal, claiming prosecutorial misconduct, ineffective assistance of counsel for failing to object to the misconduct, alleged hearsay, and cumulative error. (Lodg. No. 1, Appendix at 1-3.)  On April 27, 2006, the California Court of Appeal affirmed the judgment of the trial court. (Lodg. No. 1, Appendix.)  On May 30, 2006, Petitioner filed a petition for review in the California Supreme Court alleging the same claims. (Lodg. No. 1.)  On August 18, 2006, the California Supreme Court summarily denied the petition.  (Lodg. No. 2.)

On August 30, 2007, Petitioner filed a state habeas petition in San Diego Superior Court, arguing that his prior convictions were unconstitutional and could not be used to enhance his sentence, ineffective assistance of counsel, and denial of due process because of the cumulative effect of trial counsel's errors. (Lodg. No. 3.)  On October 29, 2007, the Superior Court denied the petition. (<u>Id.</u>) On January 22, 2008, Petitioner filed a state habeas petition in the California Court of Appeal raising

the same claims raised in the Superior Court  and adding a claim of ineffective assistance of appellate counsel.  (Lodg. No. 5.)  On May 8, 2008, the California Court of Appeal denied the petition.  (Lodg. No. 6.)  On July 3, 2008, Petitioner filed a state habeas petition in the California Supreme Court raising the same claims raised in the Court of Appeal.  (Lodg. No. 9.)

On January 7, 2009, approximately four months after filing his federal habeas petition, Petitioner filed a second habeas petition in the California Supreme Court, alleging the claims raised in his federal First Amended Habeas Petition.  (Doc. No. 29, Attach. 1.)  On January 21, 2009, the California Supreme Court denied Petitioner's first petition in that court, case number S164972.  (Doc. No. 25, Ex. 2.)  On June 24, 2009, the California Supreme Court denied Petitioner's second petition, case number S169564.  (Doc. No. 33, Ex. C.)

## III.    FACTUAL BACKGROUND

The following facts are taken from the California Court of Appeal opinion in People v. Cordeiro, No. D045966, 2006 WL 1099473 (Cal. Ct. App. April 27, 2006). ( Lodg. No. 1.)  This Court relies on the state court findings of fact pursuant to 28 U.S.C. § 2254(e)(1).  See Parke v. Raley, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).  The relevant facts from the state appellate court are as follows:

> On February 25, 2004, at approximately 4:00 in the afternoon, Cordeiro walked out of his house with his dog, Cocoa.  D.W., the granddaughter of Cordeiro's next-door neighbors, was riding her scooter nearby at the time.  D.W. was familiar with Cordeiro and Cocoa.  She stopped in front of Cordeiro's house, approached the front porch where Cordeiro and Cocoa were standing, and knelt down to pet Cocoa.  While she was petting Cocoa, D.W. talked with Cordeiro about "Girl Scout stuff."  Cordeiro squatted about one to two feet away from D.W.  He began rubbing the top of D.W.'s thigh with his hand, which was shaking, and said to Cocoa, "Isn't [D.W.] getting so beautiful?"  Cordeiro's comment made D.W. feel a little uncomfortable, but also good about herself.  She thanked Cordeiro, and he removed his hand from her thigh.  At this point, D.W. noticed Cordeiro's penis protruding from the right side of his shorts. He was not wearing underwear.
>
> D.W. became uncomfortable and backed away from Cordeiro.  Cordeiro scooted forward and then both he and D.W. stood up.  Cordeiro pulled his penis out farther and asked D.W. if she wanted to touch it as he grabbed her hand and pulled it toward his penis.  D.W. pulled her hand back.  Cordeiro apologized, stating that he did not know that what he had done would offend her, and put his penis back in his shorts. D.W. sat with Cordeiro in the chairs on Cordeiro's front porch and wondered whether she should tell anyone what had happened.  After

a few more minutes of discussion about the Girl Scouts, D.W. returned to her grandparents' house.

Jose Garcia, another neighbor, happened to be watching the interaction between D.W. and Cordeiro from his front window. Garcia saw D.W. petting Cocoa while Cordeiro was standing next to her, talking with her. However he could not see what Cordeiro was doing with his hand or what happened while Cordeiro and D.W. were squatting down, because his view was blocked by a bush in Cordeiro's yard.

When D.W. returned to her grandparents' house, her grandmother thought she was behaving in an odd manner. D.W.'s grandmother asked D.W. if she was okay, and D.W. said she was. Her grandmother then asked, "Is there a problem?" In response, D.W. told her grandmother that she had been petting Cocoa in front of Cordeiro's house and that Cordeiro had exposed himself to her, asking if she wanted to touch "it." About five or ten minutes later, D.W. related the same events to her grandfather. D.W.'s grandfather telephoned the police.

San Diego Police Officer Scott Sandefur responded to the call. After speaking with D.W. and her grandparents, Officer Sandefur returned to his patrol car. At this point, Cordeiro came out of his house. When Sandefur told Cordeiro that he was being accused of indecent exposure, Cordeiro told the officer that he may have accidentally exposed himself, because he was wearing very short shorts and wasn't wearing underwear. Officers then arrested Cordeiro, who was still wearing the shorts. Cordeiro's penis was not accidentally exposed at any time while Officer Sandefur was speaking with Cordeiro, while he placed Cordeiro in the patrol car, or when Cordeiro put on a pair of jeans over his shorts.

Later that evening, D.W. disclosed to her grandmother that Cordeiro had grabbed her hand when he asked her if she wanted to touch his penis. A few days later, D.W. told her grandmother that Cordeiro had also touched her leg.

Five days later, Anne-Marie Aguilar, a social worker at Children's Hospital, interviewed D.W. about the incident. The statements D.W. made during this videotaped interview were consistent with her testimony at trial, except that she did not mention that Cordeiro had grabbed her hand. In response to questioning by the prosecutor at trial, Aguilar testified regarding Child Sexual Abuse Accommodation Syndrome (CSAAS). Specifically, Aguilar said that children sometimes do not disclose information about an incident right away or disclose the incident but provide more details later, and that this behavior is known as "delayed disclosure."

Thirty-five-year-old Kristi B. testified that when she was 12 years old, Cordeiro's daughter Stacie was her best friend. Kristi would visit Stacie's house, where Cordeiro and his first wife lived, and would sometimes spend the night there. Kristi remembered that Cordeiro would often wear only a towel while walking around the house, and that he would often sit in a manner that exposed his genitals. One night, while she and Stacie were sleeping in the living room of Stacie's house, Kristi awoke during the middle of the night and discovered that her panties had been pulled down and that Cordeiro was kneeling next to her. Cordeiro began fondling her and orally copulated her.

08cv1519

Kristi eventually told her mother about what had happened with Cordeiro, and the incident was reported to authorities. When confronted by police officers about the incident with Kristi, Cordeiro initially denied having had physical contact with her. He told an investigating officer that he had been wearing a towel and that he had to step over the girls to let the cat out. He explained that this may have been how they saw his nude body underneath the towel. Cordeiro later admitted that he had fondled and orally copulated Kristi, but said that he had been drinking at the time, and that when he drank, he could be a real "asshole."

Cordeiro admitted that he had touched D.W.'s hand and leg, but said that he had done so with an innocent intent, and that exposing his penis to her had occurred accidentally. Cordeiro said that he first realized he was attracted to young girls when he was stationed in Vietnam as a soldier in the late 1960's or early 1970's. He sustained his first conviction for committing a lewd act upon a child in 1982, as a result of a guilty plea arising from the incident involving Kristi. Cordeiro testified that at the time of that incident, he smoked marijuana and drank alcohol regularly, and that he also occasionally used methamphetamine and cocaine. After pleading guilty, Cordeiro was placed on probation and sought court-ordered counseling.

Cordeiro also admitted that in 1985 he incurred a second conviction for lewd conduct involving his current wife's oldest daughter, Tina, which began when Tina was 10 or 11 years old. Cordeiro said that over a period of a couple of months, he orally copulated, digitally penetrated, and fondled Tina. Cordeiro pled guilty and received an 11-year sentence. It was only after his conviction for the incidents involving Tina that Cordeiro admitted that his conduct was wrong. He served three years in prison as a result of this conviction. When he was released from prison in 1989, Cordeiro contacted Larry Corrigan, a therapist who provides treatment for sex offenders, and began counseling. Corrigan diagnosed Cordeiro as a pedophile. Cordeiro admitted to Corrigan that he was a pedophile and said he believed his sexual impulse for young girls would never go away.

Cordeiro testified that although he has not been cured of pedophilia, he has taken a number of steps to avoid acting upon his impulses, including (1) driving past the prison in Norco every six months, (2) attending church, (3) no longer consuming alcohol or drugs, (4) staying away from children unless their parents are around, and (5) having his wife with him most of the time.

With regard to the current charges, Cordeiro testified that he and Cocoa were outside when D.W. approached them and asked why Cocoa was limping. While D.W. was squatting down petting Cocoa, Cordeiro knelt down and took D.W.'s hand so she could feel the knot on Cocoa's arthritic leg, but D.W. yanked her hand away. Cordeiro thought D.W. pulled her hand away because she did not want to touch Cocoa's leg, but when he looked down, he realized that he had exposed himself to D.W. Cordeiro apologized to D.W., moved back, and adjusted himself. He denied that he had caressed D.W.'s thigh or leg, or that he tried to get D.W. to touch his penis. He admitted that he had touched the back of D.W.'s legs, but said he had done so only in order to move her over after he realized that she was standing on his wife's flowers. Cordeiro denied that he had said to Cocoa, "Isn't D.W. getting beautiful." Rather, Cordeiro explained, he had told Cocoa to "sit pretty."

08cv1519

Cordeiro admitted that he had lied about, or failed to acknowledge, that he fantasized about young girls when he was interviewed by probation officers and health care professionals in 1982, 1985, and 1986. He also acknowledged that he had lied to doctors in 1982 when he told them that he did not realize he had exposed himself to Kristi and his daughter. When the prosecutor asked Cordeiro whether he had ever exposed his penis to other people and other children, Cordeiro said he had not. In response to further questioning by the prosecutor, Cordeiro then admitted that he had sexually molested his nieces, Michelle and Kimberly, in the 1970's. Cordeiro had Michelle orally copulate him, and fondled and orally copulated her over a seven-year period, from the time she was nine years old until she was 16. He had also fondled Kimberly and exposed his penis to her.

The last time Cordeiro had seen a therapist for his pedophilia was 17 years prior. However, during that time, he had not reoffended, had been an active member of his church, and had been a good friend and father. He had worked as a manager for United Van Lines since 1989.

Cordeiro presented the testimony of five character witnesses. The witnesses testified that they had seen Cordeiro interact with girls between the ages of 7 and 16, after 1989, on a regular basis, and that they never saw Cordeiro engage in any inappropriate touching. They also said that Cordeiro did not appear to show any particular interest or fascination with girls in that age group.

(Lodg. No. 1, Appendix at 4-9.)

## IV. DISCUSSION ON THE MERITS

### A. Standard of Review for Federal Habeas Petitions

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d);

1   Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537 U.S. 3, 8 (2002); Williams v.

2   Taylor, 529 U.S. 362, 405-09 (2000).

3        "Clearly established [f]ederal law" refers to the governing legal principle or principles set forth

4   by the Supreme Court at the time the state court renders its decision.  Lockyer v. Andrade, 538 U.S.

5   63 (2003).  A state court's decision is "contrary to" clearly established federal law if: (1) it applies a

6   rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts . . . materially

7   indistinguishable from a decision of the Supreme Court but reaches a different result.  See Early, 537

8   U.S. at 8 (citation omitted); Williams, 529 U.S. at 405-06.

9        "Unreasonable application" requires the state court decision to be "objectively unreasonable,

10   not just incorrect or erroneous."  Lockyer, 538 U.S. at 65; Wiggins v. Smith, 539 U.S. 510, 520-21

11   (2003);  see also Clark v. Murphy, 331 F.3d 1062, 1068 (9th Cir. 2003), cert. denied 540 U.S. 968

12   (2003).  More specifically, to establish an "unreasonable application" of clearly established Supreme

13   Court precedent, "a state prisoner must show that the state court's ruling on the claim being presented

14   in federal court was so lacking in justification that there was an error well understood and

15   comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v.

16   Richter, --- U.S. ---, 131 S.Ct. 770, 786-87 (2011).

17        A state court decision involves an "unreasonable application" of governing Supreme Court law

18   if the state court: (1) identifies the correct governing Supreme Court law but unreasonably applies the

19   law to the facts; or (2) unreasonably extends a legal principle from governing Supreme Court law to

20   a new context where it should not apply, or unreasonably refuses to extend that principle to a new

21   context where it should apply.  Williams, 529 U.S. at 407.  Under this prong, a federal court may grant

22   habeas relief "based on the application of a governing legal principle to a set of facts different from

23   those of the case in which the principle was announced."  Lockyer, 538 U.S. at 76 (citation omitted);

24   see also Woodford v. Visciotti, 537 U.S. at 24-26 (state court division "involves "an unreasonable

25   application" of clearly established federal law if it identifies the correct governing Supreme Court law

26   but unreasonably applies the laws to the facts).  "Factual determinations by state courts are presumed

27   correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340

28   (2003) (citing 28 U.S.C. § 2254(e)(1)); see, e.g., Moses, 555 F.3d at 745 n.1.

1  Where there is no reasoned decision from the state's highest court, the Court "looks through"
2  to the underlying appellate court decision.  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991);
3  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  If the dispositive state court order does
4  not "furnish a basis for its reasoning" because the state courts rejected a claim without comment,
5  federal habeas courts must conduct an independent review of the record to determine whether the state
6  courts' unexplained decisions were contrary to, or involved an unreasonable application of, "clearly
7  established" governing Supreme Court law.  See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000)
8  (overruled on other grounds by Lockyer, 538 U.S. at 75-76); accord Himes v. Thompson, 336 F.3d 848
9  (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue,
10  but rather, the only method by which we can determine whether a silent state court decision is
11  objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003) (citation omitted).
12  However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim.
13  Early, 537 U.S. 3, 8 (2002).  What matters is whether the last reasoned decision reached by the state
14  court was contrary to Supreme Court law, not the intricacies of the analysis.  Hernandez v. Small, 282
15  F.3d 1132, 1140 (9th Cir. 2002); see also Harrington v. Richter, --- U.S. ---, 131 S.Ct. 770, 784 (2011).
16  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court
17  precedent]," the state court decision will not be "contrary" to clearly established federal law.  Early,
18  537 U.S. 3, 8 (2002).

19  **B.    Prosecutorial Misconduct and Related Ineffective Assistance of Counsel Claims**

20  Petitioner claims that the prosecutor committed misconduct and his trial attorney was
21  ineffective by failing to object to the alleged misconduct.  (Doc. No. 28 at 40.)  Respondents argue that
22  the appellate court reasonably applied Darden v. Wainright, 477 U.S. 168 (1986), and Strickland v.
23  Washington, 466 U.S. 668 (1984) in rejecting petitioner's prosecutorial and ineffective assistance of
24  counsel claims.  (Doc. No. 41-1 at 13-28.)  The following standards govern these claims.

25  1.    Standard for Prosecutorial Misconduct

26  A defendant's due process rights are violated when a prosecutor's misconduct renders a trial
27  fundamentally unfair.  See Darden, 477 U.S. at 182-83 (1986); Smith v. Phillips, 455 U.S. 209, 219
28  (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the

1  fairness of the trial, not the culpability of the prosecutor").   Under <u>Darden</u>, "the first issue is whether

2  the prosecutor's remarks were improper and, if so, whether they infected the trial with unfairness." <u>Tan</u>

3  <u>v. Runnels</u>, 413 F.3d 1101, 1112 (9th Cir. 2005).  A prosecutorial misconduct claim is decided "on the

4  merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the

5  trial with unfairness as to make the resulting conviction a denial of due process." <u>Johnson v. Sublett</u>,

6  63 F.3d 926, 929 (9th Cir. 1995) (citation and quotation omitted), <u>cert. denied</u>, 516 U.S. 1017 (1995).

7  The petitioner must establish that the trial error resulted in actual prejudice, that is, that the error "had

8  substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>,

9  507 U.S. 619, 637-38 (1993) (citing <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)).

10             2.     <u>Standard for Ineffective Assistance of Counsel</u>

11        The United States Supreme Court has recognized that the Sixth Amendment right to counsel

12  exists in order to protect the fundamental right to a fair trial.  <u>Gideon v. Wainwright</u>, 372 U.S. 335

13  (1963).  In addition, the Supreme Court has held that "the right to counsel is the right to effective

14  assistance of counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970).  To demonstrate ineffective

15  assistance of counsel, a defendant must show: (1) that his counsel's performance was deficient; and (2)

16  that the deficient performance prejudiced his defense.  <u>Strickland</u>, 466 U.S. at 687 (1984).

17        To establish deficient performance, a petitioner must show that counsel's representation "fell

18  below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.  In reviewing counsel's

19  performance for deficiency, courts "must be highly deferential" and avoid the temptation to "conclude

20  that a particular act or omission of counsel was unreasonable" simply because in hindsight the defense

21  has proven to be unsuccessful.  <u>Id.</u> at 689.  Petitioner bears the burden of overcoming the strong

22  presumption that counsel performed adequately. <u>Id.</u>

23        Establishing prejudice requires that the defendant prove that "there is a reasonable probability

24  that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

25  <u>Id.</u> at 694.  "It is not enough for the defendant to show that the errors had some conceivable effect on

26  the outcome of the proceeding."  <u>Id.</u> at 693.  As with deficiency, <u>Strickland</u> places the burden of

27  proving prejudice on the defendant, not the government.  <u>Wong v. Belmontes</u>, 130 S.Ct. 383, 390-91

28  (2009).  A court need not determine whether counsel's performance was deficient before examining

1  the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at

2  697. 1

3         Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge

4  a strong presumption that counsel's conduct falls within the wide range of reasonable professional

5  assistance.  See id. at 689.  Applying the Strickland standard under § 2254(d)(1) to determine whether

6  the state court's application was unreasonable, the federal court must give state courts great latitude.

7  See Knowles v. Mirzayance, 556 U.S. ---, 129 S.Ct. 1411, 1420 (2009).  This heightened deference

8  stems from the nature of Strickland's two-prong standard for evaluating ineffective assistance of

9  counsel claims.  Id.; see Yarborough v. Gentry, 540 U.S. 1, 6 (2003).  Because both AEDPA and

10 Strickland's deferential standards apply when a federal court reviews a state court's Strickland

11 determination under § 2254(d), the resulting standard of review is referred to as "doubly deferential."

12 Gentry, 540 U.S. at 6; see also Knowles, 556 U.S. at ---, 129 S.Ct. at 1420.  The question becomes

13 "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."

14 Richter, 131 S.Ct. at 788.

15        With the above clearly established standards in mind, the Court addresses Petitioner's

16 prosecutorial misconduct and related ineffective assistance claims in turn.  The last reasoned state court

17 opinion was given by the California Court of Appeal in People v. Cordeiro, No. D045966, 2006 WL

18 1099473 (Cal. Ct. App. April 27, 2006).  (Lodg. No. 1, Appendix.).  The Court will look through the

19 silent denial of the state supreme court to the appellate court opinion.  Ylst v. Nunnemaker, 501 U.S.

20 797, 801-06 (1991); Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).

21            3.     Testimony from D.W.'s Grandparents Regarding What D.W. Told Them

22                   About the Incident and Ineffective Assistance of Counsel as to Their

23                   Testimony

24        Petitioner argues that the prosecutor conducted misconduct by eliciting testimony from D.W.'s

25 grandparents regarding what D.W. told them about the incident.  (Doc. No. 28 at 42-48)  Specifically,

26 Petitioner argues that the statements to D.W.'s grandparents did not fall within the fresh complaint or

27 spontaneous statement exception to the hearsay rule.  (Id.)  Additionally, Petitioner contends trial

28 counsel should have objected to the reliability of the statements D.W. made to her grandmother and

1   requested a hearing under California Evidence Code § 402 to determine the circumstances surrounding

2   the statements.  (Doc. No. 28-1 at 22-25.)  Respondents counter that Petitioner procedurally defaulted

3   on this claim by failing to object at trial and that the court of appeal reasonably applied precedent in

4   rejecting petitioner's arguments.  (Doc, No. 41-1 at 16-17.)

5          The appellate court stated in the last reasoned state opinion:

> Although Cordeiro has forfeited any direct challenge to this line of questioning on the grounds of prosecutorial misconduct, since his trial counsel failed to object, we nevertheless consider the merits of this argument in the context of Cordeiro's assertion that counsel's failure to object constituted ineffective assistance of counsel . . .
>
> The prosecutor's eliciting testimony from Margaret and David regarding what D.W. told them about the incident "did not constitute an egregious pattern of misconduct and did not infect the trial with unfairness." (People v. Prieto (2003) 30 Cal.4th 226, 260.)  While the prosecutor should have obtained a more definitive ruling on the matter before posing the questions at issue in view of the previous discussion between the court and counsel, the failure to do so prior to asking Margaret and David what D.W. had told them after her initial disclosure was not prejudicial.
>
> When Cordeiro testified, he admitted that he had touched D.W.'s leg and hand. The fact that Cordeiro had touched D.W. was therefore not in contention.  The issue the jury had to determine with regard to the touching was whether Cordeiro possessed the requisite criminal intent, not whether the touching had or had not occurred . . .
>
> The only additional information gleaned from Margaret's testimony about what D.W. told her after D.W.'s initial description of the event was that Cordeiro had grabbed D.W.'s hand and that he had touched her leg—both acts that Cordeiro admitted.  Thus, even if Margaret's testimony about D.W.'s later statements was erroneously admitted, it was merely cumulative to evidence that was properly before the jury, some of which was presented by the defense.  Similarly, David's testimony was merely cumulative to the portion of Margaret's admissible testimony about what D.W. initially told her, since D.W. did not tell her grandfather anything more than what she had already told her grandmother.  The prosecutor's eliciting this testimony did not render the trial fundamentally unfair, nor did it amount to the use of a deceptive or reprehensible method to persuade the jury of Cordeiro's guilt.

(Lodg. No. 1, Appendix at 14-16.)

24         The record contains ample other evidence that Petitioner touched D.W.'s hand and

25   thigh.  As the appellate court concluded, the testimony of D.W.'s grandparents was merely

26   cumulative to the testimony of the persons involved in the incident.  Therefore, there is no

27   indication that any alleged prosecutorial misconduct had a "substantial and injurious effect or

28   influence" on the jury's verdict.  Brecht, 507 U.S. at 637-38.

Regarding the associated ineffective assistance of counsel claim, the state court stated:

> Cordeiro's attorney may have wanted to allow D.W.'s grandmother to testify regarding when D.W. told her about Cordeiro grabbing her hand and touching her thigh because that testimony contradicted D.W.'s testimony on cross-examination that she had told her grandmother about the hand-grabbing when she initially disclosed the incident. Alternatively, counsel may have believed that D.W.'s testimony about Cordeiro having touched her was credible, and knew that Cordeiro intended to admit the touching when he testified. Thus, there could have been a tactical decision behind defense counsel's failure to object to this testimony . . .

> [T]here is no reasonable probability that absent the failure to object to this testimony, the outcome of the trial would have been different. D.W. testified that Cordeiro rubbed her thigh and pulled her hand toward his penis after he exposed himself to her. Cordeiro admitted that he had touched D.W.'s leg and pulled D.W.'s hand, albeit under circumstances different from those D.W. described. Even if the challenged testimony of D.W.'s grandparents had been excluded pursuant to a defense objection, the jury still would have heard that Cordeiro had touched D.W.'s leg and hand.

(Lodg. No. 1, Appendix at 14-16.)

Petitioner has failed to show that his trial counsel's performance was both: (1) deficient under an objective standard of professional reasonableness; and (2) prejudicial such that there was a reasonable probability of a different outcome. Strickland, 466 U.S. at 687. Petitioner failed to show that his trial counsel had no strategic reason for allowing D.W.'s grandparents to testify as to what D.W. told them. Trial counsel reasonably may have wanted the jury to conclude that D.W.'s story was less reliable because she told it in pieces or that she changed her story. Petitioner has also failed to demonstrate the reasonable probability of a different outcome. Moreover, the evidence against Cordeiro was strong as both he and D.W. testified that he had touched her and exposed himself to her. (Lodg. 1, Appendix at 4-9.)

4.   Prosecutorial Misconduct Regarding the Michelle and Kimberly Scott

Incidents and Ineffective Assistance of Counsel Regarding that Testimony

Petitioner claims that the prosecutor violated the court's order to request a sidebar before impeaching Petitioner on cross-examination with the Michelle and Kimberly Scott incidents from the 1970's and committed misconduct by eliciting that testimony after he denied ever exposing himself to other girls. (Doc. No. 28 at 48, 56-57.) Further, Petitioner argues that the remoteness and nature of

1  the prior conduct versus Petitioner's current conduct weighed against admission under California

2  Evidence Code § 352.  (Id. at 58.)

3       Respondents counter that the appellate court reasonably considered whether this testimony was

4  overly prejudicial but concluded that the court's prior rulings supported an inference that the prosecutor

5  would have been able to ask the same questions if she had requested a sidebar.  (Doc. No. 41-1 at 21-

6  22.)  Respondents argue that Petitioner's counsel was not ineffective as she had objected when the

7  questioning began, and could have concluded that continuing to object would be tactically unwise or

8  futile.  (Id.)

9       The appellate court explained its grounds in the last reasoned state opinion:

10         [C]onsidering the court's prior indications that it was inclined to allow the
           prosecution to introduce evidence regarding Cordeiro's uncharged sexual misconduct
11         from the 1970's if Cordeiro were to testify, Cordeiro's denial that he had exposed
           himself to anyone other than Kristi, Stacie and Tina, and the trial court's overruling
12         of defense counsel's objection when the prosecutor began to ask Cordeiro about
           exposing himself to Michelle, the prosecutor's questioning Cordeiro about these prior
13         acts did not amount to misconduct.

14         One can infer from the fact that the trial court overruled two defense objections to
           this line of questioning that the court weighed the potential prejudice of the
15         anticipated evidence against its probative value, without requiring a sidebar
           conference. The trial court knew that evidence of Cordeiro's sexual misconduct with
16         his nieces contradicted Cordeiro's testimony that he had never exposed himself to
           anyone else.  Further, Cordeiro's attorney had conceded that if Cordeiro were to
17         deny that he had molested anyone other than the victims of his 1982 and 1985
           convictions, then evidence of the prior uncharged sexual misconduct from the 1970's
18         would become relevant.   This is essentially what occurred during Cordeiro's
           cross-examination. . . .
19
           . . . Once Cordeiro denied that he had purposely exposed his penis to any girls other
20         than Kristi, Stacie and Tina, the potential prejudice to Cordeiro from introducing
           evidence of his having exposed himself to his nieces in the 1970's was outweighed
21         by the probative value of this evidence to impeach Cordeiro. . . .

22         . . . [W]hen Cordeiro denied that he had exposed himself to anyone else, it is likely
           that the trial court determined that its tentative decision to allow in evidence of
23         Cordeiro's prior sexual misconduct with his nieces was correct, and that the
           prosecutor should be allowed to cross-examine him about those acts. . . .  There is
24         no indication in this record that the trial court would have ruled otherwise if the
           prosecutor had requested a sidebar conference to discuss the matter before posing the
25         questions at issue.

26  (Lodg. No. 1, Appendix at 22-25.)

27       Here, the state court determination is reasonable and not contrary to Supreme Court precedent

28  when it concluded that the prosecutor's questioning did not warrant habeas relief.

As to the ineffective assistance of counsel claim, the appellate court stated:

> Cordeiro's counsel did object when the prosecution first began asking about other incidents of sexual misconduct, and specifically objected when the prosecutor asked Cordeiro whether he had exposed himself to Michelle.  After the court overruled these objections and instructed Cordeiro to answer the question regarding Michelle, defense counsel may have reasonably concluded that it would be futile to interrupt the line of questioning with additional objections or with a request for a sidebar conference, and that doing so might be perceived in a negative light by the jury . . . Because there are conceivable tactical reasons for counsel's failure to raise further objections to this evidence, we do not find counsel's performance deficient in this regard.

(Id.)

As a result, Petitioner's ineffective assistance of counsel claim fails under <u>Strickland</u>.

### 5. Prosecutorial Misconduct Regarding Evidence of Shorts and Ineffective Assistance of Counsel as to Those Questions

Petitioner claims that the prosecutor committed misconduct in cross-examining Petitioner about the shorts he was wearing at the time of the incident, suggesting a burden-shifting.  (Doc. 28-1 at 6-7). Respondents counter that Petitioner forfeited his objection to the line of questioning by failing to object at trial and that the limited questioning did not infect the trial with unfairness.  Respondents argue, and the appellate court agreed, that it is unlikely the result would have been more favorable had trial counsel objected.  (Doc. No. 41-1 at 25-26.)

> In view of the strength of the case against Cordeiro, we are confident that the result of the proceeding would not have been different if Cordeiro's counsel had objected to the prosecutor's improper suggestion that Cordeiro should have produced the shorts.  Accordingly, Cordeiro's claim of ineffective assistance of counsel fails.

(Lodg No. 1, Appendix at 25-26.)

The questions on cross examination of the Petitioner did not infect the trial with unfairness. <u>Tan v. Runnels</u>, 413 F.3d 1101, 1112 (9th Cir. 2005).  Similarly, trial counsel's failure to object does not render trial counsel's performance ineffective as Petitioner has failed to show how the outcome would have been different.  See <u>Strickland</u>, 466 U.S. at 694.

### 6. Prosecutorial Misconduct for Statements Made in Closing Argument and Ineffective Assistance of Counsel Related to Those Statements

Petitioner claims that the prosecutor's statements during closing argument were improper. (Doc. No. 28-1 at 7-8.)  Respondents argue that the jurors were instructed to base their decisions on

the evidence and the statements of counsel were not evidence.  (Doc. No. 41-1 at 27-28.)  Moreover, the prosecution had provided ample evidence of petitioner's credibility with regards to his sexual misconduct with young girls, so the isolated comment was not fundamentally unfair.   (Id.) Respondents further argue that trial counsel was not ineffective as she may have had a tactical reason for not objecting in her closing argument.  (Id. at 27-28.)

The appellate court rejected Petitioner's claims in its last  reasoned state opinion:

> [W]e cannot conclude that Cordeiro's counsel's performance in failing to object to this portion of the prosecution's closing argument was deficient.  Counsel may have had a tactical reason for not objecting during closing argument.  We thus reject Cordeiro's claim that trial counsel rendered ineffective assistance in failing to object to the prosecutor's statements regarding what Cordeiro did not tell his parole officer in 1989.

(Lodg. No. 1, Appendix at 27-28.)

The prosecutor's comments during closing argument did not render the trial fundamentally unfair.  See Darden v. Wainright, 477 U.S. 168, 182-83 (1986); Smith v. Phillips, 455 U.S. 209, 219 (1982).  As the appellate court noted, the record is replete with evidence concerning Petitioner's lack of credibility concerning his sexual misconduct with young girls.  (See, e.g., Lodg. No. 15 at 362-66, 369-74.)  Moreover, the trial court instructed the jury to base its decision on the evidence and not the statements of counsel.  (Lodg. No. 15 at 445.)  Thus, the underlying record shows that the prosecutor's statements during closing argument did not infect the entire trial with unfairness.  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995).

Additionally, trial counsel's failure to object did not render her performance ineffective.  Trial counsel may have strategic reasons for not objecting to comments made by the prosecutor.  Trial counsel may also have felt that she could make her point more effectively by outlining the actual state of the evidence concerning Petitioner's release in 1989.  Thus, trial counsel did not fall below an objective standard of reasonableness and Petitioner cannot show that the outcome would have been different if trial counsel had objected.

7.   Ineffective Assistance of Counsel for Failure to Object to Testimony of Social Worker Aguilar

1   Petitioner claims that trial counsel was ineffective by failing to object to a social worker's

2   "opinion" and by failing to request a limiting instruction.  (Doc. No. 28-1 at 12-15.)  Respondents

3   counter that the record shows trial counsel objected to the social worker's testimony and that the trial

4   court sustained those objections.  (Doc. No. 41-1 at 36-37.)  Ms. Aguilar then gave information about

5   the course she took on delayed disclosure and defined the term.  Significantly, Ms. Aguilar did not

6   testify as to whether D.W.'s behavior was consistent with this concept.  (Id.)

7   The attorneys, the trial court, and the appellate court agreed that Ms. Aguilar, the social worker,

8   had not offered an expert opinion but had testified as to her background and training, interview with

9   D.W., and experience in conducting interviews with children.  (Lodg. No. 15 at 394.)  Ms. Aguilar did

10  not give an opinion about whether D.W.'s behavior was consistent with delayed disclosure.  As a result,

11  trial counsel was not ineffective for failing to request a limiting instruction about this testimony.

12  Moreover, even if the court gave the jury a limiting instruction, it is not reasonably probable that the

13  jury would have reached a different result.  Strickland, 466 U.S. at 693-94.

14          8.      Conclusion on Prosecutorial Misconduct and Ineffective Assistance of

15                  Counsel Claims

16  Based upon the Court's independent review of the record, there was sufficient reason for the

17  state court to deny Petitioner relief.  The state court's rejection of Petitioner's claims was neither

18  contrary to, nor involved an unreasonable application of, clearly established federal law as determined

19  by the United States Supreme Court.  Therefore, the Court **DENIES** Petitioner's claims of prosecutorial

20  misconduct and ineffective assistance of counsel.

21  **C.      Trial Court's Admission of Evidence on Cross-Examination of Other Acts of**

22  **         Sexual Conduct**

23  Petitioner claims that the trial court erred in admitting prejudicial evidence of other acts of

24  sexual conduct as to his two nieces.  (Doc. No. 28-1 at 33-38.)  Respondents reply that the evidence

25  was admissible to attack Petitioner's credibility after he testified that he had not exposed himself to any

26  other children except Tina and Kristi.  (Doc. No. 41-1 at 30-31.)

27  Respondents argue that evidence of uncharged acts is also admissible to prove intent, common

28  design or plan, and absence of mistake or accident under California Evidence Code § 1101 or to show

propensity to commit sex crimes under California Evidence Code § 1108. (Doc. No. 41-1 at 30-31.) Respondents argue that the evidence was relevant to the rehabilitation defense, whether the exposure was accidental, and Petitioner's credibility regarding to whom he had exposed himself. (Id.) Thus, Respondents argue the admission of the evidence during cross-examination of Petitioner did not violate due process because the jury could draw permissible inferences from the evidence and no prejudice resulted. (Id. at 31.)

Petitioner presented this claim for the first time in his second habeas petition in the California Supreme Court. (See Doc. No. 29, Attach. 1.) The California Supreme Court denied that petition without reasoned decision. (Doc. No. 33, Ex. C.) Accordingly, this Court conducts an independent review of the record to determine whether the state court's denial was contrary to, or an unreasonable application of, "clearly established" Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000); accord Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Petitioner fails to show a due process violation on the admission of evidence on cross-examination of the prior molestation after Petitioner denied prior incidents. The evidence was admissible under California Evidence Code § 1101(b) because it went to Petitioner's lack of mistake in exposing himself and his motive and intent during the interaction with D.W. It was also admissible under California Evidence Code § 1108, provided that it comported with California Evidence Code § 352. The trial court overruled two defense objections at the start of this line of questioning, likely showing that the trial court had decided the probative value outweighed the prejudice under California Evidence Code § 352. (Lodg. No. 1, Appendix at 379.) The trial court had ruled that it would likely allow the evidence to impeach the Petitioner if he testified, (Lodg. No. 15 at 9-10), and permitted the inquiry after Petitioner denied prior acts.

Furthermore, Petitioner cannot establish a federal violation sufficient to invoke a right to federal habeas relief. A state court's evidentiary ruling is grounds for federal habeas relief only if it is so fundamentally unfair as to violate due process. See Crane v. Kentucky, 476 U.S. 683, 689 (1986); Windham v. Merkle, 163 F.3d 1093, 1103 (9th Cir. 1998). "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005), amended on other grounds by 421 F.3d 1154 (9th Cir. 2005). Recently in Mejia

1   v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008), cert. denied, ---U.S. ---, 129 S.Ct. 941 (2009), the Ninth

2   Circuit rejected a petitioner's claim that the admissions of prior sexual offense evidence under

3   California Evidence Code § 1108 was unconstitutional.  Here, the admission of prior sexual conduct

4   did not violate general due process principles.

5          Finally, the trial court carefully instructed the jury on how to view the challenged evidence.

6   The jury was instructed that evidence was received for a limited purpose and was not sufficient alone

7   to convict Petitioner.  (Lodg. No. 15 at 453-54.)  A jury is presumed to follow the instructions given.

8   Weeks v. Angelone, 528 U.S. 225, 234 (2000); Richardson v. Marsh, 481 U.S. 200, 211 (1987).

9   Petitioner has provided no evidence to the contrary.  Accordingly, the Court concludes that the

10  California court's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable

11  application of, clearly established federal law as determined by the United States Supreme Court.

12  Therefore, habeas relief is not warranted and this court **DENIES** Petitioner's due process claim.

13          **D.      California Jury Instructions 2.50.01 and 2.50.1**

14          Petitioner argues that the court violated his right to a fair trial by instructing the jury with

15  California Jury Instructions ("CALJIC") 2.50.01 and 2.50.1.  (Doc. No. 28-1 at 41-42.)  Respondents

16  counter that the challenged jury instructions were revised in 2002 and, as given, cautions the jury that

17  they must find Petitioner guilty of the current charges beyond a reasonable doubt even if they find

18  Petitioner committed other crimes.  (Doc. No. 41-1 at 32-33.)  Therefore, Respondents argue that there

19  was no likelihood of confusion as to the burden of proof.

20          The Court agrees with the Respondents.  Contrary to Petitioner's claim, the trial court separately

21  instructed the jury with CALJIC No. 2.01, which requires the prosecution to prove beyond a reasonable

22  doubt whether Petitioner committed the charged crimes.  (Lodg. No. 14 at 113.)  Finally, in closing

23  argument, both the prosecutor and defense counsel reiterated to the jury the prosecution's burden of

24  proving Petitioner's guilt beyond a reasonable doubt standard.  (Lodg No. 15 at 418, 436.)  In light of

25  the repeated times the jury was correctly instructed that each element of the charged crimes must be

26  proved beyond a reasonable doubt, it is unreasonable to assume or find that the jurors ignored this

27  explicit instruction.  Weeks, 528 U.S. at 234; Greer, 483 U.S. at 757; Aguilar, 125 F.3d at 820 ("Juries

28  are presumed to follow the court's limiting instructions."); Richardson, 481 U.S. at 206.

1    Furthermore, instructional error will not support a petition for federal habeas relief unless "the

2  ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."

3  Murtishaw v. Woodford, 255 F.3d 926, 971 (9th Cir. 2001) (citing Cupp v. Naughten, 414 U.S. 141,

4  146 (1973)).   The allegedly erroneous jury instruction cannot be judged in isolation.   Estelle v.

5  McGuire, 502 U.S. 62, 72 (1991).   Rather, it must be considered in the context of the entire trial record

6  and the instructions as a whole.   Habeas relief is available only if the record demonstrates the jury's

7  decision was substantially influenced by an error, or there is "grave doubt" about whether an error was

8  harmless.   O'Neal v. McAninch, 513 U.S. 432, 434 (1995).

9    Here, Petitioner has not shown that the court's instruction would have changed the verdict.

10  Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Brecht, 507 U.S. at 637.   Any error was rendered

11  harmless by the jury instructions as a whole and the strong evidence of Petitioner's guilt.   Accordingly,

12  habeas relief is not warranted and this Court **DENIES** Petitioner's claim.

13    **E.    Sufficiency of the Evidence**

14    Petitioner argues there was insufficient evidence to support his conviction under California

15  Penal Code § 288(a).   (Doc. No. 28-1 at 48-49.)   The Fourteenth Amendment Due Process Clause

16  protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every

17  fact necessary to constitute the crime with which he is charged."   In re Winship, 397 U.S. 358, 364

18  (1970).   In reviewing an insufficient evidence claim in habeas proceedings, a federal court must

19  determine whether "any rational trier of fact could have found the essential elements of the crime

20  beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).   The standard is applied

21  with specific reference to the applicable state law defining the elements of the crime at issue.   Cherin

22  v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (en banc).

23    A federal court faced with a factual record "that supports conflicting inferences must

24  presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such

25  conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326.   "The

26  reviewing court must respect the exclusive province of the fact finder to determine the credibility of

27  witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." United

28  States v. Hubbard, 96 F.3d 1223, 1226 (9th Cir. 1996); see also Jones v. Wood, 114 F.3d 1002, 1008

1   (9th Cir. 1997). "[C]ircumstantial evidence alone can be sufficient to demonstrate a defendant's guilt."

2   United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004). This Court may only grant

3   habeas relief if the state court's decision constituted an "unreasonable application of" the standard put

4   forth in Jackson. Juan H. v. Allen, 408 F.3d 1262, 1274-75 (9th Cir. 2005).

5          Viewing the evidence in the light most favorable to the prosecution, sufficient evidence existed

6   to convict Petitioner under California Penal Code § 288(a). As to the first element of this section, a

7   person touched the child's body: D.W. testified that Petitioner touched her arm and leg, her

8   grandmother corroborated D.W.'s testimony, D.W. stated that Petitioner touched her leg in her

9   videotaped interview, and Petitioner admitted touching D.W.'s arm and leg. (Lodg. No. 15 at 63-64,

10  68-69, 112, 120, 347-50; Lodg. No. 14 at 63-64.) As to the second element, no one disputed the age

11  of D.W. and she testified to her age at the time. (Lodg. No. 15 at 46.) Lastly, there was sufficient

12  evidence of the third element: specific intent. Petitioner testified regarding his attraction to young girls

13  and his prior molestations and convictions. (Lodg. No. 15 at 303-06, 313, 327, 359-63, 368-73, 379-

14  83.) Moreover, police officer Pry and Kristi testified as to his behavior of exposing himself in the past

15  prior to molesting a young girl. (Id. at 209-12, 268.) Additionally, D.W. testified that Petitioner pulled

16  her hand towards his penis and asked her if she would like to touch it. (Id. at 69-71.) She further

17  testified that his hand was shaking when he touched her and that the interaction made her

18  uncomfortable. (Id. at 63-67.) Likewise, her grandmother testified that something seemed wrong when

19  she returned home. (Id. at 111-12.) Based on the record, a rational trier of fact could have found that

20  Petitioner had specific intent and touched DW. for sexual gratification. Thus, a rational trier of fact

21  could have found the essential elements of the crime beyond a reasonable doubt. Accordingly, habeas

22  relief is not warranted and this Court **DENIES** Petitioner's insufficiency of the evidence claim.

23          **F.      Sentencing Claim under Penal Code Section 288.5**

24          Petitioner argues that California Penal Code § 288.5, regarding continuous sexual abuse, more

25  appropriately covers his conduct and the court should have sentenced him under that statute. (Doc. No.

26  28-1 at 49-50.) Respondents counter that the statute under which the trial court sentenced Petitioner

27  provides a shorter prison term but his sentence was increased because of his prior convictions. (Doc.

28  No. 41-1 at 35-36.) Respondents also argue that Petitioner's sentencing claim does not present a

1  federal question and there is no authority for the trial court to sentence Petitioner under California Penal

2  Code § 288.5, which is not a lesser included offense of California Penal Code § 288(a).   (Id.)

3  Ultimately, the question is whether the state court's action is "so arbitrary or capricious as to constitute

4  an independent due process or Eighth Amendment violation." Estelle v. McGuire, 502 U.S. at 67-68.

5      Petitioner was not charged under California Penal Code § 288.5 as that statute requires three

6  or more acts of substantial sexual conduct over at least a three month period.  Petitioner provides no

7  authority that allows the court to change his convictions under California Penal Code § 288(a) to a

8  conviction under California Penal Code § 288.5.  Moreover, this Court does not review sentencing

9  claims for state law error but only determines if the sentence was unconstitutional.  Here, the record

10  reflects that there was sufficient evidence to convict Petitioner under California Penal Code § 288(a)

11  and the trial court applied the state's sentencing laws to that conviction.  Accordingly, habeas relief is

12  not warranted on his claim that he should have been sentenced under a different state statute –

13  California Penal Code § 288.5.

14      **G.      Excessive Sentencing Claim**

15      Petitioner argues that he should not have been sentenced to consecutive terms when the

16  testimony only showed that he committed one offense. (Doc. No. 28-1 at 53-55).  Respondents counter

17  that sentencing a defendant to consecutive or concurrent charges is a state matter and there was

18  sufficient evidence in this case to support separate convictions in counts 1 and 2 for touching of the

19  thigh and hand and count 3 for indecent exposure.  (Doc. No. 41-1 at 36.)  "The decision whether to

20  impose sentences concurrently or consecutively is a matter of state criminal procedure and not within

21  the purview of federal habeas corpus." Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994.)

22      Multiple convictions were proper in this case because, under California law, "each fondling of

23  a body part accompanied by the requisite intent constitutes a violation of section 288." People v.

24  Jimenez, 99 Cal.App.4th 450, 455-56 (2002).  (Lodg. No. 15 at 501-02.)  "There is no requirement that

25  there be a delay between the completion of one act and the commencement of another." Id.  Here, there

26  is substantial evidence that there were two separate fondling acts—one involving D.W.'s thigh, the

27  other involving her arm—each done with the requisite sexual intent.  (Lodg. No. 15 at 501-02.)

28  Additionally, the indecent exposure sentence was stayed per California Penal Code § 654 which

1  protects against multiple punishments in situations where one act directly facilitates or is merely

2  incidental to the commission of the second act.  (Lodg. No. 15 at 502.)  Finally, the trial court

3  sentenced Petitioner to concurrent terms as to counts 1 and 2, not consecutive terms.  (Lodg. No. 15

4  at 503.)  Thus, Petitioner has failed to show a due process violation.  Accordingly, habeas relief is not

5  warranted and this Court **DENIES** Petitioner's sentencing claim.

6        **H.    Eighth Amendment Claim**

7        Petitioner argues that his sentence violates the Eighth Amendment's protection against cruel

8  and unusual punishment.  (Doc. No. 28-1 at 55-59).  Petitioner further argues that California imposes

9  a substantially greater sentence than other states with recidivist statutes and also imposed an improper

10 sentence because his crime was not violent.  (Id.)  In particular, Petitioner argues that his sentence is

11 contrary to the Supreme Court's holding in Solem v. Helm, 463 U.S. 277 (1983).  (Id.)

12        Respondents counter that the Supreme Court precedent limits only "extreme sentences" that are

13 "grossly disproportionate" to the crimes.  (Doc. No. 41-1 at 36-37.)  According to Respondents, the trial

14 court noted the repetitive nature of Petitioner's offenses, his lack of remorse, and the continuing danger

15 he presented to young girls.  (Id.)  Thus, Respondents argue, that in light of Petitioner's criminal history

16 and the circumstances of the present offenses, his sentence does not violate the Eighth Amendment.

17 (Id.)

18        The Eighth Amendment, which proscribes cruel and unusual punishments, contains a narrow

19 proportionality principle that applies to noncapital sentences.  See Ewing v. California, 538 U.S. 11,

20 20 (2003).  The Supreme Court has set out three objective factors relevant to analyzing whether a

21 sentence is grossly disproportionate to the crime in violation of the Eighth Amendment: (1) the gravity

22 of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the

23 same jurisdiction; and (3) the sentences imposed for the same crime in other jurisdictions.  Helm, 463

24 U.S. at 290-92.  In weighing the gravity of the offense, both the current offense and the criminal history

25 of the offender must be weighed.  Ewing, 538 U.S. at 29.  In addition, the Supreme Court has stated

26 that "[r]eviewing courts . . . should grant substantial deference to the broad authority that legislatures

27 necessarily possess in determining the types and limits of punishments for crimes, as well as to the

28 discretion that trial courts possess in sentencing convicted criminals." Helm, 463 U.S. at 290.  Because

there is no reasoned state court decision addressing Petitioner's claim, this Court conducts an independent review of the record.  See Delgado, 223 F.3d at 982.

With respect to the gravity of the offense, Petitioner was convicted of lewd and lascivious conduct on a child under 14 years of age. Petitioner's conviction was serious.  Moreover, Petitioner's prior convictions were also serious offenses and involved similar conduct and charges.  Petitioner was convicted of a lewd act upon a child in violation of California Penal Code § 288(a) in 1982 and again in 1985.  (Lodg. No. 15 at 498-99.)  Therefore, Petitioner's current conviction bears a rational relationship to his propensity to recidivate.  His sentence for child molestation is unlike the habeas challenge for a regulatory violation in Gonzalez v. Duncan, 551 F.3d 875, 883-91 (9th Cir. 2008).  There, the Ninth Circuit ruled unconstitutional a three strikes sentence for failing to update the petitioner's annual sex offender registration.  The Ninth Circuit found that the violation was a purely regulatory offense that posed no danger to society by itself.  Id. at 884.  However, the Ninth Circuit observed that it has "had little difficulty" denying habeas relief to petitioners "where the triggering offense involved a serious crime against life or property and followed a long criminal history." Id. at 883.

In this case, the priors were for similar conduct and show that the Petitioner has a propensity to recidivate when it comes to child molestation.  See id. Petitioner's offenses are not regulatory violations but involve serious crimes that had long-lasting effects on their victims.  See id. at 884.  Accordingly, it is not necessary for the Court to engage in an intra and interjurisdictional comparison of Petitioner's sentence because the "threshold question" of an inference of gross disproportionality has not been met.  See Harmelin, 501 U.S. at 1005.

This Court concludes that the denial of the Eighth Amendment claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  Williams, 529 U.S. at 412-13.  Accordingly, habeas relief is not warranted and this Court **DENIES** Petitioner's Eighth Amendment claim.

///

///

08cv1519

**I.      Cumulative Error**

Petitioner contends that the cumulative effect of the errors in this case requires a reversal of his conviction. (Doc. No. 28-1 at 59-61.) "The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting trial fundamentally unfair." Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 298 (1973)). Respondents counter that the California Court of Appeal addressed cumulative error and concluded that "neither the individual or cumulative effect of any alleged errors requires reversal as Cordeiro received a fundamentally fair trial." (Doc. No. 41-1 at 46.) The Court agrees. Accordingly, the Court concludes that any errors did not result in a fundamentally unfair trial and **DENIES** Petitioner's claim for habeas relief.

**V.      PROCEDURAL BAR AND UNTIMELINESS**

Having denied Petitioner's claim on the merits, it is not necessary for this Court to address the Report and Recommendations to the extent that it finds that Petitioner's claims are untimely and procedurally barred.

**VI.      CONCLUSION**

For the reasons set forth above, the Court **DENIES** Petitioner's petition for writ of habeas corpus and adopts the Report and Recommendation to the extent that it concludes that Petitioner's claims do not merit habeas relief. The Court also **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

DATED: April 27, 2011

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT